UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMARR ROBINSON, 221610,

     Petitioner,

v.

THOMAS WINN,

     Respondent.

_____

CASE NO. 2:16-cv-12721

HON. DENISE PAGE HOOD

MAG. PATRICIA T. MORRIS

**ANSWER IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS**

# TABLE OF CONTENTS

Introduction ................................................................................1

Statements in Compliance with Habeas Rule 5(b) ...................4

    A.    Statute of Limitations...............................................4

    B.    Exhaustion.................................................................4

    C.    Procedural Default ...................................................6

    D.    Non-retroactivity Doctrine.......................................6

Statement of the Case ................................................................6

    A.    Trial Facts ................................................................6

    B.    Procedural History ...................................................8

Standard of Review Pursuant to AEDPA.................................10

Argument ..................................................................................17

I.    The Michigan Court of Appeals' rejection of Robinson's claim of ineffective assistance of counsel relating to the cell tower evidence was neither contrary to nor an unreasonable application of *Strickland*.................................17

II.    The Michigan Court of Appeals' rejection of Robinson's claim of ineffective assistance of counsel relating to the introduction of testimony about sex tapes was neither contrary to nor an unreasonable application of *Strickland*. .........23

III.    The Michigan Court of Appeals' rejection of Robinson's claim of ineffective assistance of counsel for not objecting to statements in the prosecutor's opening and closing statements was neither contrary to nor an unreasonable application of *Strickland*.................................26

IV.    Sufficient evidence supported Robinson's convictions...................30

V.      The Michigan Court of Appeals' rejection of Robinson's claim of ineffective assistance of counsel for not investigating or calling alibi or expert witnesses was neither contrary to nor an unreasonable application of *Strickland.* ...................................32

VI.     The Michigan Court of Appeals' rejection of Robinson's claim of knowing presentation of perjured testimony was neither contrary to nor an unreasonable application of clearly established federal law.....................................................36

VII.    Robinson has not exhausted his habeas claim VII.  Further, it is meritless. ....................................................................38

VIII.   Robinson has not exhausted his claim that the trial judge demonstrated bias.  The claim is also procedurally defaulted and meritless. ...............................................................40

Conclusion................................................................................47

Relief .......................................................................................52

Certificate of Service ...............................................................53

# INTRODUCTION

Petitioner, Lamarr Valdez Robinson, was jealous that the woman he was dating was also dating another man.  So, Robinson shot the other man as he was pumping his gas.

As result of his conviction by a Wayne County jury of one count each of assault with intent to commit murder (AWIM), Mich. Comp. Laws § 750.83, possession of firearms by a felon (felon-in-possession), § 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), § 227b, the State now holds Robinson in custody in the Michigan Department of Corrections.  Robinson was sentenced as a fourth-offense habitual offender, and is currently serving a sentence of 47-and-a-half to 120 years for the AWIM and felon-in-possession convictions, running concurrently with each other and consecutive to a 2-year sentence for felony-firearm.

Robinson commenced this action under 28 U.S.C. § 2254 by filing an unsigned petition with this Court.  The State understands the petition to be raising the following claims:

  I.  Defense counsel stipulated to the admission of cell phone tower evidence placing someone using a phone used by the petitioner in close proximity to the area of

the shooting a time just before and after the shooting[.] Should defense counsel have objected to the admission of this evidence or requested a *Daubert* hearing?  Or at the very least called an expert?  Did defense counsel's failures deny Petitioner effective assistance of counsel and due process of law?  US Const Ams VI, XIV.

II.   Defense counsel stipulated to the introduction of testimony irrelevant sex tapes, did not object to lines of questioning regarding those tapes and did not object to the introduction of text messages or testimony portraying Petitioner in a bad light.  Did defense counsel's failure to object deny Petitioner his right to effective counsel and due process of law?  US Const Ams VI, XIV.

III.  Defense counsel failed to object to the prosecutor's misconduct of referencing facts not in evidence and the prosecutor's appeal to sympathy in both opening and closing arguments.  Did defense counsel's failure to object deny Petitioner his right to effective counsel and due process of law?  US Const Ams VI, XIV.

IV.   Did the prosecution fail to produce legally sufficient evidence to identify Petitioner as a perpetrator of the offenses beyond a reasonable doubt?  US Const XIV.

V.    Was the petitioner denied the effective assistance of counsel contrary to the Sixth Amendment where counsel failed to call material and alibi witnesses?  Was counsel ineffective for failure to investigate and move the trial court for an expert witness?  Did the cumulative effect of error deprive Petitioner of a fair trial and due process?  US Const Ams VI, XIV.

VI.   Was Petitioner denied due process of law and a fair trial by the presentation of false evidence known to be such by the prosecutor where Jessica Taylor admitted to seeing the shooter contrary to facts presented at

trial?  Did the multiple act of prosecutorial misconduct deny Petitioner a fair trial and warrant a new trial and/or reversal?  US Const Am XIV.

VII. Petitioner is entitled to resentencing *Alleyne v. United States*, 133 S. Ct. 2151 (2013), where OV 4, OV 5 and OV 7 were not found by a jury.  Due process requires that Petitioner be sentenced on accurate information. US Const Ams VI, XIV.

VIII. Petitioner was denied a fair trial and impartial trial by aggressively questioning Kayana Davies and using tones to intimidate a witness; trial judge was apparently bias during sentencing by supporting the People's position on sentencing.  US Const. VI, XIV.

Should the Court interpret the petition to be raising different claims, the State requests an opportunity to file a supplemental pleading.  To the extent that Robinson failed to raise any other claims that he raised in the state courts, those claims are now abandoned. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument respecting the issue in his brief). Thus, habeas review of abandoned claims is barred.

The State now answers the petition and requests that it be denied.

## STATEMENTS IN COMPLIANCE WITH HABEAS RULE 5(b)

With respect to the bars that preclude habeas review, the State asserts the following in conformance with Habeas Rule 5(b):

### A.    Statute of Limitations

The State is not arguing that any of Robinson's habeas claims are barred by the statute of limitations.

### B.    Exhaustion

Robinson has not exhausted claims VII and VIII in the state courts as more fully discussed below.

This Court may not grant relief on these two claims.  28 U.S.C. § 2254(b)(1)(A).  Further, because the petition contains both exhausted and unexhausted claims, it is a "mixed petition," and this Court may not grant relief on *any* claim.  *Rose v. Lundy*, 455 U.S. 509, 520–22 (1982).

Several options exist.  This Court could deny the unexhausted claims on the merits notwithstanding the lack of exhaustion.  28 U.S.C. § 2254(b)(2).  If this Court chooses not to deny relief on the merits, it could allow Robinson the opportunity to delete the unexhausted claims from the petition and proceed with his six exhausted claims only.  *See*

4

*Webb v. McKee*, 2013 WL 1020935, \*1–2 (E.D. Mich. Mar. 14, 2013) (HOOD, J.).

Alternatively, this Court may stay the petition and hold it in abeyance, to allow Robinson to return to state court and exhaust his claim. *Rhines v. Weber*, 544 U.S. 269, 275–78 (2005). The State submits that such a course would not be appropriate here. As *Rhines* held, "stay and abeyance should be available only in limited circumstances," and that it "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 277. No such good cause is shown here. Robinson could have exhausted these claims in his application before the Michigan Supreme Court. This Court should not excuse his failure to do so by staying the petition.

Even if this Court finds good cause, it should not stay the petition because the unexhausted claims are "plainly meritless." *Rhines*, 544 U.S. at 277. And lastly, if this Court does stay the petition, it "should place reasonable time limits on [Robinson's] trip to state court and back." *Rhines*, 544 U.S. at 278.

## C.    Procedural Default

Robinson has procedurally defaulted claims VI, VII, and VIII, as more fully discussed below.

## D.    Non-retroactivity Doctrine

The State is not arguing that any of Robinson's claims are barred by the non-retroactivity doctrine.

## STATEMENT OF THE CASE

## A.    Trial Facts

The Michigan Court of Appeals accurately summarized the facts adduced at trial as follows:

> A jury convicted the 39-year-old defendant of shooting 20-year-old Jamel Chubb at a Detroit gas station on May 13, 2010.  The prosecution presented evidence that defendant and Chubb were both dating 19-year-old Jessica Taylor, whom defendant had been dating for a couple of years. Defendant learned about the relationship between Taylor and Chubb, and thereafter followed them on multiple occasions and sent several text messages to both Taylor and Chubb.  On the day of the shooting, the men had a brief encounter at Taylor's mother's Livonia residence.  Upon leaving, defendant told Taylor, "Don't let me catch y'all in the hood."  Later that day, Chubb, Taylor, Jasmine Miller, and Kayana Davies were all at Miller's Detroit residence, and ultimately went to a local gas station.  The gas station surveillance video captured an individual wearing a hoodie and riding a bike approach Chubb and shoot him as he was pumping gas.  Taylor, who was in the front passenger seat of

the vehicle, identified defendant as the shooter. Cellular phone tracking evidence also placed defendant in the area of the gas station at the time of the shooting. The defense theory at trial was misidentification, and the defense argued, inter alia, that Taylor's identification was not credible and the cell phone tracking evidence was not reliable.

*People v. Robinson*, No. 321841, 2015 WL 6438239, at *1 (Mich. Ct. App. Oct. 22, 2015).

This recitation of the facts is entitled to the presumption of correctness under § 2254(e)(1), and Robinson has not demonstrated through clear and convincing evidence that this summary is incorrect.

The presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

The State opposes any factual assertions made by Robinson that are not directly supported by—or consistent with—the state court record, because he has failed to overcome the presumption of factual correctness under 28 U.S.C. § 2254(e)(1) or meet the requirements of 28 U.S.C. § 2254(e)(2).

## B.    Procedural History

Robinson was convicted of AWIM, felon-in-possession, and felony-firearm.  The trial court sentenced him to 49-and-a-half to 122 years' imprisonment.

Following his conviction and sentence, Robinson filed a claim of appeal in the Michigan Court of Appeals.  His appellate counsel filed a brief which raised three claims, corresponding to Claims I, II, and III of the instant petition.  Robinson also filed a pro per supplemental brief, raising five claims, corresponding to claims IV through VIII of the instant petition.

The Michigan Court of Appeals affirmed Robinson's convictions and sentences in an unpublished opinion per curiam.  *Robinson*, 2015 WL 6438239.

Robinson then filed an application for leave to appeal in the Michigan Supreme Court, which raised six claims, corresponding to Claims I through VI of the instant petition.  The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed by" it.  *People v. Robinson*, 877 N.W.2d 729 (Mich. 2016) (unpublished table decision).

8

Robinson did not appeal to the United States Supreme Court or seek collateral review before the trial court.  Rather, he filed the instant petition for habeas relief.

## STANDARD OF REVIEW PURSUANT TO AEDPA

Congress mandated the standards of review in federal habeas proceedings in 1996 in the Antiterrorism and Effective Death Penalty Act (AEDPA).  Recognizing the foundational principle that "[s]tate courts are adequate forums for the vindication of federal rights," "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Burt v. Titlow*, 134 S. Ct. 10, 15, 16 (2013); 28 U.S.C. § 2254(d).

Congress has limited the availability of federal habeas corpus relief "with respect to any claim" the state courts "adjudicated on the merits."  28 U.S.C. § 2254(d).  Habeas relief may not be granted to a habeas petitioner under § 2254(d) unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

With respect to § 2254(d)(1), a state court decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts." *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 n.2 (2013) (internal quotation marks and citation omitted). A state court decision involves an unreasonable application of clearly established Federal law pursuant to § 2254(d)(1) if "the state-court decision identifies the correct governing legal principle in existence at the time," but "unreasonably applies that principle to the facts of prisoner's case." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (internal quotation marks and citation omitted). Where "[n]o precedent of [the Supreme Court] clearly forecloses" a state court's ruling, it simply cannot be an unreasonable application of Supreme Court precedent. *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta," of the Supreme Court's decisions. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotations and citations omitted). "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id*.

Moreover under § 2254(d)(1), the relevant Supreme Court precedent includes only the decisions in existence "as of the time the

state court renders its decision." *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011) (internal quotation marks and emphasis omitted); *see also Pinholster*, 563 U.S. at 182 ("State-court decisions are measured against [the Supreme] Court's precedents as of the time the state court renders its decision.") (internal quotation marks omitted).

Under § 2254(d)(2), the "unreasonable determination" clause, "a state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Titlow*, 134 S. Ct. at 15 (internal quotation marks and citation omitted). "Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross*, 132 S. Ct. 490, 495 (2011) (per curiam).

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). This means that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Instead, the state court's "application must be

12

objectively unreasonable." *Id.*  That distinction creates "a substantially higher threshold" to obtain relief than de novo review.  *Id.*  A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable.  *Etherton*, 136 S. Ct. at 1152.

"It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted).  And federal court of appeals precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced."  *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam) (citation omitted); *see also Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (providing that absent a decision by the Supreme Court addressing "the specific question presented by [a] case" a federal court cannot reject a state court's assessment of claim).  And, as the Supreme Court recently held, where no Supreme Court cases confront "the specific question presented" by the habeas petitioner, "the state court's decision [cannot]

be contrary to any holding from this Court." *Woods v. Donald*, 135 S.
Ct. 1372, 1377 (2015) (per curiam) (internal quotation marks and
citation omitted).

Further, the Supreme Court has specifically warned habeas courts
that, "[b]y framing [Supreme Court] precedents at [too] high [a] level of
generality, [it] could transform even the most imaginative extension of
existing case law into 'clearly established Federal law, as determined by
the Supreme Court.'" That "approach would defeat the substantial
deference that AEDPA requires" be given to state-court decisions.
*Nevada v. Jackson*, 133 S. Ct. 1990, 1994 (2013) (per curiam).

Moreover, pursuant to § 2254(d), "a habeas court must determine
what arguments or theories supported or . . . could have supported, the
state court's decision; and then it must ask whether it is possible
fairminded jurists could disagree that those arguments or theories are
inconsistent with the holding in a prior decision" of the Supreme Court.
*Richter*, 562 U.S. at 102. This standard protects against intrusion of
federal habeas review upon "both the States' sovereign power to punish
offenders and their good-faith attempts to honor constitutional rights."
*Id*. at 103 (internal quotation marks and citation omitted).

14

A federal court must refrain from issuing a writ "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (internal quotation marks and citation omitted).  To clear the § 2254(d) hurdle, a habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.  "If this standard is difficult to meet, that is because it was meant to be." *Id*. at 102.

The burden of providing a petitioner a new trial "should not be imposed unless *each* ground supporting the state court decision is examined and found to be unreasonable under AEDPA." *Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012).

The Supreme Court has also instructed habeas courts to apply a rebuttable presumption that a "federal claim was adjudicated on the merits" even "[w]hen a state court rejects a federal claim without expressly addressing that claim." *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013). *See also Kernan v. Hinojosa*, 136 S. Ct. 1603, 1606 (2016) (per curiam) ("Containing no statement to the contrary, the Supreme

Court of California's summary denial of Hinojosa's petition was therefore on the merits."). "[S]tate-court decisions [must] be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (internal quotation marks and citation omitted). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunction in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (internal quotation marks and citation omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102 (citation omitted).

Finally, the petitioner's burden is made even heavier by the fact that a federal court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.

# ARGUMENT

## I.   The Michigan Court of Appeals' rejection of Robinson's claim of ineffective assistance of counsel relating to the cell tower evidence was neither contrary to nor an unreasonable application of *Strickland*.

Robinson's first claim for habeas relief is that trial counsel was ineffective for failing to object to the admission of expert testimony regarding cell tower evidence showing that Robinson was near the gas station at the time of the shooting.[1]

A claim of ineffective assistance of counsel is governed by *Strickland v. Washington*, 466 U.S. 668 (1984).  To establish ineffective assistance, Robinson must demonstrate that counsel's performance was objectively unreasonable and that he was prejudiced by counsel's action or inaction.  *Wilson v. Parker*, 515 F.3d 682, 698 (6th Cir. 2008) (*citing Strickland*, 466 U.S. at 687–88).

The second *Strickland* prong, that of prejudice, requires Robinson to show that "there is a reasonable probability that, but for counsel's

---

[1] Robinson's petition also asks whether his trial counsel was ineffective for not calling a defense expert on cell tower evidence.  Robinson presents no argument in support of this claim in his petition or in the memorandum in support, and he did not raise any such claim in the state courts.  The State considers this question not to be properly before this Court.

17

unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Because both prongs must be satisfied to establish ineffective assistance, if Robinson cannot satisfy one prong, the other need not be considered. *Id*. at 697.

"'Surmounting *Strickland*'s high bar is never an easy task,'" and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788 (*quoting Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)). On habeas review, ineffective-assistance claims are entitled to double deference due to the combined effect of *Strickland* and § 2254. A State prisoner seeking a federal writ of habeas corpus on the ground that he was denied effective assistance of counsel "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698–99 (2002); *Durr v. Mitchell*, 487 F.3d 423, 435 (6th Cir. 2007). On habeas review, the question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but

whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009), *quoting Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 131 S. Ct. at 785. The Supreme Court has indicated that "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Richter*, 131 S. Ct. at 788.

Further, the *Strickland* standard is a general standard, and, consequently, "a State court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Mirzayance*, 556 U.S. at 120. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S. Ct. at 788. The Supreme Court has recently stressed the "standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788.

Moreover, the reviewing court is required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons counsel may have had for proceeding as he did. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1407 (2011).  "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" many years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Richter*, 131 S. Ct. at 789.

The Michigan Court of Appeals' rejection of this claim forecloses any possibility for federal habeas relief.  The underlying error Robinson alleges is a perceived error of *state*, not federal, law.  And the Michigan Court of Appeals rejected Robinson's claim in part based on state law. The court held that the expert testimony was admissible as a matter of Michigan law:

> "[T]he determination regarding the qualification of an expert and the admissibility of expert testimony is within the trial court's discretion." *People v. Murray,* 234 Mich. App 46, 52; 593 NW2d 690 (1999).  MRE 702 governs the admissibility of expert testimony and provides:
>
>> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an

opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 702 requires "a court evaluating proposed expert testimony [to] ensure that the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v. Kowalski,* 492 Mich. 106, 120; 821 NW2d 14 (2012).  This inquiry, however, is a flexible one and must be tied to the facts of the particular case; thus, the factors for determining reliability may be different depending upon the type of expert testimony offered, as well as the facts of the case.  *Id.,* citing *Daubert v. Merrell Dow Pharm, Inc,* 509 U.S. 579, 591; 113 S.Ct. 2786; 125 L.Ed.2d 469 (1993); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150; 119 S.Ct. 1167; 143 L.Ed.2d 238 (1999).

Defendant has not overcome the strong presumption that trial counsel's performance was within the range of reasonable professional conduct.  *Payne,* 285 Mich. App at 190.  We are disinclined to declare that testimony of this nature should be considered "junk science," as requested by defendant.  Defendant cannot direct this Court's attention to any Michigan case where cell phone tracking evidence presented by an expert witness has been rejected.  Further, Smith's testimony, which was based on the cell phone records as well as Smith's specialized knowledge regarding Metro PCS cell phone towers, helped the jury understand information at issue in the case that an average juror would not have previously known.  See *Kowalski,* 492 Mich. at 121 (proffered testimony must involve a matter that is beyond the common understanding of the jury).  For example, average jurors do not have the benefit of being trained in the functions of cell phone towers, derivative tracking, and

techniques of locating or plotting origins of cell phone calls using cell phone records.  Smith testified regarding these methods, and explained how this data was reflected in the cell phone records.  Thus, Smith provided reliable testimony that assisted the jurors in understanding how defendant's cell phone records placed him (or his phone) in the area of the shooting.

Further, even assuming that defense counsel should have objected, defendant cannot show the probability that, but for counsel's errors, the result of the proceedings would have been different. *Nix,* 301 Mich.App at 207.  Defendant has not sufficiently challenged Smith's qualifications to render an opinion using cell phone records and towers to track locations.  As defendant observes, Smith testified that he was a Metro PCS "custodian of records," and had been employed by the company for approximately three years.  Smith explained that his position included the "storage and accuracy of [Metro PCS] phone records, such as subscriber information, call detail records, and text messages."  Before defense counsel stipulated to Smith's qualifications, however, Smith testified that he had been trained in "how [Metro PCS] cellphone towers work," and "how handsets that belong or are purchased through Metro PCS register with those towers."  He had also trained others on how the cellphone towers work.  A witness is qualified to testify as an expert based on knowledge, skill, experience, training, or education.  MRE 702.  Because Smith's testimony demonstrated that he was qualified to provide the challenged cell phone tracking testimony based on his experience and training, any objection by defense counsel to Smith testifying in that capacity or to request a *Daubert* hearing would have been futile.  Counsel is not ineffective for failing to raise a meritless objection. *People v. Ericksen,* 288 Mich. App 192, 201; 793 NW2d 120 (2010).

*Robinson*, 2015 WL 6438239, at *2–3 (footnote omitted).

In order for this Court to hold that Robinson's trial counsel performed deficiently, it would have to hold that an objection by counsel would have been meritorious, had one been made. But that would mean holding that the Michigan Court of Appeals was wrong about the admissibility of Smith's testimony. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Because the state court's holding on the admissibility of Smith's testimony is based in state law, it is conclusive on this Court, and forecloses relief on Robinson's first ineffective-assistance claim.

## II. The Michigan Court of Appeals' rejection of Robinson's claim of ineffective assistance of counsel relating to the introduction of testimony about sex tapes was neither contrary to nor an unreasonable application of *Strickland*.

Robinson's second claim for habeas relief is that he was denied the effective assistance of counsel when his counsel either stipulated to, or declined to object to, the admission of testimony and text messages that referred to a "sex tape" of Taylor and Chubb, another sex tape of celebrity Kim Kardashian, and testimony that Robinson had gotten into a fight with one of Taylor's friends.

23

As to the first two subclaims, relief is foreclosed for much the same reasons as explained in Argument I above.  The Michigan Court of Appeals held that the evidence of text messages, and Taylor's and Johnson's testimony, was relevant and not unduly prejudicial, and therefore admissible. *Robinson*, 2015 WL 6438239, at *3–4.  Again, this is a question of the admissibility of evidence under state law, and not a question that may be revisited by a federal court sitting in habeas review.  For this Court to grant relief, it would first need to hold that an objection by counsel might have been meritorious, which would mean holding that the Michigan Court of Appeals erred on a state-law question.  For this reason, relief is barred.

As to the third subclaim, the Michigan Court of Appeals rejected it in a manner that was not objectively unreasonable:

> Miller, a friend of Taylor and Chubbs, testified that Taylor had lived with her and with defendant at times. When testifying about whether she had texted defendant directly, she testified:
>
> > *A.* One night [defendant and Taylor] had got into a fight, and I'm not quite sure exactly what they were fighting about. But they got into a fight, and I had told him like instead of you putting your hands on her and, you know degrading her, then you can send her to my house.

> *Q.* So, you would communicate with the
> defendant by text?
>
> *A.* Yes, I have.
>
> We agree that Miller's testimony about defendant
> fighting Taylor at some unspecified time could be considered
> objectionable.  MRE 404(b).  But applying the appropriate
> level of deference to defense counsel's decision made during
> the course of trial, his failure to object to the testimony does
> not establish ineffective assistance of counsel.  Defense
> counsel reasonably could have opted at that moment to avoid
> placing emphasis on, and highlighting to the jury, that one
> brief statement.  "[T]his Court will not second-guess defense
> counsel's judgment on matters of trial strategy."  *People v.
> Benton,* 294 Mich. App 191, 203; 817 NW2d 599 (2011).
> Consequently, defendant cannot establish a claim of
> ineffective assistance of counsel.

*Robinson*, 2015 WL 6438239, at *4–5.

This analysis is a reasonable application of *Strickland*, which

requires reviewing courts to "indulge a strong presumption that

counsel's conduct falls within the wide range of professional

assistance[.]"  466 U.S. at 689.  The fact that defense counsel chose to

let a brief, unsolicited, and vague comment about a fight between

Robinson and Taylor pass without drawing attention to it instead of

futilely attempting to unring the bell does not overcome this

presumption.  Robinson cannot show that it was unreasonable for the

Michigan Court of Appeals to reject this claim, and he is not entitled to relief.

## III. The Michigan Court of Appeals' rejection of Robinson's claim of ineffective assistance of counsel for not objecting to statements in the prosecutor's opening and closing statements was neither contrary to nor an unreasonable application of *Strickland*.

Third, Robinson claims that his counsel was ineffective for not objecting to statements the prosecutor made during opening and closing arguments that he contends were improper.

Specifically, Robinson accuses the prosecutor of making statements in her opening statement and closing argument that were not supported by the evidence, and of making an argument during closing that improperly appealed to the jury's sympathy.

The Michigan Court of Appeals rejected the first part of the claim for two reasons:  First, because the prosecutor's statements *were* supported by the evidence, and second, because even if any remarks had been improper, there was no reasonable probability that an objection would have made any difference in the outcome of the proceeding:

> Defendant raises several specific instances of prosecutor misconduct.  During closing argument, the prosecutor stated that defendant took the same path as the

shooter, which defendant asserts was unsupported by the record. However, contrary to defendant's assertion, the prosecutor's remarks regarding defendant's location were supported by Smith's testimony and the cell phone records, and reasonable inferences arising from the evidence. The prosecutor's argument that Taylor was "able to see" the shooter's face was based on Taylor's testimony that she saw defendant's face. The prosecutor's argument that defendant had "facial hair right around his chin like [witness Tremaine Maddox] said" the shooter had was a reasonable inference from the evidence that defendant had facial hair on the date of the shooting and Maddox's description of the shooter as having a full facial beard. Defendant contends that there was no evidence from which the prosecutor could infer that defendant had left a hickey on Taylor's neck on the day of the shooting, but Taylor testified that defendant put a hickey on her neck on May 13, 2010, and Miller testified that Taylor had a "big purple mark on her neck" that day. Also, in a text message to Chubb, defendant himself wrote, "How u think she got the hicky fool & when u was knockin I was bustn." The prosecutor's references to other women, relationships, or phone numbers, e.g., "Terri" and "Nicole," were direct references from testimony and text messages that were admitted into evidence. Taylor testified that she knew Nicole Waller was the mother of defendant's children and had spoken to her on the phone before. Accordingly, we conclude that the prosecutor's remarks were not clearly improper.

To the extent that the prosecutor's remarks could be considered impermissible references, defendant cannot demonstrate that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different. *Nix,* 301 Mich. App at 207. Despite defense counsel's failure to object, the trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jury was to decide the case based only on the properly admitted evidence, and that

the jury was to follow the court's instructions.  It is well
established that jurors are presumed to follow their
instructions.  *Unger,* 278 Mich. App at 235.  Consequently,
defendant has failed to establish an ineffective assistance of
counsel claim.

*Robinson*, 2015 WL 6438239, at \*5–6.

Both of these are perfectly reasonable grounds on which to reject

Robinson's arguments.  For each claim of a statement unsupported by

evidence, the Michigan Court of Appeals identified the record evidence

that supported the statement.  Trial counsel could not have performed

deficiently in declining to object when the prosecutor was not saying

anything objectionable.  Further, the alternative prejudice analysis is

also reasonable.  For either of these reasons, Robinson has not shown

entitlement to relief.

As to the argument regarding the prosecutor's supposed appeal to

sympathy, the Michigan Court of Appeals rightly and reasonably held

that there could be no prejudice from defense counsel's failure to object

because the trial court itself intervened and stopped the argument:

Defendant also argues that defense counsel was
ineffective for failing to object to the prosecutor's comments
that improperly appealed to the jury's sympathy.
Specifically, defendant points to comments that were made
during rebuttal argument that "went to great lengths to cast
aspersions upon [defendant's] general character that the

judge chose to interrupt to ask the prosecutor to rephrase her rebuttal statement." Before the trial court intervened, the prosecutor had stated:

> Do you remember Jasmine Mille[r] saying, you know, you hear the shots, and they kind of register in your head, and then you get down. Okay. This happened very quickly. There is nothing inconsistent about Kayana's testimony and Jessica's testimony. And I want you to think real hard about why this girl was so scared to get up here and even look in that man's direction.
>
> You can end the terror. You can end the defendant's reign of terror. It's up to you. This is a one-shot deal. If you do not give justice to Jamel, if you do not bring back a verdict of guilty today—
>
> *The court:* Excuse me, Counsel.
>
> *The prosecutor*: Yes, Judge.
>
> *The court:* You're going to rephrase your argument.
>
> *The prosecutor*: Thank you.

Prosecutors may not resort to arguments that ask jurors to sympathize with the victim. *Dobek,* 274 Mich. App at 79. However, here, even if the prosecutor's argument could be considered objectionable, the trial court intervened and directed the prosecutor to rephrase her argument. Further, the trial court's instructions that the lawyers' statements and arguments are not evidence, and that the case should be decided on the basis of the evidence were sufficient to dispel any possible prejudice. *Unger,* 278 Mich. App at 235. Therefore, defendant cannot demonstrate that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have

been different.  Consequently, defendant has failed to establish an ineffective assistance of counsel claim.

*Robinson*, 2015 WL 6438239, at *6.

If Robinson's defense counsel had objected before the trial court intervened, the trial court would have done the same thing—instructed the prosecutor to rephrase her argument.  If Robinson's defense counsel had objected *after* the trial court intervened, it would have been redundant.  Either way, Robinson cannot show prejudice, and he is not entitled to habeas relief.

## IV.   Sufficient evidence supported Robinson's convictions.

Robinson's fourth claim for habeas relief is that there was not sufficient evidence adduced at trial to support his convictions.

> Defendant argues that the prosecutor presented insufficient evidence that he was the person who shot Chubb.  We disagree.  Challenges to the sufficiency of the evidence are reviewed de novo to "determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v. Russell,* 297 Mich. App 707, 721; 825 NW2d 623 (2012) (citation omitted).  "This Court reviews the evidence in the light most favorable to the prosecution." *Id.*
>
> Defendant challenges only whether there was sufficient evidence to establish his identify as the shooter. "[I]dentity is an element of every offense." *Yost,* 278 Mich. App at 356.  Therefore, it is axiomatic that the prosecution must prove the identity of the defendant as the perpetrator

30

of the charged offense beyond a reasonable doubt.  See
*Russell,* 297 Mich. App at 721.  Positive identification by a
witness may be sufficient to support a conviction of a crime.
*People v. Davis,* 241 Mich. App 697, 700; 617 NW2d 381
(2000).  "The credibility of identification testimony is for the
trier of fact to resolve that we do not resolve anew." *Id.*

Taylor unequivocally identified defendant as the
shooter at trial.  Taylor was sitting in the front seat of
Chubb's car, while Chubb was standing on the side of the
vehicle, pumping gas.  Defendant approached on a bike and,
as Chubb's body fell, Taylor saw defendant's face.  Taylor
testified that she had no trouble perceiving what occurred.
Taylor had been in an intimate relationship with defendant
for two years.  From this evidence, a jury could reasonably
infer that Taylor was familiar with defendant and could
identify him under the circumstances.  Although defendant
emphasizes that Taylor did not initially identify him as the
shooter, Taylor explained that she did not initially identify
defendant because she feared retribution.  After deciding to
come forward, Taylor consistently identified defendant as
the shooter to the police, at the preliminary examination,
and at trial.  The jury was free to believe or disbelieve
Taylor's testimony, including her explanation for her belated
identification of defendant as the shooter.  The credibility of
identification testimony is a question of fact for the jury, and
Taylor's testimony, if believed, was sufficient to establish
defendant's identity as the shooter.  Further, apart from
Taylor's positive and unequivocal identification of defendant,
the prosecution presented evidence that a cell phone linked
to defendant was in the area at the time of the shooting and
that defendant had communicated via text about obtaining a
.45-caliber gun—the same caliber that was used to shoot
Chubb.  Accordingly, when viewed in a light most favorable
to the prosecution, there was sufficient evidence for the jury
to identify defendant as the perpetrator beyond a reasonable
doubt.

*Robinson*, 2015 WL 6438239, at *7.

This analysis is right and reasonable.  It might even have been enough for the court to have said only, "Taylor unequivocally identified [Robinson] as the shooter at trial."  But the court went on to explain that the reliability of the identification was strong (because Taylor knew Robinson well and had a good view of the shooter), and that the credibility of the identification was a question for the jury.  On sufficiency review, credibility questions are resolved in favor of the jury's verdict.  *United States v. Collins*, 799 F.3d 554, 589 (6th Cir. 2015).  Adding in the corroborating evidence, there is no question but that sufficient evidence supported Robinson's conviction.  He is not entitled to relief on this claim.

**V.    The Michigan Court of Appeals' rejection of Robinson's claim of ineffective assistance of counsel for not investigating or calling alibi or expert witnesses was neither contrary to nor an unreasonable application of *Strickland*.**

Robinson's fifth habeas claim is that his trial counsel performed deficiently in not investigating or calling alibi witnesses.

> Defendant next argues that defense counsel should have called Vanessa Hudson and Nicole Waller (his former girlfriend) as alibi witnesses; Tracey Mayes, Jasmine Gradford, and Charles Mitchell as res gestae witnesses; himself; and an expert witness.  Defendant avers in an

affidavit submitted with his standard 4 brief that he informed defense counsel about Hudson, Waller, and Mayes. Thus, accepting defendant's claim, defense counsel was aware of the proposed witnesses. "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *Russell,* 297 Mich. App at 716. Trial counsel's failure to a call a witness is only considered ineffective assistance if it deprived the defendant of a substantial defense. *Id.* "A substantial defense is one that might have made a difference in the outcome of the trial." *People v. Chapo,* 283 Mich. App 360, 371; 770 NW2d 68 (2009). Defendant attempts to establish the factual predicate for his claim with affidavits from Hudson, Mayes, and himself, which are attached to his standard 4 brief. It is, however, "impermissible to expand the record on appeal." *People v. Powell,* 235 Mich. App 557, 561 n. 4; 599 NW2d 499 (1999). But even considering these affidavits, defendant's ineffective assistance claim fails.

With regard to the proposed alibi witnesses, defendant has not overcome the presumption that defense counsel purposely declined to call Hudson and Waller as a matter of sound trial strategy. The failure to call an alibi witness does not constitute ineffective assistance of counsel if counsel reasonably believes that the purported alibi witness will not provide an effective alibi. *People v. McMillan,* 213 Mich. App 134, 141; 539 NW2d 553 (1995). Hudson avers that she went to Waller's house "around 3:30 or 4 p.m." to explain to Waller why defendant had her dance clothes and her van, and that she thereafter left with defendant to pick up parts for defendant to fix her van. Hudson further avers that she was with defendant "from 4 to 5:30 p.m." Defendant avers that he texted Hudson, "911 where are u," because Waller was threatening to burn Hudson's dance clothes. The cell phone records show that defendant sent this "911" text at 5:28 p.m., contrary to Hudson's declaration that she and defendant were already together. It would have been reasonable for counsel to anticipate that the prosecutor would question the

33

credibility of Hudson, and counsel reasonably may have determined that the credibility issues would have seriously undermined any progress defense counsel had made in presenting the misidentification defense and discrediting the prosecution's witnesses.  The fact that a defense strategy ultimately fails does not establish ineffective assistance of counsel.  *People v. Kevorkian,* 248 Mich. App 373, 414–415; 639 NW2d 291 (2001).  Further, there is no record evidence that defendant's former girlfriend, Waller, was both available and willing to testify favorably on defendant's behalf.  Defendant has not provided a witness affidavit from her, or identified any other evidence of record establishing that she actually could have provided favorable testimony at trial.  Defendant has not established that he was prejudiced by defense counsel's failure to call this witness at trial.

With regard to the proposed res gestae witnesses, Mayes averred in an affidavit that he observed Taylor "duck face forward" after shots were fired, which defendant sought as support for a conclusion that Taylor could not have seen the shooter.  Mayes's testimony, even if assumed true, would have been cumulative to the testimony of Davies that Taylor ducked down.  Other than providing information that was adequately covered through another witness, defendant does not state what new helpful information Mayes could have offered that would have affected the outcome of the trial.  With regard to Gradford and Mitchell, there is no record evidence that either proposed witness was both available and willing to testify favorably on defendant's behalf.  Absent such a showing, defendant has not established that he was prejudiced by defense counsel's failure to call the witnesses at trial.

Defendant, as a criminal defendant, had a fundamental constitutional right to testify at trial.  US Const, Am XIV; Const 1963, art 1, §§ 17, 20.  "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant."  *People v. Bonilla–Machado,* 489 Mich. 412, 419; 803 NW2d 217 (2011).

"[I]f defendant ... decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *People v. Simmons,* 140 Mich. App 681, 685; 364 NW2d 783 (1985) (citation and quotations omitted).

There is no basis to conclude that counsel's performance deprived defendant of his constitutional right to testify. The record shows that, after the prosecution rested, defense counsel stated on the record that he and defendant had discussed whether defendant was going to testify and that defendant had elected not to testify. Defendant acknowledged to the court that he did not want to testify. Defendant never expressed disagreement with counsel's statement that he did not wish to testify, did not claim that he was ignorant of his right to testify, or that defense counsel had coerced him into not testifying. The decision whether to call defendant as a witness was a matter of trial strategy and defendant has not identified or offered any evidence to overcome the strong presumption of sound strategy. *Payne,* 285 Mich. App at 190.

Defendant has not made an offer of proof regarding the substance of any favorable testimony that an expert witness on cell phones could have offered. A defendant cannot establish his claim of ineffective assistance of counsel using speculation that an expert would have testified favorably. *Id.* Moreover, defendant has failed to overcome the presumption that defense counsel's decision not to call an expert witness was reasonable trial strategy. *Id.* Through means of cross-examination, defense counsel challenged the strength and reliability of the cell phone tracking evidence, and elicited arguable bases for the jurors to question its accuracy. For example, defense counsel elicited on cross-examination that the cell phone tower information did not allow Metro PCS to pinpoint the exact point from where a call was made. Defendant has failed to show that defense counsel's strategy was objectively unreasonable, or that he was prejudiced by the absence of an expert at trial.

*Robinson*, 2015 WL 6438239, at \*7–9.

To this thorough and careful analysis, nothing need be added. The Michigan Court of Appeals rightly and reasonably rejected all of Robinson's arguments, and he is not entitled to relief on this claim.

## VI.   The Michigan Court of Appeals' rejection of Robinson's claim of knowing presentation of perjured testimony was neither contrary to nor an unreasonable application of clearly established federal law.

Robinson's sixth claim for habeas relief is that the prosecution knowingly presented perjured testimony, specifically the testimony of Jessica Taylor.  But the only reason Robinson gives for believing Taylor's testimony to be perjured is that it is inconsistent with her prior statements.  "Mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony."  *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998), *quoting United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989).

The Michigan Court of Appeals reasonably rejected this claim on this basis:

> Defendant argues that the prosecutor knowingly presented perjured testimony by Taylor.  We disagree.  A

36

defendant's right to due process "is violated when there is any reasonable likelihood that a conviction was obtained by the knowing use of perjured testimony." *People v. Gratsch,* 299 Mich. App 604, 619; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich. 876 (2013). Thus, a prosecutor has "an obligation to correct perjured testimony that relates to the facts of the case or a witness's credibility." *Id.*

In his argument, defendant highlights instances where Taylor's testimony about the identification of the shooter differed from her initial police statement, in which she did not identify defendant as the shooter, or that her claim that she could see the shooter was debilitated by other eyewitnesses who stated that all the witnesses ducked down. However, the inconsistencies listed by defendant do not establish that the prosecutor knowingly used perjured testimony to obtain defendant's conviction. *People v. Parker,* 230 Mich. App 677, 690; 584 NW2d 753 (1998). Although Taylor's trial testimony that defendant was the shooter differed from her initial statement to the police, there was no indication that the prosecutor sought to conceal this inconsistency from defendant. *Id.* In fact, during direct examination, Taylor admitted that she did not initially tell the police that defendant was the shooter because she was afraid. Additionally, testimony that conflicts with other witnesses' testimony does not lead to the conclusion that the prosecutor knowingly used perjured testimony. The prosecution is not obligated to disbelieve its own witness merely because the witness's testimony is contradicted by testimony from another witness. See *People v. Lester,* 232 Mich. App 262, 278–279; 591 NW2d 267 (1998), overruled in part on other grounds in *People v. Chenault,* 495 Mich. 142; 845 NW2d 731 (2014). Defendant's argument does not involve an issue of perjury, but of credibility. Defense counsel fully explored the credibility problems with Taylor's testimony, as well as other prosecution witnesses, and the jury had an opportunity to observe the video recording of the

shooting.  This Court will not "interfere with the jury's determinations regarding . . . the credibility of the witnesses." *Unger,* 278 Mich. App at 222.

*Robinson*, 2015 WL 6438239, at *9–10.

Robinson was free to argue to the jury that Taylor should not be believed because of inconsistencies in the testimony.  But these inconsistencies, without more, do not establish the due process violation Robinson alleges.  The Michigan Court of Appeals' rejection of this claim was right and reasonable, and Robinson is not entitled to habeas relief.

## VII.  Robinson has not exhausted his habeas claim VII.  Further, it is meritless.

Robinson's seventh claim is that his Sixth Amendment right to a jury trial was violated when the sentencing court calculated his sentencing guidelines range using judge-found facts.  Robinson did not raise this claim in his application for leave to appeal to the Michigan Supreme Court.  Thus, it is unexhausted, and this Court may not grant relief.  Instead, it may either deny relief on the merits, allow Robinson to amend the petition to remove the claim, or hold the petition in abeyance to allow Robinson to exhaust the claim.

In this case, the State submits that the easiest course is to deny relief on the merits.  The United States Supreme Court has never held that *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), and its progeny apply to a Michigan "minimum sentence," which is only a determination of what portion of a defendant's sentence he must serve before becoming eligible for parole. Every case in the *Apprendi* line, up to and including *Alleyne v. United States*, 133 S. Ct. 2151 (2013), on which Robinson relies, deals with the setting of a maximum sentence, at the end of which the defendant becomes entitled to release.  The United States Supreme Court has never held that the Sixth Amendment jury trial right is implicated in how a state court determines parole eligibility.

But even if *Alleyne* applied to Michigan minimum sentences, Robinson would not be entitled to relief.  As the Michigan Court of Appeals held in rejecting this claim, the sentencing court scored offense variables (OVs) 1, 2, 3, and 6 based on facts admitted by Robinson or found by the jury's verdict.  *Robinson*, 2015 WL 6438239, at *13.  Those scores alone were enough to place Robinson into the highest OV level, OV Level VI.  *Id.*  Thus, the scoring of OVs 4, 5, and 7, which are the

focus of Robinson's claim, made no difference to his sentencing guidelines range.  *Id.*

It was for this reason that the Michigan Court of Appeals denied relief, and even if this Court believed that the question being raised is cognizable on federal habeas review, Robinson's argument is meritless. He is not entitled to relief.

## VIII. Robinson has not exhausted his claim that the trial judge demonstrated bias.  The claim is also procedurally defaulted and meritless.

Robinson's eighth and final claim for habeas relief is that the trial court demonstrated bias in its questioning of a prosecution witness and in its remarks at sentencing.  Like Claim VII, Robinson never raised this claim in the Michigan Supreme Court, and thus may not be granted habeas relief.  Again, this Court may deny the claim on the merits, give Robinson an opportunity to delete the claim along with Claim VII, or hold the petition in abeyance.

This claim is also procedurally defaulted, barring relief. "[P]rocedural default results where three elements are satisfied:  (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced

40

the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

Robinson failed to comply with a state procedural rule that requires defendants to raise an objection at trial. The last state court to issue a reasoned opinion on his claim was the Michigan Court of Appeals, which denied relief because Robinson failed to satisfy plain-error review of his unpreserved claim. *Robinson*, 2015 WL 6438239, at *13. Application of plain-error review "constitutes an adequate and independent state ground for foreclosing federal review"—i.e., it constitutes enforcement of a procedural default, which bars review by this Court. *Taylor v. McKee*, 649 F.3d 446, 450–51 (6th Cir. 2011).

A State prisoner who fails to comply with a State's procedural rule waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991); *Gravley v.*

41

*Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *See, e.g.*, *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Haliym v. Mitchell*, 492 F.3d 680, 690-91 (6th Cir. 2007). A petitioner must present a substantial reason to excuse the default. *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994); *see also Amadeo v. Zant*, 486 U.S. 214, 222-23 (1988) (reviewing a claim that a document was concealed by officials). One recognized reason includes attorney error rising to the level of ineffective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). But Robinson has not raised a claim of ineffective assistance of counsel to excuse this default.

The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496. A claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence,

42

trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

To show that his case is the "extraordinary" one warranting application of this exception, Robinson must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 321, 327. Robinson has not presented any new, reliable evidence in support of a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of this. Claim VIII is procedurally defaulted, and habeas relief is barred.

Alternatively, rejection of the claim on the merits is straightforward. The Michigan Court of Appeals reasonably rejected this claim in a manner that was not objectively unreasonable:

> Defendant next argues that he was denied a fair trial based on judicial bias. Specifically, defendant asserts that the trial court aggressively questioned Davies in order to intimidate her and exhibited bias during sentencing. We disagree.

> "The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v. Stevens,* 498 Mich. 162, 168; —— NW2d —— (2015). However, because

defendant did not object to the challenged behavior in the trial court, this issue is unpreserved. *People v. Sardy,* 216 Mich.App 111, 117–118; 549 NW2d 23 (1996). Unpreserved issues are reviewed for plain error affecting substantial rights. *People v. Carines,* 460 Mich. 750, 763–764; 597 NW2d 130 (1999). In *Stevens,* 498 Mich. at 170–171, our Supreme Court explained:

> A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. [Citations omitted.]

A fact-specific inquiry is required. *Id.* at 171. "A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id.*

> In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. This list of factors is not intended to be exhaustive. [*Id.* at 172 (citations omitted).]

Defendant asserts that the trial court exhibited misconduct while questioning Davies. After taking the stand, Davies began crying, and the trial court sent the jury

44

to lunch.  The trial court then addressed Davies, stating, "I don't know why you're crying or what you're afraid of, but you'd better get afraid of me because I'm not going to spend a lot of time begging you to answer questions, because I can send you to jail, and I will do so."  Later, Davies testified that she had been warned not to testify.  Defendant challenges the court's comments, arguing that the court was unfairly harsh toward Davies, who was simply emotional remembering the traumatic event of the shooting. Defendant does not, however, show how the trial court's statements impacted his trial or exhibited judicial bias toward defendant.  Indeed, Davies was a witness for the prosecution.  Furthermore, the court's comments were made outside the presence of the jury and, thus, there was no reasonably likelihood that the comments improperly influenced the jury.  Accordingly, we do not agree that the trial court's statements to Davies denied defendant a fair trial.

Defendant also argues that the trial court exhibited bias at sentencing when the trial court "testified for the victim's mother[ .]" At sentencing, in regard to the victim's mother, the trial court stated:

> But you're going to tell me that this lady walks in there every single day, she looks at the son that she brought into this world that she believed was going to as least go to college and be something in this society, and he's a vegetable; and you don't think she doesn't need professional [help].  I disagree with you.

Here, again, defendant fails to show how the trial court's statement at sentencing denied him a fair trial or influenced the jury.  Defendant also summarily claims that the Detroit Police Department conducted unfair line up procedures during its investigation, but cites no support, legal or factual, for his contention.  *People v. Petri,* 279 Mich. App 407, 413; 760 NW2d 882 (2008) (a party must support

45

his position with references to the record); *Payne,* 285 Mich. App at 195 (appellant may not merely announce his position and leave it to this Court to discover and rationalize his claims).  Accordingly, defendant's claim lacks merit.

*Robinson*, 2015 WL 6438239, at *13–14.

Whether this Court rejects the claim as unexhausted, as procedurally defaulted, or because the Michigan Court of Appeals' rejection of it was neither contrary to nor an unreasonable application of clearly established federal law, Robinson is not entitled to relief.

## CONCLUSION

Robinson cannot be granted relief on Claims VII and VIII because he has not exhausted them in the state courts as detailed above.

Robinson procedurally defaulted Claim VIII. He has not shown cause and prejudice to excuse the default. In addition, he has not shown failure to review the claim would result in a fundamental miscarriage of justice. Accordingly, as detailed above, habeas review of this claim is barred.

The state courts' rejection of Robinson's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. Robinson was "entitled to a fair trial but not a perfect one." *Lutwak v. United States*, 344 U.S. 604, 619 (1953); *see also United States v. Hajal*, 555 F.2d 558, 569 (6th Cir. 1977) ("[W]e have yet to review a perfect jury trial."). The state-court decisions in this case were not "so lacking in justification" that they resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. The formidable threshold for granting habeas relief has not been met because fairminded jurists

could disagree on the correctness of the state court's decision.

*Yarborough*, 541 U.S. at 664.  Consequently, habeas relief should be denied.

Additionally, the State opposes any requests for bond, oral argument, or any other relief, including a certificate of appealability. And, Robinson is not entitled to habeas relief because he has not established that the alleged errors had a substantial and injurious effect on the verdict in this matter.  *See Brecht v. Abrahamson*, 507 U.S. 619 (1993).

Further, Robinson has not demonstrated entitlement to discovery. Unlike typical civil litigants, "[h]abeas petitioners have no right to automatic discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).  Rule 6(a) permits district courts to authorize discovery in habeas corpus proceedings under the Federal Rules of Civil Procedure only "for good cause."  R. Governing 2254 Cases in the U.S. Dist. Cts. 6(a).  "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.' "

*Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)).  "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.' " *Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)); Habeas Rule 6(a).  "Conclusory allegations are not enough to warrant discovery under Rule 6; the petitioner must set forth specific allegations of fact." *Williams*, 380 F.3d at 974 (internal quotation marks and citation omitted).  Robinson has not met this burden.

If this Court denies the petition, Robinson is also not entitled to a certificate of appealability (COA) so as to proceed further.  In order to obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the petitioner is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner

must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citations omitted).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Slack*, 529 U.S. at 483-84. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.

When a plain procedural bar is present, and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or

that the petition should be allowed to proceed further.  In such a

circumstance, no appeal would be warranted.  *Id.*

## RELIEF

For the reasons stated above, this Court should deny the petition. The Court should also deny Robinson any requested discovery, evidentiary hearings, bond, oral argument, and any other relief he seeks in this action, including a certificate of appealability.

Respectfully submitted,

Bill Schuette
Attorney General

s/Linus Banghart-Linn

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
Banghart-linnl@michigan.gov
P73230

Dated: January 26, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2017, I electronically filed the

foregoing papers with the Clerk of the Court using the ECF system

which will send notification of such filing to the following:

> HONORABLE DENISE PAGE HOOD
> MAGISTRATE JUDGE PATRICIA T. MORRIS

and I hereby certify that Kathy Land has mailed by United States

Postal Service the papers to the following non-ECF participant:

> Lamarr Robinson, #221610
> Saginaw Correctional Facility
> 9625 Pierce Rd.
> Freeland, MI 48623

Respectfully submitted,

Bill Schuette
Attorney General

s/Linus Banghart-Linn

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
Banghart-linnl@michigan.gov
P73230