```
                    STATE OF MICHIGAN
                    COUNTY OF WAYNE
         THIRD JUDICIAL CIRCUIT COURT - CRIMINAL DIVISION


THE PEOPLE OF THE STATE OF MICHIGAN,

          vs.                              Case No. 10-006297

LAMARR VALDEZ ROBINSON,

                Defendant.
_____/


                          SENTENCE

           BEFORE THE HONORABLE VERA MASSEY JONES
                    CIRCUIT COURT JUDGE

       Detroit, Michigan - Tuesday, February 15, 2011



APPEARANCES:

For the People:      JAIMIE M. POWELL (P67466)
                     Frank Murphy Hall of Justice
                     Wayne County Prosecutor's Office
                     1441 St. Antoine, 12th Floor
                     Detroit, Michigan  48226-2302
                     (313) 224-5777

For the Defendant:   EARL WASHINGTON (P31383)




Court Reporter:      JANICE I. PAYNE, CSMR 3521
                     (313) 224-2487
```

TABLE OF CONTENTS

<u>WITNESSES:</u>                                                               <u>PAGE</u>

    NONE


<u>EXHIBITS:</u>                                                    <u>MARKED</u>   <u>ADMITTED</u>

    NONE

```
 1                    Detroit, Michigan
 2                    Tuesday, February 15, 2011
 3                    At about 10:41 a.m.
 4                    (All parties present.)
 5              THE CLERK:  Now calling case 10-6297; People
 6     versus Lamarr Valdez Robinson.  Here for a sentencing.
 7                    Appearances?
 8              MS. POWELL:  Good morning, your Honor.  May
 9     it please the Court, Jaimie Powell for the People.
10              MR. WASHINGTON:  Good morning, your Honor.
11     For the record, Earl Washington on behalf of Mr. Lamarr
12     Robinson.
13              THE COURT:  Counsel, have you had the
14     opportunity to read the presentence report and to
15     verify its factualness with your client?
16              MR. WASHINGTON:  Your Honor, I did review the
17     presentence report with Mr. Robinson.  The only thing I
18     would add is they list Mr. Robinson as being unemployed
19     at the time the incident occurred.  And Mr. Robinson
20     advised me that he was self-employed.  I think it was -
21     -
22                    Was it Robinson's Landscaping and Lawn
23     Service?
24              DEFENDANT ROBINSON:  Yes.
25              MR. WASHINGTON:  Okay.  And I think there was
```

```
 1          a kennel.
 2                  DEFENDANT ROBINSON:  Cousin's Kennel.
 3                  MR. WASHINGTON:  Okay.  He was employed and
 4          working with his cousin's kennel.
 5                  THE COURT:  Well, what's his cousin's kennel
 6          name?
 7                  DEFENDANT ROBINSON:  That's the name of the
 8          kennel, Cousin's Kennel.
 9                  MR. WASHINGTON:  Oh, I'm sorry, Cousin's
10          Kennel.  Those are the only things I would add to the
11          presentence report.
12                  THE COURT:  Okay.
13                  MR. WASHINGTON:  In terms of the guidelines?
14                  THE COURT:  Yes.
15                  MR. WASHINGTON:  Okay.  After reviewing the
16          PRVs, they appear to be correct.
17                  THE COURT:  Do the People agree with that?
18                  MS. POWELL:  I do, your Honor.
19                  THE COURT:  Okay.
20                  MR. WASHINGTON:  With the offense variables,
21          in addressing offense variable number five, I guess
22          they -- I think -- yeah, it was psychological injury
23          sustained by a member of the victim's family, and I --
24                  THE COURT:  You don't think that his mother
25          doesn't suffer psychological injury every day she goes
```

1 and looks at her son laying there like a vegetable?

2     MR. WASHINGTON: Judge, I can agree with you
3 there. But what it does say is "required professional
4 treatment," and I'm not aware of any professional
5 treatment.

6     THE COURT: Excuse me. A whole lot of people
7 don't get professional treatment. But you're going to
8 tell me that this lady walks in there every single day,
9 she looks at the son that she brought into this world
10 that she believed was going to at least go to college
11 and be something in this society, and he's a vegetable;
12 and you don't think she doesn't need professional. I
13 disagree with you.

14     MR. WASHINGTON: Okay. I just stated it for
15 the record.

16     THE COURT: Anything else?

17     MR. WASHINGTON: Offense variable number six,
18 it says "intent to kill or injure." I see they
19 assessed fifty points. It says, "Offender had
20 premeditated intent to kill or killing was committed
21 while committing or attempting to commit arson,
22 criminal sexual conduct in the first degree, child
23 abuse, a major controlled substance" --

24     THE COURT: Now, why are you going over that?
25 You don't think this was a premeditated intent to kill?

5

1    MR. WASHINGTON:  Well, I think what they
2    envision the twenty-five points was -- well, okay, that
3    says "premeditated."  Okay, I apologize.
4            THE COURT:  Okay.
5            MR. WASHINGTON:  Number seven, it says victim
6    was treated with sadism, torture, or excessive
7    brutality.
8            I know we're going to differ on that
9    one, but --
10           THE COURT:  No, I don't think you and I are.
11   The prosecutor may have something to say.  But that
12   one, he shot him any number of times, and then walked -
13   - well, went right back over and just executed the man,
14   except the man is still alive.  How do you say that's
15   sadism?
16           MS. POWELL:  Your Honor, it's excessive
17   brutality.  It was an automatic weapon placed at the
18   base of the victim's skull.  Eight rounds were fired.
19   If you remember, as the victim fell after being shot in
20   the head, he continued firing bullets into Mr. Chubb's
21   body.
22           MR. WASHINGTON:  You know, during the
23   testimony where the firearms expert testified at the
24   nature of an automatic or a semi-automatic weapon, that
25   it discharged quickly.  And I think that the tape

6

1  showed that the shots were fired in excess of a rapid,
2  rapid number of times.
3          THE COURT:  The big problem was the one at
4  the base of the head.  That's the big problem.  That's
5  the one that shows the intent to kill.  And with the
6  number of shots, I guess I have to agree with the
7  prosecutor.  I agree with the prosecutor.
8          MR. WASHINGTON:  All right.  Well, I placed
9  an objection.
10         THE COURT:  So the fifty points will stay.
11             Anything else?
12         MR. WASHINGTON:  That's all in terms of the
13 guidelines, your Honor.
14         THE COURT:  Okay.
15         MS. POWELL:  May I, as to the guidelines,
16 your Honor?
17         THE COURT:  Go ahead.
18         MS. POWELL:  It is purely academic, but I
19 would ask for fifteen points as to predatory conduct
20 for OV-10.  And that does not change the guidelines,
21 but I do think it would be appropriate to score that
22 variable.
23         THE COURT:  Well, in this instance I'm not
24 going to grant it, although it is quite obvious that
25 based on the jury's decision they determined that he

|    |                                                              |
|----|--------------------------------------------------------------|
| 1  | had been almost stalking the individual.  But I'm not        |
| 2  | going to give that point, Counsel.                           |
| 3  | MS. POWELL:  Thank you.                                      |
| 4  | THE COURT:  Okay.  Counsel, anything you'd                   |
| 5  | like to say before I impose sentence?                        |
| 6  | MR. WASHINGTON:  Well, your Honor, the                       |
| 7  | difficulty I have in handling this sentence is the same      |
| 8  | difficulty I've had for the thirty-plus years that I've      |
| 9  | been practicing law.  That in a case of this type, Mr.       |
| 10 | Robinson maintains his innocence, so it's hard to argue      |
| 11 | for mercy on the one hand; and then on the other hand,       |
| 12 | be true to that.                                             |
| 13 | I'll just go on record as asking for the                     |
| 14 | Court to sentence at the low end of the guidelines, and      |
| 15 | I'll leave it up to Mr. Robinson to speak on his             |
| 16 | behalf.                                                      |
| 17 | THE COURT:  Anything from the People?                        |
| 18 | MS. POWELL:  Yes, your Honor.  I would like                  |
| 19 | to read a statement from Veronica Chubb.  There are          |
| 20 | also four members from the family that would like to         |
| 21 | address the Court.                                           |
| 22 | THE COURT:  All right, go ahead, Counsel.                    |
| 23 | MS. POWELL:  Your Honor, Ms. Chubb provided                  |
| 24 | to me a statement that says:  "Your Honor and all            |
| 25 | concerned, this is and has been the hardest thing for        |

```
1    us to face.  Our lives have changed so severely.  Our
2    daily purpose is to meet Jamel's every need because
3    he's not able to do any of the things we do without
4    thinking and without effort.
5              Jamel is totally dependent on someone
6    else to do everything for him.  He's not able to smile
7    or say 'Mom, it's me.'
8              The justice scale is swaying in our
9    direction, but justice would be Mr. Lamarr Robinson
10   being in Jamel's shoes, and Jamel now being an able
11   body."
12             Your Honor, there are several members
13   from the family here, and if I may call them up?
14        THE COURT:  Yes.  One at a time, please.
15        MS. POWELL:  Thank you, your Honor.
16             The first is the brother of Jamel Chubb,
17   Montez Chubb.
18        THE COURT:  Young man, your name for the
19   record?
20        MR. CHUBB:  Montez Chubb.
21        THE COURT:  Go right ahead, sir.
22        MR. CHUBB:  I'm speaking on behalf of my
23   father today.  This is his letter.
24             "To Whom It May Concern:  Jamel attended
25   Eastern Michigan University for two years.  He decided
```

1    that he wanted to join the Air Force Reserves, and he
2    accomplished all requirements to join.
3           Jamel was scheduled to go to Wright
4    Patterson Air Force Base on June 14, 2010. He was to
5    leave Wright Patterson and go to base in Mississippi
6    for basic training for a one-year engineering school.
7    He had been promoted to Airman First Class before
8    entering the reserves. Jamel would have served in a
9    reserve capacity wherever assigned.
10          Jamel had gotten in touch with an
11   organization that dealt with wind technology. He was
12   to be hired once he finished his basic training in the
13   engineering school. He had his short-term life plan
14   until Lamarr Robinson brought his plan to naught.
15          Sincerely yours, James Chubb."
16       THE COURT: Thank you.
17       MS. POWELL: Your Honor, the sister of Jamel
18   Chubb is here. Her name is Deiniese Chubb, D-e-i-n-i-
19   e-s-e.
20       THE COURT: Please state your name again for
21   the record.
22       MS. CHUBB: Deiniese LaShaun Chubb.
23       THE COURT: Go right ahead.
24       MS. CHUBB: I just want to say that Lamarr
25   Robinson shot my brother in broad daylight with the

| | |
|---|---|
| 1 | intent to kill him. And by the grace of God, he's |
| 2 | still alive. And I just believe that Lamarr should |
| 3 | spend -- should not be able to see daylight again. And |
| 4 | I believe that the only light that he should be able to |
| 5 | see is the flashlight from the deputies when they |
| 6 | perform their rounds. Thank you. |
| 7 |       MS. POWELL: Ken Woodard, who is the uncle of |
| 8 | Jamel. |
| 9 |       THE COURT: Sir, please state your name for |
| 10 | the record. |
| 11 |       MR. WOODARD: My name is Ken Woodard. |
| 12 |       THE COURT: Go ahead. |
| 13 |       MR. WOODARD: I'm the uncle of Jamel. |
| 14 |       I just wanted to say from the family's |
| 15 | standpoint, the family that we have was not weakened by |
| 16 | this. It just gave us -- we was able to have an |
| 17 | opportunity to strengthen ourselves together. And if |
| 18 | Lamarr Robinson had that type of family structure, this |
| 19 | crime would not have been placed, and we would not be |
| 20 | having this situation right now. |
| 21 |       And we've come together and we've been |
| 22 | together, and I just want to let the Court know that |
| 23 | it's a blessing for us to have the strength that we |
| 24 | have within our family. And if he could have been |
| 25 | raised with that type of strength in his family, he |

1  would not have been able to do the things he do.
2  So as you just sentence on him, the
3  pressure that God's going to bless on him from his mind
4  standpoint, mentally, will give him the light to see
5  what he has caused, and realize and understand that he
6  should not see the light of day again.
7  THE COURT: Thank you.
8  MR. WOODARD: Thank you.
9  MS. POWELL: Brian Cook, who is the fiance of
10 the victim's mother.
11 THE COURT: State your name again for the
12 record.
13 MR. COOK: Brian Cook.
14 THE COURT: Go ahead, Mr. Cook.
15 MR. COOK: Yes. This shouldn't have
16 happened, and I guess the courts are going to make it
17 right with Lamarr Robinson doing what his due is coming
18 to him. That's all I have to say right now.
19 THE COURT: Thank you.
20 MS. POWELL: Your Honor, the People are
21 asking for the maximum in this case.
22 As to restitution, I do have bills from
23 the family that are not paid by insurance. They total
24 $3,897.00.
25 THE COURT: Oh, now, I don't really have a

1    problem whether they're paid for by insurance or not by
2    insurance.  The State of Michigan just needs to know
3    who do we extend the restitution to.  So, if some of it
4    is to an insurance company, it should be sent to them.
5    And if some of it is to the victim's family, it should
6    be sent to them.
7                So I just ask that the People give us
8    something in writing that will let us know so we could
9    send it up to the Department of Corrections so they
10   know where it has to go.
11               MS. POWELL:  And I have that for the Court.
12               THE COURT:  What's the total amount of
13   restitution?
14               MS. POWELL:  The total to his family is
15   $3,897.00.  That's for nursing care.
16               Your Honor, the amounts from the
17   insurance companies, I do not have at this time; and I
18   would ask that that amount remain open for me to file a
19   motion at a later date when those are available to me.
20               THE COURT:  All right.  Mr. Robinson?
21               DEFENDANT ROBINSON:  Yes?
22               THE COURT:  Is there anything you'd like to
23   say before I impose sentence?
24               DEFENDANT ROBINSON:  Yes.  This case was a
25   situation of Mr. Washington being ineffective

1    assistance.  He didn't contact my witnesses nor my
2    alibi, which was stated in the preliminary examination.
3               He didn't object to the leading of the
4    witness, the coercion, and evidence that clearly showed
5    that I wasn't at a certain place at a certain time that
6    I showed him; and he didn't bring it forth to the
7    Court.  That's pretty much what I have to say about Mr.
8    Washington.
9               THE COURT:  I didn't ask you to talk to me
10   about Mr. Washington, but you've put it on record and
11   it's there for the Court of Appeals or anybody else who
12   wishes to hear it.
13              DEFENDANT ROBINSON:  Yes, it's on record.
14              THE COURT:  What I said to you, was there
15   anything you'd like to say before I impose sentence,
16   other than something about Mr. Washington, because he's
17   going to get to go out that door.  It's a bright, sunny
18   day out there.  Is there anything you'd like to say
19   other than that?
20              DEFENDANT ROBINSON:  Yes.  I'm innocent, and
21   I ask for the mercy of the Court.
22              THE COURT:  I am in a position to sentence a
23   person that the jury convicted of his crime.  And it
24   was quite obvious that whoever committed the crime
25   intended to kill this young man.  And the jury was

1  convinced that it was this defendant. He showed him
2  absolutely no mercy.
3             The other thing that is so nonsensical
4  about this is there was no reason. This young man had
5  done nothing to the defendant. This was over a woman,
6  and there are a lot of us out there. There are a lot
7  of beautiful women in this world. And just as soon as
8  you see one, you'll see another one.
9             So there was no reason for a young man
10 who was on his way to being a positive influence on
11 society should have lost his life. And whoever
12 committed this crime had no regard for not just the
13 victim, but even for himself. No respect. No caring.
14            How could you go up and shoot somebody
15 and then put the gun right up to their head to try to
16 blow their brains out? Over what? A woman.
17            Not a woman who had been beaten up and
18 raped. Just a woman who happened to be beautiful. And
19 I say there are a lot of beautiful women out there.
20            So, it's this Court's opinion that under
21 these circumstances, the maximum sentence that I can
22 impose should be imposed. And according to the
23 sentencing guideline range, that's 570 months, which
24 equals 47.5 years, which is what I'm going to impose,
25 to 120 years with the Michigan Department of

```
 1      Corrections.
 2                  Now, he has to do two years on the
 3      felony firearm, and he'll have to do the time on that
 4      before he can do any time on the assault with intent to
 5      commit murder.
 6                  On the felon in possession of a firearm,
 7      I sentence him to serve one to -- and they don't  give
 8      -- well, it's a fourth felony also.  So, it makes it up
 9      to life in prison.  So, it will be the same amount as
10      the assault with intent to commit murder, and they can
11      be served concurrently.
12                  He gets 264 days credit on the felony
13      firearm.
14                  Now, you may appeal your conviction and
15      sentence to a higher court.  If you're without funds to
16      hire a lawyer, you may request this Court to appoint an
17      attorney, and request that this Court furnish that
18      attorney with the portions of transcripts and records
19      the attorney needs.
20                  The request for the appointment of an
21      attorney must be made in writing and sent directly to
22      the Court at the address noted above within 42 days.
23      The financial section on the back of this form must be
24      completed.
25                  Good luck to you, sir.
```

1                    MS. POWELL:  Thank you, Judge.
2                    MR. WASHINGTON:  What was the maximum?  I'm
3        sorry, Judge.
4                    THE COURT:  A hundred and twenty.
5                    MS. POWELL:  Thank you, your Honor.
6                    (At about 10:58 a.m., proceedings concluded.)

CERTIFICATE OF REPORTER

STATE OF MICHIGAN)
                 ) ss
COUNTY OF WAYNE  )

    I certify that this transcript, in the matter of The People of the State of Michigan vs. LAMARR VALDEZ ROBINSON, case number 10-006297, consisting of 18 pages, is a complete, true, and correct transcript of the proceedings held in this matter on Tuesday, February 15, 2011, before the Honorable Vera Massey Jones.

July 8, 2011                                  _____
                                         JANICE I. PAYNE, CSMR 3521
                                         Official Court Reporter
                                         Third Judicial Circuit Court
                                          - Criminal Division
                                         1441 St. Antoine, 9th Floor
                                         Detroit, MI  48226
                                         (313) 224-2487