# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LAMARR VALDEZ ROBINSON,

        Defendant-Appellant.

UNPUBLISHED
October 22, 2015

No.   321841
Wayne Circuit Court
LC No.   10-006297-FC

---

Before:  FORT HOOD, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

A jury convicted defendant of assault with intent to commit murder, MCL 750.83, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to concurrent terms of 47-1/2 to 120 years' imprisonment for the assault and felon-in-possession convictions, to be served consecutive to two years' imprisonment for the felony-firearm conviction.  Defendant appeals as of right.  We affirm.

A jury convicted the 39-year-old defendant of shooting 20-year-old Jamel Chubb at a Detroit gas station on May 13, 2010.  The prosecution presented evidence that defendant and Chubb were both dating 19-year-old Jessica Taylor, whom defendant had been dating for a couple of years.  Defendant learned about the relationship between Taylor and Chubb, and thereafter followed them on multiple occasions and sent several text messages to both Taylor and Chubb.  On the day of the shooting, the men had a brief encounter at Taylor's mother's Livonia residence.  Upon leaving, defendant told Taylor, "Don't let me catch y'all in the hood."  Later that day, Chubb, Taylor, Jasmine Miller, and Kayana Davies were all at Miller's Detroit residence, and ultimately went to a local gas station.  The gas station surveillance video captured an individual wearing a hoodie and riding a bike approach Chubb and shoot him as he was pumping gas.  Taylor, who was in the front passenger seat of the vehicle, identified defendant as the shooter.  Cellular phone tracking evidence also placed defendant in the area of the gas station at the time of the shooting.  The defense theory at trial was misidentification, and the defense argued, inter alia, that Taylor's identification was not credible and the cell phone tracking evidence was not reliable.

## I.  EFFECTIVE ASSISTANCE OF COUNSEL

-1-

Defendant raises three separate ineffective assistance of counsel claims in his principal brief on appeal. Because he failed to raise these claims below in a motion for a new trial or request for an evidentiary hearing, our review is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013), citing *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich App at 207. "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

## A. EXPERT WITNESS

Defendant argues that defense counsel was ineffective for failing to object to the admission of Larry Smith's expert testimony or request a *Daubert*[1] hearing regarding that testimony. We disagree. At trial, the court qualified Smith as an expert in "the workings of Metro PCS" and how its records are stored, recorded, and registered. Smith thereafter provided cell phone tracking testimony that placed defendant in the area of the gas station at the time of the shooting.

"[T]he determination regarding the qualification of an expert and the admissibility of expert testimony is within the trial court's discretion." *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999). MRE 702 governs the admissibility of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 702 requires "a court evaluating proposed expert testimony [to] ensure that the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012). This inquiry, however, is a flexible one and must be tied to the facts of the particular case; thus, the factors for determining reliability may be different depending upon the type of expert testimony offered, as well as the facts of the case. *Id.*, citing

---

[1] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

*Daubert v Merrell Dow Pharm, Inc*, 509 US 579, 591; 113 S Ct 2786; 125 L Ed 2d 469 (1993); *Kumho Tire Co v Carmichael*, 526 US 137, 150; 119 S Ct 1167; 143 L Ed 2d 238 (1999).[2]

      Defendant has not overcome the strong presumption that trial counsel's performance was within the range of reasonable professional conduct.  *Payne*, 285 Mich App at 190.  We are disinclined to declare that testimony of this nature should be considered "junk science," as requested by defendant.  Defendant cannot direct this Court's attention to any Michigan case where cell phone tracking evidence presented by an expert witness has been rejected.  Further, Smith's testimony, which was based on the cell phone records as well as Smith's specialized knowledge regarding Metro PCS cell phone towers, helped the jury understand information at issue in the case that an average juror would not have previously known.  See *Kowalski*, 492 Mich at 121 (proffered testimony must involve a matter that is beyond the common understanding of the jury).  For example, average jurors do not have the benefit of being trained in the functions of cell phone towers, derivative tracking, and techniques of locating or plotting origins of cell phone calls using cell phone records.  Smith testified regarding these methods, and explained how this data was reflected in the cell phone records.  Thus, Smith provided reliable testimony that assisted the jurors in understanding how defendant's cell phone records placed him (or his phone) in the area of the shooting.

      Further, even assuming that defense counsel should have objected, defendant cannot show the probability that, but for counsel's errors, the result of the proceedings would have been different.  *Nix*, 301 Mich App at 207.  Defendant has not sufficiently challenged Smith's qualifications to render an opinion using cell phone records and towers to track locations.  As defendant observes, Smith testified that he was a Metro PCS "custodian of records," and had been employed by the company for approximately three years.  Smith explained that his position included the "storage and accuracy of [Metro PCS] phone records, such as subscriber information, call detail records, and text messages."  Before defense counsel stipulated to Smith's qualifications, however, Smith testified that he had been trained in "how [Metro PCS] cellphone towers work," and "how handsets that belong or are purchased through Metro PCS register with those towers."  He had also trained others on how the cellphone towers work.  A witness is qualified to testify as an expert based on knowledge, skill, experience, training, or education.  MRE 702.  Because Smith's testimony demonstrated that he was qualified to provide the challenged cell phone tracking testimony based on his experience and training, any objection by defense counsel to Smith testifying in that capacity or to request a *Daubert* hearing would have been futile.  Counsel is not ineffective for failing to raise a meritless objection.  *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

### B.  ADMISSION OF EVIDENCE

---

[2] Indicia of reliability relevant to scientific fields include testability, publication, and peer review, known or potential rate of error, and general acceptance in the field.  *Daubert*, 509 US at 593-594.  The United States Supreme Court has explained, however, that reliability concerns may differ depending on the type of expertise offered, and whether that expertise is based on personal knowledge, experience, or skill.  *Kumho Tire Co*, 526 US at 150.

## 1. TAYLOR'S TESTIMONY AND EVIDENCE OF TEXT MESSAGES

During trial, Taylor testified about her relationships with both defendant and Chubb, and regarding numerous text message exchanges that occurred between the parties in the days leading up to the shooting. Defendant highlights that Taylor testified regarding a text exchange on May 6, 2010, when she and defendant discussed that she might have a sexually transmitted disease (STD), and that defendant referenced her hanging around Chubb. She and defendant later went to a clinic. Defendant blamed her for the STD, but based on the report, she knew she had gotten it from him. Taylor also testified that defendant recorded them having sex without her knowledge. Taylor stated that defendant told her to tell Chubb she was pregnant and she did so, even though she was not pregnant. Defendant further highlights that Smith read through several text messages exchanged between Taylor's, defendant's, and Chubb's phones, and text messages exchanged between defendant's and other women's cell phones.

Generally, all relevant evidence is admissible unless otherwise provided for in the court rules or the state or federal constitutions. MRE 402; *People v Yost*, 278 Mich App 341, 355; 749 NW2d 753 (2008). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. However, even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" MRE 403. Here, we conclude that the challenged evidence was relevant to factual issues in this case. While defendant highlights certain evidence, he ignores other evidence that ties in with the emphasized evidence, which shows the complete picture that the prosecution was trying to give the jury. The prosecution theorized that defendant's attempted manipulation and control of Taylor and Chubb culminated in a state of mind that led him to shoot Chubb, which was directly relevant to the prosecution's theory of the case and correspondingly weakened defendant's theory of the case. The evidence, presented in Taylor's testimony and text messages, provided context for the jury to understand the parties' relationship, and how defendant attempted to stop Taylor from seeing Chubb. The evidence also demonstrated that defendant was jealous of Taylor's relationship with Chubb and the level of animosity defendant had toward Chubb, which was probative of motive and intent. Regarding the existence of a sex tape, on the day of the shooting, defendant texted Chubb that he would release his and Taylor's sex tape as his frustration grew about Taylor and Chubb's relationship. Thus, Taylor's testimony about the existence of a sex tape was relevant. Defendant's defense of misidentification enhanced the value of the evidence, as the evidence tended to shed light on the likelihood that defendant committed the crimes.

Further, we are not persuaded that the evidence was unduly prejudicial. All evidence offered by the parties is prejudicial to some extent, but, pursuant MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *Id*. at 75-76. We are not persuaded that the jury would not have been able to rationally weigh the

evidence.  Accordingly, defendant has not shown that defense counsel's failure to object to the evidence was objectively unreasonable.  *Nix*, 301 Mich App at 207.[3]

## 2.  SABRINA JOHNSON'S TESTIMONY ABOUT A SEX TAPE

Defendant argues that defense counsel should have objected to the prosecutor eliciting from his stepmother her knowledge that defendant had a sex tape featuring celebrity Kim Kardashian.  Defendant argues that "[t]he introduction of evidence regarding celebrities and their sexual proclivities presented a substantial risk of distracting and confusing the jury, and had no probative value."  Defendant's argument is without merit.  Defendant's stepmother's testimony was directly related to text messages that defendant sent before and after the shooting.  As defendant was exchanging hostile text messages with Chubb, Chubb stopped responding.  The last text that defendant sent, which he sent twice, stated, "Oh, yeah, I'm puttnn [sic] our sex tape in the hood and the net."  Approximately a half hour after the shooting, defendant had a text exchange with his stepmother.  During the exchanges, they discussed a sex tape and Kim Kardashian.  The prosecutor theorized that, based on the evidence, defendant and his stepmother were discussing the sex tape that defendant possessed of him and Taylor.  In closing argument, the prosecutor asked the jury to notice the similarity in appearance between Kardashian and Taylor.  Thus, contrary to what defendant suggests, Johnson's testimony was not a random interjection about defendant owning a celebrity sex tape, but was relevant to a text message exchange that occurred in close proximity to the shooting and was probative to defendant's state of mind.  We also disagree with defendant's argument that the evidence should have been excluded under MRE 403 because it was unduly prejudicial.  Accordingly, defendant has not shown that defense counsel's failure to object to the evidence was objectively unreasonable.  *Nix*, 301 Mich App at 207.

## 3.  MILLER'S TESTIMONY

Miller, a friend of Taylor and Chubbs, testified that Taylor had lived with her and with defendant at times.  When testifying about whether she had texted defendant directly, she testified:

> *A.*  One night [defendant and Taylor] had got into a fight, and I'm not quite sure exactly what they were fighting about.  But they got into a fight, and I had told him like instead of you putting your hands on her and, you know degrading her, then you can send her to my house.

---

[3] Defendant makes a general statement that the challenged evidence was also inadmissible pursuant to MRE 404(a), but does not specifically analyze the evidence under the court rule.  MRE 404(a) provides that "[e]vidence of a person's character or a trait of character is not admissible for the purposes of proving action in conformity therewith[.]"  Our review of the record reveals that that the evidence was not offered to show that defendant acted in conformity, contrary to MRE 404(a).

    *Q.* So, you would communicate with the defendant by text?

    *A.* Yes, I have.

We agree that Miller's testimony about defendant fighting Taylor at some unspecified time could be considered objectionable.  MRE 404(b).  But applying the appropriate level of deference to defense counsel's decision made during the course of trial, his failure to object to the testimony does not establish ineffective assistance of counsel.  Defense counsel reasonably could have opted at that moment to avoid placing emphasis on, and highlighting to the jury, that one brief statement.  "[T]his Court will not second-guess defense counsel's judgment on matters of trial strategy."  *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011).  Consequently, defendant cannot establish a claim of ineffective assistance of counsel.

## C.  PROSECUTORIAL MISCONDUCT

Defendant next contends defense counsel was ineffective for failing to object to the prosecutor improperly "referenc[ing]" facts not in evidence" and appealing to the juror's sympathy in opening statement and closing argument.

Defendant argues that, in opening and closing argument, the prosecutor referenced facts not in evidence.  A prosecutor may not argue facts that are not supported by the evidence, but is free to argue the evidence and all reasonable inferences arising from it as it relates to the prosecutor's theory of the case.  *People v Unger*, 278 Mich App 210, 236, 241; 749 NW2d 272 (2008).  Further, the prosecutor need not state their inferences in the blandest possible language. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007).  When reviewing a prosecutor's remarks, "this Court must examine the entire record and evaluate a prosecutor's remarks in context."  *Id*. at 64.  Defendant, generally, asserts that the prosecution argued that defendant was a controlling, possessive, and manipulative boyfriend, which he claims was not supported by the evidence.  We disagree.  Substantial evidence was submitted on the record which could lead to a reasonable inference that defendant was jealous of Taylor's relationship with Chubbs, which the prosecutor argued was his motive for the crime.

Defendant raises several specific instances of prosecutor misconduct.  During closing argument, the prosecutor stated that defendant took the same path as the shooter, which defendant asserts was unsupported by the record.  However, contrary to defendant's assertion, the prosecutor's remarks regarding defendant's location were supported by Smith's testimony and the cell phone records, and reasonable inferences arising from the evidence.  The prosecutor's argument that Taylor was "able to see" the shooter's face was based on Taylor's testimony that she saw defendant's face.  The prosecutor's argument that defendant had "facial hair right around his chin like [witness Tremaine Maddox] said" the shooter had was a reasonable inference from the evidence that defendant had facial hair on the date of the shooting and Maddox's description of the shooter as having a full facial beard.  Defendant contends that there was no evidence from which the prosecutor could infer that defendant had left a hickey on Taylor's neck on the day of the shooting, but Taylor testified that defendant put a hickey on her

neck on May 13, 2010, and Miller testified that Taylor had a "big purple mark on her neck" that day.  Also, in a text message to Chubb, defendant himself wrote, "How u think she got the hicky fool & when u was knockin I was bustn."  The prosecutor's references to other women, relationships, or phone numbers, e.g., "Terri" and "Nicole," were direct references from testimony and text messages that were admitted into evidence.  Taylor testified that she knew Nicole Waller was the mother of defendant's children and had spoken to her on the phone before.  Accordingly, we conclude that the prosecutor's remarks were not clearly improper.

To the extent that the prosecutor's remarks could be considered impermissible references, defendant cannot demonstrate that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different.  *Nix*, 301 Mich App at 207.  Despite defense counsel's failure to object, the trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jury was to decide the case based only on the properly admitted evidence, and that the jury was to follow the court's instructions.  It is well established that jurors are presumed to follow their instructions.  *Unger*, 278 Mich App at 235.  Consequently, defendant has failed to establish an ineffective assitance of counsel claim.

Defendant also argues that defense counsel was ineffective for failing to object to the prosecutor's comments that improperly appealed to the jury's sympathy.  Specifically, defendant points to comments that were made during rebuttal argument that "went to great lengths to cast aspersions upon [defendant's] general character that the judge chose to interrupt to ask the prosecutor to rephrase her rebuttal statement."  Before the trial court intervened, the prosecutor had stated:

> Do you remember Jasmine Mille saying, you know, you hear the shots, and they kind of register in your head, and then you get down.  Okay.  This happened very quickly.  There is nothing inconsistent about Kayana's testimony and Jessica's testimony.  And I want you to think real hard about why this girl was so scared to get up here and even look in that man's direction.

> You can end the terror.  You can end the defendant's reign of terror.  It's up to you.  This is a one-shot deal.  If you do not give justice to Jamel, if you do not bring back a verdict of guilty today—

> *The court*:  Excuse me, Counsel.

> *The prosecutor*:  Yes, Judge.

> *The court*:  You're going to rephrase your argument.

> *The prosecutor*:  Thank you.

Prosecutors may not resort to arguments that ask jurors to sympathize with the victim. *Dobek*, 274 Mich App at 79.  However, here, even if the prosecutor's argument could be considered objectionable, the trial court intervened and directed the prosecutor to rephrase her argument.  Further, the trial court's instructions that the lawyers' statements and arguments are not evidence, and that the case should be decided on the basis of the evidence were sufficient to dispel any possible prejudice.  *Unger*, 278 Mich App at 235.  Therefore, defendant cannot

demonstrate that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different.  Consequently, defendant has failed to establish an ineffective assitance of counsel claim.

## II.  DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.  We disagree with defendant's additional claims.

### A.  SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecutor presented insufficient evidence that he was the person who shot Chubb.  We disagree.  Challenges to the sufficiency of the evidence are reviewed de novo to "determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt."  *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012) (citation omitted).  "This Court reviews the evidence in the light most favorable to the prosecution."  *Id*.

Defendant challenges only whether there was sufficient evidence to establish his identify as the shooter.  "[I]dentity is an element of every offense."  *Yost*, 278 Mich App at 356.  Therefore, it is axiomatic that the prosecution must prove the identity of the defendant as the perpetrator of the charged offense beyond a reasonable doubt.  See *Russell*, 297 Mich App at 721.  Positive identification by a witness may be sufficient to support a conviction of a crime. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).  "The credibility of identification testimony is for the trier of fact to resolve that we do not resolve anew."  *Id*.

Taylor unequivocally identified defendant as the shooter at trial.  Taylor was sitting in the front seat of Chubb's car, while Chubb was standing on the side of the vehicle, pumping gas.  Defendant approached on a bike and, as Chubb's body fell, Taylor saw defendant's face.  Taylor testified that she had no trouble perceiving what occurred.  Taylor had been in an intimate relationship with defendant for two years.  From this evidence, a jury could reasonably infer that Taylor was familiar with defendant and could identify him under the circumstances.  Although defendant emphasizes that Taylor did not initially identify him as the shooter, Taylor explained that she did not initially identify defendant because she feared retribution.  After deciding to come forward, Taylor consistently identified defendant as the shooter to the police, at the preliminary examination, and at trial.  The jury was free to believe or disbelieve Taylor's testimony, including her explanation for her belated identification of defendant as the shooter.  The credibility of identification testimony is a question of fact for the jury, and Taylor's testimony, if believed, was sufficient to establish defendant's identity as the shooter.  Further, apart from Taylor's positive and unequivocal identification of defendant, the prosecution presented evidence that a cell phone linked to defendant was in the area at the time of the shooting and that defendant had communicated via text about obtaining a .45-caliber gun—the same caliber that was used to shoot Chubb.  Accordingly, when viewed in a light most favorable to the prosecution, there was sufficient evidence for the jury to identify defendant as the perpetrator beyond a reasonable doubt.

## B.  INEFFECTIVE ASSISTANCE – FAILURE TO CALL WITNESSES

Defendant next argues that defense counsel should have called Vanessa Hudson and Nicole Waller (his former girlfriend) as alibi witnesses; Tracey Mayes, Jasmine Gradford, and Charles Mitchell as res gestae witnesses; himself; and an expert witness.  Defendant avers in an affidavit submitted with his standard 4 brief that he informed defense counsel about Hudson, Waller, and Mayes.  Thus, accepting defendant's claim, defense counsel was aware of the proposed witnesses.  "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy."  *Russell*, 297 Mich App at 716.  Trial counsel's failure to a call a witness is only considered ineffective assistance if it deprived the defendant of a substantial defense.  *Id.*  "A substantial defense is one that might have made a difference in the outcome of the trial."  *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).  Defendant attempts to establish the factual predicate for his claim with affidavits from Hudson, Mayes, and himself, which are attached to his standard 4 brief.  It is, however, "impermissible to expand the record on appeal."  *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999).  But even considering these affidavits, defendant's ineffective assistance claim fails.

With regard to the proposed alibi witnesses, defendant has not overcome the presumption that defense counsel purposely declined to call Hudson and Waller as a matter of sound trial strategy.  The failure to call an alibi witness does not constitute ineffective assistance of counsel if counsel reasonably believes that the purported alibi witness will not provide an effective alibi.  *People v McMillan*, 213 Mich App 134, 141; 539 NW2d 553 (1995).  Hudson avers that she went to Waller's house "around 3:30 or 4 p.m." to explain to Waller why defendant had her dance clothes and her van, and that she thereafter left with defendant to pick up parts for defendant to fix her van.  Hudson further avers that she was with defendant "from 4 to 5:30 p.m."  Defendant avers that he texted Hudson, "911 where are u," because Waller was threatening to burn Hudson's dance clothes.  The cell phone records show that defendant sent this "911" text at 5:28 p.m., contrary to Hudson's declaration that she and defendant were already together.  It would have been reasonable for counsel to anticipate that the prosecutor would question the credibility of Hudson, and counsel reasonably may have determined that the credibility issues would have seriously undermined any progress defense counsel had made in presenting the misidentification defense and discrediting the prosecution's witnesses.  The fact that a defense strategy ultimately fails does not establish ineffective assistance of counsel.  *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).  Further, there is no record evidence that defendant's former girlfriend, Waller, was both available and willing to testify favorably on defendant's behalf.  Defendant has not provided a witness affidavit from her, or identified any other evidence of record establishing that she actually could have provided favorable testimony at trial.  Defendant has not established that he was prejudiced by defense counsel's failure to call this witness at trial.

With regard to the proposed res gestae witnesses, Mayes averred in an affidavit that he observed Taylor "duck face forward" after shots were fired, which defendant sought as support for a conclusion that Taylor could not have seen the shooter.  Mayes's testimony, even if assumed true, would have been cumulative to the testimony of Davies that Taylor ducked down.  Other than providing information that was adequately covered through another witness, defendant does not state what new helpful information Mayes could have offered that would have affected the outcome of the trial.  With regard to Gradford and Mitchell, there is no record

evidence that either proposed witness was both available and willing to testify favorably on defendant's behalf. Absent such a showing, defendant has not established that he was prejudiced by defense counsel's failure to call the witnesses at trial.

Defendant, as a criminal defendant, had a fundamental constitutional right to testify at trial. US Const, Am XIV; Const 1963, art 1, §§ 17, 20. "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla–Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). "[I]f defendant . . . decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985) (citation and quotations omitted).

There is no basis to conclude that counsel's performance deprived defendant of his constitutional right to testify. The record shows that, after the prosecution rested, defense counsel stated on the record that he and defendant had discussed whether defendant was going to testify and that defendant had elected not to testify. Defendant acknowledged to the court that he did not want to testify. Defendant never expressed disagreement with counsel's statement that he did not wish to testify, did not claim that he was ignorant of his right to testify, or that defense counsel had coerced him into not testifying. The decision whether to call defendant as a witness was a matter of trial strategy and defendant has not identified or offered any evidence to overcome the strong presumption of sound strategy. *Payne*, 285 Mich App at 190.

Defendant has not made an offer of proof regarding the substance of any favorable testimony that an expert witness on cell phones could have offered. A defendant cannot establish his claim of ineffective assistance of counsel using speculation that an expert would have testified favorably. *Id.* Moreover, defendant has failed to overcome the presumption that defense counsel's decision not to call an expert witness was reasonable trial strategy. *Id.* Through means of cross-examination, defense counsel challenged the strength and reliability of the cell phone tracking evidence, and elicited arguable bases for the jurors to question its accuracy. For example, defense counsel elicited on cross-examination that the cell phone tower information did not allow Metro PCS to pinpoint the exact point from where a call was made. Defendant has failed to show that defense counsel's strategy was objectively unreasonable, or that he was prejudiced by the absence of an expert at trial.

Finally, we reject defendant's argument that the cumulative effect of several minor errors denied him a fair trial. Because multiple errors have not been found, there can be no cumulative effect that denied defendant a fair trial. *Unger*, 278 Mich App at 258.

## C. PROSECUTOR'S MISCONDUCT

As defendant acknowledges, he did not object to prosecutor misconduct at trial. We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). Reversal is not required "where a curative instruction could have alleviated any prejudicial effect." *People v Bennett*, 290 Mich App 465, 476; 802 NW2d 627 (2010).

## 1. PERJURY

Defendant argues that the prosecutor knowingly presented perjured testimony by Taylor. We disagree. A defendant's right to due process "is violated when there is any reasonable likelihood that a conviction was obtained by the knowing use of perjured testimony." *People v Gratsch*, 299 Mich App 604, 619; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013). Thus, a prosecutor has "an obligation to correct perjured testimony that relates to the facts of the case or a witness's credibility." *Id.*

In his argument, defendant highlights instances where Taylor's testimony about the identification of the shooter differed from her initial police statement, in which she did not identify defendant as the shooter, or that her claim that she could see the shooter was debilitated by other eyewitnesses who stated that all the witnesses ducked down. However, the inconsistencies listed by defendant do not establish that the prosecutor knowingly used perjured testimony to obtain defendant's conviction. *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). Although Taylor's trial testimony that defendant was the shooter differed from her initial statement to the police, there was no indication that the prosecutor sought to conceal this inconsistency from defendant. *Id.* In fact, during direct examination, Taylor admitted that she did not initially tell the police that defendant was the shooter because she was afraid. Additionally, testimony that conflicts with other witnesses' testimony does not lead to the conclusion that the prosecutor knowingly used perjured testimony. The prosecution is not obligated to disbelieve its own witness merely because the witness's testimony is contradicted by testimony from another witness. See *People v Lester*, 232 Mich App 262, 278-279; 591 NW2d 267 (1998), overruled in part on other grounds in *People v Chenault*, 495 Mich 142; 845 NW2d 731 (2014). Defendant's argument does not involve an issue of perjury, but of credibility. Defense counsel fully explored the credibility problems with Taylor's testimony, as well as other prosecution witnesses, and the jury had an opportunity to observe the video recording of the shooting. This Court will not "interfere with the jury's determinations regarding . . . the credibility of the witnesses." *Unger*, 278 Mich App at 222.

## 2. "OTHER ACTS OF PROSECUTORIAL MISCONDUCT"[4]

Defendant contends that the prosecutor improperly misled the jury during opening statement when she made several statements that were not supported by the record. "Opening statement is the appropriate time to state the facts that will be proved at trial." *Ericksen*, 288 Mich App at 200. When a prosecutor states that evidence will be presented that later is not presented, reversal is not required if the prosecutor acted in good faith and the defendant was not prejudiced by the statement. *People v Wolverton*, 227 Mich App 72, 76-77; 574 NW2d 703 (1997).

Defendant points to several comments by the prosecutor during opening statement that he claims were improper. For example, the prosecutor stated that defendant was threatening the victim, that defendant called Chubb "little boy" as they were discussing Taylor, that Taylor texted "leave us alone," and that, after the shooting, defendant sent a text message bragging

---

[4] We decline to readdress those issues of prosecutorial error that were also raised by appellate counsel and have already been addressed in this opinion.

about the shooting.  Contrary to what defendant argues, the prosecutor's statements, viewed in context, were clearly designed to show what she intended to prove during trial.  Subsequently, the prosecutor presented evidence of numerous text messages, including those that showed that defendant taunted Chubb, texted "News 2, 4, 7" after the shooting, and Taylor's testimony that she texted "leave us the f*ck alone" using Chubb's phone.  Even if the evidence did not develop exactly as the prosecutor stated during opening statement, defendant has not shown that the prosecutor acted in bad faith in making the statements, or that he was prejudiced.  *Id*.

Defendant also asserts that the prosecutor's statement that "We know where you are when you make a phone call, or the area that you're in when you make a phone call," was improper.  The prosecutor's reference, also made during opening statement, was designed to show that she intended to prove during trial that a cell phone linked to defendant was in the area of the BP gas station at the time of the shooting, and that, after the shooting, the cell phone was pinned in the same direction in which the shooter fled.  During trial, the prosecutor presented evidence of defendant's cell phone records, maps of cell phone towers and where the phone registered, and the expert testimony of Smith, who interpreted the information for the jury.  Smith explained that defendant's cell phone was in the area of the BP gas station around the time of the shooting, registered at a tower southwest of the gas station after the shooting, and registered at a different tower southwest of the gas station a half hour later.  Given this evidence, defendant has not shown that the prosecutor acted in bad faith in making the emphasized statement.  *Id*.  Accordingly, defendant has not established plain error affecting his substantial rights in regard to the prosecutor's opening statement.

Defendant next lists several comments made by the prosecutor during closing argument where defendant contends that the prosecutor impermissibly expressed her personal opinion about the case with inflammatory and unsupported remarks that were highly prejudicial.  For example, defendant notes that the prosecutor argued that defendant was angry, exhibited actions of someone who did not fairly fight a younger 20-year-old man, and was manipulating Taylor; she also suggested views of the meaning of certain text messages.  Although prosecutors may not express a personal opinion about a defendant's guilt, *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995), they are afforded great latitude when arguing at trial, *Dobek*, 274 Mich App at 66.  In arguing this claim, defendant ignores that prosecutors may argue the evidence and all reasonable inferences that arise from the evidence as it relates to their theory of the case, and they need not state their inferences in the blandest possible language.  *Id*.  After reviewing the record, including the comments cited by defendant, we conclude that the prosecutor's remarks were part of a permissible argument that was focused on presenting the prosecutor's theory of the case, based on the evidence and reasonable inferences arising from it, and countering defendant's claim that Taylor misidentified him.  The prosecutor's argument, which urged the jurors to use their common sense in evaluating the evidence, was responsive to the theories presented at trial and, viewed in context, was not clearly improper.

Defendant also argues that, during rebuttal argument, the prosecutor impermissibly referred to the defense argument as a "red herring."  The prosecutor used the phrase in the following context:

The marijuana in this case, that is a *red herring*. Everyone told you that the marijuana belonged to Jessica. Jessica told you, "That marijuana belonged to me."

\* \* \*

Now, I don't mean to thumb my nose at the law . . . . Kids get high. Kids smoke marijuana. Hey, this does not make them the drug dealer of the century to be targeted for a drug hit. Okay?

This is a personal shooting done by someone who had a personal ax to grind . . . . [Emphasis added.]

Although it is generally improper for a prosecutor to argue that defense counsel has attempted to mislead the jury through the use of "red herrings," *Unger*, 278 Mich App at 238, a "prosecutor may fairly respond to an issue raised by the defendant." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). Further, an otherwise improper remark might not warrant reversal if the prosecutor is responding to the defense counsel's argument. *Dobek*, 274 Mich App at 64; *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996). Viewed in context, the prosecutor's remark, made during rebuttal argument, did not suggest that counsel was trying to mislead the jury, but fairly responded to defense counsel's suggestion in his closing argument that the "execution style" shooting could have been related to Chubb buying or selling drugs, or owing someone money. The prosecutor's remark was responsive to an isolated part of counsel's closing argument, and was based on reasonable inferences from the evidence. *Unger*, 278 Mich App at 236. Consequently, the prosecutor's remark was not clearly improper.

Further, even if any of the prosecutor's challenged remarks were improper, the trial court's instructions that the lawyers' statements and arguments were not evidence and that the case should be decided on the basis of the evidence were sufficient to dispel any possible prejudice. See *id.* at 235. Accordingly, defendant cannot establish plain error affecting his substantial rights on the basis of the prosecutor's challenged comments. In addition, multiple errors have not been found, so there can be no cumulative effect that denied defendant a fair trial. *Dobek*, 274 Mich App at 107.

### D. SENTENCING

Defendant next argues that he is entitled to resentencing because the trial court engaged in impermissible judicial fact-finding to score the sentencing guidelines, contrary to *Alleyne v United States*, 570 US___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). Because defendant did not object to the scoring of the guidelines at sentencing on the basis of *Alleyne*, this issue is unpreserved and appellate review is limited to plain error affecting substantial rights. *People v Lockridge*, ___ Mich ___, ___; ___ NW2d ___ (2015) (Docket No. 149073); slip op at 30.

In *Alleyne*, 133 S Ct at 2159, 2163, the United States Supreme Court held that because "mandatory minimum sentences increase the penalty for a crime," any fact that increases the mandatory minimum is an "element" that must "be submitted to the jury and found beyond a reasonable doubt." In *Lockridge*, ___ Mich at ___; slip op at 1-2, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient under *Alleyne* to the extent that

-13-

"the guidelines *require* judicial fact-findings beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e. the 'mandatory minimum' sentence under *Alleyne*." To remedy the constitutional violation, the Court severed MCL 769.34(2) to the extent that it makes the sentencing guidelines, as scored based on facts beyond those admitted by the defendant or found by the jury, mandatory. *Id.* at ___; slip op at 3. The Court explained that a sentencing court must still score the guidelines to determine the applicable guidelines range, but a guidelines range calculated in violation *Alleyne* is now advisory only. *Id.* at ___; slip op at 3.

Defendant received a total of 181 OV points, placing him in OV Level VI (100+ points) on the applicable sentencing grid. MCL 777.62. This guidelines range was based on the scoring of OVs 1, 2, 3, 4, 5, 6, 7, and 12. Defendant asserts that OV 4 (psychological injury to victim), MCL 777.34, OV 5 (psychological injury to member of victim's family), MCL 777.35, and OV 7 (aggravated physical abuse), MCL 777.37, were scored based on impermissible judicial fact-finding. We agree. However, defendant is not entitled to resentencing because OVs 1, 2, 3, and 6 were based on facts admitted by defendant or found by the jury verdict, and were sufficient to sustain the minimum number of OV points necessary for defendant's score to fall in the cell of the sentencing grid under which he was sentenced. See *Lockridge*, ___ Mich at ___; slip op at 32. Thus, no plain error occurred.

### E.  JUDICIAL BIAS

Defendant next argues that he was denied a fair trial based on judicial bias. Specifically, defendant asserts that the trial court aggressively questioned Davies in order to intimidate her and exhibited bias during sentencing. We disagree.

"The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; ___ NW2d ___ (2015). However, because defendant did not object to the challenged behavior in the trial court, this issue is unpreserved. *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996). Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). In *Stevens*, 498 Mich at 170-171, our Supreme Court explained:

> A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. [Citations omitted.]

A fact-specific inquiry is required. *Id.* at 171. "A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id.*

> In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and

demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions.  This list of factors is not intended to be exhaustive.  [*Id.* at 172 (citations omitted).]

Defendant asserts that the trial court exhibited misconduct while questioning Davies. After taking the stand, Davies began crying, and the trial court sent the jury to lunch.  The trial court then addressed Davies, stating, "I don't know why you're crying or what you're afraid of, but you'd better get afraid of me because I'm not going to spend a lot of time begging you to answer questions, because I can send you to jail, and I will do so."  Later, Davies testified that she had been warned not to testify.  Defendant challenges the court's comments, arguing that the court was unfairly harsh toward Davies, who was simply emotional remembering the traumatic event of the shooting.  Defendant does not, however, show how the trial court's statements impacted his trial or exhibited judicial bias toward defendant.  Indeed, Davies was a witness for the prosecution.  Furthermore, the court's comments were made outside the presence of the jury and, thus, there was no reasonably likelihood that the comments improperly influenced the jury. Accordingly, we do not agree that the trial court's statements to Davies denied defendant a fair trial.

Defendant also argues that the trial court exhibited bias at sentencing when the trial court "testified for the victim's mother[.]"  At sentencing, in regard to the victim's mother, the trial court stated:

But you're going to tell me that this lady walks in there every single day, she looks at the son that she brought into this world that she believed was going to as least go to college and be something in this society, and he's a vegetable; and you don't think she doesn't need professional [help].  I disagree with you.

Here, again, defendant fails to show how the trial court's statement at sentencing denied him a fair trial or influenced the jury.  Defendant also summarily claims that the Detroit Police Department conducted unfair line up procedures during its investigation, but cites no support, legal or factual, for his contention.  *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008) (a party must support his position with references to the record); *Payne*, 285 Mich App at 195 (appellant may not merely announce his position and leave it to this Court to discover and rationalize his claims).  Accordingly, defendant's claim lacks merit.

Finally, we note that, to the extent that any of defendant's allegations raised on appeal were not specifically addressed by this Court, all arguments were reviewed and found to lack merit.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

-15-

3032UT

| STATE OF MICHIGAN 3rd JUDICIAL CIRCUIT WAYNE COUNTY | CLAIM OF APPEAL AND ORDER APPOINTING COUNSEL ☒ Order Amended | CASE NO. AND SUFFIX 10-6297          01 |
|---|---|---|

Amended Reason: AS TO FORM THIS IS NOW A CLAIM CASE PER JUDGE MASSEY-JONES' ORDER OF 5-9-14

Court Address
1441 ST. ANTOINE, ROOM 917, DETROIT, MI 48226

Court Phone No.
(313) 224-6221

| People of THE STATE OF MICHIGAN | Date of Birth, Address, Inmate Number (if known) | 11/23/1971 |
|---|---|---|
| V | SAGINAW CORRECTIONAL FACILITY 9625 PIERCE ROAD | 221610 |
| Defendant Name, Last    First    Middle ROBINSON    LAMARR    VALDEZ | FREELAND, MI 48623 | |

| Offense Information | | | | | | Terms of Incarceration | | | | | | | | | | Intermediate Sanctions | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Minimum | | | Maximum | | | | | | | Probation | | | | | |
| Description | PACC Code | H | C | A | S | Y | M | D | Y | M | D | K | P | J | Y | M | D | R | F | O |
| ASSAULT WITH INTENT TO MURDER | 750.83 | 4 | | | | 47 | 6 | | 120 | | | | X | | | | | | | |
| WEAPONS/FIREARMS/POSSESSION BY FELON | 750.224F | 4 | | | | 47 | 6 | | 120 | | | | X | | | | | | | |
| WEAPONS/FELONY FIREARM | 750.227B-A | | | | | 2 | | | 2 | | | X | X | | | | | | | |

H=Habitual C=Conspiracy A=Attempt S=Solicitation Y=Year M=Month D=Day K=Consecutive P=Prison J=Jail F=Fine O=Other

The defendant claims an appeal from a final judgment or order entered on 05/09/2014 in the 3rd Circuit Court, WAYNE County, Michigan by Judge VERA MASSEY-JONES 15595. Copies of the final judgment or order being appealed and docket entries are attached for the Court of Appeals, appointed counsel, and Michigan Appellate Assigned Counsel System.

On 05/09/2014, the defendant filed a request for appointment of counsel and a declaration of indigency.

IT IS ORDERED:

NEIL J. LEITHAUSER

Name of Appellate Counsel

TROY, MI 48084

City, State, ZIP Code

101 W. BIG BEAVER RD., 14TH FLOOR

Address

248 687 1404

Telephone No.

33976

Bar No.

Is appointed counsel for the defendant in post-conviction proceedings. If appointed counsel can not or will not accept this appointment, he/she shall notify the court immediately. Copies of the final judgment or order being appealed and docket entries are attached for appointed counsel and Michigan Appellate Assigned Counsel System (MAACS).

The court reporter(s)/recorder(s) shall file with the trial court clerk the transcripts checked below and any other transcripts requested by counsel in this case not previously transcribed. Transcripts shall be filed within 28 days for pleas or 91 days for trials from the date ordered or requested [MCR 7.20(B)]. Reporter(s)/recorder(s) shall be paid as provided by law.

| Transcripts Ordered | Reporter/Recorder Name | Other Description | Previously Ordered | Filed | Reporter Number | Date(s) of Proceeding |
|---|---|---|---|---|---|---|
| JURY TRIAL | JANICE PAYNE | | X | X | | 01/26/2011 |
| JURY TRIAL | JANICE PAYNE | | X | X | | 01/27/2011 |
| JURY TRIAL | JANICE PAYNE | | X | X | | 01/28/2011 |
| JURY TRIAL | JANICE PAYNE | | X | X | | 01/31/2011 |
| SENTENCE | JANICE PAYNE | | X | X | | 02/15/2011 |

The clerk shall immediately send to counsel a copy of the transcripts ordered above or requested by counsel as they become available. The clerk shall forward documents upon request by counsel [MCR 6.433].

5/13/2014

Date

Robert J. Colombo Jr.

ROBERT J. COLOMBO, JR.
Judge

25806
Bar No.

## CERTIFICATE OF MAILING

I certify that on this date I mailed a copy of this claim of appeal to appointed counsel, defendant, court reporter(s)/recorder(s), prosecutor, Court of Appeals, and the Michigan Appellate Assigned Counsel System (MAACS). I also mailed a copy of the final judgment or order being appealed and the docket entries to appointed counsel, the Court of Appeals, and MAACS. I also mailed a copy of the defendant's request for appointment of counsel to appointed counsel, the prosecutor, and MAACS.

5/13/2014

Date

_____

Signature

730/2011

1ˢᵗ copy – Corrections
2ⁿᵈ copy – Corrections (for return
3ʳᵈ copy – Michigan State Police CJIC

4ᵗʰ copy – Defendant
5ᵗʰ copy – Prosecutor
6ᵗʰ copy – Cashier

Approved, SCAO          Original – Court

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | JUDGMENT OF SENTENCE COMMITMENT TO DEPARTMENT OF CORRECTIONS ☐ Amended | CASE NO. 10-006297-01-FC |
|---|---|---|

ORI MI – 821095J  Court Address  1441 St. Antoine, Detroit, MI 48226   Courtroom          Court Telephone No.  313-224-2487
Police Report No.

THE PEOPLE OF THE STATE OF MICHIGAN

v

Defendant name, address, and telephone no.
Lamarr Valdez Robinson
Alias(es) -
18784 Sunderland Detroit MI 48200

| CTN/TCN | SID | DOB |
|---|---|---|
| 10710606-01 | | 11/23/1971 |

Prosecuting attorney name          Bar no.
Jaimie M. Powell          67466

Defendant attorney name          Bar no.
Earl S. Washington          31383

THE COURT FINDS:

1. The defendant was found guilty on 01/31/2011     of the crime(s) stated below:

| Count | CONVICTED BY | | | DISMISSED BY* | CRIME | CHARGE CODE (S) MCL citation/PACC Code |
|---|---|---|---|---|---|---|
| | Plea* | Court | Jury | | | |
| 1 | G | | | | ASLT. W/I MURDER | 750.83 |
| 2 | G | | | | POSS FIREARM BY FELON | 750.224F |
| 3 | G | | | | FELONY FIREARM | 750.227B-A |

*For plea: insert "G" for guilty plea, "NC" for nolo contendere, or "MI" for guilty but mentally ill. For dismissal; insert "D" for dismissed by court or "NP" for dismissed by prosecutor/plaintiff.

☐  2. The conviction is reportable to the Secretary of State under MCL 257.625(21)(b).     MI-R152488839896
☐  3. HIV testing and sex offender registration is completed.          Defendant's driver license number
☐  4. The defendant has been fingerprinted according to MCL 28.243.

IT IS ORDERED:
☐  5. Probation is revoked.
6. Participating in a special alternative incarceration unit is     ☐ prohibited.     ☐ permitted.
7. Defendant is sentenced to custody of Michigan Department of Corrections. This sentence shall be executed immediately.

| Count | SENTENCE DATE | MINIMUM | | | MAXIMUM | | DATE SENTENCE BEGINS | JAIL CREDIT | | OTHER INFORMATION |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Years | Mos. | Days | Years | Mos. | | Mos. | Days | |
| 1 | 2-15-2011 | 47 | 6 | 0 | 120 | 0 | | | | |
| 2 | 2-15-2011 | 47 | 6 | 0 | 120 | 0 | | | | |
| 3 | 2-15-2011 | 2 | 0 | 0 | 2 | 0 | 2-15-2011 | 0 | 264 | |

☐ 8. Sentence(s) to be served consecutively to: (if this item is not checked, the sentence is concurrent)
☐ each other.     ☐ case numbers

9. Defendant shall pay as follows:

| State Minimum | Crime Victim | Restitution | Court Costs | Attorney Fees | Fine | Other Costs | Total |
|---|---|---|---|---|---|---|---|
| $ 68.00 x 3 | $ 130.00 | $ | $ 600.00 | $ | $ | $ | $ 934.00 |

The due date for payment is __at sentencing__. Fine, costs, and fees not paid within 56 days of the due date are subject to a 20% late penalty on the amount owed.

10. The concealed weapon board shall     suspend for _____ days     permanently revoke the concealed
weapon license, permit number _____ issued by _____ County.

☐ 11. The defendant is subject to lifetime monitoring pursuant to MCL 750.520n.

12. Court recommendation: COUNTS 1&2 CONSECUTIVE TO COUNT 3.

February 15, 2011
Date

Judge  VERA MASSEY JONES          15595
Bar no.

I certify that this is a correct and complete abstract from the original court records. The Sheriff shall, without needless delay, deliver defendant to the Michigan Department of Corrections at a place designated by the department.

(SEAL)

Deputy court clerk

P. 6

03136040940

curtis,paul  APR-01-2011 12:54 PM

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

THE PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff,

v.

LAMARR VALDEZ ROBINSON,

Defendant.

_____/

Circuit Court:  10-006297-01-FC

Hon. Vera Massey Jones
P-15595

## ORDER DETERMINING RIGHT TO APPEAL

At a session of said Court, held in the
Frank Murphy Hall of Justice, Detroit, Michigan,
on: _____5-9-14_____

PRESENT: _____Vera Massey Jones_____
Circuit Judge

On motion of the Defendant, and the Court being advised in the premises,

IT IS HEREBY ORDERED that Defendant's Motion for Determination of Right to Appeal is hereby GRANTED.

IT IS FURTHER ORDERED that pursuant to MCR 6.428 the time for filing a claim of appeal is reissued.

IT IS FURTHER ORDERED that Claim of Appeal issue on Defendant's behalf.

_____
Circuit Judge

Skip to Main Content Logout My Account Search Menu New Case Search Refine Search Back

Location : Criminal Cases   Images   Web Access Instruction Manual

# REGISTER OF ACTIONS
## CASE NO. 10-006297-01-FC

| State of Michigan v Lamarr Valdez Robinson | | § | | Case Type: | **Capital Felonies** |
|---|---|---|---|---|---|
| | | § | | Date Filed: | **06/14/2010** |
| | | § | | Location: | **Criminal Division** |
| | | § | | Case Number History: | **10059903-01** |
| | | § | | | **10710606-01** |
| | | § | | Case Tracking Number: | **10710606-01** |
| | | § | | CRISNET/Incident No.: | **1001140390** |
| | | § | | | |

---

### PARTY INFORMATION

| | | | **Lead Attorneys** |
|---|---|---|---|
| **Appellate Attorney** | Leithauser, Neil J. | | |
| | | | |
| **Defendant** | **Robinson, Lamarr Valdez** | Male Black | **Earl S. Washington** |
| | Other Agency Numbers | DOB: 11/23/1971 | *Public Defender* |
| | 481864 Detroit Police Identification Number | | (313) 967-5049(W) |
| | | | |
| **Plaintiff** | **State of Michigan** | | **Jaimie M. Powell** |
| | | | (313) 224-2898(W) |

---

### CHARGE INFORMATION

| Charges: Robinson, Lamarr Valdez | Statute | Level | Date |
|---|---|---|---|
| 1. Assault With Intent to Murder | 75083 | . | 05/13/2010 |
| 2. Weapons - Firearms - Possession By Felon | 750224F | . | 05/13/2010 |
| 3. Weapons Felony Firearm | 750227B-A | . | 05/13/2010 |

---

### EVENTS & ORDERS OF THE COURT

**DISPOSITIONS**

05/29/2010 | **NULL Placeholder** (Judicial Officer: Lockhart, Steve)
1. Assault With Intent to Murder
Defendant Stand Mute: Plea of Not Guilty Entered by Court

05/29/2010 | **NULL Placeholder** (Judicial Officer: Lockhart, Steve)
2. Weapons - Firearms - Possession By Felon
Defendant Stand Mute: Plea of Not Guilty Entered by Court

05/29/2010 | **NULL Placeholder** (Judicial Officer: Lockhart, Steve)
3. Weapons Felony Firearm
Defendant Stand Mute: Plea of Not Guilty Entered by Court

01/31/2011 | **Disposition** (Judicial Officer: Jones, Vera Massey)
1. Assault With Intent to Murder
Found Guilty by Jury
2. Weapons - Firearms - Possession By Felon
Found Guilty by Jury
3. Weapons Felony Firearm
Found Guilty by Jury

02/15/2011 | **Prison Sentence** (Judicial Officer: Jones, Vera Massey)
1. Assault With Intent to Murder
State Confinement:
Agency: Michigan Department of Corrections
Effective 02/15/2011
Term: 47 Yr 6 Mo to 120 Yr

02/15/2011 | **Prison Sentence** (Judicial Officer: Jones, Vera Massey)
2. Weapons - Firearms - Possession By Felon
State Confinement:
Agency: Michigan Department of Corrections
Effective 02/15/2011
Term: 47 Yr 6 Mo to 120 Yr

02/15/2011 | **Prison Sentence** (Judicial Officer: Jones, Vera Massey)
3. Weapons Felony Firearm
Consecutive, Count CT 1 AWIM
State Confinement:
Agency: Michigan Department of Corrections
Effective 02/15/2011
Term: 2 Yr to 2 Yr
Credit for Time Served: 264 Days

**OTHER EVENTS AND HEARINGS**

1st copy – Corrections          4th copy – Defendant
2nd copy – Corrections (for return   5th copy – Prosecutor
3rd copy – Michigan State Police CJIC   6th copy – Cashier

Approved, SCAO          Original – Court

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | JUDGMENT OF SENTENCE COMMITMENT TO DEPARTMENT OF CORRECTIONS ☐ Amended | CASE NO. 10-006297-01-FC |
|---|---|---|

ORI MI – 821095J   Court Address   1441 St. Antoine, Detroit, MI 48226   Courtroom   Court Telephone No.   313-224-2487
Police Report No.

THE PEOPLE OF THE STATE OF MICHIGAN    v

Defendant name, address, and telephone no.
Lamarr Valdez Robinson
Alias(es) -
18784 Sunderland Detroit MI 48200

| CTN/TCN 10710606-01 | SID | DOB 11/23/1971 |
|---|---|---|

Prosecuting attorney name          Bar no.
Jaimie M. Powell          67466

Defendant attorney name          Bar no.
Earl S. Washington          31383

**THE COURT FINDS:**

1. The defendant was found guilty on 01/31/2011          of the crime(s) stated below:

| Count | CONVICTED BY | | | DISMISSED BY* | CRIME | CHARGE CODE(S) MCL citation/PACC Code |
|---|---|---|---|---|---|---|
| | Plea* | Court | Jury | | | |
| 1 | G | | | | ASLT. W/I MURDER | 750.83 |
| 2 | G | | | | POSS FIREARM BY FELON | 750.224F |
| 3 | G | | | | FELONY FIREARM | 750.227B-A |

*For plea: insert "G" for guilty plea, "NC" for nolo contendere, or "MI" for guilty but mentally ill. For dismissal; insert "D" for dismissed by court or "NP" for dismissed by prosecutor/plaintiff.

☐ 2. The conviction is reportable to the Secretary of State under MCL 257.625(21)(b).   MI-R152488839896
☐ 3. HIV testing and sex offender registration is completed.          Defendant's driver license number
☐ 4. The defendant has been fingerprinted according to MCL 28.243.

**IT IS ORDERED:**

☐ 5. Probation is revoked.
6. Participating in a special alternative incarceration unit is   ☐ prohibited.   ☐ permitted.
7. Defendant is sentenced to custody of Michigan Department of Corrections. This sentence shall be executed immediately.

| Count | SENTENCE DATE | MINIMUM | | | MAXIMUM | | DATE SENTENCE BEGINS | JAIL CREDIT | | OTHER INFORMATION |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Years | Mos. | Days | Years | Mos. | | Mos. | Days | |
| 1 | 2-15-2011 | 47 | 6 | 0 | 120 | 0 | | | | |
| 2 | 2-15-2011 | 47 | 6 | 0 | 120 | 0 | | | | |
| 3 | 2-15-2011 | 2 | 0 | 0 | 2 | 0 | 2-15-2011 | 0 | 264 | |

☐ 8. Sentence(s) to be served consecutively to: (if this item is not checked, the sentence is concurrent)
☐ each other.   ☐ case numbers

9. Defendant shall pay as follows:

| State Minimum | Crime Victim | Restitution | Court Costs | Attorney Fees | Fine | Other Costs | Total |
|---|---|---|---|---|---|---|---|
| $ 68.00 x 3 | $ 130.00 | $ | $ 600.00 | $ | $ | $ | $ 934.00 |

The due date for payment is   **at sentencing**   . Fine, costs, and fees not paid within 56 days of the due date are subject to a 20% late penalty on the amount owed.

10. The concealed weapon board shall   suspend for _____ days   permanently revoke   the concealed weapon license, permit number _____ issued by _____          County.

☐ 11. The defendant is subject to lifetime monitoring pursuant to MCL 750.520n.

12. Court recommendation: COUNTS 1&2 CONSECUTIVE TO COUNT 3;

February 15, 2011          15595
Date          Judge   VERA MASSEY JONES          Bar no.

I certify that this is a correct and complete abstract from the original court records. The sheriff shall, without needless delay, deliver defendant to the Michigan Department of Corrections at a place designated by the department.

(SEAL)

Deputy court clerk

MCL 765.15(2), MCL 769.1k, MCL 769.16a, MCL 775.22, MCL 780.766 MCR 6.427

CC 219b-3CC – (4/2009) JUDGMENT OF SENTENCE, COMMITMENT TO DEPARTMENT OF CORRECTIONS

P. 6          31386498640          Curtis, paul   APR-01-2011 12:54 PM

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

THE PEOPLE OF THE STATE OF MICHIGAN,

Circuit Court: 10-006297-01-FC

Plaintiff,

v.

Hon. Vera Massey Jones
P-15595

LAMARR VALDEZ ROBINSON,

Defendant.

_____/

### ORDER DETERMINING RIGHT TO APPEAL

At a session of said Court, held in the
Frank Murphy Hall of Justice, Detroit, Michigan,
on: _____ 5-9-14 _____

PRESENT: _____ Vera Massey Jones _____
Circuit Judge

On motion of the Defendant, and the Court being advised in the premises,

IT IS HEREBY ORDERED that Defendant's Motion for Determination of Right to Appeal is hereby GRANTED.

IT IS FURTHER ORDERED that pursuant to MCR 6.428 the time for filing a claim of appeal is reissued.

IT IS FURTHER ORDERED that Claim of Appeal issue on Defendant's behalf.

_____
Circuit Judge

**COA 321841**

| STATE OF MICHIGAN<br>**Third Judicial Circuit Court** | PRAECIPE<br>FOR<br>MOTION | CASE NO.<br>*10 - 006297-01-FC* |
|---|---|---|

### THE PEOPLE OF THE STATE OF MICHIGAN

-vs-

LAMARR ROBINSON
_____
**Defendant**

**TO THE ASSIGNMENT CLERK:**

Please place a Motion for (here state nature of motion in brief form) _withdraw as appellate counsel_

on the Motion Docket for ___June 6, 2014___ before Judge ___KENNY___

Date: ___May 29___, 20 _14_.

NEIL LEITHAUSER  P-33976
**Attorney for Defendant**          **Michigan State Bar #**

101 w Big Beaver, 14th Flr. Troy
**Address**

(248) 687-1404
**Telephone**

**NOTE: UNDER MCR 2. 107(c) (1) OR (2)**

- Attn: Appellate Section

**PROOF OF SERVICE**
(7 Days notice required)

I swear that on ___May 29, 2014___ I served a copy of the attached motion and praecipe upon the Wayne County Prosecutor, Third Judicial Circuit Court, Criminal Division Section by *(mail)/(personal)* service. *(Cross one out)*

Sworn and subscribed before me

on: _____          _____
                                          **Attorney for Defendant**

_____
**Notary Public**

_____
7 Day Notice waived

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**THE PEOPLE OF THE STATE OF MICHIGAN,**

**Plaintiff-Appellee,**

**Court of Appeals**
**No. 321841**

v.

**Circuit Court**
**No. 10-006297-01-FC**

**LAMARR VALDEZ ROBINSON,**

**Defendant-Appellant/**
_____/

## MOTION TO WITHDRAW AS APPELLATE COUNSEL

Now comes Neil Leithauser, P-33976, attorney for the above-captioned defendant-appellant, and in support of his motion says:

1. On February 4, 2013, the undersigned was assigned as appellate counsel for Mr. Robinson for post-conviction proceedings. His prior appeal of right, wherein he had been represented by retained counsel, had been dismissed in November, 2011.

2. Mr. Robinson had been convicted in January, 2011, of assault with intent to murder, felon in possession of a firearm, and felony firearm. He was sentenced as a fourth habitual offender by the Honorable Vera Massey Jones on February 15, 2011, to the mandatory two years for the firearm, followed by sentences of 47 1/2 to 120 years.

3. The undersigned filed a motion for determination of right to appeal in April, 2014; the hearing was adjourned by the Court until May 2, 2014, at which time Judge Jones granted

pending as of right in the Court of Appeals.

4. No brief on appeal has yet been filed; the current due-date for a brief is July 11, 2014, unless extended either through trial-court pleadings/hearings or other extension.

5. There has since been a breakdown in the attorney-client relationship, and a serious lack of communication has developed between Mr. Robinson and the undersigned and Mr. Robinson has expressly requested in writing that he receive substitute counsel.

6. Mr. Robinson has complained to MAACS and the Grievance Commission.

7. The transcripts and assignment and court-file documents are being returned to the Appellate Assignment Office for transmittal to substitute counsel. A proposed order is attached.

WHEREFORE, the undersigned requests that he be allowed to withdraw as counsel of record for Mr. Robinson and that substitute appellate counsel be assigned.

NEIL J. LEITHAUSER P-33976
Attorney for Defendant-Appellant
101 W. Big Beaver Rd., 14th Flr.
Troy, MI 48084
(248) 687-1404

Dated: May 28, 2014

**MEMORANDUM IN SUPPORT OF MOTION**

*Ginther*, 390 Mich 436, 441 (1973); *People v Ackerman*, 257 Mich App 434, 456 (2003); *People v Strickland*, 293 Mich App 393 (2011), lv den 490 Mich 1002 (2012), there must be an effective attorney-client relationship. US Const, AM VI; Const. 1963, art. 1, §20. Where there is a breakdown of that attorney-client relationship there is adequate cause for a substitution of counsel, *Ginther, supra*, 390 Mich at 441, and substitution is proper for the protection of the defendant's constitutional rights, and for the efficient administration of justice.

While the mere filing of a grievance, alone, against an attorney may not necessarily constitute good cause for withdrawal of the attorney, e.g., *People v Mitchell*, 454 Mich 145, 170, n 30 (1997), and *People v Traylor*, 245 Mich App 460, 463 (2001), it does reflect the breakdown in communication and confidence.

Respectfully submitted,

_____

NEIL J. LEITHAUSER P-33976
Attorney for Defendant-Appellant
101 W. Big Beaver Rd., 14th Flr.
Troy, MI 48084
(248) 687-1404

Dated: May 28, 2014

321841

| STATE OF MICHIGAN 3rd JUDICIAL CIRCUIT WAYNE COUNTY | CLAIM OF APPEAL AND ORDER APPOINTING COUNSEL ☒ Substitution Order | CASE NO. AND SUFFIX 10-6297      01 |
|---|---|---|

Court Address
1441 ST. ANTOINE, ROOM 917, DETROIT, MI 48226

Court Phone No.
(313) 224-6221

| People of THE STATE OF MICHIGAN | Date of Birth, Address, Inmate Number (if known) | 11/23/1971 |
|---|---|---|
| V | SAGINAW CORRECTIONAL FACILITY 9625 PIERCE ROAD FREELAND, MI 48623 | 221610 |

| Defendant Name, Last | First | Middle |
|---|---|---|
| ROBINSON | LAMARR | VALDEZ |

| Offense Information | | | | | | Terms of Incarceration | | | | | | | | | | Intermediate Sanctions | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Minimum | | | Maximum | | | | | | | Probation | | | | | |
| Description | PACC Code | H | C | A | S | Y | M | D | Y | M | D | K | P | J | Y | M | D | R | F | O |
| ASSAULT WITH INTENT TO MURDER | 750.83 | 4 | | | | 47 | 6 | | 120 | | | | X | | | | | | | |
| WEAPONS/FIREARMS/POSSESSION BY FELON | 750.224F | 4 | | | | 47 | 6 | | 120 | | | | X | | | | | | | |
| WEAPONS/FELONY FIREARM | 750.227B-A | | | | | 2 | | | 2 | | | X | X | | | | | | | |

H=Habitual C=Conspiracy A=Attempt S=Solicitation Y=Year M=Month D=Day K=Consecutive P=Prison J=Jail F=Fine O=Other

The defendant claims an appeal from a final judgment or order entered on 05/09/2014 in the 3rd Circuit Court, WAYNE COUNTY, Michigan by Judge VERA MASSEY-JONES 15595.  Copies of the final judgment or order being appealed and docket entries are attached for the Court of Appeals, appointed counsel, and Michigan Appellate Assigned Counsel System.

On 05/09/2014, the defendant filed a request for appointment of counsel and a declaration of indigency.

IT IS ORDERED:

STATE APPELLATE DEFENDER OFFICE
Name of Appellate Counsel

645 GRISWOLD, PENOBSCOT BLDG., SUITE 3300
Address

DETROIT, MI  48226
City, State, ZIP Code

313-256-9833
Telephone No.

1
Bar No.

is appointed counsel for the defendant in post-conviction proceedings.  If appointed counsel can not or will not accept this appointment, he/she shall notify the court immediately.  Copies of the final judgment or order being appealed and docket entries are attached for appointed counsel and Michigan Appellate Assigned Counsel System (MAACS).

The court reporter(s)/recorder(s) shall file with the trial court clerk the transcripts checked below and any other transcripts requested by counsel in this case not previously transcribed.  Transcripts shall be filed within 28 days for pleas or 91 days for trials from the date ordered or requested [MCR 7.20(B)].  Reporter(s)/recorder(s) shall be paid as provided by law.

| Transcripts Ordered | Reporter/Recorder Name | Other Description | Previously Ordered | Previously Filed | Reporter Number | Date(s) of Proceeding |
|---|---|---|---|---|---|---|
| JURY TRIAL | JANICE PAYNE | | X | X | | 01/26/2011 |
| JURY TRIAL | JANICE PAYNE | | X | X | | 01/27/2011 |
| JURY TRIAL | JANICE PAYNE | | X | X | | 01/28/2011 |
| JURY TRIAL | JANICE PAYNE | | X | X | | 01/31/2011 |
| SENTENCE | JANICE PAYNE | | X | X | | 02/15/2011 |

Attorney LEITHAUSER, NEIL J.  (33976) will forthwith provide to STATE APPELLATE DEFENDER OFFICE all documents, transcripts, and materials pertinent to this appeal currently in his/her possession.

The clerk shall immediately send to counsel a copy of the transcripts ordered above or requested by counsel as they become available.  The clerk shall forward documents upon request by counsel [MCR 6.433].

6/10/2014
Date

Robert J. Colombo Jr.

ROBERT J. COLOMBO, JR.
Judge

25806
Bar No.

CC402 (3/13)                    Page 1 of 2                    MCR 6.425(G), MCR 6.433, MCR 7.210(B)(3)

## CERTIFICATE OF MAILING

I certify that on this date I mailed a copy of this claim of appeal to appointed counsel, defendant, court reporter(s)/recorder(s), prosecutor, Court of Appeals, and the Michigan Appellate Assigned Counsel System (MAACS).  I also mailed a copy of the final judgment or order being appealed and the docket entries to appointed counsel, the Court of Appeals, and MAACS.  I also mailed a copy of the defendant's request for appointment of counsel to appointed counsel, the prosecutor, and MAACS.

6/10/2014
_____
Date

_____
Signature

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**THE PEOPLE OF THE STATE OF MICHIGAN,**

|                          |                          |
|--------------------------|--------------------------|
| **Plaintiff-Appellee,**  | **Court of Appeals**     |
|                          | No.   321841             |
| v.                       | **Circuit Court**        |
|                          | No.  10-006297-01-FC     |
| **LAMARR VALDEZ ROBINSON,** |                       |
| **Defendant-Appellant/** |                          |

_____/

## ORDER GRANTING MOTION TO WITHDRAW AS APPELLATE COUNSEL

At a session of said Court, held in the Frank Murphy Hall of Justice on:

_____6-10-14_____

PRESENT:  _Timothy Kenny_
Circuit Judge

On motion of counsel for defendant, and the court being advised in the premises,

IT IS HEREBY ORDERED that Neil J. Leithauser is withdrawn as appellate counsel

of record for Lamarr Robinson and substitute appellate shall forthwith be assigned.

_____Timothy M. Kenny_____
Circuit Judge

A TRUE COPY
CATHY M. GARRETT
WAYNE COUNTY CLERK

BY _____
DEPUTY CLERK

321841

| STATE OF MICHIGAN<br>3rd JUDICIAL CIRCUIT<br>WAYNE COUNTY | CLAIM OF APPEAL AND<br>ORDER APPOINTING COUNSEL<br>☒ Substitution Order | CASE NO. AND SUFFIX<br>10-6297          01 |
|---|---|---|

| Court Address<br>1441 ST. ANTOINE, ROOM 917, DETROIT, MI 48226 | Court Phone No.<br>(313) 224-6221 |
|---|---|

| **People of THE STATE OF MICHIGAN**<br><br>**V** | Date of Birth, Address, Inmate Number (if known)         11/23/1971<br><br>SAGINAW CORRECTIONAL FACILITY                    221610<br>9625 PIERCE ROAD<br><br>FREELAND, MI 48623 |
|---|---|

| Defendant Name, Last     First     Middle<br>ROBINSON     LAMARR     VALDEZ | |

### Offense Information / Terms of Incarceration / Intermediate Sanctions

| Description | PACC Code | H | C | A | S | Minimum Y | M | D | Maximum Y | M | D | K | P | J | Probation Y | M | D | R | F | O |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ASSAULT WITH INTENT TO MURDER | 750.83 | 4 | | | | 47 | 6 | | 120 | | | | X | | | | | | | |
| WEAPONS/FIREARMS/POSSESSION BY FELON | 750.224F | 4 | | | | 47 | 6 | | 120 | | | | X | | | | | | | |
| WEAPONS/FELONY FIREARM | 750.227B-A | | | | | 2 | | | 2 | | | X | X | | | | | | | |

H=Habitual C=Conspiracy A=Attempt S=Solicitation Y=Year M=Month D=Day K=Consecutive P=Prison J=Jail F=Fine O=Other

The defendant claims an appeal from a final judgment or order entered on 05/09/2014 in the 3rd Circuit Court, WAYNE COUNTY, Michigan by Judge VERA MASSEY-JONES 15595. Copies of the final judgment or order being appealed and docket entries are attached for the Court of Appeals, appointed counsel, and Michigan Appellate Assigned Counsel System.

On 05/09/2014, the defendant filed a request for appointment of counsel and a declaration of indigency.

IT IS ORDERED:

STATE APPELLATE DEFENDER OFFICE          645 GRISWOLD, PENOBSCOT BLDG., SUITE 3300
Name of Appellate Counsel          Address

DETROIT, MI 48226          313-256-9833          1
City, State, ZIP Code          Telephone No.          Bar No.

Is appointed counsel for the defendant in post-conviction proceedings. If appointed counsel can not or will not accept this appointment, he/she shall notify the court immediately. Copies of the final judgment or order being appealed and docket entries are attached for appointed counsel and Michigan Appellate Assigned Counsel System (MAACS).

The court reporter(s)/recorder(s) shall file with the trial court clerk the transcripts checked below and any other transcripts requested by counsel in this case not previously transcribed. Transcripts shall be filed within 28 days for pleas or 91 days for trials from the date ordered or requested [MCR 7.20(B)]. Reporter(s)/recorder(s) shall be paid as provided by law.

| Transcripts Ordered | Reporter/Recorder Name | Other Description | Previously Ordered | Filed | Reporter Number | Date(s) of Proceeding |
|---|---|---|---|---|---|---|
| JURY TRIAL | JANICE PAYNE | | X | X | | 01/26/2011 |
| JURY TRIAL | JANICE PAYNE | | X | X | | 01/27/2011 |
| JURY TRIAL | JANICE PAYNE | | X | X | | 01/28/2011 |
| JURY TRIAL | JANICE PAYNE | | X | X | | 01/31/2011 |
| SENTENCE | JANICE PAYNE | | X | X | | 02/15/2011 |

Attorney LEITHAUSER, NEIL J. (33976) will forthwith provide to STATE APPELLATE DEFENDER OFFICE all documents, transcripts, and materials pertinent to this appeal currently in his/her possession.

The clerk shall immediately send to counsel a copy of the transcripts ordered above or requested by counsel as they become available. The clerk shall forward documents upon request by counsel [MCR 6.433].

6/10/2014
Date

ROBERT J. COLOMBO, JR.          25806
Judge          Bar No.

CC402 (3/13)          Page 1 of 2          MCR 6.425(G), MCR 6.433, MCR 7.210(B)(3)

## CERTIFICATE OF MAILING

I certify that on this date I mailed a copy of this claim of appeal to appointed counsel, defendant, court reporter(s)/recorder(s), prosecutor, Court of Appeals, and the Michigan Appellate Assigned Counsel System (MAACS). I also mailed a copy of the final judgment or order being appealed and the docket entries to appointed counsel, the Court of Appeals, and MAACS. I also mailed a copy of the defendant's request for appointment of counsel to appointed counsel, the prosecutor, and MAACS.

6/10/2014
_____
Date

A. Q
_____
Signature

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**THE PEOPLE OF THE STATE OF MICHIGAN,**

|                                    |                          |
|------------------------------------|--------------------------|
| **Plaintiff-Appellee,**            | **Court of Appeals**     |
|                                    | **No.   321841**         |
| v.                                 | **Circuit Court**        |
|                                    | **No.   10-006297-01-FC** |
| **LAMARR VALDEZ ROBINSON,**        |                          |
| **Defendant-Appellant/**           |                          |

_____/

## ORDER GRANTING MOTION TO WITHDRAW AS APPELLATE COUNSEL

At a session of said Court, held in the Frank Murphy Hall of Justice on:

_____6-10-14_____

PRESENT:   _Timothy Kenny_
          Circuit Judge

On motion of counsel for defendant, and the court being advised in the premises,

IT IS HEREBY ORDERED that Neil J. Leithauser is withdrawn as appellate counsel

of record for Lamarr Robinson and substitute appellate shall forthwith be assigned.

_____
Circuit Judge

A TRUE COPY
CATHY M. GARRETT
WAYNE COUNTY CLERK

BY _____
DEPUTY CLERK



WILLIAM B. MURPHY
  CHIEF JUDGE
DAVID H. SAWYER
  CHIEF JUDGE PRO TEM
MARK J. CAVANAGH
KATHLEEN JANSEN
E. THOMAS FITZGERALD
HENRY WILLIAM SAAD
JOEL P. HOEKSTRA
JANE E. MARKEY
PETER D. O'CONNELL
WILLIAM C. WHITBECK
MICHAEL J. TALBOT
KURTIS T. WILDER
PATRICK M. METER
DONALD S. OWENS

KIRSTEN FRANK KELLY
CHRISTOPHER M. MURRAY
PAT M. DONOFRIO
KAREN FORT HOOD
STEPHEN L. BORRELLO
DEBORAH A. SERVITTO
JANE M. BECKERING
ELIZABETH L. GLEICHER
CYNTHIA DIANE STEPHENS
MICHAEL J. KELLY
DOUGLAS B. SHAPIRO
AMY RONAYNE KRAUSE
MARK T. BOONSTRA
MICHAEL J. RIORDAN
  JUDGES

JEROME W. ZIMMER JR.
  CHIEF CLERK

## State of Michigan
# Court of Appeals
### Detroit Office

June 16, 2014

State Appellate Defender Office
645 Griswold
3300 Penobscot Building
Detroit, MI 48226

     Re:  **People of MI v Lamarr Valdz Robinson**
     Court of Appeals No.  **321841**
     Lower Court No.  **10-006297-01-FC**

Dear Sir or Madam:

     This Court received an order substituting you as appointed counsel for defendant-appellant in the above case.  A copy of the appellate docket entries are enclosed.

     Our records reflect that the complete transcript has been filed with the trial court.  The appellant's brief is due 56 days from the date of the order of appointment.

     If you have any questions or concerns, please contact the Detroit Clerk's Office.

                 Very truly yours,

                 John P. Lowe
                 District Clerk

                 By: _____
                    C. Nagey

JPL/can

Enclosure

cc:  Wayne County Prosecutor

DETROIT OFFICE
CADILLAC PLACE
3020 W. GRAND BLVD. SUITE 14-300
DETROIT, MICHIGAN  48202-6020
(313) 972-5678

TROY OFFICE
COLUMBIA CENTER
201 W. BIG BEAVER RD. SUITE 800
TROY, MICHIGAN  48084-4127
(248) 524-8700

GRAND RAPIDS OFFICE
STATE OF MICHIGAN OFFICE BUILDING
350 OTTAWA, N.W.
GRAND RAPIDS, MICHIGAN  49503-2349
(616) 456-1167

LANSING OFFICE
925 W. OTTAWA ST.
P.O. BOX 30022
LANSING, MICHIGAN  48909-7522
(517) 373-0786

COURT OF APPEALS WEB SITE ~ http://courts.mi.gov/courts/coa/

# NEIL J. LEITHAUSER
### Attorney at Law
### (248) 687-1404

101 W. Big Beaver Rd., 14th Floor
Troy, MI 48084

June 14, 2014

John P. Lowe, District Clerk
Court of Appeals -- First District
3020 W. Grand Blvd., Ste. 14-300
Detroit, MI  48202-6020

    re:  **People v Lamarr Valdez Robinson**
       **Court of Appeals: 321841**

Dear Mr. Lowe:

    Enclosed please find a copy of a June 10, 2014, trial court order, relative to the above-referenced case.

    Please file in the usual manner.

    Thank you for your consideration.

                   Very truly yours,

                   Neil J. Leithauser

encl.

cc:  Appellate Section, Prosecutor's Office

    MAACS

    Lamarr V. Robinson

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**THE PEOPLE OF THE STATE OF MICHIGAN,**

|                                    |                           |
|------------------------------------|---------------------------|
| **Plaintiff-Appellee,**            | **Court of Appeals**<br>No.  321841 |
| **v.**                             | **Circuit Court**<br>No. 10-006297-01-FC |
| **LAMARR VALDEZ ROBINSON,**        |                           |
| **Defendant-Appellant/**           |                           |

_____/

## ORDER GRANTING MOTION TO WITHDRAW AS APPELLATE COUNSEL

At a session of said Court, held in the Frank Murphy Hall of Justice on:

_____6-10-14_____

PRESENT: ___Timothy Kenny___
Circuit Judge

On motion of counsel for defendant, and the court being advised in the premises,

IT IS HEREBY ORDERED that Neil J. Leithauser is withdrawn as appellate counsel

of record for Lamarr Robinson and substitute appellate shall forthwith be assigned.

_____
Circuit Judge

A TRUE COPY
CATHY M. GARRETT
WAYNE COUNTY CLERK

BY _____
DEPUTY CLERK

RECEIVED
2014 JUN 16  AM 10: 45
COURT OF APPEALS
DETROIT OFFICE

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

| | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br>**Cover Sheet** | ***CASE NO.*** | | |
|---|---|---|---|---|

Lower Court or Tribunal

WAYNE CIRCUIT COURT

CIRCUIT: Year **10** Number **006297** Case Type **FC**

COURT OF APPEALS: **321841**

## Filing Party

Filing Party Last Name or Business/Entity/Agency Name

ROBINSON LAMARR VALDEZ

Filing Party First Name     M.I.

Address (Street 1, Street 2, City, State, and ZIP Code)

Attorney Last Name

Newman

Attorney First Name    M.I.   P Number

Valerie    **R**   47291

Address(Street 1, Street 2, City, State, and ZIP Code)

645 Griswold Street

Suite 3300

Detroit    MI   48226

Attorney Telephone Number

(313)256-9833

## Summary of Items Filed

| Type | Filename/Description | Filing Fee | Doc Fee | Total This Filing |
|---|---|---|---|---|
| Brief | Defendant-Appellant's Brief on Appeal | $5.00 | ---- | $5.00 |
| Motion - Regular | Defendant-Appellant's Motion to Remand | $5.00 | ---- | $5.00 |
| | | 3% Service Fee: | | $00.30 |
| **Fee Substitute/Alternate Payment** | | **Total All Filings:** | | $10.30 |

**Reason:**

| X | **Appointed Counsel** |
|---|---|
| | **Motion To Waive Fee** |
| | **Fees Waived in this Case** |
| | **MI InterAgency Transfer** |
| | **No Fee per MCR 7.203(F)(2)** |

**Filer Office Use Only:** VRN/L. Robinson

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin. As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

321841 - 428837

| Lower Court or Tribunal | STATE OF MICHIGAN<br>IN THE COURT OF APPEALS<br>**Proof of Service** | CASE NO. | | |
|---|---|---|---|---|
| WAYNE CIRCUIT COURT | | CIRCUIT: | Year **10** | Number **006297** | Case Type **FC** |
| | | COURT OF APPEALS: | 321841 | |

Case Name: ___PEOPLE OF MI V LAMARR VALDEZ ROBINSON___

On ___1/12/2015___ , one copy of the following documents:

| Brief | Defendant-Appellant's Brief on Appeal |
|---|---|
| Motion - Regular | Defendant-Appellant's Motion to Remand |

was delivered to the persons listed below:

Date ___1/12/2015___

Signature ___/s/Julie Anne Dundr___

| Bar Number | Name | Delivery Method | Service Address |
|---|---|---|---|
| P- | AO, SADO | E-Serve | ao@sado.org |
| P- | AO Support, Wayne County | E-Serve | wcpaappeals@co.wayne.mi.us |
| P- | Dundr, Julie | E-Serve | jdundr@sado.org |
| P- 47291 | Newman, Valerie R | E-Serve | vnewman@sado.org |

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin. As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

Approved, Michigan Court of Appeals

| | Electronically Filed | CASE NO. |
|---|---|---|
| **LOWER COURT** | | Lower Court  10-6297-01 |
| | **BRIEF COVER PAGE** | |
| **Wayne County Circuit Court** | | Court of Appeals  321841 |

(Short title of case)

Case Name: **People v. Lamarr Valdez Robinson**

1. Brief Type (select one):
   ☒ APPELLANT(S)      ☐ APPELLEE(S)      ☐ REPLY
   ☐ CROSS-APPELLANT(S)   ☐ CROSS-APPELLEE(S)   ☐ AMICUS
   ☐ OTHER [identify]:

2. This brief is filed by or on behalf of [insert party name(s)]: **Lamarr Valdez Robinson**

3. ☐   This brief is in response to a brief filed on          by          .

4. ORAL ARGUMENT:      ☒ REQUESTED      ☐ NOT REQUESTED

5. ☐   THE APPEAL INVOLVES A RULING THAT A PROVISION OF THE CONSTITUTION, A STATUTE, RULE OR REGULATION, OR OTHER STATE GOVERNMENTAL ACTION IS INVALID.
   [See MCR 7.212(C)(12) to determine if this applies.]

6. As required by MCR 7.212(C), this brief contains, in the following order: [check applicable boxes to verify]

   ☒ Table of Contents [MCR 7.212(C)(2)]
   ☒ Index of Authorities [MCR 7.212(C)(3)]
   ☒ Jurisdictional Statement [MCR 7.212(C)(4)]
   ☒ Statement of Questions [MCR 7.212(C)(5)]
   ☒ Statement of Facts (with citation to the record) [MCR 7.212(C)(6)]
   ☒ Arguments (with applicable standard of review) [MCR 7.212(C)(7)]
   ☒ Relief Requested [MCR 7.212(C)(9)]
   ☒ Signature [MCR 7.212(C)(9)]

7. This brief is signed by [type name]: **Valerie R. Newman**
   Signing Attorney's Bar No. [if any]: **(P47291)**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES................................................................................. i

STATEMENT OF JURISDICTION.................................................................. iii

STATEMENT OF QUESTIONS PRESENTED........................................ iv

STATEMENT OF FACTS ...............................................................................1

I.   DEFENSE COUNSEL STIPULATED TO THE ADMISSION OF CELL PHONE TOWER EVIDENCE PLACING SOMEONE USING A PHONE USED BY MR. ROBINSON IN CLOSE PROXIMITY TO THE AREA OF THE SHOOTING AT A TIME JUST BEFORE AND AFTER THE SHOOTING. DEFENSE COUNSEL SHOULD HAVE OBJECTED TO THE ADMISSION OF THIS EVIDENCE, OR REQUESTED A DAUBERT HEARING, OR AT THE VERY LEAST CALLED AN EXPERT. DEFENSE COUNSEL'S FAILURES DENIED MR. ROBINSON EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS OF LAW. US CONST. AM VI, XIV ................................................................12

II.  DEFENSE COUNSEL STIPULATED TO THE INTRODUCTION OF TESTIMONY REGARDING IRRELEVANT SEX TAPES, DID NOT OBJECT TO LINES OF QUESTIONING REGARDING THOSE TAPES, AND DID NOT OBJECT TO THE INTRODUCTION OF TEXT MESSAGES OR TESTIMONY PORTRAYING MR. ROBINSON IN A BAD LIGHT. DEFENSE COUNSEL'S FAILURE TO OBJECT DENIED MR. ROBINSON HIS RIGHT TO EFFECTIVE COUNSEL AND DUE PROCESS OF LAW. US CONST. AM VI, XIV. ................................................................25

III. DEFENSE COUNSEL FAILED TO OBJECT TO THE PROSECUTOR'S MISCONDUCT OF REFERENCING FACTS NOT IN EVIDENCE AND THE PROSECUTOR'S APPEAL TO  SYMPATHY IN BOTH OPENING AND CLOSING ARGUMENTS. DEFENSE COUNSEL'S FAILURE TO OBJECT DENIED MR. ROBINSON HIS RIGHT TO EFFECTIVE COUNSEL AND DUE PROCESS OF LAW. US CONST. AM VI, XIV ...... 32

SUMMARY AND RELIEF.............................................................................37

**VRN*BOA FINAL 1-12-15.docx*27619  January 12, 2015**
**Lamarr Valdez Robinson**

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

## <u>INDEX OF AUTHORITIES</u>

### CASES

*Berger v United States*, 295 US 78; 55 S Ct 629, ; 79 L Ed 1314 (1935) .....................................33

*Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579, 113 S Ct 2786, 125 L Ed 2d 469

    (1993) .............................................................................................................................14

*Donnelly v DeChristoforo*, 416 US 637, 94 S Ct 1868, 40 L Ed 2d 431 (1974) .........................34

*Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 685 NW2d 391 (2004) .............................13, 14

*McMann v Richardson*, 379 US 759, 90 S Ct 1441, 25 L Ed 2d 763 (1970) ...............................22

*Payne & Bond v State*, 211 Md App 220, 65 A3d 154 (2013) ....................................................15

*People v Aldrich*, 246 Mich App 101, 631 NW2d 67 (2001) ................................................32, 34

*People v Bahoda*, 448 Mich 261, 531 NW2d 659 (1995) ...........................................................33

*People v Bennett*, 290 Mich App 465; 802 NW2d 627, (2010), .................................................32

*People v Blackmon*, 280 Mich App 253, 761 NW2d 172 (2008) .................................................34

*People v Brooks*, 453 Mich 511, 557 NW2d 106 (1996) .............................................................30

*People v Burrell*, 127 Mich App 721; 339 NW2d 239, (1983) ...................................................33

*People v Carines*, 460 Mich 750, 597 NW2d 130 (1999) .....................................................25, 32

*People v Dobek,* 274 Mich App 58, 95, 732 NW2d 546 (2007) .................................................. 18

*People v Douglas*, 496 Mich 557, 852 NW2d 587 (2014) ..........................................................20

*People v Elston*, 462 Mich 751, 614 NW2d 595 (2000)..............................................................24

*People v Fackelman*, 489 Mich 515, 802 NW2d 552 (2011) ......................................................15

*People v Henry*, 239 Mich App 140, 607 NW2d 767 (1999)...............................................12, 25, 32

*People v Hubbard,* 209 Mich App 234, 530 NW2d 130 (1995) .................................................. 18

*People v Leach,* 114 Mich App 732, 736, 319 NW2d 652 (1982) ...............................................26

i

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

*People v Leblanc*, 465 Mich 575, 640 NW2d 246 (2002) ..................................................... passim

*People v McCain*, 84 Mich App 210, 269 NW2d 528 (1978) ...........................................33

*People v Mitchell*, 131 Mich App 69, 345 NW2d 611 (1983)..........................................33

*People v Musser*, 494 Mich 337, 835 NW2d 319 (2002) .................................................20

*People v Pickens*, 446 Mich 298, 521 NW2d 797 (1994) ...............................................22

*People v Richardson*, 489 Mich 940; 798 NW2d 13 (2011) ...........................................33

*People v Rimson*, 63 Mich App 1, 233 NW2d 867 (1975)..............................................26

*People v Snyder,* 462 Mich 38, 609 NW2d 831 (2000)....................................................24

*People v Stanaway*, 446 Mich 643, 521 NW2d 557 (1994) .............................................33

*People v Unger*, 278 Mich App 210, 749 NW2d 272 (2008)....................................14, 33

*People v Williams*, 114 Mich App 186, 198l 318 NW2d 671 (1982)..............................33

State v Barriner, 34 SW3d 139, 146 ...............................................................................27

*State v Patton*, 419 SW3d 125 (Mo Ct App 2013) ........................................................15

*Strickland v Washington*, 466 US 668, 104 S Ct 2052, 80 L Ed 2d 674 (1984).................. passim

*Tobin v Providence Hospital,* 244 Mich App 626, 650-51, 624 NW2d 548 (2001) ....................19

*United States v Olano*, 507 US 725, 113 S Ct 1770, 123 L Ed 2d 508 (1993)......................26, 33

*Wilder v State*, 191 Md App 319, 991 A2d 172 (2010) ...............................................15

## CONSTITUTIONS, STATUTES, COURT RULES

Michigan Rule of Evidence 401 ...................................................................................... 30

Michigan Rule of Evidence 403 ...................................................................................... 30

MRE 404(a) ..................................................................................................................... 27

MRE 702............................................................................................................................ 13, 14

# STATEMENT OF JURISDICTION

Defendant-Appellant was convicted in the Wayne County Circuit Court by jury trial and a Judgment of Sentence was entered on February 15, 2011.  A Claim of Appeal was filed on May 16, 2014 by the trial court pursuant to the indigent defendant's request for the appointment of appellate counsel dated May 9, 2014, as authorized by MCR 6.425(F)(3).  This Court has jurisdiction in this appeal as of right provided for by Mich Const 1963, art 1, §20, pursuant to MCL 600.308(1); MCL 770.3; MCR 7.203(A), MCR 7.204(A)(2).

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

## STATEMENT OF QUESTIONS PRESENTED

I.      **DEFENSE COUNSEL STIPULATED TO THE ADMISSION OF CELL PHONE TOWER EVIDENCE PLACING SOMEONE USING A PHONE USED BY MR. ROBINSON IN CLOSE PROXIMITY TO THE AREA OF THE SHOOTING AT A TIME JUST BEFORE AND AFTER THE SHOOTING. SHOULD DEFENSE COUNSEL HAVE OBJECTED TO THE ADMISSION OF THIS EVIDENCE, OR REQUESTED A DAUBERT HEARING? OR AT THE VERY LEAST CALLED AN EXPERT? DID DEFENSE COUNSEL'S FAILURES DENY MR. ROBINSON EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS OF LAW? US CONST. AM VI, XIV.**

        Trial Court made no answer

        Defendant-Appellant answers, "Yes".

II.     **DEFENSE COUNSEL STIPULATED TO THE INTRODUCTION OF TESTIMONY REGARDING IRRELEVANT SEX TAPES, DID NOT OBJECT TO LINES OF QUESTIONING REGARDING THOSE TAPES, AND DID NOT OBJECT TO THE INTRODUCTION OF TEXT MESSAGES OR TESTIMONY PORTRAYING MR. ROBINSON IN A BAD LIGHT. DID DEFENSE COUNSEL'S FAILURE TO OBJECT DENY MR. ROBINSON HIS RIGHT TO EFFECTIVE COUNSEL AND DUE PROCESS OF LAW? US CONST. AM VI, XIV.**

        Trial Court made no answer

        Defendant-Appellant answers, "Yes".

III.    **DEFENSE COUNSEL FAILED TO OBJECT TO THE PROSECUTOR'S MISCONDUCT OF REFERENCING FACTS NOT IN EVIDENCE AND THE PROSECUTOR'S APPEAL TO SYMPATHY IN BOTH OPENING AND CLOSING ARGUMENTS. DID DEFENSE COUNSEL'S FAILURE TO OBJECT DENY MR. ROBINSON HIS RIGHT TO EFFECTIVE COUNSEL AND DUE PROCESS OF LAW? US CONST. AM VI, XIV**

        Trial Court made no answer

        Defendant-Appellant answers, "Yes".

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

## STATEMENT OF FACTS

Defendant-Appellant Lamarr Valdez Robinson was convicted as charged by jury of assault with intent to murder, *MCL 750.83*, possession of a firearm by a felon, *MCL 750.224f*, and possession of a firearm in the commission of or attempt to commit a felony, *MCL 750.227b*, in Wayne County Circuit Court, before the Honorable Vera Massey Jones. *Trial Transcript 1/31/11, (T4) 110*.[1] Judge Jones sentenced[2] Mr. Robinson as follows: two years imprisonment for possession of a firearm by a felon to be served consecutively to two concurrent terms of 47.5 to 120 years imprisonment for assault with intent to murder and felon in possession of a firearm. *Sentencing Transcript (ST) 15-16*.[3] Mr. Robinson appeals as a matter of right[4].

It was undisputed that Mr. Jamel Chubb was shot at a gas station in Detroit. *T1 256; T2 35*. Multiple witnesses were present at the gas station, and multiple others saw some part of the incident. *T1 116-17, 166, 177, 193-94; T2 8, 45; T3 107*. A video from the gas station surveillance system showed the shooting, but did not reveal the shooter's face.

The central issue was the identity of the shooter. Seventeen witnesses testified at trial but only two, Ms. Jessica Taylor and Mr. Larry Paul Smith, offered testimony that addressed the identity issue.

---

[1] Trial began 1/26/11 and lasted four court days, ending 1/31/11. The transcripts will be cited sequentially with T1 referencing trial transcript 1/26/11 and T4 referencing trial transcript 1/31/11.
[2] Mr. Robinson was sentenced as a fourth habitual offender.
[3] Mr. Robinson was convicted after a jury trial. However, the Michigan Department of Corrections database indicates that he pled guilty.
[4] This appeal was delayed due to retained appellate counsel's failures, which resulted in dismissal of the appeal, the time that passed before the appeal was reinstated and current counsel, who is substitute appellate counsel, being appointed.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

**The Trial**

**The Day Of The Incident**

By May 2010, Jessica Taylor had been dating Lamarr Robinson for about two years. *T2 22*. Ms. Taylor had two boyfriends at the time: Mr. Robinson and Mr. Chubb. *T1 268-69; T2 2, 118*.

In the weeks preceding Mr. Chubb's shooting, Mr. Robinson had purchased for Ms. Taylor a cell phone and a pair of Coach shoes. *T2 51, 78*. Mr. Robinson had also recorded himself and Ms. Taylor having sex, only telling her afterwards. *T2 74*. Ms. Taylor thought that Mr. Robinson was involved with other women. *T2 85*. The two had previously argued about the source of a sexually transmitted infection for which they had both tested positive. *T1 267; T2 86*.

On the morning of May 13, 2010, Ms. Taylor contacted Mr. Robinson and invited him to come to her mother's house in Livonia. *T2 23*. While Mr. Robinson was en route, Ms. Taylor received a call from her other boyfriend, Mr. Chubb. Mr. Chubb wanted to see her so she cancelled with Mr. Robinson to instead see Mr. Chubb. *T2 124*. Mr. Robinson arrived at Ms. Taylor's mother's house in a red truck *T2 31* and they talked for a bit. *T2 24-25*. Mr. Robinson tried/wanted to have sex with Ms. Taylor and she rebuffed him. *T2 29-30*.

Around this time, Mr. Chubb arrived and approached the side door. *T2 139*. Ms. Taylor ushered Mr. Robinson out the front door and let Mr. Chubb in through the side door. *Id* Mr. Robinson reentered through the front door, and he and Ms. Taylor had an argument. *T2 26*. Mr. Chubb left the house. *T2 141*.

Mr. Robinson left after about ten minutes, and Mr. Chubb returned about fifteen minutes after that. *T2 141*. Before leaving, Mr. Robinson told Ms. Taylor: "Don't let me catch y'all in the hood." *T2 28*. Mr. Chubb was not in the apartment at the time, and Ms. Taylor did not perceive

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

the comment as a threat. *T3 5*. Mr. Chubb returned to Ms. Taylor's mother's home and the two left in Mr. Chubb's gold colored Land Rover to go to Ms. Miller's house on Seven Mile and Ohio Street in Detroit. *T2 15, 30-31*.

At Ms. Miller's house Mr. Chubb, Ms. Taylor, Ms. Miller and Ms. Davies smoked "some blunts" — cigars split and re-rolled full of marijuana . *T2 7, 32*. Ms. Taylor said that she supplied the marijuana. *T2 104*.

After smoking a few "blunts" at Ms. Miller's house, the group left in Mr. Chubb's vehicle to pick up some food. *T2 33*. After getting the food, the four headed in the direction of Ms. Miller's house. *T2 16*. Mr. Chubb was driving with Ms. Taylor in the front passenger seat, Ms. Miller in the passenger side back seat, and Ms. Davies in the driver side back seat. *T2 33-34*.

**The Incident**

Mr. Chubb stopped at a BP gas station on Seven Mile and Wyoming. *T2 34*. He was pumping gas and Ms. Taylor and Ms. Miller had their doors open. *Id.* Ms. Taylor and Ms. Miller closed their doors, and at roughly the same time, an individual in a blue hooded sweatshirt riding a green bmx-style bicycle, *T1 178*, pulled up behind Mr. Chubb. *T2 35; T3 28*. The assailant raised a black handgun to the base of Mr. Chubb's head and fired multiple times. *T2 35*, striking Mr. Chubb. *T1 157*. Mr. Chubb fell to the ground. *T2 14*. The shooter fled on the green bicycle. *T2 37*.

A surveillance camera at the BP gas station recorded the entire incident, albeit from an angle that did not reveal the shooter's face. Three young boys playing baseball in a nearby park, saw an individual wearing a blue hooded sweatshirt riding a green bicycle turn down Washburn then turn on Ilene. *T1 166*. Ms. Miller called an ambulance. *T2 42*.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

**Mr. Chubb's Injuries**

Mr. Chubb was shot and he was in a coma at the time of trial. *T1 157*. Witnesses at the scene described extensive bleeding. *T1 135-36, 230*.

**The Passengers**

***Ms. Jessica Taylor***

Ms. Taylor was the only witness to identify Mr. Robinson as the shooter. *T2 45*. She claimed that she saw his face immediately after the shots were fired and Mr. Chubb's body hit the ground. *Id* At the scene, Ms. Taylor did not tell police she had seen the shooter's face or that Mr. Robinson was the shooter, but did give them Mr. Robinson's name. *T2 44*. It was not until twelve days later, on May 25, that Ms. Taylor told the police she had seen Mr. Robinson's face during the shooting. *T2 44-45*. She testified at trial that she omitted this from her earlier statement because she was scared of what might happen if she revealed that she had seen Mr. Robinson's face, *T2 43*, and later felt she owed it to Mr. Chubb to tell the police that she had actually seen Mr. Robinson's face. *T2 45*. Ms. Taylor left Michigan for West Virginia, which delayed the trial from its original start date. She said she did so because she was scared. *T2 46*.

Ms. Taylor testified without objection about a sex tape Mr. Robinson had made of them, as well as about sexually explicit text messages between her and Mr. Robinson. *T2 94*.

***Ms. Jasmine Miller***

Ms. Miller had seen a white van, which she knew to be Mr. Robinson's, near her house on two to three occasions. *T1 250*. She did not see Mr. Robinson's van on the day of the shooting, *T2 8*, or identify him as the shooter, despite being in the backseat of the car during the

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

shooting, *T1 259*, the occurrence of which had prompted everyone in the car to "get down." *T1 256*.

### Ms. Kayana Davies

Immediately after hearing the gunshots, all three women in the Land Rover, including Ms. Taylor, ducked down. *T3 107, 112*. Like Ms. Miller, Ms. Davies did not see Mr. Robinson or his van on the day of the shooting, and did not identify Mr. Robinson as the shooter, despite being in the car during the shooting. *T3 107*.

### The Expert Testimony

### Mr. Larry Paul Smith

Mr. Smith explained his qualifications for reading and storing Metro PCS records, but not for analyzing how they might reflect a particular phone's general location. *T2 146-47*. Defense counsel did not object to his being presented as "an expert in the workings of Metro PCS' records," *T2 148*, and stipulated to his qualifications. Mr. Smith stated that "as a custodian of records, what we do is maintain the storage and accuracy of our phone records . . . and then from time to time we're called across the country to testify in civil and criminal trials." *T2 147*.

The prosecution presented Mr. Smith as an expert on the way in which Metro PCS phone towers register call signals and how that can reveal information about the location of the phone when the call is made. *T2 146-47*. The prosecution introduced a map compiled from the records about which Mr. Smith testified, which put someone using a phone used by Mr. Robinson in the general area of the gas station at the time of the shooting. The Metro PCS phone with a number ending in 1440, which Officer Rettig and Ms. Miller identified as Mr. Robinson's number, *T1 214, 245*, was registered to a Ms. Tamika Scott, *T2 148*, but individuals did not need to provide a real name or their actual home address when registering with Metro PCS. *T2 149*. Mr. Smith

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

admitted that Metro PCS towers do not have Global Positioning System capabilities, *T2 153*, but said the towers could determine which direction a signal was coming from, as well as the general area from which the call was made. *T2 152*.

According to Mr. Smith, a cell tower could have a range of as great as seven miles or more, meaning calls from that far away could register with the tower. *T2 163*. He asserted that in Detroit, because of densely populated areas and thus more towers in a given space, towers would have a range of approximately one to one and a half miles. *T2 162*. Mr. Smith admitted that due to limited capacity, calls can and often do register with towers other than those closest to where the call was placed. *T2 164*.

The prosecution had Mr. Smith read a series of text messages sent to and from the 1440 number in order to show that whoever was using the 1440 phone had texted that he was "stakn jazz house out" in the weeks prior to the shooting, *T2 188*, had received the message "45 small with hammer star 400$," *T2 190*, and had told someone "News 2 4 & 7" soon after the shooting. *T2 196*. The prosecution also had Mr. Smith read a series of text messages between Mr. Robinson's, Mr. Chubb's, and Ms. Taylor's phones. Mr. Robinson sent Mr. Chubb and Ms. Taylor various text messages in the days leading up to the shooting, as well as on the day of. *T2 194-95*.

On cross examination, Mr. Smith admitted that the distance ranges he provided about the cell towers were only approximations, *T2 199*, and that such information did not allow Metro PCS to pinpoint where in an approximate radius as big as seven miles a call was made. *T2 200*. The prosecution relied on this general area identification in both opening and closing argument, claiming that "We know where you are when you make a phone call," *T1 123*, in opening and

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

that the records could show that "the shooter [took] a certain path. And then [sic] the defendant [took] the same path," in closing. *T4 29*.

### Witness at the Gas Station

#### *Mr. Tremaine Maddox*

Mr. Maddox was at the BP gas station at the time of the incident, going to get something for a friend. *T1 188*. He went to the station twice, and on exiting his first time, saw an individual in a blue hooded sweatshirt on a bright green bike riding toward the gas station on Seven Mile. *T1 192*. Upon leaving the BP station after his second trip there, Mr. Maddox saw that same individual shoot Mr. Chubb. *T1 193-94*. After shooting Mr. Chubb, the assailant, who looked young and had a full beard "ear to ear," *T1 202-203*, put away a black gun that appeared to have an extended magazine and rode off down Washburn *T1 194-95*. After the shooting, police detained Mr. Maddox and brought him in to look at a lineup which included Mr. Robinson. *T1 200*. Mr. Maddox did not identify anyone in the lineup. *T1 201*.

### Boys Playing Baseball in a Nearby Park

#### *Mr. Zjzjai Smith*

Mr. Zjzjai Smith was one of a group of young boys playing baseball in a park near the BP gas station at the time of the shooting. *T1 105*. He heard gunshots and saw an individual in a blue hooded sweatshirt riding a green bike down Washburn and then Ilene. *T1 166*. While Mr. Smith was unable to identify the person on the bike he did give the police a description of the person. *T1 167*. The person he saw was 5'11" – 6', medium complexion, about 150 lbs and 17-20 years old. *T1 173*.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

### Mr. Jamir Gray

Mr. Gray was one of a group of young boys playing baseball in a park near the BP gas station at the time of the shooting. *T1 177*. He heard gunshots and saw an individual in a blue hooded sweatshirt riding a green bmx-style bike down Washburn and then Ilene. *T1 177-79*. Mr. Gray never got a good luck at the person's face *T1 186-187* but told the police the person was a teenager *T1 181-186*.

### Mr. Timothy Mapson

Mr. Mapson was one of a group of young boys playing baseball in a park near the BP gas station at the time of the shooting. *T3 116*. He heard gunshots and saw an individual on a green bmx-style bike ride down Washburn and then Ilene. *T3 116-17*. Mr. Mapson thought the individual was his young friend because he thought it was his friend's bike. *T3 117*. Mr. Mapson was unable to provide a detailed description of the individual's face, but told police the individual had no moustache. *T3 123*.

### Sex Tape Testimony Beyond Ms. Taylor's

### Mrs. Sabrina Johnson

Mrs. Johnson, Mr. Robinson's common-law stepmother, was having a text exchange with Mr. Robinson in the evening of May 13. *T3 136*. At trial she described Mr. Robinson's relationships with women aside from Ms. Taylor, after the prosecutor asked about other "lad[ies] of his." *T3 137*. The prosecution asked Ms. Johnson to confirm that she had told them Mr. Robinson was controlling with women, but she would not confirm having said this. *T3 139*. Ms. Johnson also described a text message exchange between her and Mr. Robinson regarding a sex tape made by Kim Kardashian. *T3 141-42*. The prosecution engaged Ms. Johnson in a series of questions regarding the Kardashian sex tape. *T2 141-46*.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

**Police Witnesses**

*Jeff Amley*

Sergeant Amley, an expert in firemark identification, *T3 54*, provided background information on how semi-automatic handguns might be converted to fully automatic, *T3 66*, stated that all eight .45 Automatic Colt Pistol (ACP) shell casings recovered from the BP station were from the same weapon, *T3 68, 70*. He thought that the gunshots audible in the surveillance video sounded like they could have come from a fully automatic weapon. *T3 86*.

*Derek Emme*

Sergeant Emme, an expert on latent fingerprint identification, *T3 89*, was unable to recover any fingerprints from the shell casings taken from the scene of the shooting. *T3 97*.

*Khari Mason*

Officer Mason was one of the first to arrive at the scene of the shooting. He saw Mr. Chubb on the ground by the gas pump, *T1 136*, noted up to twenty bags of marijuana scattered around Mr. Chubb's body, *T1 143-144*, and narrated the events depicted on the surveillance video *T1 138-43*. He spoke with Jessica who was very upset. She said she did not know who shot her boyfriend but that he had been having trouble with her ex- boyfriend and named Mr. Robinson. *T1 137-138*. From his involvement there was nobody able to identify the shooter. *T1 145*.

*Alvin Rettig*

Officer Rettig pursued the shooter on the night of May 13, with only the name "Lamarr" to go by. *T1 208*. Officer Rettig saw Mr. Robinson's white van on Sunderland, the street on which Mr. Robinson's stepmother lives, had a marked car make a traffic stop, and arrested Mr.

Robinson. *T1 209*. Officer Rettig confiscated two cell phones Mr. Robinson had with him at the time, but did not find a bicycle, green or otherwise. *T1 210*.

**Tonya Good**

Officer Good, a former neighbor of Ms. Miller, *T3 127*, responded to the scene of the shooting and saw Mr. Chubb on the ground. *T3 127, 133*. In weeks prior to the shooting, Ms. Miller had described to Officer Good seeing a white van belonging to Mr. Robinson on her block. *T3 128*. Officer Good saw such a white van, but never identified whose van it was. *T3 128, 132*.

Officer Good spoke with Ms. Taylor who told her she thought the shooter was her ex-boyfriend but never said she saw the shooter. *T3 129*.

**Derrick Maye**

Officer Maye was in charge of the investigation of Mr. Robinson's case. *T3 159*. He performed searches on four homes connected with Mr. Robinson in the days following the incident, but failed to recover either a weapon used in the shooting or a bicycle. *T3 172*.

Officer Maye became aware of sex tapes Mr. Robinson made with Ms. Taylor. *T3 169-170*. He questioned Ms. Johnson about the tapes and she told the Officer she was aware of sex tapes that Mr. Robinson had made with various weapons and were kept at her home. *T3 170*. Despite the search of four homes connected to Mr. Robinson no sex tapes were found. *T3 180*.

**<u>Surveillance Video From the Gas Station</u>**

As described at trial, the video[5] showed Mr. Chubb by the Land Rover pumping gas. *T1 140*. About two minutes before the shooting, an individual in a blue hooded sweatshirt on a green bike rode by the station. *T1 142*. An individual in a red sweatshirt, who Mr. Maddox identified as himself, *T1 201-02, 205*, walked past the view of the camera. After Mr. Maddox had left the

---

[5] As of the date of filing the brief, appellate counsel has not been able to obtain the video.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

screen, the individual in the blue hooded sweatshirt on a green bike came back into view, pulled up behind Mr. Chubb, raised a handgun to the back of his head, and fired. *T1 141*. The video did not show the shooter's face or the reaction of the passengers inside the vehicle.

During closing arguments the prosecution speculated about the meaning of the text message sent on Mr. Robinson's phone following the shooting *T4 17-18*, spoke about the sex tapes, which the police admitted were never located *T4 18-19*, and became so emotional that the Judge stopped the argument despite counsel's failure to object *T4 76*. The prosecutor told the jury that "If you don't give justice to this family, no one ever will." *T4 77*.

Other facts will be discussed herein as relevant to the issues presented.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

**I.  DEFENSE COUNSEL STIPULATED TO THE ADMISSION OF CELL PHONE TOWER EVIDENCE PLACING SOMEONE USING A PHONE USED BY MR. ROBINSON IN CLOSE PROXIMITY TO THE AREA OF THE SHOOTING AT A TIME JUST BEFORE AND AFTER THE SHOOTING. DEFENSE COUNSEL SHOULD HAVE OBJECTED TO THE ADMISSION OF THIS EVIDENCE, OR REQUESTED A DAUBERT HEARING. OR AT THE VERY LEAST CALLED AN EXPERT. DEFENSE COUNSEL'S FAILURES DENIED MR. ROBINSON EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS OF LAW. US CONST. AM VI, XIV.**

**Issue Preservation**

Because defense counsel stipulated to the admission of the cell phone tower evidence at trial, *T2 146-47*, he did not preserve the issue of its admissibility.[6] However, Mr. Robinson may raise an ineffective assistance of counsel claim for the first time on appeal because it involves a constitutional error that could have decided the outcome. *People v Henry*, 239 Mich App 140, 146, 607 NW2d 767 (1999).

**Standard of Review**

Issues of ineffective assistance of counsel are decided under a test that requires "the greatest level of factual inquiry into the actual conduct of the defense and its effect on the outcome of the trial." *People v Leblanc*, 465 Mich 575, 578, 640 NW2d 246 (2002). Whether a defendant has been denied effective assistance of counsel is "a mixed question of fact and constitutional law." *Id* at 579. Questions of constitutional law are reviewed de novo. *Id*

**Argument**

    *A. Trial counsel's stipulation to the admission of expert testimony on cell phone tower tracking fell below an objective standard of reasonableness.*

---

[6] A motion to remand for an evidentiary hearing is being filed simultaneously with this appeal.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

Trial counsel's performance was deficient, and his representation of Mr. Robinson "fell below an objective standard of reasonableness." *Strickland v Washington*, 466 US 668, 686, 104 S Ct 2052, 80 L Ed 2d 674 (1984). Because of expert testimony's inherent power to sway the jury through technicality and intricacy, a prosecutor may offer, and a court may admit, such testimony only after they have ensured that it meets the standard of reliability prescribed in MRE 702.[7] *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 781, 685 NW2d 391 (2004). As the Supreme Court of Michigan explained in *Gilbert*, "This gatekeeper role applies to *all* stages of expert analysis. MRE 702 mandates a searching inquiry, not just of the data underlying expert testimony, but also of the manner in which the expert interprets and extrapolates from those data." *Id* at 782.

The prosecution offered expert testimony from Mr. Larry Paul Smith, "a custodian of records" for Metro PCS, whose job it was to "maintain the storage and accuracy of [Metro PCS'] phone records, such as subscriber information, call detail records, and text messages." *T2 146-47*. Mr. Smith had been with Metro PCS for "around three years" at the time of trial and the prosecution presented him as "an expert in the workings of Metro PCS and the records, how they are stored, recorded, and registered." *T2 147-48*. Defense counsel stipulated to Mr. Smith's qualifications as an expert. *T2 146-47*.

The prosecution put forth Mr. Smith's testimony to explain and draw conclusions from the "incoming and outgoing phone calls for [a phone number identified as Mr. Robinson's], along with the cell towers that first connected with on each of the calls, and the ending cell tower

---

[7] Michigan Rule of Evidence 702 provides: "If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is a product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." MRE 702.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

at the end of the call." *T2 150*. Mr. Smith testified that about a half hour before the incident, a call from Mr. Robinson's phone originated from a tower southeast of the tower where it ended, which was to the west of the BP station on Seven Mile. *T2 169, 174*. He testified that the phone in question registered as ending at a tower east of the BP station on Seven Mile shortly after that, *T2 170, 174*, then again at the tower to the west of the station. *T2 171*. He further claimed that a call from the phone originated at the tower west of the station after the shooting occurred. *T2 176*.

The prosecutor had Mr. Smith mark Seven Mile on a map in order to show where in relation to the gas station phone calls were being made. *T2 173*. Using the directions from which calls were made, and a ballpark estimation of each tower's range, Mr. Smith opined that the phone was in particular "sectors" at particular times. *T2 175-76*. The prosecution portrayed Mr. Smith's testimony as placing Mr. Robinson in the general vicinity of the gas station around the time of the shooting. *T4 28-29*.

Michigan appellate courts follow factors set by *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579, 596, 113 S Ct 2786, 125 L Ed 2d 469 (1993),[8] when evaluating whether proffered expert testimony meets MRE 702's reliability standards. *See e.g. Gilbert*, 470 Mich at 781; *People v Unger*, 278 Mich App 210, 218, 749 NW2d 272 (2008). To warrant a new trial, defense counsel's decision to stipulate to the admission of such evidence and not request a *Daubert/Gilbert* hearing must have been so serious as to deprive the defendant of his constitutional right to effective counsel. *Leblanc*, 465 Mich at 578 (citing *Strickland*, 466 US at 687). Here, defense counsel objected to neither Mr. Smith's qualifications as an expert nor the

---

[8] These factors include: "whether the [theory or technique] can be (and has been) tested, . . . whether the theory has been subjected to peer review and publication . . . the known or potential rate of error . . . the existence and maintenance of standards controlling the technique's operation . . . [whether the technique has gained] "general acceptance" [in the pertinent field.]" *Daubert*, 509 US at 593-94.

scientific validity and legal reliability of Mr. Smith's testimony, and even went so far as to stipulate to Mr. Smith's qualifications as an expert. *T2 147*. Defense counsel failed to protect Mr. Robinson from the erroneous admission of Mr. Smith's testimony, and his not doing so had a very serious effect on the outcome of the trial.

> 1. *Trial counsel's stipulation to Mr. Smith's qualifications as an expert witness fell below an objective standard of reasonableness because custodians of records are not qualified to draw conclusions from complex telecommunications data.*

Mr. Smith explained his qualifications for reading and storing Metro PCS records, but not for analyzing how they might reflect a particular phone's general location. *T2 146-47*. He provided no evidence reflecting an expertise in telecommunications, engineering, physics, or any other discipline that would allow him to insightfully draw specific conclusions from raw cell data. *Id* Despite this, defense counsel failed to object to his testimony despite having stipulated to his qualifications as just "an expert in the workings of Metro PCS' records." *T2 148*.

Though a Michigan court has not ruled on the particular question, appellate courts in other jurisdictions have consistently deemed specific expertise necessary to opine about the statistics and data reflected in the records kept by cell phone providers. *See State v Patton*, 419 SW3d 125 (Mo Ct App 2013); *Wilder v State*, 191 Md App 319, 991 A2d 172 (2010); *Payne & Bond v State*, 211 Md App 220, 65 A3d 154 (2013). If not for defense counsel's stipulation to Mr. Smith's qualifications as an expert, there is a reasonable probability the trial court would not have deemed him an expert in how to extrapolate location conclusions from Metro PCS records. Custodians of records are regularly considered experts sufficient to verify that records are kept in the regular course of business, *see People v Fackelman*, 489 Mich 515, 536, 802 NW2d 552 (2011), but not to explain how those records can be used to draw conclusions about the location of a cell phone in question based on data from two or fewer towers. Thus, defense counsel's

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

stipulation to Mr. Smith's qualifications as an expert fell below an objective standard of reasonableness and denied Mr. Robinson his right to effective counsel.

> 2. *Trial counsel's stipulation to the admission of expert testimony on cell phone tower tracking fell below an objective standard of reasonableness because cell phone tower tracking is not per se scientifically valid or legally reliable and therefore should have been the subject of a Daubert/Gilbert hearing.*

Despite the fact that Mr. Smith was just Metro PCS' Custodian of Records, *T2 146*, and despite the fact that the type of data he presented has frequently been called into question on grounds of its legal reliability and scientific validity, defense counsel failed to object to Mr. Smith's credentials or the reliability of the data and methods upon which he was basing his testimony. *T2 147*. Not only did defense counsel decline to request that the court evaluate Mr. Smith's proposed testimony under the *Daubert* factors in order to determine its scientific validity and legal reliability, he stipulated to the admissibility of Mr. Smith's proposed testimony. *T2 146-47*.

Cell phone tower evidence can be unreliable junk science. Some experts in the telecommunications field argue that it has no place in the courtroom. Michael Cherry and Manfred Schenk are preeminent authorities on cell phone tower tracking, the only such experts to testify in successful challenges to cell phone tower evidence. They, along with law professor Edward J. Imwinkelried and a few defense attorneys, wrote an article in *Judicature* magazine arguing that such evidence is very unreliable and can be extremely misleading. Michael Cherry, et al., *Cell Tower Junk Science*, 95 Judicature n.4, 151 (2012). They point to the fact that the Federal Communications Commission (FCC) mandates that cell phone providers use either a GPS-like technology or a comprehensive network-based approach to provide emergency 911 locations of callers in the event they need assistance. *Id* As the authors argue, "No one who

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

understands the relevant science would ever claim that data from a single cell phone tower is adequate [to show an individual's location]." *Id*

In this case, Mr. Smith opined as to the likely range of cell phone tower signals in a congested area like Detroit, but gave no basis for how he knew by how much the congestion reduced the range. *T2 162*. The prosecutor even went so far as to say that "We know where you are when you make a phone call." *T1 123*. The lack of information by which to make Mr. Smith's estimates more accurate is exactly why the evidence should have been challenged and a separate evidentiary hearing requested. Cherry, Schenk, Imwinkelried, and the other authors contend that without such information, even claims that the data can place a person in an area with a ten-mile radius are false. Cherry et al, at 151.

In a 2013 article in CRIMINAL LAW BULLETIN, Imwinkelreid, along with James Beck and Christopher Magana, evaluated how the use of cell phone tower evidence to place individuals in general areas fares under the *Daubert* factors. Beck et al, *Global Positioning*. There are multiple techniques one can utilize to attempt to use cell phone tower data to determine a phone's approximate location. *Id* at 1-2. In this case, Mr. Smith neither utilized GPS, *T2 153*, nor triangulation, but rather relied on directional indicators and approximate radii of towers.[9]

The particular technique Mr. Smith utilized, about which his testimony was far from specific, fails all of the *Daubert* factors. It has not been and cannot be tested, because without knowing the specific assumptions and variables Mr. Smith used to come to his conclusions, one cannot readily identify his technique. *See* Beck et al, *Global Positioning*, at 10-11. Schenk has testified that even Mr. Smith's most basic assumptions, that (1) one can identify which tower a

---

[9] For a comprehensive explanation of the underlying science of how cell phone towers work and how they can and cannot be used to determine the general location of a given phone, see Beck, et al, *The Use of Global Positioning (GPS) and Cell Tower Evidence to Establish a Person's Location – Part II*, 49 CRIMINAL LAW BULLETIN 3 (Summer 2013) *available at* https://wvn.fd.org/pdf/2014%20CJA%20Seminar/imwinklCell%20Phone%20Part%20II.pdf.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

cell phone registered with during a given call, and (2) one can know whether a particular call was routed through a particular tower, are impossible. *See People v Williams*, 2013 WL 5629647.

Similarly, the difficulty of identifying Mr. Smith's particular technique makes it impossible for his conclusions to have survived peer review. *See* Beck et al, *Global Positioning*, at 11-12. The same is true of discovering known or potential rates of error, which is further complicated by the fact that cell phone companies rarely release this type of data to the public. *Id* at 12. Because Mr. Smith's technique is not standardized or even clearly explained, there is no way there are general standards for its implementation. *Id* Lastly, this uncertainty makes it very difficult for the technique to have gained "general acceptance," specifically in the pertinent fields of telecommunications and engineering, rather than in the field of law enforcement. *Id* at 13. Mr. Smith's technique and testimony clearly fall short of all of the *Daubert* factors, and it was unreasonable for defense counsel not to recognize this and object.

In *People v Hubbard*, this Court analyzed the admissibility of junk science in the context of "drug profile evidence." *Id*, 209 Mich App 234, 530 NW2d 130 (1995). In that case, the defendant was convicted in large part due to testimony from a detective who had worked on a large number of drug cases, and claimed that he could identify common characteristics of drug dealers, many present in defendant's case. *Id* at 237-38. This Court found such drug dealer profiling unreliable, held that the trial court had erred by admitting the evidence and that such error was not harmless, and remanded the case for further proceedings. *Id* at 243.

In *People v Dobek*, this Court decided that the trial court's exclusion of evidence on psychological tests and how they related to a person's disposition to commit sexual offenses was proper because the tests and the testimony derived from them "were not sufficiently supported by the data, nor can the **science** be deemed sufficiently reliable". *Id*, 274 Mich App 58, 95, 732

NW2d 546 (2007). Finally, in *Tobin v Providence Hospital*, this Court concluded that expert testimony may be excluded when it is based upon unreliable and untrustworthy scientific data. *Id*, 244 Mich App 626, 650-51, 624 NW2d 548 (2001).

In *People v Keys*, this Court decided in an unpublished opinion that the trial court had not erred in admitting cell phone tower evidence in order to show that defendant was *not* in a particular location, as opposed to showing that he was somewhere specific. *Id*, ("There is an important distinction between concluding that an individual was not in a specific place at a specific time, as opposed to affirmatively stating that an individual was at a particular location at a particular time.") Though the authority is not binding, this Court should be cognizant of the lesson from *Keys* because it bears so directly on the evidence at issue in this case. The prosecution did not use Mr. Smith's testimony to show Mr. Robinson was not where he claimed to have been, but rather where he was at the time of the shooting. This sort of overly particularized use is exactly what the *Keys* court was counseling against.

Mr. Smith's testimony was based upon unreliable and untrustworthy scientific data and largely undisclosed methodology. Those who know the most about how cell phone towers really work, experts on that particular subject and the federal agency tasked with regulating the towers, have consistently denied the reliability and evidentiary value of cell phone tower records. Defense counsel should have objected to the admission of Mr. Smith's testimony in order to allow the judge to evaluate the testimony under the *Daubert* factors, and his failure to do so denied Mr. Robinson effective assistance of counsel and due process of law.

The prosecution buttressed Mr. Smith's testimony about cell towers by eliciting his testimony about text messages Mr. Robinson had sent, namely those that said he had staked out

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

Ms. Miller's house and told an individual to look at certain news channels, and a message he received, offering to sell him a .45 caliber pistol.

### C. Trial counsel's constitutionally deficient performance prejudiced Mr. Robinson and undermines confidence in the outcome of his trial. Thus, the second prong of the **Strickland/Pickens** *test is satisfied.*

The prosecution presented testimony from seventeen different witnesses, but only two were of real consequence to the outcome of the trial. The remaining witnesses testified to the occurrence of the crime, and were in large part corroborated by the surveillance tape.

In determining the prejudicial effect of erroneously admitted evidence, Michigan courts consider "the nature of the error in light of the weight and strength of the untainted evidence." *People v Douglas*, 496 Mich 557, 579, 852 NW2d 587, 599 (2014) (citing *People v Musser*, 494 Mich 337, 348, 835 NW2d 319, 327 (2002)).

The prosecution's case turned on the credibility of one witness, Ms. Jessica Taylor, in conjunction with the reliability of expert testimony from Mr. Larry Paul Smith.    The prosecution opened its case by telling the jury "some of you are just flat-out not going to like [Ms. Taylor]," *T1 120.*

Ms. Taylor was the only witness to claim she had seen Mr. Robinson's face during the shooting. She was dating both Mr. Robinson and Mr. Chubb at that time, going back and forth between the two. When she had a problem with Mr. Chubb, she would run to Mr. Robinson; when she had a problem with Mr. Robinson, she would run to Mr. Chubb. Mr. Robinson would buy her things, like a cell phone and a pair of Coach shoes. The morning of the shooting, Ms. Taylor invited Mr. Robinson over, then ditched him for Mr. Chubb, pushing Mr. Robinson out the front door while she surreptitiously let Mr. Chubb in the side door, hoping neither would bump into the other. *T2 25.* She contradicted herself frequently during direct examination, first

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

saying Mr. Robinson had not touched her that morning, then saying he gave her a hickey. *T2 25, 29*. She also claimed that he had not touched her violently, *T2 28*, then a few minutes later said he had pushed her down. *T2 30*.

At the scene of the shooting, Ms. Taylor told police she had not seen the shooter's face, then later changed her story and claimed to have seen Mr. Robinson shoot Mr. Chubb. *T2 44-45*. She claimed that Mr. Robinson rode up behind Mr. Chubb on a green bicycle, raised a handgun to the base of his head, and fired. *T2 35*. This was despite the fact that both Ms. Miller and Ms. Davies testified that everyone in the car had ducked immediately upon hearing the gunshots. *T1 256; T3 107*. Per Ms. Taylor's own statements, she had smoked a considerable amount of marijuana before witnessing the attack. *T2 32*.

There were numerous reasons to doubt Ms. Taylor's credibility, from her motive to get revenge on Mr. Robinson for making a sex tape without her knowledge, *T2 74*, and the fact that she blamed him for giving her a sexually transmitted infection, *T2 86,* to her impaired faculties of perception at the time of the attack. *T2 32*. All other witnesses alleged accounts consistent with the gas station surveillance video, which did not reveal the shooter's face, and none identified Mr. Robinson as the shooter, including Mr. Maddox who saw the shooter's face.

The other piece of evidence implicating Mr. Robinson came in the form of Mr. Smith's testimony. *T2 146*. Mr. Smith's claims about the ability of cell phone towers to accurately determine a particular phone's location served a vital bolstering role in lending credence to Ms. Taylor's version of the incident. He offered opinions as to the reliability of information gathered from phone tower records, and explained how that information implicated Mr. Robinson. The crucial role this evidence played made it even more unreasonable for defense counsel to not object to its admission.

*B. Mr. Robinson was entitled to, but did not receive, effective assistance of counsel.*

Mr. Robinson had a right to counsel under the United States and Michigan Constitutions. US Const, amend VI; Mich Const 1963, art 1, § 20. The United States Supreme Court "has recognized that 'the right to counsel is the right to the effective assistance of counsel.'" *Strickland v Washington*, 466 US at 686 (quoting *McMann v Richardson*, 379 US 759, 771 n14, 90 S Ct 1441, 25 L Ed 2d 763 (1970)).

The United States Supreme Court established the following two-prong test for evaluating an appellant's claim of ineffective assistance of counsel at trial: "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 US at 687. The Supreme Court of Michigan adopted the *Strickland* test for reviewing claims of ineffective assistance of counsel under the Michigan Constitution. *People v Pickens*, 446 Mich 298, 302-3, 521 NW2d 797 (1994); *LeBlanc*, 465 Mich at 578.

To satisfy the first prong of the *Strickland/Pickens* test, "the defendant must show that counsel's representation fell below an objective standard of reasonableness . . . In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 US at 688. To satisfy the second prong of the *Strickland/Pickens* test, "the defendant must show that the deficient performance prejudiced the defense." *Id* at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id* at 694. A "reasonable probability" standard is lower than a

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

preponderance of the evidence standard, and "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome of the case." *Id* at 693.

The prosecution offered expert testimony placing Mr. Robinson in the general area of the shooting, and Mr. Robinson's ability to dispute the scientific validity and legal reliability of this testimony was sabotaged by trial counsel's stipulation to the admission of such evidence and failure to effectively cross-examine the expert witness. Mr. Robinson was convicted because the prosecution was able to exploit defense counsel's failures. Further, defense counsel failed to call an expert.

As explained *supra*, the data and methods on which Mr. Larry Paul Smith based his testimony are unclear and likely unreliable. Disputing the admissibility of this evidence should have been a key aspect of Mr. Robinson's defense. Despite the widely supported criticism of the data and methods upon which Mr. Smith relied, *see* Michael Cherry et al, *Cell Tower Junk Science*, 95 JUDICATURE 151 (2012); James Beck et al, *The Use of Global Positioning (GPS) and Cell Tower Evidence to Establish a Person's Location – Part II*, 49 CRIMINAL LAW BULLETIN 3 (2013) (hereinafter referred to as *Global Positioning*), defense counsel did not challenge the evidence; he even stipulated to Mr. Smith's qualifications as an expert and to the admission of his testimony. *T2 146*.

Mr. Robinson can satisfy both prongs of the *Strickland/Pickens* test and show that his trial counsel was constitutionally deficient. Trial counsel's failure to demand a proper evidentiary hearing to determine the admissibility of Mr. Smith's testimony, or even object to its admission, was deficient performance that fell below an objective standard of reasonableness. Furthermore, trial counsel's failure to demand a hearing or challenge the evidence prejudiced Mr. Robinson and undermines confidence in the outcome of his trial.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

Without Mr. Smith's erroneously admitted testimony, the jury would have principally had Ms. Taylor's testimony as evidence implicating Mr. Robinson in the shooting, something the prosecutor admitted in closing argument, *T4 74*. Viewed "in light of the weight and strength of the untainted evidence," the admission of Mr. Smith's testimony, resulting from trial counsel's failure to object, undoubtably "undermined the reliability of the verdict." *People v Elston*, 462 Mich 751, 766, 614 NW2d 595, 602 (2000) (citing *People v Snyder*, 462 Mich 38, 45, 609 NW2d 831 (2000)). That undermining of the verdict entitles Mr. Robinson to a new trial, one not infected with the unfair taint of unreliable expert testimony. At the very least, Mr. Smith's testimony was influential enough that it should have been properly scrutinized, and this Court should alternatively remand this case for a hearing on the admissibility of such testimony and defense counsel's failure to call an expert if the testimony is admissible.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

**II.    DEFENSE COUNSEL STIPULATED TO THE INTRODUCTION OF TESTIMONY REGARDING IRRELEVANT SEX TAPES, DID NOT OBJECT TO LINES OF QUESTIONING REGARDING THOSE TAPES, AND DID NOT OBJECT TO THE INTRODUCTION OF TEXT MESSAGES OR TESTIMONY PORTRAYING MR. ROBINSON IN A BAD LIGHT. DEFENSE COUNSEL'S FAILURE TO OBJECT DENIED MR. ROBINSON HIS RIGHT TO EFFECTIVE COUNSEL AND DUE PROCESS OF LAW. US CONST. AM VI, XIV.**

<u>**Issue Preservation**</u>

Because defense counsel stipulated to the admission of testimony regarding sex tapes allegedly made by the defendant and one made by celebrities, *T2 74*; *T3 141*, the issue was not preserved. However, Mr. Robinson may raise an ineffective assistance of counsel claim for the first time on appeal because it involves a constitutional error that could have decided the outcome. *People v Henry*, 239 Mich App 140, 146, 607 NW2d 767 (1999).

<u>**Standard of Review**</u>

Issues of ineffective assistance of counsel are decided under a test that requires "the greatest level of factual inquiry into the actual conduct of the defense and its effect on the outcome of the trial." *People v Leblanc*, 465 Mich 575, 578, 640 NW2d 246 (2002). Whether a defendant has been denied effective assistance of counsel is "a mixed question of fact and constitutional law." *Id* at 579. Questions of constitutional law are reviewed de novo. *Id*

Unpreserved evidentiary issues are reviewed under a plain-error standard. *People v Carines*, 460 Mich 750, 764, 597 NW2d 130, 138 (1999). The plain error inquiry consists of a three-part test: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

the plain error affected substantial rights." *Id* at 763 (citing *United States v Olano*, 507 US 725, 731-34, 113 S Ct 1770, 123 L Ed 2d 508 (1993)).

**<u>Argument</u>**

> **A. Trial counsel's failure to object to the admission of Ms. Taylor's testimony about alleged sex tapes and related text messages fell below an objective standard of reasonableness.**

Ms. Taylor claimed that Mr. Robinson made a video of them having sex, and that she only found out about it after the fact. *T2 74*. She stated that when she found out about the tape, she felt "violated." *Id* Defense counsel did not object to the introduction of this evidence, but he should have. Its introduction did nothing more than enflame the jury and portray Mr. Robinson in a bad light, and defense counsel's failure to object to its admission fell below an "objective standard of reasonableness." *Strickland*, 466 US at 688. A basic understanding of the Michigan Rules of Evidence and general prosecutorial strategy would have dictated an objection to such evidence. The prosecution showed exactly what it intended the jury to take away from the testimony in closing argument by claiming that the sex tape and related text message testimony showed that Mr. Robinson was controlling and manipulative. *T4 10-11.*

In *People v Leach*, this Court held that the trial court's admission of testimony concerning unauthorized entry into complainant's home by defendant in a homicide prosecution was error because it was irrelevant. *Id*, 114 Mich App 732, 736, 319 NW2d 652 (1982). Though the *Leach* court ultimately concluded that the error of admitting such evidence was harmless, it is important to note that this Court found error in the admission of evidence that had significantly more probative value than the sex tape testimony in this case. Similarly, this Court found in *People v Rimson*, 63 Mich App 1, 4, 233 NW2d 867 (1975), that testimony regarding previous involvement in the illegal drug trade did not bear on whether defendant had sold heroin to a

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

police informer. The defendant's knowledge of the drug trade, while seemingly relevant in the abstract, bore little enough relevance to the issue in the case for its admission to be deemed error. That evidence was certainly more relevant than was testimony about Mr. Robinson allegedly making sex tapes.

In *State v Barriner*, the Supreme Court of Missouri, en banc, reversed defendant's conviction of capital murder in part because of the erroneous admission of evidence of defendant's consensual sexual conduct with a former girlfriend. *Id*, 34 SW3d 139, 146. The court deemed the risk of unfair prejudice of the evidence, which included a duffel bag containing dildos, far greater than any possible probative value it may have had. *Id* at 147. Though the authority is not controlling, the striking similarities between the improper admission in *Barriner* and Mr. Robinson's trial give the analysis significant persuasive force.

Whether Mr. Robinson made a sex tape of Ms. Taylor without her knowledge — and whether he did this with other women — had nothing to do with whether he was the shooter, aside from possibly showing that he was a generally bad person, and therefore more likely to have committed the crime in question, a use of evidence proscribed by MRE 404(a). MRE 404(a). But still, the prosecution played upon the testimony alleging his sexual history in order to convince the jury of exactly what is proscribed by the rules of evidence: that Mr. Robinson was an all-around bad actor. The prosecutor wove Mr. Robinson's alleged making of sex tapes in and out of opening, closing, and rebuttal statements, *T1 123; T4 29, 76*, infecting the entire proceeding with unfair prejudice and information irrelevant to the central issue.

Because the testimony's probative value was so obviously low, and its potential to create unfair prejudice so obviously high, defense counsel provided ineffective assistance by not objecting to its admission.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

The prosecution compounded the unfair prejudice by introducing text messages between Ms. Taylor and Mr. Robinson regarding their sex life, a sexually transmitted infection, and Mr. Robinson's urging Ms. Taylor to tell Mr. Chubb she was pregnant when in fact she was not. *T2 58; 73-75; 81-85*. Ms. Taylor went through a series of text messages regarding her knowledge of the sex tape, which were sent before she received a copy of the tape, despite the fact that she had claimed ignorance of its production earlier. *T2 73-75*.

The prosecution also had Mr. Larry Paul Smith read through a series of text messages sent between the phone Ms. Taylor identified as Mr. Robinson's and Mr. Chubb's phone, in which there were a number of demeaning comments and a threat to "Make sure you take ur bitch shit wit u cuz i will burn it." *T2 194-95*. Mr. Smith also read a series of text messages sent to Mr. Robinson's phone, ostensibly from other women. *T2 182-83*. Almost none of this testimony addressed the issue central to the case.

Like the sex tape testimony, the vast majority of the text messages had no probative value, and a great risk of unfairly prejudicing the jury against Mr. Robinson based on matters unrelated to the case. Defense counsel's failure to object to their admission denied Mr. Robinson his rights to effective counsel and due process of law.

### B. Trial counsel's failure to object to the admission of Mrs. Sabrina Johnson's testimony about alleged sex tapes and related text messages fell below an objective standard of reasonableness.

Mrs. Johnson revealed her knowledge of Mr. Robinson's alleged practice of making sex tapes when she was asked. Like Ms. Taylor's sex tape testimony and that about the text messages, this evidence served no purpose other than to enflame the jury and create a negative feeling toward Mr. Robinson. The probative value of such evidence was extremely low, and its potential for prejudice extremely high. This is especially true of Mrs. Johnson's testimony

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

regarding a tape Mr. Robinson had not himself made, featuring celebrities Ray J and Kim Kardashian. *T3 138*. The introduction of evidence regarding celebrities and their sexual proclivities presented a substantial risk of distracting and confusing the jury, and had no probative value.

### C. Trial counsel's failure to object to the testimony of Ms. Miller about Mr. Robinson's actions toward Ms. Taylor fell below an objective standard of reasonableness.

Ms. Miller knew Ms. Taylor, Mr. Chubb and Mr. Robinson. *T1 236-237*. She testified that she told Mr. Robinson not to hit Jessica or degrade her. Defense Counsel did not object to this testimony or other hearsay testimony until after the prosecutor had elicited a significant amount of prejudicial, inadmissible hearsay. *T1 241*. The Judge responded by stating that there was lots of hearsay being elicited and defense counsel was "just sitting there". *T1 241-242*.

Ms. Miller's testimony about the actions between Mr. Robinson and Ms. Taylor was irrelevant, prejudicial and elicited only to add to the narrative that Mr. Robinson was a controlling abusive person who could have committed the crime.

### D. Mr. Robinson was entitled to, but did not receive, effective assistance of counsel.

As addressed *supra*, Mr. Robinson had a right to effective assistance of counsel under the United States and Michigan Constitutions. Trial counsel failed to provide effective assistance by not challenging the admission of irrelevant, unfairly prejudicial evidence against Mr. Robinson.

Considering the circumstances, defense counsel's failure to object to clearly unfairly prejudicial evidence fell below an "objective standard of reasonableness." *Strickland*, 466 US at 688. There is no legitimate strategic reason to fail to object, and the evidence was unfairly prejudicial. So, Mr. Robinson satisfies the first prong of the *Strickland/Pickens* test. Mr. Robinson can also "show that there is a reasonable probability that, but for counsel's

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

unprofessional errors, the result of the proceeding would have been different," *id* at 694, and thus satisfies the second prong of the *Strickland/Pickens* test.

The standard of relevance under Michigan Rule of Evidence 401 is very permissive. *See People v Brooks*, 453 Mich 511, 517, 557 NW2d 106 (1996); MRE 401. Michigan Rule of Evidence 403 tempers this predisposition toward admission by allowing the court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or other considerations. MRE 403. In this case, testimony about Mr. Robinson's alleged sexual history, as well as testimony regarding text conversations he had with Ms. Taylor, Mr. Chubb, and other women, bore no relevance to the central issue of the case, despite the prosecutor arguing that they somehow demonstrated an aspect of his relationship with Ms. Taylor, *T4 76*, thus shedding light on whether he had the motive to commit the crime in question. Such testimony did, on the other hand, bring with it a very serious risk of unfairly prejudicing the jury against Mr. Robinson, and confusing the jury as to what the material issue in the case actually was.

**D. Trial counsel's constitutionally deficient performance prejudiced Mr. Robinson and undermines confidence in the outcome of his trial. Thus, the second prong of the Strickland/Pickens test is satisfied.**

The sex tape testimony, as well as the testimony about the text messages referencing the sex tape, the sexually transmitted infection, and the pregnancy lie, should have been objected to and excluded because their probative value was substantially outweighed by their potential to cause unfair prejudice, confusion of the jury, and unreasonable delay. Admitting the testimony prejudiced the jury against Mr. Robinson because, while contributing nothing to the issue central to the case, it portrayed Mr. Robinson in a generally bad light. In essence, the evidence served only to make the jury dislike Mr. Robinson as a person. Given that the prosecution's case rested

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

very heavily on the credibility of Ms. Taylor, painting Mr. Robinson as a bad person served to sway the jury towards believing otherwise incredible testimony. It seems likely that the jury might well have been more likely to convict because they believed Mr. Robinson deserved some form of punishment for his behavior, regardless of the fact that it had no bearing on the case at bar.

Mr. Robinson's right to a fair trial was eroded by the prosecution's questions eliciting and introduction of testimony regarding his alleged making of sex tapes with Ms. Taylor and other women. The only issue in the case was one of identification. At no time did the defense dispute that the shooting had in fact occurred, and that it had in fact been perpetrated by an individual wearing a blue hooded sweatshirt and riding a green bicycle, as multiple witnesses asserted and the gas station surveillance tape demonstrated. What mattered was whether the prosecution could prove beyond a reasonable doubt that Mr. Robinson was the individual in the blue hooded sweatshirt. Testimony from Ms. Taylor and Mrs. Johnson regarding Mr. Robinson's alleged practice of making sex tapes had absolutely no probative value in regard to identifying Mr. Robinson as the shooter, and carried with it a large risk of unfair prejudice and confusion. The absence of probative value, in combination with the high risk of unfair prejudice, rebuts any presumption that not objecting to such evidence might have been sound trial strategy.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

### III. DEFENSE COUNSEL FAILED TO OBJECT TO THE PROSECUTOR'S MISCONDUCT OF REFERENCING FACTS NOT IN EVIDENCE AND THE PROSECUTOR'S APPEAL TO SYMPATHY IN BOTH OPENING AND CLOSING ARGUMENTS. DEFENSE COUNSEL'S FAILURE TO OBJECT DENIED MR. ROBINSON HIS RIGHT TO EFFECTIVE COUNSEL AND DUE PROCESS OF LAW. US CONST. AM VI, XIV.

**Issue Preservation**

A defendant must contemporaneously object and request a curative instruction to preserve an issue of prosecutorial misconduct. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627, 634-35 (2010), *app den* 489 Mich 897 (2011) and *app den* 489 Mich 898 (2011). In this case, trial counsel neither objected to the prosecutor's improper conduct nor requested a curative instruction. *T1 123; T4 29, 76*. However, Mr. Robinson may raise an ineffective assistance of counsel claim for the first time on appeal because it involves a constitutional error that could have decided the outcome. *People v Henry*, 239 Mich App 140, 146, 607 NW2d 767 (1999).

**Standard of Review**

Issues of ineffective assistance of counsel are decided under a test that requires "the greatest level of factual inquiry into the actual conduct of the defense and its effect on the outcome of the trial." *People v Leblanc*, 465 Mich 575, 578, 640 NW2d 246 (2002). Whether a defendant has been denied effective assistance of counsel is "a mixed question of fact and constitutional law." *Id* at 579. Questions of constitutional law are reviewed de novo. *Id*

Unpreserved issues of prosecutorial misconduct are reviewed under a plain-error standard. *People v Aldrich*, 246 Mich App 101, 110, 631 NW2d 67 (2001) (citing *Carines*, 460 Mich at 764). The plain error inquiry consists of a three-part test: "1) error must have occurred,

2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id* at 763 (citing *Olano*, 507 US at 731-34).

Though "appellate review of improper prosecutorial remarks is generally precluded absent objection by counsel . . . An exception exists if a curative instruction could not have eliminated the prejudicial effect or where failure to consider the issue would result in a miscarriage of justice." *People v Stanaway*, 446 Mich 643, 687, 521 NW2d 557 (1994).

<u>**Argument**</u>

A prosecutor must seek to convict defendants, but only when doing so is consistent with due process and the principles of justice. As a servant of the law and representative of the sovereign, *Berger v United States*, 295 US 78, 88; 55 S Ct 629, 633; 79 L Ed 1314 (1935), a prosecutor must ensure that a defendant has a fair trial. *People v Burrell*, 127 Mich App 721, 726; 339 NW2d 239, 241 (1983) (citing *People v Williams*, 114 Mich App 186, 198l 318 NW2d 671 (1982)). Performing this duty, a prosecutor must "exhibit a high ethical standard when presenting a case to the jury," *People v Richardson,* 489 Mich 940; 798 NW2d 13 (2011), and refrain from using improper methods to obtain a conviction. *Berger*, 295 US at 88. This standard of conduct prohibits a prosecutor from injecting prejudicial innuendo into the proceedings. *People v Mitchell*, 131 Mich App 69, 73, 345 NW2d 611 (1983).

While it is true that the adversarial system affords prosecutors "great latitude regarding their arguments and conduct" at trial, *People v Bahoda*, 448 Mich 261, 282, 531 NW2d 659 (1995); *Unger*, 278 Mich App at 236, they "may not argue the effect of testimony that was not entered into evidence at trial," *Stanaway*, 446 Mich at 686 (citing *People v McCain*, 84 Mich App 210, 269 NW2d 528 (1978)), and may not infect the proceedings by injecting unfair prejudice. *Mitchell*, 131 Mich App at 73.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

### A. *The prosecutor deliberately referenced facts not in evidence to portray Mr. Robinson in a bad light, infecting the proceedings with prejudicial innuendo and denying him a fair trial.*

The prosecutor referenced facts not in evidence during opening, closing, and rebuttal arguments in order to paint Mr. Robinson as a controlling, manipulative boyfriend. *T1 123; T4 10-11, 29, 76*. Michigan appellate courts follow guidelines set by *Donnelly v DeChristoforo*, 416 US 637, 643, 94 S Ct 1868, 40 L Ed 2d 431 (1974), when evaluating claims of prosecutorial misconduct. *See e.g. People v Blackmon*, 280 Mich App 253, 269-70, 761 NW2d 172 (2008). To warrant a new trial, the misconduct must have so infected the trial with unfairness as to make the conviction a deprivation of liberty without due process of law. *Id* The prosecutor's conduct should be evaluated in context of the case as a whole, including the strength of the prosecutor's case. *Aldrich*, 246 Mich App at 110. Here, the prosecutor went to such lengths to cast aspersions upon Mr. Robinson's general character that the judge chose to interrupt to ask the prosecutor to rephrase her rebuttal statement. *T4 76*. The prosecutor referred to other women in Mr. Robinson's life, naming at least two, "Lilah" and "Terri," *T4 10*, about which no evidence had been presented. The result was that Mr. Robinson's trial was so infected with unfairness that his conviction was a deprivation of liberty without due process of law.

### B. *The prosecutor's misconduct was so obvious that defense counsel's failure to object to it amounted to ineffective assistance of counsel.*

In closing arguments, the prosecutor consistently painted Mr. Robinson in a poorer light than the evidence showed. *T4 76*. She created an unsupported narrative in which Mr. Robinson was depicted as a covetous lover, seeking to keep a prized girlfriend for himself. *Id* Despite the prosecutor's assertions to the contrary, there were no facts in evidence to support this characterization, except for a text message in which Mr. Robinson said Kim Kardashian, a celebrity with whom he would never have a relationship, was "mine mine mine." *T3 138*. The

prosecutor described relationships with "Nicole" and the "C.R.E.A.M. number" of which there had been no testimony or other evidence presented. *T4 10-11*. The prosecutor alleged Mr. Robinson had left a hickey on Ms. Taylor's neck, *T4 15*, despite testimony from Ms. Taylor's friends to the contrary. The prosecutor went on to misstate Mr. Maddox's testimony, claiming he said the shooter had "facial hair right around his chin," *T4 24*, when in fact Mr. Maddox testified that the shooter had a full beard "ear to ear." *T1 202*. Ms. Powell further stated that Ms. Taylor was "able to see" the shooter's face, *T4 26*, despite both Ms. Miller and Ms. Davies saying everyone ducked as soon as the shooting started. The prosecutor also mischaracterized the specificity of Mr. Larry Paul Smith's testimony, claiming it showed that Mr. Robinson took "the same path" as the shooter. *T4 29*.

The prosecution committed a serious error by supporting its depiction of Mr. Robinson with facts not in evidence, and defense counsel fell below an objective standard of reasonableness by not recognizing this and objecting. The prosecutor's assertions during closing argument were not offhand comments. She strengthened her case by improperly informing the jury that Mr. Robinson had committed acts reflecting a possessive and manipulative character. The prosecutor's deliberate and improper assertions that Mr. Robinson had a displayed a disposition not proven in evidence were an attempt to make the jury believe Mr. Robinson was a bad man deserving of punishment, regardless of whether or not he committed the crime in question. Furthermore, the prosecutor made a good deal of the improper assertions during rebuttal argument, giving defense counsel no chance to answer them. Believing this, the jury was left with no choice but to improperly find Mr. Robinson guilty of all the counts against him. The prosecutor's misconduct, and defense counsel's conspicuous failure to object to it, resulted in a

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

trial so infected with unfair prejudice that the resulting conviction was a denial of due process of law.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

# <u>SUMMARY AND RELIEF AND REQUEST FOR ORAL ARGUMENT</u>

**WHEREFORE**, for the foregoing reasons, Defendant-Appellant asks that this

Honorable Court reverse his  convictions.

Respectfully submitted,

**STATE APPELLATE DEFENDER OFFICE**

/s/ Valerie R. Newman

BY:_____

**VALERIE R. NEWMAN (P47291)**
Assistant Defender
**Eli Cohen, Student Research Attorney**
3300 Penobscot Building
645 Griswold
Detroit, Michigan  48226
(313) 256-9833

Dated:  January 12, 2015

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br>**Cover Sheet** | | | **CASE NO.** | | |
|---|---|---|---|---|---|---|
| WAYNE CIRCUIT COURT | | | CIRCUIT: | Year 10 | Number 006297 | Case Type FC |
| | | | COURT OF APPEALS: | 321841 | | |

## Filing Party

| Filing Party Last Name or Business/Entity/Agency Name | Attorney Last Name |
|---|---|
| ROBINSON LAMARR VALDEZ | Newman |

| Filing Party First Name | M.I. | Attorney First Name | M.I. | P Number |
|---|---|---|---|---|
| | | Valerie | R | 47291 |

Address (Street 1, Street 2, City, State, and ZIP Code)

Address (Street 1, Street 2, City, State, and ZIP Code)
645 Griswold Street
Suite 3300
Detroit    MI    48226

Attorney Telephone Number
(313)256-9833

## Summary of Items Filed

| Type | Filename/Description | Filing Fee | Doc Fee | Total This Filing |
|---|---|---|---|---|
| Brief | Defendant-Appellant's Brief on Appeal | $5.00 | ---- | $5.00 |
| Motion - Regular | Defendant-Appellant's Motion to Remand | $5.00 | ---- | $5.00 |
| | | 3% Service Fee: | | $00.30 |
| **Fee Substitute/Alternate Payment** | | **Total All Filings:** | | $10.30 |

**Reason:**

[X] **Appointed Counsel**

[ ] **Motion To Waive Fee**

[ ] **Fees Waived in this Case**

[ ] **MI InterAgency Transfer**

[ ] **No Fee per MCR 7.203(F)(2)**

**Filer Office Use Only:**    VRN/L. Robinson

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.
321841 - 428837

| Lower Court or Tribunal<br><br>WAYNE CIRCUIT COURT | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br><br>**Proof of Service** | *CASE NO.* | | |
|---|---|---|---|---|
| | | CIRCUIT: | Year **10** | Number **006297** | Case Type **FC** |
| | | COURT OF APPEALS: | **321841** | |

Case Name:  PEOPLE OF MI V LAMARR VALDEZ ROBINSON

On  1/12/2015 , one copy of the following documents:

| Brief | Defendant-Appellant's Brief on Appeal |
|---|---|
| Motion - Regular | Defendant-Appellant's Motion to Remand |

was delivered to the persons listed below:

Date
1/12/2015

Signature
/s/Julie Anne Dundr

| Bar Number | Name | Delivery Method | Service Address |
|---|---|---|---|
| P- | AO, SADO | E-Serve | ao@sado.org |
| P- | AO Support, Wayne County | E-Serve | wcpaappeals@co.wayne.mi.us |
| P- | Dundr, Julie | E-Serve | jdundr@sado.org |
| P- 47291 | Newman, Valerie R | E-Serve | vnewman@sado.org |

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

# STATE OF MICHIGAN

# IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

        Plaintiff-Appellee

-vs-

**LAMARR ROBINSON**

        Defendant-Appellant.

_____/

**Court of Appeals No.** 321841

**Lower Court No.** 10-006297-01-FC

**WAYNE COUNTY PROSECUTOR**
Attorney for Plaintiff-Appellee
_____

**STATE APPELLATE DEFENDER OFFICE**
Attorney for Defendant-Appellant
_____

## <u>MOTION TO REMAND</u>

      **NOW COMES** the Defendant-Appellant, **LAMARR ROBINSON** by and through his attorneys, the **STATE APPELLATE DEFENDER OFFICE**, by **VALERIE R. NEWMAN**, and moves this Honorable Court to grant this motion and remand this case to the trial court on the issue of ineffective assistance of trial counsel and says in support thereof that:

      1.     Mr. Robinson was convicted by jury of assault with intent to murder, felon in possession of a firearm and felony firearm before the Honorable Vera Massey Jones in the Wayne County Circuit Court.

      2.     Mr. Robinson was sentenced to a two year term of imprisonment for the felony firearm conviction to be served consecutively to concurrent terms of 47.5 -120 years imprisonment for the other two convictions.

      3.     Defendant claimed an appeal as of right, MCR 7.203(A)(1) and filed a timely

Claim.

4.     Appellate Counsel has presented three issues on appeal, all of which revolve around trial counsel's deficient performance and the resulting prejudice to Mr. Robinson.

5.     The only issue in this case was and is the identity of the shooter.

6.     Mr. Robinson's estranged girlfriend was the primary witness in the case. She did not tell the initial police officers that she saw the shooter and did not identify the shooter.

7.     She did not tell Officer Good, a former neighbor of her good friend Ms. Miller, that saw the shooter, only that she believed the shooter to be her estranged boyfriend, Mr. Robinson.

8.     Ms. Taylor did not say she saw the shooter's face or identify that person as Mr. Robinson until some time had passed. She also fled the jurisdiction to evade testifying.

9. Trial Counsel stipulated to having a custodian of the records testify about cell phone records from a phone belonging to Mr. Robinson and his conclusion that whomever was using the phone on the day of the shooting was in the vicinity of the location of the shooting before and after the shooting.

10. There are challenges to cell phone tower evidence that were not advanced nor did trial counsel call an expert for the defense.

11.1 There is nothing on the record to indicate why trial counsel stipulated to this evidence or failed to call an expert.. While effective assistance of counsel is presumed, based on conversations with Mr. Robinson, Appellate Counsel has reason to believe that there was no strategic reason for defense counsel's actions.

12. As set forth in Issues two and three in the attached brief, Defense Counsel failed to object to hearsay testimony and prosecutor misconduct. At one point the misconduct was so egregious that the trial court stepped in sua sponte.

13.     Because these issues require an expansion of the record, Appellate Counsel files

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

this motion to remand, and a brief in support of the motion, as an offer of proof.

**WHEREFORE**, Mr. Robinson prays that this Honorable Court remand this case to the trial court for a hearing on the ineffective assistance of counsel claims.

Respectfully submitted,
**STATE APPELLATE DEFENDER OFFICE**

/s/ Valerie R. Newman

BY: _____

**VALERIE R. NEWMAN (P47291)**
**Assistant Defender**
3300 Penobscot Building
645 Griswold
Detroit, Michigan  48226
(313) 256-9833

Date: January 12, 2015

RECEIVED by Michigan Court of Appeals 1/12/2015 3:48:40 PM

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS** | **CASE NO.** | | | |
|---|---|---|---|---|---|
| | **Cover Sheet** | CIRCUIT: | Year | Number | Case Type |
| WAYNE CIRCUIT COURT | | | 10 | 006297 | FC |
| | | COURT OF APPEALS: | 321841 | | |

*Filing Party*

| Filing Party Last Name or Business/Entity/Agency Name | Attorney Last Name |
|---|---|
| ROBINSON LAMARR VALDEZ | Newman |

| Filing Party First Name | M.I. | Attorney First Name | M.I. | P Number |
|---|---|---|---|---|
| | | Valerie | R | 47291 |

Address (Street 1, Street 2, City, State, and ZIP Code)

Address (Street 1, Street 2, City, State, and ZIP Code)

| 645 Griswold Street |
| Suite 3300 |
| Detroit | MI | 48226 |

Attorney Telephone Number

(313)256-9833

*Summary of Items Filed*

| Type | Filename/Description | Filing Fee | Doc Fee | Total This Filing |
|---|---|---|---|---|
| Brief | Brief in Support of Motion to Remand Filed in this Court on 1-12-15 | $5.00 | ---- | $5.00 |
| | | **3% Service Fee:** | | $0.15 |
| **Fee Substitute/Alternate Payment** | | **Total All Filings:** | | $5.15 |

**Reason:**

| X | **Appointed Counsel** |
| | **Motion To Waive Fee** |
| | **Fees Waived in this Case** |
| | **MI InterAgency Transfer** |
| | **No Fee per MCR 7.203(F)(2)** |

| **Filer Office Use Only:** | **VRN/L. Robinson** |
|---|---|

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin. As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

321841 - 429050

RECEIVED by Michigan Court of Appeals 1/13/2015 1:21:21 PM

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS** | **CASE NO.** | | | |
|---|---|---|---|---|---|
| WAYNE CIRCUIT COURT | **Proof of Service** | CIRCUIT: | Year 10 | Number 006297 | Case Type FC |
| | | COURT OF APPEALS: | 321841 | | |

Case Name: PEOPLE OF MI V LAMARR VALDEZ ROBINSON

On 1/13/2015 , one copy of the following documents:

| Brief | Brief in Support of Motion to Remand Filed in this Court on 1-12 -15 |
|---|---|

was delivered to the persons listed below:

Date 1/13/2015

Signature /s/Julie Anne Dundr

| Bar Number | Name | Delivery Method | Service Address |
|---|---|---|---|
| P- | AO, SADO | E-Serve | ao@sado.org |
| P- | AO Support, Wayne County | E-Serve | wcpaappeals@co.wayne.mi.us |
| P- | Dundr, Julie | E-Serve | jdundr@sado.org |
| P- 47291 | Newman, Valerie R | E-Serve | vnewman@sado.org |

RECEIVED by Michigan Court of Appeals 1/13/2015 1:21:21 PM

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin. As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

RECEIVED by Michigan Court of Appeals 1/13/2015 1:21:21 PM

# STATE OF MICHIGAN

# IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

          Plaintiff-Appellee

-vs-

**LAMARR ROBINSON**

          Defendant-Appellant.

_____/

**Court of Appeals No.** 321841

**Lower Court No.** 10-006297-01-FC

**WAYNE COUNTY PROSECUTOR**
Attorney for Plaintiff-Appellee
_____

**STATE APPELLATE DEFENDER OFFICE**
Attorney for Defendant-Appellant
_____

## <u>BRIEF IN SUPPORT OF MOTION TO REMAND</u>

     **NOW COMES** the Defendant-Appellant, **LAMARR ROBINSON**

by and through his attorneys, the **STATE APPELLATE DEFENDER OFFICE**, by **VALERIE**

**R. NEWMAN**, and moves this Honorable Court to grant this motion and remand this case to the

trial court on the issue of ineffective assistance of trial counsel and says in support thereof that:

     1.     Mr. Robinson was convicted by jury of assault with intent to murder, felon in

possession of a firearm and felony firearm before the Honorable Vera Massey Jones in the

Wayne County Circuit Court.

     2.     Mr. Robinson was sentenced to a two year term of imprisonment for the felony

firearm conviction to be served consecutively to concurrent terms of 47.5 -120 years

RECEIVED by Michigan Court of Appeals 1/13/2015 1:21:21 PM

imprisonment for the other two convictions.

3.      Defendant claimed an appeal as of right, MCR 7.203(A)(1) and filed a timely Claim.

4.      Appellate Counsel has presented three issues on appeal, all of which revolve around trial counsel's deficient performance and the resulting prejudice to Mr. Robinson.

5.      The only issue in this case was and is the identity of the shooter.

6.      Mr. Robinson's estranged girlfriend was the primary witness in the case. She did not tell the initial police officers that she saw the shooter and did not identify the shooter.

7.      She did not tell Officer Good, a former neighbor of her good friend Ms. Miller, that saw the shooter, only that she believed the shooter to be her estranged boyfriend, Mr. Robinson.

8.      Ms. Taylor did not say she saw the shooter's face or identify that person as Mr. Robinson until some time had passed. She also fled the jurisdiction to evade testifying.

9.      Trial Counsel stipulated to having a custodian of the records testify about cell phone records from a phone belonging to Mr. Robinson and his conclusion that whomever was using the phone on the day of the shooting was in the vicinity of the location of the shooting before and after the shooting.

10.     There are challenges to cell phone tower evidence that were not advanced nor did trial counsel call an expert for the defense.

11.     There is nothing on the record to indicate why trial counsel stipulated to this evidence or failed to call an expert.. While effective assistance of counsel is presumed, based on conversations with Mr. Robinson, Appellate Counsel has reason to believe that there was no strategic reason for defense counsel's actions.

12.    As set forth in Issues two and three in the attached brief, Defense Counsel failed to object to hearsay testimony and prosecutor misconduct. At one point the misconduct was so egregious that the trial court stepped in sua sponte.

13.    Because these issues require an expansion of the record, Appellate Counsel files a motion to remand, and a brief in support of the motion, as an offer of proof.

**WHEREFORE**, Mr. Robinson prays that this Honorable Court remand this case to the trial court for a hearing on the ineffective assistance of counsel claims.

Respectfully submitted,
**STATE APPELLATE DEFENDER OFFICE**


/s/ Valerie R. Newman
BY:    _____
**VALERIE R. NEWMAN (P47291)**
**Assistant Defender**
3300 Penobscot Building
645 Griswold
Detroit, Michigan  48226
(313) 256-9833

Date: January 13, 2015

RECEIVED by Michigan Court of Appeals 1/13/2015 1:21:21 PM

STATE OF MICHIGAN
COURT OF APPEALS

# Bundle Cover Sheet

| Lower Court: | Lower Court Case Number: | Court of Appeals Case Number: |
|---|---|---|
| WAYNE CIRCUIT COURT | 10-006297-FC | 321841 |

**Case Title:**
PEOPLE OF MI V LAMARR VALDEZ ROBINSON

**Priority:**
NONE

## Filer Information

| Filer | Attorney |
|---|---|
| Joycelyn  Frederick | Daniel  Hebel, P73580 |
| , MI | , MI |
| | dhebel@waynecounty.com |

## Filing Summary

| Type | Description | Fee |
|---|---|---|
| ANSWER | Plaintiff's Answer to MtRemand | $0.00 |
| | **Total:** | **$0.00** |

Alternate Payment Reason: None

RECEIVED by MCOA 2/3/2015 10:38:30 AM

The document(s) listed above were electronically filed with the Michigan Court of Appeals.

321841-654470

**STATE OF MICHIGAN**
MI Court of Appeals

## Proof of Service

| Case Title: | Case Number: |
|---|---|
| PEOPLE OF MI V LAMARR VALDEZ ROBINSON | 321841 |

1. Title(s) of the document(s) served:

| Filing Type | Document Title |
|---|---|
| Answer | Plaintiff's Answer to MtRemand |

2. On 2-3-2015, I served the document(s) described above on:

| Recipient | Address | Type |
|---|---|---|
| AO Support<br>State Appellate Defender Office | ao@sado.org | e-Service |
| Daniel E Hebel<br>Court Added<br>73580 | dhebel@waynecounty.com | e-Service |
| Joycelyn Frederick<br>Wayne County Prosecutor's Office | jsharp@waynecounty.com | e-Service |
| Valerie R Newman<br>Court Added<br>47291 | vnewman@sado.org | e-Service |

This proof of service was automatically created, submitted and signed on my behalf through my agreements with TrueFiling and its contents are true to the best of my information, knowledge, and belief.

2-3-2015
Date

/s/ Joycelyn Frederick
Signature

Wayne County Prosecutor's Office

RECEIVED by MCOA 2/3/2015 10:38:32 AM

STATE OF MICHIGAN
IN THE COURT OF APPEALS

_____

**PEOPLE OF THE STATE OF MICHIGAN,**
         **Plaintiff-Appellee,**

**vs**                                                Court of Appeals No.  321841

**LAMARR ROBINSON,**
            **Defendant-Appellant.**
_____

**Circuit Court No.  10-006297-01**
_____


**PEOPLE'S ANSWER TO
DEFENDANT'S MOTION TO REMAND**


KYM WORTHY
Prosecuting Attorney
County of Wayne

TIMOTHY A. BAUGHMAN
Chief of Research, Training,
and Appeals


**DANIEL E. HEBEL (P73580)**
Assistant Prosecuting Attorney
1441 St. Antoine, 11th Floor
Detroit, Michigan 48226
(313) 444-0529

RECEIVED by MCOA 2/3/2015 10:38:30 AM

**STATE OF MICHIGAN**
**IN THE COURT OF APPEALS**

_____

**PEOPLE OF THE STATE OF MICHIGAN,**
        **Plaintiff-Appellee,**

**vs**                                          **Court of Appeals No. 321841**

**LAMARR ROBINSON,**
           **Defendant-Appellant.**
_____

**Circuit Court No. 10-006297-01**
_____

**PEOPLE'S ANSWER TO**
**DEFENDANT'S MOTION TO REMAND**

The People of the State of Michigan – by KYM L. WORTHY, Prosecuting Attorney for the County of Wayne, TIMOTHY A. BAUGHMAN, Chief of Research, Training and Appeals, and DANIEL E. HEBEL, Assistant Prosecuting Attorney – request that defendant's motion to remand for a *Ginther* hearing be denied.

1. Defendant was convicted by jury of assault with intent to commit murder, being a felon in possession of a firearm, and felony-firearm.

2. Defendant claims that his trial attorney acted unreasonably, that this conduct prejudiced the outcome of his case, and that a remand to the trial court may be necessary to perfect his appeal. But the trial record is adequate to review defendant's assignment of error.

3. The underlying question for each of these claims is not the performance of counsel, but whether there was a clear and prejudicial error that resulted in outcome-determinative prejudice. These issues are questions of law and only the facts on the record are relevant or necessary for the determination of each issue.

RECEIVED by MCOA 2/3/2015 10:38:30 AM

4. When a defendant claims ineffective assistance of counsel, he must prove that his attorney made such grave mistakes that he was not acting as counsel envisioned by the Sixth Amendment and that the defendant has been prejudiced by the deficient performance. *Strickland v Washington*, 466 US 668 (1984); *People v Dalessandro*, 165 Mich App 569 (1988). There is a strong presumption, however, that counsel provided effective representation. *Strickland, supra.* The defendant bears the burden of proof and must exclude those reasonable hypotheses consistent with the view that trial counsel provided effective representation. *People v Ginther*, 390 Mich 436 (1973). Counsel's overall performance is that which is reviewed, and the standard is an objective one. *Strickland, supra; People v Coyle*, 104 Mich App 636 (1982) partially disagreed with on different grounds by *People v Adkins*, 433 Mich 732 (1988).

5. Remand is unnecessary because the trial record is sufficient to decide this issue. Remand is appropriate only when the issue should be initially decided by the trial court or development of a factual record is required for appellate consideration. MCR 7.211(C)(1)(a). There is no requirement that a *Ginther* hearing be held before a defendant can raise ineffective assistance on appeal. This Court can determine from the record whether counsel acted in an objectively unreasonable fashion and, if so, whether defendant's trial was adversely affected. That is, it is irrelevant what defendant's attorney was thinking. As indicated above, the standard is an objective one and so remanding to ascertain trial counsel's subjective strategy would serve no purpose.

6. Defendant's only argument for a remand in each instance is so that he can attempt to establish defense counsel's subjective reasoning for not objecting to defendant's various allegations of error.

RECEIVED by MCOA 2/3/2015 10:38:30 AM

7.   As the standard for ineffective assistance is objective rather than subjective, defendant has not presented a claim that warrants remand.  *Strickland, supra; Coyle*, *supra*.

8.   For these reasons, defendant's motion should be denied.


Therefore, the People respectfully request that this Court deny defendant's motion for remand and decide his appeal based on the trial record already established.


Respectfully submitted,

KYM WORTHY
Prosecuting Attorney
County of Wayne

TIMOTHY A. BAUGHMAN
Chief of Research,
Training, and Appeals

/s/ *Daniel E. Hebel*
**DANIEL E. HEBEL (P73580)**
Assistant Prosecuting Attorney
1441 St. Antoine, 11th Floor
Detroit, MI 48226
(313) 444-0529

Dated: February 3, 2015

RECEIVED by MCOA 2/3/2015 10:38:30 AM

## Court of Appeals, State of Michigan

## ORDER

People of MI v Lamarr Valdez Robinson

Docket No. 321841

LC No. 10-006297-01-FC

Cynthia Diane Stephens
Presiding Judge

Christopher M. Murray

Karen M. Fort Hood
Judges

The Court orders that the motion to remand pursuant to MCR 7.211(C)(1) is DENIED for the failure to demonstrate by affidavit or offer of proof the facts to be established at a hearing on remand. MCR 7.211(C)(1)(a)(*ii*).



A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

FEB 1 7 2015
_____
Date

_Jerome W. Zimmer Jr._
Chief Clerk

RETURNED

March 2, 2015

MAR - 6 2015

COURT OF APPEALS
FIRST DISTRICT

TO:  Michigan Court of Appeals
     Attn: Angela DiSessa - Clerk
     3020 W. Grand Blvd., Ste.14-300
     Detroit, Michigan  48202

RE:  People v. Lamarr Valdez Robinson, COA NO. 321841
     MOTION FOR RECONSIDERATION FILING - [DENIAL OF REMAND MOTION]

Dear Court Clerk:

    Please find enclosed for filing, my In Pro Per filing of a <u>Motion for Reconsideration</u>, pursuant to MCR 7.215(I)(1).  This motion is filed In Pro Per since its contains an issue of ineffective assistance of appellate counsel for failure to comply with MCR 7.211(C)(1)(a)(ii).

    This Court should accept this filing independent of appellate counsel since the claims are further developed in Defendant's Standard 4, Supplemental brief which should before this Court, and where it would be a conflict of interest for appellate counsel to file an ineffective assistance claim on herself.

    Enclosed is (5) five copies of a Motion for Reconsideration w/incorporated Proof of Service.  A copy of these filing has also been served upon the Wayne County Prosecutor's office.

    In closing, please notify me immediately if there are any deficiencies in my filings, so that I may make the appropriate corrections.

    Thank you in advance for your time and cooperation in this matter.

Respectfully submitted,

/s/ _Lamarr V. Robinson_
Lamarr V. Robinson #221610
Defendant-Appellant In Pro Per
Saginaw Correctional Facility
9625 Pierce Road - MDOC
Freeland, Michigan  48623

cc:  Clerk - MICOA
     File

COURT OF APPEALS
DETROIT OFFICE

2015 MAR -4  AM 11:47

RECEIVED

STATE OF MICHIGAN

IN THE COURT OF APPEALS

RETURNED

MAR - 6 2015

COURT OF APPEALS
FIRST DISTRICT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

-vs-

LAMARR VALDEZ ROBINSON, #221610,

    __Defendant- Appellant In Pro Per.____/

WAYNE COUNTY PROSECUTOR
Attorney for Plaintiff-Appellee

Court of Appeals No. 321841

Lower Court No. 10-006297-01-FC

---

DEFENDANT-APPELLANT'S IN PRO PER

MOTION FOR RECONSIDERATION

    NOW COMES Lamarr V. Robinson, Defendant-Appellant In Pro Per, and moves this Honorable Court for Reconsideration from its Order denying Motion to Remand pursuant to MCR 7.215(I)(1) and the following reasons in support:

    1.  Defendant ask this Court to reconsider the part of its Order which finds that appellate counsel failed to demonstrate by affidavit or offer of proof the facts to be established at a hearing on remand. MCR 7.211(C)(1)(a)(ii). This Order is dated February 17, 2015, and is attached as **Exhibit A.**  This motion is timely filed with 21 days of the Court of Appeals order. MCR 7.215(I)(1).

    A motion for reconsideration must demonstrate a palpable error of law or mistake of fact by which the court and the parties have been misled and show that a different disposition will result when the error is corrected. **MCR** 7.215(I)(1);MCR 2.119(F)(3).

**1.**

2.   Defendant-Appellant contends that this Court should reconsider this matter under a claim of ineffective assistance of appellate counsel, where appellate counsel was in possession of numerous affidavits and made a deliberate decision not to submit affidavits on Defendant-Appellants behalf. See **People v. Reed,** 449 Mich 375, 384 (1995)(holding that a failure to assert a claim on appeal whether from "ignorance or inadvertence rather than from a deliberate decision," does not constitute cause for purpose of post-conviction relief.)(citing Murray v. Carrier, 477 US 478, 487 (1986)).

3.   Defendant-Appellant submits proof that counsel deliberately declined to submit an alibi witness's affidavit. (See attached Correspondences from Appellate Counsel: **Valerie R. Newman P47291 as Exhibit B - E)**

4.   This Court should also grant reconsideration because of a delay in appeal cause by legal malpractice thru my initial retained appellate counsel who failed to timely file an appeal, causing a dismissal for lack of progress. Defendant's affidavits were timely obtained during his initial time to appeal, thus reflecting those dates. This delay also demonstrates prejudice as appellate counsel has noted that witnesses' memories dim after the passage of time. See **U.S. v. Marion,** 404 US 307, 321 (1971)(holding the passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself).  This is no less applicable on direct appeal of rights.

5.   Defendant-Appellant submits this motion In Pro Per as it address a claim of IAC against the appellate counsel, and it is axiomatic that, "[A]n appellate counsel cannot be expected to raise his own ineffective assistance on appeal." **Combs v. Coyle,** 205 F3d 269, 276 (6th Cir. 2000).

2.

6.   Ineffective assistance of appellate counsel is shown where appellate counsel failed to comply with a procedural rule or law, in this case **MCR 7.211(C)(1)(a)(ii)**.   This Court may also note that the remand motion and accompanying brief cites no case law or references to the trial transcripts, per **MCR 7.212(C)(7)**. The brief submitted on remand is a mere recitation of the motion, which does not comply with **MCR 7.212(C)(7)**.

7.   Defendant-Appellant contends that remand should be held on the claim that trial counsel failed to investigate and present alibi defense. See **Foster v. Wolfenbarger,** 687 F3d 702 (6th Cir. 2012), cert den'd 133 SCt 1580 (2013) See Vanessa Hudson Affidavit as **Exhibit F.**

8.   Trial counsel was ineffective where counsel made absolutely no attempt to communicate with crucial witnesses that would have testified that defendant did not commit the crime. See **Towns v. Smith,** 395 F3d 251, 259 (6th Cir. 2005). See Defendant's Affidavit as **Exhibit G.**

9.   Trial counsel was ineffective where he failed to contact Jasmine Gradford, the witness who was at the BP gas station at pump #5 and had an opportunity to see the suspect since she was in close proximity.  Ms. Gradford submitted a witness statement to the Detroit Police Department but counsel never spoken with Ms. Gradford.  It is well-established that, "[T]he lawyer could not know how complete or accurate a prospective witnesses' statement was without talking to the witness." **Stanley v. Bertley,** 465 F3d 810, 813 (7th Cir. 2006).

3.

10. Trial counsel was ineffective where he allow/without objection, the prosecutor imaginative theory and introduced irrelevant and unfairly prejudicial evidence that defendant was a bad person and womanizer. Thus, all irrelevant evidence is inadmissible. **MRE 401, 402.** Admitting irrelevant unduly prejudicial evidence deprived Defendant of due process and his right to a fair trial. U.S. Const, Ams V, XIV; Const 1963, art 1, § 17; **Lisenba v. California,** 314 US 219, 236 (1941); **Walker v. Engle,** 703 F2d 959, 962-963 (6th Cir. 1983). Due process is violated when the prosecution introduces evidence of other bad acts that are not rationally connected to the instant offense. **Manning v. Rose,** 507 F2d 889, 894-895 (6th CIr. 1977). Additionally, defendant was not on notice that such evidence would be used as 404(b) evidence. Defendant's relationships were improperly used to establish defendant's propensity to commit a crime, and should have been excluded under the VanderVliet test for admission. See **People v. VanderVliiet,** 444 Mich 52, 63 (1983); **People v. Crawford,** 458 Mich 378, 385 (1998).

11. Defendant was essentially put on trial for his other relationships, even where no relationship was ever testified by the women associates expressedly mentioned as trial. See (JT IV, p.10).

12. Trial counsel's was ineffective for failure to object at trial to acts of prosecutorial misconduct. See Defendant's Standard #4 Supplemental Brief Issue III before this Court as submitted through appellate counsel.

13. Trial Counsel was ineffective for failure to investigate that Jessica Taylor's identification was false. See Affidavits attached **as Exhibit H & I.**

14. Trial counsel was ineffective where he misadvised defendant about his right to testify and establish his alibi defense. The erroneous legal advise denied defendant an alibi instruction.

15. This Court may also order remand on claims of Prosecutorial Misconduct. See **People v. Canter,** 197 Mich App 550, 570 (1993).

In conclusion. reconsideration should be granted to establish that plain error was committed where the evidence complained of was inadmissible and affected the outcome and [defendant's] rights to a fair trial. **U.S. v. Houser,** 804 F2d 565, 570 (9th Cir. 1986); **People v. Carines,** 460 Mich 750 (1999); **Barker v. Yukins,** 199 F3d 867 (1999)(appellate courts under the harmless error standard must focus on the error's effect on the factfinder, not on whether the appellate judges believe the defendant is guilty).

WHEREFORE, the reasons presented Defendant-Appellant Robinson request that reconsideration be granted and his affidavits and offers of proofs be accepted and another order be issued regarding the issues presented and remand ordered on the grounds presented in reconsideration and contained in defendant's supplemental brief.

Respectfully submitted,

Date: _March 2nd_, 2015        /s/ _Lamarr V. Robinson_

Lamarr V. Robinson #221610

Defendant-Appellant In Pro Per

Saginaw Correctional Facility

9625 Pierce Road

Freeland, Michigan  48623

RETURNED

MAR - 6 2015

COURT OF APPEALS
FIRST DISTRICT

## PROOF OF SERVICE

I Lamarr V. Robinson, declare that on this _2nd_, day of March 2015, I did mail the foregoing Motion for Reconsideration to the Michigan Court of Appeals, Attn: Angela DiSessa, Clerk, 3020 W. Grand Blvd, Ste 14-300, Detroit, Michigna 48202 and the Wayne County Prosecutor, Attn: Kym L. Worthy, 1441 St. Antoine. Street, 12th Flr., Detroit, MI 48226, by handing same to an employee of the Department of Corrections w/accompanying LEGAL EXPEDITED MAIL Form for affixing of 1st Class U.S. postage and mailing.

Date: _March 2nd_, 2015        /s/ _Lamarr V. Robinson_

Lamarr V. Robinson #221610

===============================================================================

PEOPLE V. LAMARR V. ROBINSON                          COA NO. 321841

                                                    LC NO. 10-6297-01-FC

===============================================================================

EXHIBIT __A__

Exhibit A

27619 T
vrn

# Court of Appeals, State of Michigan

## ORDER

People of MI v Lamarr Valdez Robinson

Docket No.   321841

LC No.   10-006297-01-FC

Cynthia Diane Stephens
Presiding Judge

Christopher M. Murray

Karen M. Fort Hood
Judges

The Court orders that the motion to remand pursuant to MCR 7.211(C)(1) is DENIED for the failure to demonstrate by affidavit or offer of proof the facts to be established at a hearing on remand. MCR 7.211(C)(1)(a)(*ii*).

_____
Presiding Judge

RECEIVED

FEB 1 9 2015

APPELLATE DEFENDER OFFICE

RETURNED

MAR - 6 2015

COURT OF APPEALS
FIRST DISTRICT

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

FEB 1 7 2015
_____
Date

_____
Chief Clerk

==============================================================================

PEOPLE V. LAMARR V. ROBINSON

COA NO. 321841

LC NO. 10-6297-01-FC

==============================================================================

EXHIBIT **B**

RETURNED

MAR - 6 2015

COURT OF APPEALS
FIRST DISTRICT

MAR -4 AM 11:48   RECEIVED

PEALS

Exhibit B

# STATE APPELLATE DEFENDER OFFICE

**Detroit**

**DAWN VAN HOEK**
DIRECTOR

**JONATHAN SACKS**
DEPUTY DIRECTOR

www.sado.org
Client calls: 313.256.9822



**MAIN OFFICE:**
PENOBSCOT BLDG., STE 3300
645 GRISWOLD
DETROIT, MI 48226-4281
Phone: 313.256.9833 • Fax: 313.965.0372

**LANSING OFFICE:**
101 N. WASHINGTON, 14TH FLOOR
LANSING, MI 48913-0001
Phone: 517.334.6069 • Fax: 517.334.6987

October 14, 2014

Mr. Lamarr Valdez Robinson
Inmate No. 221610
Saginaw Correctional Facility
9625 Pierce Road
Freeland, MI 48623

Dear Mr. Robinson:

I write to follow-up on my last letter about the affidavits that Kenneth Robinson sent to me. If there is any hope of the potential witnesses being credible it is critically important that there is no contact from you or anyone on your behalf except this office.

Also, there is no reason to have an affidavit from a witness who testified when that affidavit matches the person's trial testimony.

It would be helpful for me to speak with Vanessa and Mr. Mayes so if you have a phone number for either of them please provide it. If not, I have their addresses and can write to them.

Yours truly,

Valerie R. Newman
Assistant Defender

======================================================================

PEOPLE V. LAMARR V. ROBINSON                          COA NO. 321841

                                                      LC NO. 10-6297-01-FC

======================================================================

EXHIBIT __C__

Exhibit C

# STATE APPELLATE DEFENDER OFFICE
**Detroit**

**DAWN VAN HOEK**
DIRECTOR

**JONATHAN SACKS**
DEPUTY DIRECTOR

www.sado.org
Client calls: 313.256.9822



**MAIN OFFICE:**
PENOBSCOT BLDG., STE 3300
645 GRISWOLD
DETROIT, MI 48226-4281
Phone: 313.256.9833 • Fax: 313.965.0372

**LANSING OFFICE:**
101 N. WASHINGTON, 14TH FLOOR
LANSING, MI 48913-0001
Phone: 517.334.6069 • Fax: 517.334.6987

November 6, 2014

Mr. Lamarr Valdez Robinson
Inmate No. 221610
Saginaw Correctional Facility
9625 Pierce Road
Freeland, MI 48623

Dear Mr. Robinson:

I write in response to your letter received October 31. First, the student and I will be out to meet with you on Friday November 14.

In response to your issue of the officers proceeding with reckless disregard of the truth, that is not a viable legal claim. Jessica named you from the start and while she did not initially identify you as the shooter, the police had every right to investigate you as a suspect. Further, the validity of the arrest and/or search warrant is not an issue as there was no evidence seized as a result of the warrants and the only evidence seized at all was the sex tapes, which we will be arguing were irrelevant and should not have been admitted. So even if there was a valid legal claim to the legality of the issuance of the warrant there is no remedy. The remedy for an illegal arrest or seizure is suppression of any evidence that flowed from the arrest or seizure.

You clarified why you sent the affidavit of the witness who testified in court, Ms. Davies. I think you misunderstand what can be done on appeal. This witness testified and her affidavit adds nothing new to the case. If we want to expand the record we have to be able to show that something that was not done would have made a difference in the outcome of the trial. Ms.

Exhibit C

Davies was not a witness who harmed you and her testimony did go against Jessica's in that she said everyone ducked when they heard the shots.

I am working on the video but there is no way to get it to you so I don't know how it will be helpful. There is no way for me to identify anyone from the video and you already had the opportunity to watch it and consult with trial counsel about it. Further, only if someone can either identify the shooter or definitively say it was not you, would that person be helpful in court.

Yours truly,

Valerie R. Newman
Assistant Defender

===============================================================================

PEOPLE V. LAMARR V. ROBINSON                              COA NO. 321841

                                                    LC NO. 10-6297-01-FC

===============================================================================

EXHIBIT **D**

*Exhibit D*

# STATE APPELLATE DEFENDER OFFICE
### Detroit



**DAWN VAN HOEK**
DIRECTOR

**JONATHAN SACKS**
DEPUTY DIRECTOR

www.sado.org
Client calls: 313.256.9822

**MAIN OFFICE:**
PENOBSCOT BLDG., STE 3300
645 GRISWOLD
DETROIT, MI 48226-4281
Phone: 313.256.9833 • Fax: 313.965.0372

**LANSING OFFICE:**
101 N. WASHINGTON, 14TH FLOOR
LANSING, MI 48913-0001
Phone: 517.334.6069 • Fax: 517.334.6987

November 21, 2014

Mr. Lamarr Valdez Robinson
Inmate No. 221610
Saginaw Correctional Facility
9625 Pierce Road
Freeland, MI 48623

Dear Mr. Robinson:

I write to follow-up on our in person meeting on Friday November 14. I received a call from your family that I returned this evening. You are very lucky to have such support. I also spoke with Vanessa. We had a nice conversation. She was at work and was not able to talk too much so she is going to follow up with me.

During our meeting you voiced many complaints about trial counsel and that he had not done enough to fight the case. We explained that the appellate process is not a new chance to start over with fighting the case. You are now convicted and the appellate court will presume your guilt and that the trial was fair. Our job on appeal is to convince the court that your trial was fundamentally unfair – so unfair that you are entitled to a new trial.

We will be arguing that your trial attorney was ineffective for a variety of reasons: not challenging the cell phone tower testimony, not challenging testimony about the sex tapes and irrelevant text messages and not objecting to the prosecutor's misconduct.

We will not be picking apart the testimony of Jessica or any other witness with regard to differences between police reports and trial testimony or

Exhibit D

disputing where Mr. Chubb's body was found or how many times he was shot.

The only disputed issue in this case is the identity of the shooter. Witnesses being wrong about the location of the body or number of shots fired or any other fact has no impact on whether the witness is credible. People's memories change over time and it would be the rare case where a witness did not change anything from the police statement to trial.

We did check on the gun message and you were correct that it was an incoming text message not outgoing.

I will let you know if I am able to obtain the jail calls or the video.

Yours truly,

Valerie R. Newman
Assistant Defender

===============================================================================

PEOPLE V. LAMARR V. ROBINSON                                    COA NO. 321841

                                                            LC NO. 10-6297-01-FC

===============================================================================

EXHIBIT __6__

Ex

# STATE APPELLATE DEFENDER OFFICE

**Detroit**

**DAWN VAN HOEK**
DIRECTOR

**JONATHAN SACKS**
DEPUTY DIRECTOR

www.sado.org
Client calls: 313.256.9822



**MAIN OFFICE:**
PENOBSCOT BLDG., STE 3300
645 GRISWOLD
DETROIT, MI 48226-4281
Phone: 313.256.9833 • Fax: 313.965.0372

**LANSING OFFICE:**
101 N. WASHINGTON, 14TH FLOOR
LANSING, MI 48913-0001
Phone: 517.334.6069 • Fax: 517.334.6987

February 10, 2015

Mr. Lamarr Valdez Robinson
Inmate No. 221610
Saginaw Correctional Facility
9625 Pierce Road
Freeland, MI 48623

Dear Mr. Robinson:

I write in response to your letter received February 9. Thank you for sharing your concerns.

1) You do not have an issue regarding ineffective assistance for failing to call an alibi witness, which is why I did not include the issue. I investigated the information you provided and while Vanessa and I only had a brief conversation, it was clear that her memory of that date is not as clear as was provided in the affidavit you sent to me.

Tracey Mays is in no way an alibi witness but someone who confirms what was testified to that folks in the car ducked when the shooting started.

As I told you from the start, I will not file any affidavit you send to me. I have an ethical duty to speak with any potential witness and obtain an affidavit that accurately reflects the information the person shares with me.

2) Mr. Washington has not turned the video over to me and has not responded to my requests.

3) There is no merit to a sufficiency claim. Jessica identifies you as the shooter and that alone is sufficient legal evidence to convict.

4) Enclosed is the Supreme Court Administrative Order on pro per supplemental briefs. I do not make the rules and if you fail to follow them you risk having your pro per brief rejected. If you are presenting a different theory for the IAC claim, that is okay. What you can't do, under the rules, is add to issues I already presented.

I think what you want to do is present an entirely new IAC claim for failure to call alibi witnesses. I presented each IAC claim as a separate issue and you can do the same.

I am unclear about what you think should have been included in the prosecutor misconduct argument. However, if you present a separate claim, different from what I presented, the Brief should be accepted.

In closing, I will not supplement the Brief I filed or submit to the Court any of the affidavits you sent to me. Since you are preparing a supplemental brief and have no ethical code to follow, you can submit whatever it is you think the court should consider.

Send me your pro per brief and I will file it on your behalf. I will submit whatever you send to me and then the Court will take whatever action it takes.

Enclosed is the prosecution's response to our motion to remand.

Yours truly,

Valerie R. Newman
Assistant Defender

========================================================================

PEOPLE V. LAMARR V. ROBINSON                                    COA NO. 321841

                                                                LC NO. 10-6297-01-FC

========================================================================

EXHIBIT __F__

Exhibit F

**A F F I D A V I T**

STATE OF MICHIGAN)
             )ss:
COUNTY OF WAYNE )

NOW COMES VANESSA HUDSON, and ever pursuant to MCL 600.1434, in lieu of oath as shown infra and do swear and declare that the contents in this affidavit are true and accurate to the best of my information, knowledge and belief:

   1. I Vanessa Hudson am one of three defense alibi witnesses, on 5-13-10 Dez (Lamarr Robinson) and I were together from 4 to 5:30 p.m.. I got a ride to Cole's house at 14870 Tracey, where Dez (Lamarr Robinson) was fixing the power steering on my van in order to explain to Cole why Dez (Lamarr Robinson) was keeping my dance clothes as well as to go with Dez to pick up some parts to fix my van. This was around 3:30 or 4 p.m.. My phone would not hold a charge, I put my phone in my van Dez and I left to get some parts and make a few stops in the Camaro, after all the runs we headed back to Cole's house, I had to get ready for work. We got to Cole's house around 5:30 or 6p.m..

   2. I came to pre-trial to be a alibi witness but was not called forward. I tried contacting the Lawyer Earl Washington but he never returned my calls. I called Mr. Washington repeatedly after the Prosecutor Jamie Powell called my phone.

   3. I came to the Trial to still try to be a alibi witness. The court removed the Defense Party out of the Court.

                      **FURTHER AFFIANT SAYETH NOT**

**Crystal Mitchell**
Notary Public - Oakland County
Serving in Wayne
My Commission Expires: 1-13-2016

/S/ Vanessa Hudson
      Vanessa Hudson - Affiant
      23818 Frisbee APT. 1
      Detroit, Michigan 48219

Date: 1-3-2013

Subscribed and Sworn to before me
on this 3rd , day of January 2013

NOTARY PUBLIC
My Commison Expires On: 1-13-2016

================================================================================

PEOPLE V. LAMARR V. ROBINSON                                    COA NO. 321841

                                                        LC NO. 10-6297-01-FC


================================================================================




EXHIBIT __G__

Exhibit G

# A F F I D A V I T

STATE OF MICHIGAN)
                 )ss:
COUNTY OF WAYNE  )


NOW COMES, **LAMARR V. ROBINSON,** And avers pursuant to MCL 600.1434, in lieu of oath as shown and swear and declare that the contents in this affidavit are true and accurate to the best of my knowledge, information and belief:

1. On Febuary 15, 2011 I <u>Lamarr V. Robinson</u> was found guilty by jury for: 1. Assault with intent to murder 2. Weapons-Firearms-possesion by felon 3. Weapons felony firearm. This Trial was held in the 3rd Judicial Circut Court Of Wayne County with the Honorable Vera Massey-Jones presiding. In this matter I was represented by Court Appointed Counsel: Earl S. Washington No. 31383 legal aide defender.

2. In the matter of <u>People v. Lamarr V. Robinson</u>, Case No. 10-006297-01-FC, I contend my guilt was founded on the Ineffective Assistance of Counsel, where appointed Counsel Earl S. Washington representation deprived me of a fair Trial by Counsel's inexcusable neglect and deficent performance. Thereby, violating his fiduc-iary duty imposed by his appointment by the Court and contrary to the United States Constitution, 6th..and 14th Amendments and Michigan Constitution 1963, Act 1, sec. 17 and 20, where counsels failure(s) and/or act and omissions occured on the following instances:

   A) Failure to request a continuance when counsel was not prepared for Defendant's Preliminary Examination. Defendant requested Counsel to request such contin-uance to view the video and get the rest of Defendant witnesses in court. This occured on July 23, 2010.

   B) Counsel failed to challenge the basis of Prosecution star witness Jessica Taylor and her inconsistent 3rd statement. When witness first 2 statements on the scene states she didn't see the shooter, "we ducked when we heard what sounded like fire crackers.", witness Jessica Taylor states the shots came from behind and when she came up she couldn't find the complaintent Jamel Chubb. Witness Jessica Taylor's 3rd statement states she's watching complaintent Jamel Chubb as he is pumping gas, shots went off and thats when she seen the suspect's face and claims it was the Defendant, Jessica Taylor states when she seen Defendant he was firing towards the ground. The video

Exhibit G

shows complaintant is done pumping gas hangs the pump up,
walks behind the 2003 Land Rover thats when suspect rode
behind victim Jamel Chubb and shot victim in the back of
the head with a fully automatic gun. If there had been a
continuence counsel would have been able to prove to the
court that Jessica Taylor's 3rd statement is not truthful.
It was unreasonable for counsel not to challenge this pre-
trial confrontation at a pre-trial that was unduly sugg-
estive and in violation of Defendant's 4th Amendment guar-
antee against such identification, nor did counsel make
the record with the District Court at this probable cause
hearing. When, if such information was brought to the
attention of the court a different and favorable result
was possible for his client. Defendant would not have
been bound over at the minimum an appropriate foundation
at District Court could have laid for a proper Wade Hearing
Absent this record being made at preliminary examination
or request a Wade Hearing, said appointed counsel rendered
deficient performance at a critical stage.

C) Counsel failed to file a notice of alibi- (Vanessa Hudson).
On July 23, 2010, I informed counsel at Preliminary Exam
that it was impossible for me to have committed this alle-
ged crime because I am sure I was in the company of Vanessa
Hudson a mile plus feet away at the time of the shooting.
I was subsequently bound over and counsel made no mention
of Ms. Hudson nor other defense witnesses to the court
or prosecution. Had counsel made such assertion at my
preliminary examination, the court and/or the prose-
cution could have reasonably made effort to investigate
my alibi.

D) On June 24, 2010 at Preliminary Exam and during Lawyer
Earl Washington's very few visits I requested to use my
my alibi and other witnesses. I kept asking him when are
he and I going to look over the video as Judge Vera
Massey-Jones instructed Mr. Washington to do. I told him
these things prove my innocence.

E) Defense counsel was required to find and interview witn-
esses and get forensics on the bullets, file a motion
notice of alibi, obtain the video, motion to quash
insufficient evidence. Counsel's delibrate indifference
and dereliction of duty caused Defendant actual harm
by denying him reasonable defenses and challanges to
the accusations against me. A reasonable competent
counsel would have taken such actions and filed these
requested motions.

Exhibit G

3.  F) Defense counsel failed to send out or request an
    investigator to interview the known witnesses
    indicated by Detroit Police reports; Tremaine Owen
    Maddox, Kayana Davies, Jasmine Gradford, Jessica
    Taylor, Charles Mitchell. I requested that counsel
    discover the mental records from Vista Maria on
    star witness Jessica Taylor to prove she is not a
    credible witness, the witness is suicidal, bipolar
    drug dealer, drug addict with delusional blackout
    tendensies. Counsel relied upon the Police reports
    and information from the Prosecutor who were under
    no obligation to do a thorough pretrial investigation
    for the defense or on behalf of the defendant.
    Defense Counsels failure indicates a total failure to
    do a reasonable investigation and subject the pros-
    cutions case to a meaningful adverse testing.

3.  On Febuary 15, 2011, I was sentenced and counsel submitted
    no information known to him in regard to my claim of
    actual innocence. I was subsequently sentenced to 47 yr
    6 mo to 120 yr and a consecutive term of 2 years for felony
    firearm.

     Defendant Lamarr V. Robinson No. 221610, now submits this
claim of ineffective assistance of counsel, where by the cumulative
effect of errors violated my 4th, 5th, 6th, and 14th Amendment
Constitutional Rights, which denied me due process of law and
made my trail by jury Fundamentally unfair.

**FURTHER AFFAINT SAYETH NOT**

DATE: 12-27-12

Lamarr V. Robinson No. 221610
Saginaw Correctional Facility
9625 Pierce Road
Freeland, Michigan 48623

Sworn and subscribed before me on
this _27th_ day of _December_ 2012

Notary Public
My comission expires _Sept 30, 2013_
Acting in Saginaw Co.

Exhibt G(6)

# A F F I D A V I T

STATE OF MICHIGAN)
               )ss:
COUNTY OF WAYNE  )

    NOW COMES LAMARR V. ROBINSON, and avers pursuant to MCL _ .
600.1434, in lieu of oath as shown and swear and declare that the
contents in this affidavit are true and accurate to the best of my
knowledge, information and belief:

1. On May 13, 2010 I recieved a call that morning from
   Jessica Taylor asking me to pick her up from her mother's
   apartment in Livonia (cell phone records evidence will
   confirm). 8:03 A.M.

2. When I got to the apartment parking lot I called Ms.
   Taylor to open up the door Ms. Taylor opened the door
   I entered and she and I were talking. I told her I had
   to go to Ypsilanti and did she want to ride. She said
   "no" and started kissing on me she led me to her bedroom
   where her and I had sex. During sex I put a hickey on
   her neck. (cell phone evidence will confirm). 12:50 & 1:22

3. When we were in her bedroom having sex someone was
   knocking on the door and calling the land line and
   Jessica's cell phone. She didn't answer either one. I
   answered the door cause Jessica was still getting dressed
   (complaintant cell phone evidence will confirm). 1:22 - 1:43

4. I let Jamel Chubb in, We spoke to eachother and he
   started talking to Jessica. The two of them went into her
   bedroom. He came back out telling her to get his shit. Ms.
   Taylor came out and handed him some bags of weed. The two
   of them were arguing. I told her "you got to be alittle
   smoother than this", and I left. Jamel left also. 1:45 P.M.

5. As I was leaving my kids mom Nicole Waller (PH. No. 459-
   1300) was calling me. She and I had to go to Dearborn to
   Advance Tech to pick up our kids from school. She was
   asking me whos bag of dance clothes (exoctic dancer clothes)
   are these and why did I have them (cell phone evidence will
   confirm). 1:53

6. I explained to Cole those are Vanessa's dance clothes and
   that was also Vanessa's van at the house (which she was
   also asking about) and that she was paying me to fix the
   power_steering on the van. I also explained to her that
   the clothes were there because Vanessa didn't want her
   boyfriend or family to know she was dancing.

Lamarr Robinson

1.

Exhibit G(b)1

7. After talking to Cole, I text and called Nessa to explain that Cole is upset and could she please come talk to Cole to explain why I had her dance clothes and what I am doing with the van. I text Nessa 911 where are you cause Cole was threatening to burn the dance clothes. Cole sent me a text: make sure you take your bitch's shit with you because I will burn it (cell phone evidence will confirm).

8. I sent Nessa a text 911 where are you. When Nessa got to Coles and I house on Tracey. Vaness text her (Vanessa's Ph No. 721-7600) (cell phone evidence will confirm).

9. Vanessa talked to Cole and explained her situation to her.

10. I went outside to work on the van. I didn't have the right tools so I had to borrow some tools and I had some customers to see. So Vanessa and I got in the Camaro made runs and went by some associates house to see if they had some tools I could use.

11. I always take side streets cause there is not that much traffic. When I got to Greenlawn and Pembrooke it was a dry run. After that I had to meet somebody on Stoepel and Curtis. So, I took Greenlawn to Outer Drive, Outer Drive to Livernois, Livernois to Curtis, Curtis to Stoepel and was headed back to Tracey. I had to meet somebody on Appoline and Six Mile and then Appoline and Curtis after that we were headed back to Tracey . I didn't want to be gone too long because I didn't want Cole to start up again (cell phone evidence will confirm).

12. Jamel and I talked and text before. He and I knew Jessica was dating other people. I didn't have a problem with it I had four females that took up most of my time. Jessica was basically just for sex there was no future. Jamel and I would give eachother info on Jessica.

13. The night I got arrested,yes, there was drugs in the van. I was making rounds, completely unaware my name came up in the shooting that happened on 7 Mile and Wyoming.

14. I did a live line up and didn't get picked. At the time of the shooting I was with my alibi Vaneesa Hudson on Livernois doing runs and looking to borrow tools.

15. 12 days after the shooting I was arrested again. Jessica Taylor states I was the shooter and she seen me shoot the victim.

16. Ms. Taylor's statement at the police station, at preliminary exam and at trial dosen't match to the shooting that is on video (can be confirmed by statements and the video).

Lamark Robin

2.

Exhebit G (b)

17. Jessica Taylor's friend that was in the back seat of
the truck Ms. ~~Keynen~~ Davies stated on scene "we ducked
and at the Trial she stated we all ducked and she seen
Jessica Taylor duck when the shots went off.

18. A man by the name of Tracey Mays that knows Jessica
Taylor was about to walk up to Jessica at the gas station
when he too seen her duck.(How could Jessica see anything
if she was ducked down in the truck?)

19. Mr. Washington did nothing to investigate into my issues
and evidence. I advised him to contact my alibi and we
needed to go over the video. Counsel was told at Prelim-
inary exam about my alibi.

20. I asked Attorney Washington to thoroughly cross-examine
Jessica Taylor and ask her to tell what happened at the
gas station. I asked him to do this before she was
shown the video, then after that bring up her 3rd state-
ment that dose not match the crime and show her and the
Court that her first two statements match the other
witnesses statements. Mr. Washington never did what I
requested.

21. During questioning of Jessica Taylor at Trial Ms. Taylor
was once again being untruthful I handed Mr. Washington
the evidence that Ms. Taylor was being untruthful,Mr.
Washington never used the evidence (victim cell phone
records was handed to Mr. Washington).

22. My counsel never called nor returned calls from my
witnesses, barely came to see me in the COunty Jail
So he and I could go over my case.

23. My Counsel was ineffective. He failed to do a proper
investigation, failed to call witnesses and estab-
lish my alibi as requested. He did not subject the
Prosecutor's case to an adversarial testing, nor did
he properly cross-examine the government's witnesses
against me. He did not raise the issue of impeachment of
Ms. Taylor's inconsistant statements. Communication
was conflicting and non-existent because he constantly
would not keep me advised of the disposition of my
case at various stages. Absent this COunsel's poor
performance and dereliction of duty, there was a prob-
ability I would have been acquitted of these charges.

Jamarr Robin

Exhibit G(b)

I NOW CHALLENGE MY COUNSEL'S REPRESENTATION THROUGH A
CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE
SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

FURTHER AFFIANT SAYETH NOT

Date: 12-27-12

/S/ Lamarr Robinson
Lamarr V. Robinson
Saginaw Correctional Facility
9625 Pierce Road
Freeland, Michigan 48623

Subscribed and sworn to before me
on this 27th day of December
in the year of 2012.

Erwin D Bell
NOTARY PUBLIC
My commision expires: Sept 30, 2013
Acting in Saginaw Co.

================================================================================

PEOPLE V. LAMARR V. ROBINSON                                    COA NO. 321841

                                                           LC NO. 10-6297-01-FC

================================================================================

EXHIBIT __H__

STATE OF MICHIGAN )
) ss
COUNTY OF WAYNE )



*Exhibit H*

NOW COMES, TRACEY MAYS, and aver pursuant to MCL 600.1434, in lieu of oath as shown infra and do swear and declare that the contents in this affidavit are true and accurate to the best of my information, knowledge, and belief.

(1) I Tracey Mays, on the date of 5-13-10 was crossing Wyoming by the alley located next to Kentucky Fried Chicken. I was headed to the BP gas station where I seen (Jessi) Jessica Taylor enter the gas station in a gold yellowish Landrover to pump 4. Ms. Taylor was in the front passenger seat facing Kentucky Fried Chicken, as I was crossing Wyoming to talk to Jessi. When I got to the side walk shots were fired. I seen Jessi duck face forward as I got low. As I was getting up to run back across Wyoming I didnt see Jessi. When I got back across Wyoming by the alley by Kentucky Fried Chicken I seen Jessi come up. When I seen Jessi come up I knew she was o.k., I left.

(2) I Tracey Mays came to the Pre-Trial hearing for Lamarr Robinson to be a witness for what I seen at the BP gas station located at 10001 West 7 Mile. I called the lawyer Earl Washington before and after the hearing, Mr. Washington never returned any of my calls. At the hearing I came into contact with Kayana Davies and Jasmine Miller, Ms. Davies and Ms. Miller were at trial as prosecution witnesses. The court removed me and some other people out of the court room that was there for the defendant (Dez) Lamarr Robinson.

FURTHER AFFIANT SAYETH NOT

/s/ Tracey MAYS
AFFIANT

Tracy Maye

Subscribed and sworn to before me

on this 18th day of Nov, 2011.

May 23 2015

NOV-18-11

My commission expires

=================================================================================

PEOPLE V. LAMARR V. ROBINSON                                    COA NO. 321841

                                                          LC NO. 10-6297-01-FC

=================================================================================

EXHIBIT __I__

*Exhibit I*

STATE OF MICHIGAN)

)ss

COUNTY OF WAYNE )

### AFFIDAVIT

NOW COMES Kayana Davis. and ever pursuant to MCL 600.1434, in lieu of oath as shown infra and do swear and declare that the contents in this affidavit are true and accurate to the best of my information, knowledge and belief:

1. I Kayana Davis on the date of 05-13-10 the of the shooting at the B.P. gas station located at 10001 W. 7mile and Wyoming , it was myself (Kayana Davis)-Jessica Taylor-Jasmine Miller and Jamel Chubb. Jamel was outside of the truck, the three of us stayed in the truck, I was behind the driver seat, Jasmine was to my right behind front passenger seat, Jessica was in the front passenger seat, we were seated ready to leave the gas station, we heard shots from behind the truck and we ducked. I ducked towards the front between the driver and the passenger seats facing Jessica. Jessica ducked facing forward and Jasmine ducked also. After the shoots we stayed down for a minute, when we came up and didn't see Jamel we all got out the truck. We found Jamel behind the truck on his back covered in blood. None of us saw the shooter.

### FURTHER AFFIANT SAYETH NOT



/s/ *Kayana Davis*

Kayana Davis-Affiant

14526 St Marys Street

_____ MICHI(

SUBCRIBED AND SWORN TO BEFORE ME ON THIS _10_ , day of _March_

_____

NOTARY PUBLIC

MY COMMISSION EXPIRES ON: 05-23-2015.

MICHAEL J. TALBOT
CHIEF JUDGE
CHRISTOPHER M. MURRAY
CHIEF JUDGE PRO TEM
DAVID H. SAWYER
WILLIAM B. MURPHY
MARK J. CAVANAGH
KATHLEEN JANSEN
HENRY WILLIAM SAAD
JOEL P. HOEKSTRA
JANE E. MARKEY
PETER D. O'CONNELL
KURTIS T. WILDER
PATRICK M. METER
DONALD S. OWENS
KIRSTEN FRANK KELLY

PAT M. DONOFRIO
KAREN FORT HOOD
STEPHEN L. BORRELLO
DEBORAH A. SERVITTO
JANE M. BECKERING
ELIZABETH L. GLEICHER
CYNTHIA DIANE STEPHENS
MICHAEL J. KELLY
DOUGLAS B. SHAPIRO
AMY RONAYNE KRAUSE
MARK T. BOONSTRA
MICHAEL J. RIORDAN
MICHAEL F. GADOLA
JUDGES

JEROME W. ZIMMER JR.
CHIEF CLERK



State of Michigan
# Court of Appeals
**Detroit Office**

March 6, 2015

Lamarr V. Robinson #221610
Saginaw Correctional Facility
9625 Pierce - MDOC
Freeland, MI 48623

Re: **People of MI v Lamarr Valdez Robinson**
Court of Appeals No. **321841**
Lower Court No. **10-006297-01-FC**

Dear Mr. Robinson:

Enclosed please find the motion for reconsideration that you recently submitted in the above matter. We cannot accept this filing because you are represented by assigned counsel, who is responsible for all filings in this Court:

Attorney: Valeria R. Newman
Phone: 313-256-9833
Address: 645 Griswold St., 3300 Penobscot Bldg., Detroit, MI 48226

Further, we cannot accept the filing under Administrative Order 2004-6, Standard 4, because the motion did not accompany a timely-filed brief acceptable under that provision. Standard 4 allows only the filing of "one brief with or without an appropriate accompanying motion" addressing only claims that are "raised on appeal against the advice of assigned counsel."

Very truly yours,

Office of the Clerk

Encl.

cc: Daniel E. Hebel and Valerie R. Newman

DETROIT OFFICE
CADILLAC PLACE
3020 W. GRAND BLVD. SUITE 14-300
DETROIT, MICHIGAN 48202-6020
(313) 972-5678

TROY OFFICE
COLUMBIA CENTER
201 W. BIG BEAVER RD. SUITE 800
TROY, MICHIGAN 48084-4127
(248) 524-8700

GRAND RAPIDS OFFICE
STATE OF MICHIGAN OFFICE BUILDING
350 OTTAWA, N.W.
GRAND RAPIDS, MICHIGAN 49503-2349
(616) 456-1167

LANSING OFFICE
925 W. OTTAWA ST.
P.O. BOX 30022
LANSING, MICHIGAN 48909-7522
(517) 373-0786

COURT OF APPEALS WEB SITE ~ http://courts.mi.gov/courts/coa/

**STATE OF MICHIGAN**
**COURT OF APPEALS**

# Bundle Cover Sheet

| Lower Court: | L Ct No.: | COA No.: |
|---|---|---|
| WAYNE CIRCUIT COURT | 10-006297-FC | 321841 |

| Case Title: |
|---|
| PEOPLE OF MI V LAMARR VALDEZ ROBINSON |

| Priority: |
|---|
| NONE |

| *Filer Information* |
|---|

| Filer | Attorney |
|---|---|
| Julie  Dundr | Valerie  Newman, 47291 |
| , MI | , MI |
| 313-256-9833 | vnewman@sado.org |

| *Filing Summary* |
|---|

| Type | Description | Fee |
|---|---|---|
| MOTION - REGULAR | Standard 4 Pro Per Supplemental Brief | $0.00 |
| | **Total:** | **$0.00** |

Alternate Payment Reason: Appointed Counsel

RECEIVED by MCOA 3/6/2015 3:14:11 PM

The document(s) listed above were electronically filed with the Michigan Court of Appeals.

**STATE OF MICHIGAN**
MI Court of Appeals

## Proof of Service

| Case Title: | Case Number: |
|---|---|
| PEOPLE OF MI V LAMARR VALDEZ ROBINSON | 321841 |

1. Title(s) of the document(s) served:

| Filing Type | Document Title |
|---|---|
| Motion - Regular | Standard 4 Pro Per Supplemental Brief |

2. On 3-6-2015, I served the document(s) described above on:

| Recipient | Address | Type |
|---|---|---|
| AO Support<br>State Appellate Defender Office | ao@sado.org | e-Service |
| County Prosecutor Wayne<br>Court Added<br>1182 | wcpaappeals@waynecounty.com | e-Service |
| Julie Dundr<br>State Appellate Defender Office | jdundr@sado.org | e-Service |
| Valerie Newman<br>State Appellate Defender Office<br>47291 | vnewman@sado.org | e-Service |
| WCPO Appeals<br>Wayne County Prosecutor's Office | WCPAAppeals@waynecounty.com | e-Service |

This proof of service was automatically created, submitted and signed on my behalf through my agreements with TrueFiling and its contents are true to the best of my information, knowledge, and belief.

3-6-2015
_____
Date

/s/ Julie Dundr
_____
Signature

State Appellate Defender Office
_____

RECEIVED by MCOA 3/6/2015 3:14:15 PM

STATE OF MICHIGAN

IN THE COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN

    Plaintiff-Appellee,

v.

LAMARR VALDEZ ROBINSON, #221610,

   __Defendant-Appellant In Pro Per.__  /
Wayne County Prosecutor
__Attorney for Plaintiff-Appellee__

COA No. 321841

LC No. 10-6297-01-FC


DEFENDANT-APPELLANT'S STANDARD FOUR

SUPPLEMENTAL BRIEF


BY:  Lamarr V. Robinson #221610
      Defendant-Appellant In Pro Per
      Saginaw Correctional Facility
      9625 Pierce Road
      Freeland, Michigan 48623

RECEIVED by MCOA 3/6/2015 3:14:11 PM

## TABLE OF CONTENT

INDEX OF AUTHORITIES................................................. ii

STATEMENT OF JURISDICTION............................................ iii

QUESTIONS PRESENTED................................................. iv

STATEMENT OF FACTS................................................. 1

ISSUE I........................................................... 2

ISSUE II.......................................................... 5

ISSUE III......................................................... 15

RELIEF REQUESTED.................................................. 24

EXHIBITS A THRU F

RECEIVED by MCOA 3/6/2015 3:14:11 PM

# INDEX OF AUTHORITIES

## FEDERAL AUTHORITIES

Beasley v. United States, 491 F2d 687 (6th Cir. 1974).........................8

Berry v. City of Detroit, 26 F3d 1342 (6th Cir. 1994).......................13

Blackburn v. Foltz, 828 F2d 177 (6th Cir. 1987)...................... ......3

Byrd v. Collins, 209 F3d 468 (6th Cir. 2000)...............................20

Chambers v. Mississippi, 410 US 284 (1973)................................10

Combs v. Coyle, 205 F3d 269 (6th Cir. 2000)................................6

Couch v. Booker, 608 FSupp2d 68 (E.D. Mich 2009)..........................15

Crawford v. Washington, 541 US 36 (2004)...................................13

Darden v. Wainwright, 477 US 168 (1986)....................................19

Delaware v. Van Arsdall, 475 US 673 (1986)...................... .........13

In re Winship, 397 US 358 (1970)............................................2

Jackson v. Virginia, 443 US 307 (1979)........................... ... ......2

Lisenba v. California, 314 US 219 (1941)....................................19

Lorraine v. Coyle, 291 F3d 416 (6th Cir. 2002)... ... .....................20

Oddi v. Ford Motor Co., 234 F3d 136 (3d Cir. 2000)..........................13

Padilla v. Kentucky, 130 SCt 1423 (2010). ......... ................... .....8

Powell v. Alabama, 287 US 45 (1932)..........................................5

Randolph v. Collectramatic Inc., 590 F2d 844 (10th Cir. 1979)... . .... ....10

Richey v. Mitchell, 395 F3d 660 (6th Cir. 2005)........................6, 12

Rompilla v. Beard, 545 US 374 (2005).....................................11, 12

Stephen v. Kemp, 846 F2d 642 (11th Cir. 1988)................. . ...........11

Strickland v. Washington, 466 US 668 (1984)................................ 5

United States v. Bagley, 473 US 667 (1985)..................................15

United States v. Canan, 48 F3d 954 (6th Cir. 1995), rehrg en banc denied
(#95-5088, CA6 6-21-95)... ... ........................ ................ .....2

United States v. Endo, 635 F2d 321 (4th Cir. 1980).........................16

United States v. Galloway, 316 F3d 624 (6th Cir. 2003)........... .........20

United States v. Lochmondy, 890 F2d 817 (6th Cir. 1989)....................15

United States v. O'Dell, 805 F2d 637 (6th Cir. 1986).......................15

United States v. Quinn,  901 F2d 522 (6th Cir. 1990)........................4

United States v. Steele, 685 F2d 793 (3d Cir. 1982)....... .... .........23

United States v. Tudar, 716 F2d 576 (9th Cir. 1983).........................11

United States v. Young,  470 US 1 (1995)................................20, 21

Von Moltke v. Gillies, 322  US 708 (1948)........... ............. .....11

Washington v. State, 388 US 14 (1967)......................................7

Wiggins v. Smith, 539 US 510 (2003).... ...................................14

Williams v. Taylor, 529 US 362 (2000)......................................14

Workman v. Tate, 957 F2d 1339 (6th Cir. 1992).............................8

RECEIVED by MCOA 3/6/2015 3:14:11 PM

i.

## INDEX OF AUTHORITIES - Cont.

### STATE CITATIONS

Gilbert v. Daimler Chrysler, 470 Mich 749 (2004). ......................13
Hart v. United States, 538 A.2d 1146, 1150 (D.C. 1977)....................23
People v. Ackerman, 257 Mich App 434 (2003)...............................15
People v. Anderson, 389 Mich 155 (1973)....................................2
People v. Armstrong, 490 Mich 281 (2011)...................................5
People v. Bahoda, 202 Mich App 214 (1993). ...............................23
People v. Bahoda, 448 Mich 261 (1995).....................................23
People v. Barbara, 400 Mich 352 (1977)....................................19
People v. Bulger, 462 Mich 495 (2000)......................................6
People v. Carbin, 463 mich 590 (2000). ....................................6
People v. Cooper, 236 Mich App 643 (1999).................................23
People v. Dinsmore, 103 Mich App 660 (1981)...............................20
People v. Hampton, 407 Mich 354 (1979).....................................2
People v. Jacobson, 205 Mich App 302 (1994)...............................10
People v. Kelley, 286 Mich App 524 (1996)..................................7
People v. Kern, 6 Mich App 406 (1967)......................................3
People v. Lee, 212 Mich App 228 (1995)....................................20
People v. Miller, 211 Mich App 30 (1995)..................................14
People v. Patterson, 428 Mich 502 (1987)...................................2
People v. Pickens, 446 Mich 298 (1994).....................................5
People v. Pubrat, 451 Mich 589 (1996).....................................14
People v. Stewart, 163 Mich 1 (1910).......................................3
People v. Sullivan, 290 Mich 414 (1939)....................................3
People v. Tracey, 221 Mich App 321 (1997).................................15
People v. White, 411 Mich 366 (1987)......................................15
People v. Williams, 198 Mich App 537 (1993)...............................10
State v. Tolson, 248 Iowa 733, 82 NW2d 105 (1957).........................16
Wiley v. Henry Ford Cottage Hosp., 257 Mich App 488 (2003)................19

### CONSTITUTIONS

U.S. CONST AM V_____passim
U.S. CONST. AM VI_____Passim
U.S. CONST AM XIV_____Passim
MI CONST ART 1, §17_____Passim
MI CONST ART 1, §20_____Passim

### MCL/MCR/MRE

MCL 775.15 _____15
MCR 6.005(H)(4)_____ 6
MRE 702 _____10

### SECONDARY SOURCE

ABA Standard §4.4.1_____12
ABA Code of Professional responsibility EC 7-8_____ 6

ii.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

## STATEMENT OF JURISDICTION

Defendant-Appellant Lamarr V. Robinson contends that this Honorable Court has jurisdiction to hear this matter pursuant to **MI Const. 1963, Art 1, §20, MCR 7.203(A) and Administrative Order 2004-6, Standard 4.** Defendant-Appellant appeals as of right from his jury trial conviction in the Third Judicial Circuit Court - Wayne County entered on February 15, 2011.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

iii.

## QUESTIONS PRESENTED

I.  DID THE PROSECUTION FAIL TO PRODUCE LEGALLY SUFFICIENT EVIDENCE TO IDENTIFY APPELLANT AS A PERPETRATOR OF THE OFFENSES BEYOND A REASONABLE DOUBT?

II.  WAS THE DEFENDANT DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO THE SIXTH AMENDMENT WHERE COUNSEL FAILED TO CALL MATERIAL AND ALIBI WITNESSES?

WAS COUNSEL INEFFECTIVE FOR FAILURE TO INVESTIGATE AND MOVE THE TRIAL COURT FOR AN EXPERT WITNESS?

DID THE CUMULATIVE EFFECT OF ERRORS DEPRIVE DEFENDANT OF A FAIR TRIAL AND DUE PROCESS?

III.  WAS DEFENDANT-APPELLANT DENIED DUE PROCESS OF LAW AND A FAIR TRIAL BY THE PRESENTATION OF FALSE EVIDENCE KNOWN TO BE SUCH BY THE PROSECUTOR, WHERE JESSICA TAYLOR ADMITTED TO SEEING THE SHOOTER CONTRARY TO FACTS PRESENTED AT TRIAL?

DID THE MULTIPLE ACTS OF PROSECUTORIAL MISCONDUCT DENIED DEFENDANT A FAIR TRIAL AND WARRANT A NEW TRIAL AND/OR REVERSAL?

THE PEOPLE WOULD ANSWER THESE QUESTIONS "NO"

THE DEFENDANT-APPELLANT WOULD ANSWER THESE QUESTIONAS "YES"

iv.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

## STATEMENT OF FACTS

Defendant-Appellant Lamarr Valdez Robinson, concurs and accepts the appellate counsel's statements of facts, but submits for purpose of [Remand]; that this Court should note and accept the findings of defendant's previous retained appellate counsel - [PAUL DANIEL CURTIS]. Attorney Curtis discovered through his investigation that trial counsel was never provided with the BP gas station video. Also discovered by said counsel was that there was another potential witness never called by the prosecutor. This person was interviewed by the Detroit Police Department-DPD, however, never called at trial. Attorney Curtis was also provided a list of alibi witnesses who were never called by defense counsel. This letter fom Attorney Curtis dated: August 26, 2012, is attached as Exhibit E.

This Court may make note of this correspondence or call Attorney Paul Daniel Curtis as a witness who has previous assessed trial counsel error while acting as appellate counsel; on Motion to Remand.

Defendant-Appellant submits his claims of trial error as presented in his Supplemental brief pursuant to Admin Order 2004-6, STd. 4, Infra.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

1.

## ISSUE I

THE PROSECUTION FAILED TO PRODUCE LEGALLY SUFFICIENT EVIDENCE TO IDENTIFY APPELLANT AS A PERPETRATOR OF THE OFFENSES BEYOND A REASONABLE DOUBT.

ISSUE PRESERVATION AND STANDARD OF REVIEW: Although preservation of insufficiency of the evidence claim is not required for review. **People v. Patterson**, 428 Mich 502, 514 (1987). The de novo standard applies to insufficiency of the evidence claims. **United States v. Canan**, 48 F3d 954, 962 (6th Cir. 1995), rehr'g en banc denied (#95-5088, CA6, 6-21-95). Under a test that requires the reviewing court to view the evidence in the light most favorable to the prosecution and consider whether there was sufficient evidence to allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt. **Jackson v. Virginia**, 443 US 307 (1979); **People v. Hampton**, 407 Mich 354, 368 (1979),

## DISCUSSION

The Due Process Clause of both the state and federal Constitutions prohibits a criminal conviction absent proof beyond a reasonable doubt that the accused is guilty of all the essential elements of the crime charged. **In re Winship**, 397 US 358, 361-62 (1970). This high standard was developed to safeguard citizens from "dubious and unjust convictions" resulting in "improper forfeitures of life, liberty and property." **Id. at 362.** As the United States Supreme Court reasoned in **Winship**, "[n]o man should be deprived of his life under the forms of the law unless the jurors who try him are able, upon their consciences, to say that the evidence before them...is sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged. " **Id. at 363.** Thus, a conviction based on insufficient evidence is unconstitutional, and must be reversed if the evidence produced at trial failed to satisfy this "beyond a reasonable doubt "burden of proof." **Jackson v. Virgina, supra; People v. Hampton, supra.**

2.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

According to **People v. Kern**, 6 Mich App 406, 409 (1967), "[a]s an essential part of his case, the prosecutor must identify the accused as the person who committed the alleged—offense." As the <u>Kern</u> <u>Court</u> stated, "[t]he duty of the prosecutor to identify the accused is an element of his general duty to prove defendant's guilt beyond a reasonable doubt.   Certainly proof of the defendant's connection with the alleged offense is an indispensable element of that duty." **Id. at** 409.   The prosecution may establish identity by either direct testimony or circumstantial evidence. **Id. at** 409-410, citing **People v. Sullivan**, 290 Mich  414, 418-19 (1939); **People v. Stewart**, 163 Mich 1, 8 (1910).   Appellant contends that here the prosecutor neglected to establish, either directly or circumstantially, that Appellant was involved in the commission of the offense.

The defense did not dispute that an assault with intent to murder occurred. Rather, it consistently maintained that Appellant was not the perpetrator.   The only legitimate evidence against Appellant was that the victim was ▮▮▮ on a BP surveillance video being shot.   The video clearly does not depict the Appellant as the shooter.   Appellant further contends that evidence of a cell phone tower evidence and trial counsel's stipulation to a record custodian as an expert witness for Metro PCS cannot be legally admitted as evidence.   This issue is further argued in the appellate brief filed by counsel and on motion to remand.

Second, the evidence of Ms. Taylor's belated identification of Appellant was questionable, if not suspect, and this Court should take grave reservation concerning the reliability of eyewitness testimony. See e.g., **Blackburn v. Foltz**, 828 F2d 1177, 186 (6th Cir. 1987)(expressed "grave reservations concerning the reliability of eyewitness testimony."); **People v. Anderson**, 389 Mich 155, 172 (1973)(It is "scientifically and judicially recognized fact that there are serious limitations on the reliability of eyewitness identification).

RECEIVED by MCOA 3/6/2015 3:14:11 PM

Lastly, a court's error in admission of evidence "dos not..obviate the need to review the sufficiency of the evidence." **United States v. Quinn,** 901 F2d 522, 529 n.5 (6th Cir. 1990).

The prosecution did not meet its burden of proving beyond a reasonable doubt the identity of Appellant as the perpetrator. Therefore, the evidence was insufficient to convict Appellant of the offense charged. His conviction must be reversed, and the charge ordered dismissed.

4.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

## ISSUE II

DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO THE SIXTH AMENDMENT WHERE COUNSEL FAILED TO CALL MATERIAL AND ALIBI WITNESSES; COUNSEL WAS INEFFECTIVE FOR FAILURE TO INVESTIGATE AND MOVE THE TRIAL COURT FOR AN EXPERT WITNESS; THE CUMULATIVE EFFECT OF ERRORS DEPRIVED DEFENDANT OF A FAIR TRIAL AND DUE PROCESS. US CONST AMS VI, XIV.

STANDARD OF REVIEW: The question of whether defense counsel performed ineffectively is a mixed question of law and fact. **People v. Armstrong**, 490 Mich 281, 289 (2011). Claims of ineffective assistance of counsel are reviewed de novo. **People v. Pickens**, 446 Mich 298 (1994); **Strickland v. Washington**, 466 US 668 (1984).

## LEGAL STANDARD

The constitutional right to assistance of counsel entitles a criminal defendant to effective assistance of counsel. **Powell v. Alabama**, 287 US 45 (1932). A criminal defense is entitled to effective assistance of counsel whether he is a retained or court-appointed attorney. **Cuyler v. Sullivan**, 446 US 335 (1980).

The standard for ineffective assistance of counsel has been outlined in **Strickland v. Washington**, 466 US 668, 104 SCt 2052, 80 LEd2d 674 (1984). See **People v. Carbin**, 463 Mich 590 (2001), and the Michigan Constitution does not set a higher standard for evaluating claims of ineffective assistance of counsel than the two-part standard of Strickland. See **People v. Pickens**, 446 Mich 298 (1994).

5.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

Michigan Court rules requires trial counsel to assist the defendant in organizing and presenting to trial court any potential appellate issues that warrant preservation. See **People v. Bulger,** 462 Mich 495 (2000);**MCR 6.005(H)(4).**

A lawyer should advise his client of the possible effect of each legal alternative. A lawyer should bring to bear upon this decision-making process the fullness of his experience as well as his objective viewpoint * * * He may emphasis the possibility of harsh consequences that might result from his assertion of legally permissible position. **ABA Code of Professional Responsibility EC 7-8.** Therefore, a defense counsel in a criminal case should understand the elements of the offense with which his client is charged and should display some appreciation of the recognized defenses thereto, See **Richey v. Mitchell,** 395 F3d 660, 681 (6th Cir. 2005) and, "A purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate his options and make a reasonable choice between them." See **Combs v. Coyle,** 205 F3d 269, 288 (6th Cir. 2000).

### ARGUMENT

In this case at bar, Defendant contends that his trial counsel provided deficient performance under the Strickland standard where he failed to call material and alibi witnesses. Counsel failed to do a pretrial investigation and move the trial court for appointment of an expert. These multiple errors are contended to have denied defendant due process and a fair trial contrary to his Sixth Amendment guarantees.

Defendant files these claims separately to present a **"Cumulative Error"** claim for appellate review.

6.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

## A. FAILURE TO CALL MATERIAL AND ALIBI WITNESSES

A defendant is entitled to have his counsel prepare, investigate and present all substantial defenses. **People v. Kelley**, 186 Mich App 524, 526 (1990). A substantial defense is one that might have made a difference in the outcome of the trial. **Id.** The right to an accused to present a defense has long been recognized as " a fundamental element of due process." **Washington v. State**, 388 US 14, 19 (1967).

Defendant contends that as early as July 23, 2010, he informed his trial counsel that he had an alibi for his whereabouts, and that he was actually innocent of the felony offense charged against him. See **Defendant's Affidavit - (12/27/2012) as Exhibit A.**

This Court may excuse these submitted affidavits dated more that three years ago, since they were initially prepared and delivered to his initial retained appellate counsel **Paul D. Curtis** P29737, who failed to properly handling my initial appeal while acting as retained counsel. This matter was handled by the **AGC File No. 1598-12.** Appellate counsel was disciplined regarding the allegation in Defendant's complainant. Defendant second appellate counsel was substituted due to a breakdown in the attorney/client relationship. The trial court reissued judgment due to appellate counsel error and defendant timely filed this current appeal. See **Register of Actions Case No. 10-6297-01.**

Defense counsel pretrial failed to interview and call material and alibi witnesses. Defendant supplements the record with putative affidavits regarding his trial counsel's deficient performance.

Counsel pretrial failed to file an alibi notice. Counsel further failed to call two known alibi witnesses; (1) Vanessa Hudson and (2) Nicole Waller. Hudson's putative affidavits is attached as Exhibit B. Both Hudson and Waller will testify, if called that defendant is not the person who shot the victim nor was he clothes in any of the clothing depicted in the BP video.

7.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

Hudson's affidavit indicates that she came pretrial to be an alibi witness and even contacted Attorney Earl Washington but he did not return her phone calls. Defendant contends that trial counsel denied him a substantial defense of alibi by his failure to interview and call witnesses to trial. See **Beasley v. United States,** 491 F2d 687, 696 (6th Cir. 1974)(holding that it is a violation of the Sixth Amendment for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence).

Vanessa Hudson and Defendant's' affidavits show that counsel failed to call alibi witnesses. The trial record shown that defendant had been on the phone throughout the day with Hudson, Nicole Waller and the alleged victim. Yet, defense counsel failed to interview any witnesses that defendant had been talking to even after being directed to do so.

When counsel fails to investigate and interview promising witnesses, and therefore "has no reason to believe that they would not be valuable in securing [Defendant's] release; counsel's inaction constitutes negligence, not trial strategy. **Workman v. Tate,** 957 F2d 1339, 1345 (6th Cir. 1992).

Defendant further contends that the reason that he did not take the stand and testify on his own behalf was because counsel failed to advise him of the benefit of establishing his alibi and that an instruction would be required if he testified to being in the presence of known alibi witnesses. Deficient performance is claimed where defendant was given incompetent legal advice. See e.g. **Padilla v. Kentucky,** 130 SCt 1423, 1493 (2010)(Incompetent advice distorts the defendant's decision-making process and seems to call the fairness and integrity of the criminal proceeding itself into question.)

Defendant contends that this matter should be remanded to the trial court to determine what legal advice counsel gave or omitted from the defendant regarding testifying.

8.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

Defendant further contends that counsel's deficient performance is shown where counsel failed to return calls from Tracey Mays. Mays was a res gestae witness to the shooting at the BP gas station. Mays indicates in his affidavit that he saw Jessica Taylor in a goldish Landrover sitting in the front passenger seat facing Kentucky Fried Chicken-(KFC). Mays had crossed Wyoming from the KFC to speak with Jessica, when the shooting occurred. Mays states Taylor ducked face forward, then witnessed Taylor come up from ducking and knew she was O.K. and left.

Mays has attested to calling Attorney Earl Washington pretrial after preliminary examination. He further states he was at the preliminary exam and saw Ms. Davies and Ms. Miller at the 36th District Court. Mays was present at trial and willing to testify for defendant. He was one of the witnesses that left under the trial judge's order for witnesses to leave the courtroom. See **Tracey Mays' Affidavit as Exhibit C.**

Trial counsel's deficient performance prejudiced defendant since it denied him the right to present winesses, an alibi defense and its instruction.

Lastly, this Court should note that the Prosecutor stated that defendant's girlfriend **[Nicole Waller]** was apparently in the process of throwing him out the house. (JT 1/31 p.70) This Court may also note that there was no evidence presented to defendant being thrown out. This reference was about women's clothes. Counsel did not object to the mere conjecture that defendant had been thrown out of his home. See **MetroPCS Records 313551140 pp. 34 of 35 - 35 of 35 as Exhibit D.** This failure to object was based on the fact that counsel failed to interview or attempt to contact Ms. Waller and other known witnesses, i.e., **Jasmine Gradford.** See also **Charles Mitchell's DPD Witness Statement as Exhibit F.** Mitchell and Gradford were not called for trial.

9.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

## B. FAILURE TO INVESTIGATE AND MOVE FOR EXPERT WITNESS

The rule in Michigan to determine the admissibility of an experts is governed by **MRE 702.**  Under the current rule, an expert must meet three criteria to be admitted. See **People v. Williams,** 198 Mich App 537, 541 (1993)("Admissibility is governed by a three part test:   **(1)** the expert must be qualified; **(2)** the evidence must serve to give the trier of fact a better understanding of the evidence or assist in determining a fact in issue;   **(3)** the evidence must be from a recognized disciple.")  The exception that the word "recognized" no longer appears as a qualifier to "Scientific, technical or specialized knowledge."  In addition, there are now three further criteria that must be met:

(1)  the testimony must be based on sufficient facts or data;

(2)  the testimony must be the product of reliable principles and methods;

(3)  the witness must have applied the principles and methods **reliably** to the facts of the case.

The use of expert testimony runs the gamut from mandatory, to optional, to excludable.   Courts have held that certain information is so inherently incapable of being understood by a layperson that expert testimony is mandatory.  If expert testimony is not introduced with respect to such issues, the party bearing the burden of proof on the issue must fail. See **Randolph v. Collectramatic, Inc.,**   590 F2d 844 (10th Cir. 1979)(expert testimony was necessary to establish that a pressure cooker was defectively designed).

Under **MCL 775.15,** a defendant is entitled to the appointment of an expert at public expense only if he cannot otherwise proceed safely to trial. **People v. Jacobsen,** 205 Mich App 302, 305 (1994).  The Michigan and United States Constitution grant a criminal defendant the right to compulsory process of obtaining witnesses in his favor. **Const 1963, Art 1, §20; US Const. Am VI.**

Few rights are more fundamental than that of accused to present witnesses in his own defense." **Chambers v. Mississippi,** 410 US 284 (1973).

10.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

It is well-established that, "Trial counsel has a duty to familiarize himself with regards to specific area in which an expert is needed; however, he need not become an expert himself, but must conduct a minimal amount of background work in order that he may intelligently move the court for the need of an expert." **Stephen v. Kemp**, 846 F2d 642 (11th Cir. 1988).

It is also axiomatic that "The most able and competent lawyer in the world can not [sic] render effective assistance in the defense of his client if his lack of preparation for trial results in his failure to learn readily available facts which might have afforded his client a legitimate justiciable defense." **United States v. Tucker**, 716 F2d 576, 583 (9th Cir. 1983)(internal citations omitted).

In this case, trial counsel failed to investigate the key evidence of defendant's cell phone records, the state's proposed expert's reports and data, and most egregiously his client's whereabouts-[alibi]. Defendant claims that as early as his preliminary exam that he informed counsel of his alibi and that he had been in the general area but never at the BP gas station where the offense occurred. Counsel simply failed to investigate and file an alibi defense.

The United States Supreme Court has held, "[A]n accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleading and laws involved and then offer his informed opinion as to what plea should be entered," **Von Moltke v. Gillies**, 332 US 708, 721 (1948), and "Attorney's have a duty to make all reasonable efforts to learn what they [can] about the offense." **Rompilla v. Beard**, 545 US 374, 385 (2005).

11.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

Here defense counsel knew pretrial that the prosecution intended to match defendant's cell phone records to their theory that these records will show that the defendant was at the BP gas station following the victim, and to show motive. Instead of investigating these reports and consult an expert to move for expert witness; counsel proceeded to trial without any investigatory information. Deficient performance is shown where an attorney fails to investigate materials they knew the prosecutor would rely on. See **Rompilla v. Beard**, 545 US 374, 125 SCt 2456, 2463, 162 LEd2d 360 (2005).

Attorney Washington did not undertake any pretrial investigation; did not interview nor attempt to interview, nor did he request anyone acting on his behalf to interview a single government witness prior to trial because he felt no need for interview and relied exclusively on cross-examination. This method of strategy was deficent performance because it was contrary to the **ABA Standards §4.4.1**. Looking to the commentary of §4.4.1, which state in pertinent part:

Effective investigation by the lawyer has an important bearing on competent representation at trial, for without adequate investigation the lawyer is not in a position to make the best use of such mechanisms as cross-examination or impeachment of adverse witnesses at trial..."

Counsel in this case, had a duty to garner the expertise necessary to cross-examine the state's expert. See e.g. **Richey v. Mitchell**, 395 F3d 660, 684 (6th Cir. 2005)(counsel has a duty to garner the expertise necessary to cross-examine the state's expert).

Counsel's provided deficient and prejudicial performance by failure to move the trial court for an expert witness, or object to the MetroPCS employee Smith to be deemed an expert.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

As cited in the appellate brief by counsel ineffectiveness is shown by the stipulation to Smith as an expert. The stipulation was contrary to well-established law that, "[B]efore expert testimony is admitted, a trial court must ensure that the expert's opinion is reliable and the underlying data an methodology is legitimate. **Gilbert v. Daimler Chrylser**, 470 Mich 749, 782 (2004), and, "It is a mistake for a trial judge to declare anyone generically an expert. **Berry v. City of Detroit**, 25 F3d 1342 (6th Cir. 1994).

Ergo, it would be equally an error for trial counsel to stipulate to anyone being an expert for the sake of time. This hasty attitude was deficent performance, because it violated the Sixth Amendemnt's Confrontation Clause and the crucible of cross-examination. See **Crawford v. Washington,** 541 US 36, 61 (2004).

The Confrontation Clause can be violated or curtailed by **(1)** the Trial Court, **(2)** the Prosecutor, and **(3)** the defense counsel through ineffective assistance for failure to cross-examine a witness "to expose to the jury the facts from which jurors...could appropriately draw inferences relating to the reliability of the [expert] witness." See **Delaware v. Van Arsdall,** 475 US 673, 680 (1986)(emphasis added). A Daubert hearing was necessary for the court to determine how the expert reached his opinion. See **Oddi v. Ford Motor Co.,** 234 F3d 136, 155 (3rd Cir. 2000).

## C. <u>CUMULATIVE EFFECT OF TRIAL COUNSEL'S ERRORS</u>

Defendant contends that few rights are more fundamental than that of an accused to present evidence in his...own defense, to which, in this case none was presented to defend against the state's charges. This was unreasonably caused by the numerous errors in counsel pretrial preparation, failure to return witnesses phone calls, interview or call witnesses, or move for investigatory assistance or expert assistance. This coupled with various instances where counsel failed to object made defendant's **trial** fundamentally unfair.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

The cumulative effect of several minor errors may warrant reversal of conviction, if defendant has been denied a fair trial, even though one error standing alone might not. See **People v. Miller,** 211 Mich App 30 (1995).

There is an additional fundamental legal principle regarding ineffective assistance of counsel claims; after reviewing court analyzes each claim of deficient performance to determine whether prejudice was established, if no single claim amounts to prejudice, the court must assess the cumulative prejudicial impart of all deficient performance claims. See e.g. **Williams v. Taylor,** 529 US 362. 396-98 (2000)(Acts or omissions must be considered in aggregate); **Wiggins v. Smith,** 539 US 510, 534-36 (2003)(Totality of errors must be considered to properly determine prejudice).

In conclusion, Defendant contends that a **Ginther hearing** should be held on these claims of ineffectiveness. See **People v. Pubrat,** 451 Mich 589, 598 (1996)(If a convicted defendant is convinced that an attorney's representation fell below an objective standard of reasonableness, the appropriate procedure is to seek a Ginther hearing on the effective assistance of counsel).

Therefore, these issues presented should be incorporated in the review of the **Motion for Remand,** and add its exhibits to the claims of ineffectiveness of trial counsel **Attorney Earl Washington,** trial counsel.

**14.**

RECEIVED by MCOA 3/6/2015 3:14:11 PM

## ISSUE III

DEFENDANT-APPELLANT WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL BY THE PRESENTATION OF FALSE EVIDENCE KNOWN TO BE SUCH BY THE PROSECUTOR, WHERE JESSICA TAYLOR ADMITTED TO SEEING THE SHOOTER CONTRARY TO FACTS PRESENTED AT TRIAL; THE MULTIPLE ACTS OF PROSECUTORIAL MISCONDUCT DENIED DEFENDANT A FAIR TRAIL AND WARRANT A NEW TRIAL AND/OR REVERSAL. US CONST AMS V, VI, XIV.

STANDARD OF REVIEW: A claim of prosecutorial misconduct is reviewed de novo to determine if defendant was denied a fair trial and impartial trial. **People v. Ackerman,** 257 Mich App 434 (2003). However, this Court has also stated that the issue of intentional misconduct by a prosecutor is a mixed question of law and fact, with factual findings being reviewed under the clearly erroneous standard and questions of law being reviewed de novo. **People v. Tracey,** 221 Mich App 321 (1997).

## DISCUSSION

The knowing use of false or perjured testimony constitutes a denial of due process, if there is any reasonable likelihood that the false testimony could have effected the judgment of the jury. **United States v. Bagley,** 473 US 667, 678 (1985). In order to establish prosecutorial misconduct or denial of due process, the defendant must show **(1)** the statement was actually false; **(2)** the statement was material; and **(3)** the prosecution knew it was false. **United States v. O'Dell,** 805 F2d 637, 641 (6th Cir. 1986). The burden is on the defendant to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony. **U.S. v. Lochmondy,** 890 F2d 817, 822 (6th Cir. 1989).

There is denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. **Couch v. Booker,** 600 FSupp2d 683 (E.D. Mich 2009). Thus, to sustain a perjury charges based on contradictory or inconsistent statements there must, rather be a palpable testimonial contradiction. **People v. White,** 411 Mich 366, 384 n.5 (1981).

15.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

In order to constitute perjury or false swearing, the matter sworn to must ordinarily be false in fact; perjury may, however, be committed with respect to a statement true in fact, where the (claimant) lacks any knowledge of its truth or falsity.   The perjury, in such instance, rest on the false state of affiant's knowledge or belief. **U.S. v. Endo**, 635 F2d 321 (4th Cir. 1980)(emphasis added).

## ARGUMENT

Here, Defendant contends that he was  denied due process and a fair trial by the actions and/or inaction of the state's prosecutor.  A quotation from **State v. Tolson**, 248 Iowa 733, 82 NW2d 105 (1957), will set the theme for this:

"It is sometime s said that error 'crept' into the trial of a lawsuit.  Not so in this case at bar. It marched in like an army with banners and trumpets. It was escorted, and emphasized and aggravated by the attorney for the state."

Although, appellate counsel has presented claims of prosecutorial misconduct under **IAC**, these particular claims are specific to other acts of prosecutorial misconduct not raised which affected the fundamental fairness of defendant's trial.

## A. PERJURY/FALSE TESTIMONY OF JESSICA TAYLOR

On Janaury 27, 2011, the People called Jessica Taylor.  Taylor testified that the victim stopped at the BP gas station of Seven Mile and Wyoming. (JT II, 34).  He had been pumping gas and that she and Jasmine Miller had their doors opend. **Id.**  Miller and Taylor had closed their doors about the same time, an individual in a blue hooded sweatshirt riding a green bmx-styled bicycle (JT I, 178), pulled up behind the victim. (JT II, 35; JT III, 28).  Taylor states she saw the defendant with a gun. (JT II, 35).  Taylor admits to seeing the BP video pretrial. Taylor points out by the time frame of the video that she first saw the defendant come on the scene at about 4:48 p.m. **Id.**

16.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

Taylor further testifies that she turned around in the seat. And then when Jamel fell. I had seen him [defendant] just pointing the gun, and then he just rode off.(35) Taylor admits to being in the front passenger seat.(40) Taylor turned around at some point, when Jamel's body fell and saw the defendant.(41)

Taylor testified that initially she did not tell the police who shot the victim because she was scared, and that she knew what was going to happen to people for telling.(43) It was later that Taylor told police that she saw defendant's face.

Defendant contends that this identification was not based on the truth, since the BP video and other witnesses' versions of these events would support that Taylor was testifying falsely.

First, Kayana Davies testified after hearing gunshots, all three women in the Land Rover, including Ms. Taylor, ducked down.(JT III, 107, 112) Ms. Davies did not identify defendant as the shooter.

Second, another witness has submitted a putative affidavit that he saw Taylor duck down and when she recovered, sitting upright again. Tracey Mays was in close proximity to the shooting. Mays will testify that Taylor's version of events does not fit the facts. See **Exhibit C.**

Lastly, Jasmine Gradford was not called as a res gestae witness to the events at the BP gas station. Gradford was at pump #5 at the time of the shooting.

This Court should note on Remand, that defense had not viewed the BP video prior to trial nor did the prosecutor turn over the video as directed by the trial court. Defendant had been requesting to view this video pretrial to see the prosecutor's evidence of alleged guilt. The People to date have not provided this item of discovery to any defendant's (three) appellate counsels. This discovery issue should be noted under all IAC claims, as a state created impediment or that counsel failed to move the trial court to compel discovery of this video for proper cross-examination.

**17.**

RECEIVED by MCOA 3/6/2015 3:14:11 PM

Defendant contends that the key evidence in this case was the BP gas station video.  This video contradicted most of the identification evidence presented at trial.  This Court is directed to note the actions of the suspect and the victim.  **1)** Suspect rode through the gas station at 4:48 p.m., came back at 4:50 p.m., rode directly behind victim, facing North bound. The victim had just finishing pumping gas and walked away from pump #4, **2)** Victim is directly behind his vehicle when the suspect shot him, **3)** Eight shells were founded located at the rear passenger side tire near the rear bumper, **4)** To match Taylor's version of events, the shells would have been closer to pump #3. The video indicates that the Landrover's gas tank door is located at the rear of the vehicle on the passenger side and the victim would have fallen closer to pump #4 and that side of the truck closer to the passenger side door. (JT II 37, 41)

On cross-examination Taylor admits that she didn't initial say that defendant was the shooter. (JT II, 111).  Taylor admits that on May 25th she was no longer afraid and thought that by then there would be some evidence that defendant was the suspect.**Id.** The evidence supports that Taylor knew DPD had defendant's cell phone records-(text message).(111-112)

This Court can also note that during the questioning of Taylor by defense counsel that the court brought to the attention of the parties improper impeachment, that the People **did not object** - the People stated to the Court that the improper line of questioning helped her. (122)

Taylor testified falsely by denying knowledge that defendant informed her that she was in the parking lot of the apartment building. (125)   The defendant's cell phone records of that day indicate she was advised by text message.

18.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

Therefore, since the trial records supports that Jessica Taylor testimony of identification was false and the prosecutor failed to correct this false testimony. A new trial should be ordered. **People v. Barbara,** 400 Mich 353 (1977).

## OTHER ACTS OF PROSECUTORIAL MISCONDUCT

Due process requires fundamental fairness in the use of evidence against a criminal defendant. **US Const. Am XIV; Const 1963, Art 1 §17; Lisenba v. California,** 314 US 219, 236 (1941). A prosecutor's comments can so infect the trial with unfairness as to make the resulting conviction a denial of due process. **Darden v. Wainwright,** 477 US 168, (1986).

## IMPROPER ARGUMENTS IN OPENING STATEMENT

The purpose of an opening statement is to tell the jury what the advocate will attempt to prove. **Wiley v. Henry Ford Cottage Hosp.,** 257 Mich App 488 (2003).

On January 26, 2011, the Prosecutor made her opening statement. (JT I, 112) The Prosecutor's opening statement set the stage filled with assertion which would not be supported by the trial record. The Prosecutor's errors in the opening argument, the trial and closing arguments was that she tried to fit the facts to the theory instead of having the facts establish the theory.

The Prosecuor explained that the jury would see, **1).** that Defendant was threatening (victim), 2), that Defendant called Jamel "little boy" in his text as they were discussing Jessica Taylor, and, **3).** Jamel did not text leave us alone it was Ms. Taylor using Jamel's phone. (115) **4).** The Prosecutor mislead the jury in opening and closing that, **"Defendant puts a gun to the back of his head and fires. You're going to see Jamel's body drop, and you're going to see the defendant fire again into his body..."**(117)

19.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

The video does not indicate that defendant fired again into Jamel's body, and was contrary to the medical report that the victim suffered a single gunshot wound to the head. A prosecutor may not make a statement of fact to the jury which is unsupported by the evidence. **People v. Dinsmore,** 103 Mich App 660 (1981). It was conjecture that Nicole Waller and defendant were not getting along well. The prosecutor never spoke with Waller, nor attempt to ascertain any information about her relationship with defendant. (121-122) The womanizer theory was not relevant and was meant to arouse prejudice. See **People v. Lee,** 212 Mich App 228, 247 (1995)(A prosecutor may not intentionally inject inflammatory arguments into a criminal trial with no apparent justification other than arousing prejudice);**Lorraine v. Coyle,** 291 F3d 416, 445 (6th Cir. 2002)(same).

It was improper for the prosecutor to imply knowledge of defendant's location; "[WE] would [Know] where you are when you make a phone call, or the area that you're in when you make a phone call". (123)

It was error to interpret the **5:37 p.m.,** text as defendant bragging.(124) It was also an error to inflame the jury with unsubstantiated and off-handed statements, and appeal to the sympathy of the jury by asking them to give justice to Jamel.**Id.**

## CLOSING ARGUMENTS

When prosecutorial misconduct is called into question, the issue is whether, considered in the context of the entire trial, the misconduct appears to have affected the jury's discharge of its duty to judge the evidence fairly. **United States v. Young,** 470 US 1, 11 (985). Therefore, "[I]t is well-established law that 'a prosecutor cannot express his personal opinion before the jury.'" **U.S. v. Galloway,** 316 F3d 624, 632-33 (6th Cir. 2003). It is improper for a prosecuting attorney in a criminal case to state his/her personal opinion concerning the credibility of witnesses of the guilt of a defendant. **Byrd v. Colins,** 209 F3d 468, 537 (6th Cir. 2000).

RECEIVED by MCOA 3/6/2015 3:14:11 PM

20.

The prosecutor's closing argument's reflected that she was applying her personal opinion, that defendant was angry, a coward and the actions of someone who can't fight fair with a young twenty-year old man.  Then continued to speak as an expert in psychology in reference to the text messages. These comments were improper since, "[T]he prosecutor was not in a legal position to give her personal clinical perspective in an attempt to reconstruct the defendant's mental state.  The prosecutor's opinion carries with it the imprimatur of the government and may induce the jury to trust the government's judgment rather than its own view of the evidence." **Young, supra at 18-19.**

The prosecutor misrepresented evidence regarding the relationships of Lilah, Terri, and Nicole. (JT IV, 10).   There was no proof that Defendant had manipulated these women nor had any of them been called to testify to their relationships with the defendant.  Additionally, this Court can note by the context of Taylor's message, it was Taylor manipulating the defendant, as apparent in speech and her admitting to her back-and-forth relationship with the victim and defendant.Id.

The prosecutor constantly focus on deciphering the language of the defendant and Taylor without offer of explanation for her witness.   There was no explanation to the meaning of "It better be tight when I get there". nor was the prosecutor allowed to speculate its meaning.(11)

The prosecutor again wrongfully interprets "See y'all when I see y'all. Min;" as a threat not knowing that the language of texting shortens regular language or slang.   Defendant contends minute as "In a minute;" meaning goodbye or ending conversation, to depart. Not an actual time period of sixty seconds. Defendant was ending his conversation with Jamel.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

The prosecutor again misstated facts not in evidence about **Nicole Waller**, since she made it appear that defendant was asking Waller for assistance after having committed a crime. It is axiomatic, that no attorney can know what a witness would testify to without first speaking to that witness.

The Waller text messages were not relevant in this case, since it showed no relevance to the theory of who shot the victim. It was improper to base Waller's text messages as evidence of wrongs or acts. Nor did it prove the complete story of the crime by placing Waller's communications in context of contemporaneous happenings. The Waller text were mischaracterizated and confused the defendant's jury. The reference that defendant was bragging about his deeds, by posting "News 2, 4, 7" was also mischaracterized since no witness testified to its meaning. (19)  The prosecution erred by stating that defendant was a [COWARD] and that defendant continued to fire as Jamel's body hit the ground.(30)  The video does not support continual firing at the victim. A prosecutor may not make a statement of fact which is unsupported by the evidence.

The Prosecution improperly called the defense counsel's closing a "RED HERRING", and belied the possession of 30 bags of marijuana by the victim, by Taylor's claim of admitting that it was her's.(67)  This was improper since the drugs were found on the victim by the EMT who initially responded to the scene and counted out 20 bags of weed in Jamel's pocket. This portrayal was also improper since the character of the victim was in question.(67)  The prosecutor's theory and personal opinion was unsupported by the record, since Ms. Waller's home in tower 407 area; depicted that defendant was looking for Taylor was an erroneous conclusion. First, Fenkell, which is 5 Mile Road, is too far away to consider that defendant was looking for Taylor. Second, it was illogical to provide this information to the jury since Waller's home was well over 3 miles from 7 Mile/Wyoming.(69)

[NOTE: Fenkell the Puritan, then 6 Mile then 7 Mile @ Wyoming]. Defendant had every right to be at Nicole's home since this was where their children resided. See **Defendant's Affidavit**.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

The prosecutor's evidence about the van, was not based on fact but again, mere conjecture.  The van in reference was Vanessa Hudson's van not the defendant's.  Vanessa Hudson will attest to the fact that her van was being repaired. (70) See **Vanessa Hudson's Affidavit.**

The Prosecutor arguments are based on her own personal opinions about Kayana Davies.(75)  Davies did not testify that she knew the defendant did the shooting; but to the contrary that she did not see or know who did it. Nor did she testify that she was scared out of her mind. **Id.**

The Prosecutor appealed **to** the sympathy of the jury again in closing, to carry out their civic duty and end the defendant's reign of terror and give Jamel justice. (76) Defendant was improperly labelled a **"terrorist"** and the jury was encouraged to return a guilty verdict based on their fears. See **Hart v. United States**, 538 A.2d 1146, 1150 (D.C. 1977)(Improper for prosecutor to ask for guilty verdict of guilty for "everything that the man did"). See also **People v. Bahoda**, 448 Mich 261 282-83 (1995)(Prosecutors should not resort to civic duty arguments that appeals to fears and prejudice of jury members).

The prosecutor's rebuttal argument was filed with "sandbagging" by wholly omitting from argument salient points or features of the case and then, arguing points not made in the defense's closing. See **United States v. Steele**, 685 F2d 793, 802 (3d Cir. 1982)(ordering new trial upon "government's apparent tactical decision to argue a new interpretation of the evidence in its rebuttal to the defendant's closing arguments.")

## CUMULATIVE ERROR

The cumulative effect of number of errors may amount to error requiring reversal. **People v. Cooper**, 236 Mich App 643, 659-660 (1990);**People v. Bahoda**, 202 Mich App 214, 216 (1993)(finding that defendant was denied a fair trial, even if he did not object to every single instance of misconduct now complained of, because the cumulative prejudicial effects of prosecution's comments could not have been cured by an instruction).

Reversal is warranted in this case.

23.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

## CONCLUSION

In conclusion, Defendant Robinson contends that the total errors in his trial should be evaluated for cumulative error and reversal ordered. These errors affected the fairness and integrity of the proceedings and made the criminal trial fundamentally unfair; Denial of Due Process, and allowed false evidence to enter into Defendant's trial. US **Const. Ams V, VI, XIV.**

This Court should note the unethical length that the Prosecutor went to secure a conviction: **1)** Improper use of other crimes, wrongs, or acts, **2)** Leading questions, **3)** Assuming facts not in evidence, **4)** Misquoting witnesses, and **5)** allowing her witnesses to explain their answers in narrative, and **6)** allowing witnesses to speculate. Lastly, the allowance of perjured testimony. The prosecutor's closing argument amounted to opinion testimony and was contrary to the facts presented at trial.

Reversal is warrant in this case.

## RELIEF REQUESTED

**WHEREFORE,** by the reasons stated, Defendant-Appellant Lamarr Robinson prays that this Honorable court grant reversal of his conviction, order a New Trial or in the alternative Remand this case to the trial court for further proceedings on the grounds of ineffective assistance of counsel and prosecutorial misconduct.

Respectfully submitted,

Date: 2-25- , 2015

/s/ Lamarr V. Robinson

Lamarr V. Robinson #221610
Defendant-Appellant In Pro Per
Saginaw Correctional Facility
9625 Pierce Road
Freeland, Michigan 48623

A copy of this filing was mailed to Wayne County Prosecutor, 1441 St. Antoine Street, Detroit, MI 48226.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

EXHIBIT A

RECEIVED by MCOA 3/6/2015 3:14:11 PM

# A F F I D A V I T

STATE OF MICHIGAN)
                 )ss:
COUNTY OF WAYNE  )

NOW COMES LAMARR V. ROBINSON, and avers pursuant to MCL ⎓ ⎓, 600.1434, in lieu of oath as shown and swear and declare that the contents in this affidavit are true and accurate to the best of my knowledge, information and belief:

1. On May 13, 2010 I recieved a call that morning from Jessica Taylor asking me to pick her up from her mother's apartment in Livonia (cell phone records evidence will confirm). *8:03 A.M.*

2. When I got to the apartment parking lot I called Ms. Taylor to open up the door Ms. Taylor opened the door I entered and she and I were talking. I told her I had to go to Ypsilanti and did she want to ride. She said "no" and started kissing on me she led me to her bedroom where her and I had sex. During sex I put a hickey on her neck. (cell phone evidence will confirm). *12:50 & 1:22*

3. When we were in her bedroom having sex someone was knocking on the door and calling the land line and Jessica's cell phone. She didn't answer either one. I answered the door cause Jessica was still getting dressed (complaintant cell phone evidence will confirm). *1:22 - 1:43*

4. I let Jamel Chubb in, We spoke to eachother and he started talking to Jessica. The two of them went into her bedroom. He came back out telling her to get his shit. Ms. Taylor came out and handed him some bags of weed. The two of them were arguing. I told her "you got to be alittle smoother than this", and I left. Jamel left also. *1:45 P.M.*

5. As I was leaving my kids mom Nicole Waller (PH. No. 459-1300) was calling me. She and I had to go to Dearborn to Advance Tech to pick up our kids from school. She was asking me whos bag of dance clothes (exoctic dancer clothes) are these and why did I have them (cell phone evidence will confirm). *1:53*

6. I explained to Cole those are Vanessa's dance clothes and that was also Vanessa's van at the house (which she was also asking about) and that she was paying me to fix the power steering on the van. I also explained to her that the clothes were there because Vanessa didn't want her boyfriend or family to know she was dancing.

*Lamarr Robinson*

1.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

7. After talking to Cole, I text and called Nessa to explain that Cole is upset and could she please come talk to Cole to explain why I had her dance clothes and what I am doing with the van. I text Nessa 911 where are you cause Cole was threatening to burn the dance clothes. Cole sent me a text: make sure you take your bitch's shit with you because I will burn it (cell phone evidence will confirm).

8. I sent Nessa a text 911 where are you. When Nessa got to Coles and I house on Tracey. Vaness text her (Vanessa's Ph No. 721-7600) (cell phone evidence will confirm).

9. Vanessa talked to Cole and explained her situation to her.

10. I went outside to work on the van. I didn't have the right tools so I had to borrow some tools and I had some customers to see. So Vanessa and I got in the Camaro made runs and went by some associates house to see if they had some tools I could use.

11. I always take side streets cause there is not that much traffic. When I got to Greenlawn and Pembrooke it was a dry run. After that I had to meet somebody on Stoepel and Curtis. So, I took Greenlawn to Outer Drive, Outer Drive to Livernois, Livernois to Curtis, Curtis to Stoepel and was headed back to Tracey. I had to meet somebody on Appoline and Six Mile and then Appoline and Curtis after that we were headed back to Tracey . I didn't want to be gone too long because I didn't want Cole to start up again (cell phone evidence will confirm).

12. Jamel and I talked and text before. He and I knew Jessica was dating other people. I didn't have a problem with it I had four females that took up most of my time. Jessica was basically just for sex there was no future. Jamel and I would give eachother info on Jessica.

13. The night I got arrested, yes, there was drugs in the van. I was making rounds, completely unaware my name came up in the shooting that happened on 7 Mile and Wyoming.

14. I did a live line up and didn't get picked. At the time of the shooting I was with my alibi Vaneesa Hudson on Livernois doing runs and looking to borrow tools.

15. ~~Ten~~ 12 days after the shooting I was arrested again. Jessica Taylor states I was the shooter and she seen me shoot the victim.

16. Ms. Taylor's statement at the police station, at preliminary exam and at trial dosen't match to the shooting that is on video (can be confirmed by statements and the video).

*Lamarr Robin*

2.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

17. Jessica Taylor's friend that was in the back seat of the truck Ms. ~~Jayson~~ Davies stated on scene "we ducked and at the Trial she stated we all ducked and she seen Jessica Taylor duck when the shots went off.

18. A man by the name of Tracey Mays that knows Jessica Taylor was about to walk up to Jessica at the gas station when he too seen her duck.(How could Jessica see anything if she was ducked down in the truck?)

19. Mr. Washington did nothing to investigate into my issues and evidence. I advised him to contact my alibi and we needed to go over the video. Counsel was told at Preliminary exam about my alibi.

20. I asked Attorney Washington to thoroughly cross-examine Jessica Taylor and ask her to tell what happened at the gas station. I asked him to do this before she was shown the video, then after that bring up her 3rd statement that does not match the crime and show her and the Court that her first two statements match the other witnesses statements. Mr. Washington never did what I requested.

21. During questioning of Jessica Taylor at Trial Ms. Taylor was once again being untruthful I handed Mr. Washington the evidence that Ms. Taylor was being untruthful,Mr. Washington never used the evidence (victim cell phone records was handed to Mr. Washington).

22. My counsel never called nor returned calls from my witnesses, barely came to see me in the COunty Jail So he and I could go over my case.

23. My Counsel was ineffective. He failed to do a proper investigation, failed to call witnesses and establish my alibi as requested. He did not subject the Prosecutor's case to an adversarial testing, nor did he properly cross-examine the government's witnesses against me. He did not raise the issue of impeachment of Ms. Taylor's inconsistant statements. Communication was conflicting and non-existent because he constantly would not keep me advised of the disposition of my case at various stages. Absent this COunsel's poor performance and dereliction of duty, there was a probability I would have been acquitted of these charges.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

Lamarr Robin

3.

I NOW CHALLENGE MY COUNSEL'S REPRESENTATION THROUGH A CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

### FURTHER AFFIANT SAYETH NOT

Date: _12-27-12_

/S/ _Lamarr Robinson_
Lamarr V. Robinson
Saginaw Correctional Facility
9625 Pierce Road
Freeland, Michigan 48623

Subscribed and sworn to before me
on this __27th__ , day of __December__
in the year of __2012__ .

_Erwin D Bell_
NOTARY PUBLIC
My commision expires: _Sept 30, 2013_
_Acting in Saginaw Co._

RECEIVED by MCOA 3/6/2015 3:14:11 PM

4.

# A F F I D A V I T

STATE OF MICHIGAN)
             )ss:
COUNTY OF WAYNE  )

NOW COMES, **LAMARR V. ROBINSON,** And avers pursuant to MCL 600.1434, in lieu of oath as shown and swear and declare that the contents in this affidavit are true and accurate to the best of my knowledge, information and belief:

1. On Febuary 15, 2011 I <u>Lamarr V. Robinson</u> was found guilty by jury for: 1. Assault with intent to murder 2. Weapons-Firearms-possesion by felon 3. Weapons felony firearm. This Trial was held in the 3rd Judicial Circut Court Of Wayne County with the Honorable Vera Massey-Jones presiding. In this matter I was represented by Court Appointed Counsel: Earl S. Washington No. 31383 legal aide defender.

2. In the matter of <u>People v. Lamarr V. Robinson</u>, Case No. 10-006297-01-FC, I contend my guilt was founded on the Ineffective Assistance of Counsel, where appointed Counsel Earl S. Washington representation deprived me of a fair Trial by Counsel's inexcusable neglect and deficent performance. Thereby, violating his fiduciary duty imposed by his appointment by the Court and contrary to the United States Constitution, 6th and 14th Amendments and Michigan Constitution 1963, Act 1, sec. 17 and 20, where counsels failure(s) and/or act and omissions occured on the following instances:

A) Failure to request a continuance when counsel was not prepared for Defendant's Preliminary Examination. Defendant requested Counsel to request such continuance to view the video and get the rest of Defendant witnesses in court. This occured on July 23, 2010.

B) Counsel failed to challenge the basis of Prosecution star witness Jessica Taylor and her inconsistent 3rd statement. When witness first 2 statements on the scene states she didn't see the shooter, "we ducked when we heard what sounded like fire crackers.", witness Jessica Taylor states the shots came from behind and when she came up she couldn't find the complaintent Jamel Chubb. Witness Jessica Taylor's 3rd statement states she's watching complaintent Jamel Chubb as he is pumping gas, shots went off and thats when she seen the suspect's face and claims it was the Defendant, Jessica Taylor states when she seen Defendant he was firing towards the ground. The video

RECEIVED by MCOA 3/6/2015 3:14:11 PM

1.

shows complaintant is done pumping gas hangs the pump up, walks behind the 2003 Land Rover thats when suspect rode behind victim Jamel Chubb and shot victim in the back of the head with a fully automatic gun. If there had been a continuence counsel would have been able to prove to the court that Jessica Taylor's 3rd statement is not truthful. It was unreasonable for counsel not to challenge this pre-trial confrontation at a pre-trial that was unduly sugg-estive and in violation of Defendant's 4th Amendment guar-antee against such identification, nor did counsel make the record with the District Court at this probable cause hearing. When, if such information was brought to the attention of the court a different and favorable result was possible for his client. Defendant would not have been bound over at the minimum an appropriate foundation at District Court could have laid for a proper Wade Hearing Absent this record being made at preliminary examination or request a Wade Hearing, said appointed counsel rendered deficient performance at a critical stage.

C) Counsel failed to file a notice of alibi- (Vanessa Hudson). On July 23, 2010, I informed counsel at Preliminary Exam that it was impossible for me to have committed this alle-ged crime because I am sure I was in the company of Vanessa Hudson a mile plus feet away at the time of the shooting. I was subsequently bound over and counsel made no mention of Ms. Hudson nor other defense witnesses to the court or prosecution. Had counsel made such assertion at my preliminary examination, the court and/or the prose-cution could have reasonably made effort to investigate my alibi.

D) On June 24, 2010 at Preliminary Exam and during Lawyer Earl Washington's very few visits I requested to use my my alibi and other witnesses. I kept asking him when are he and I going to look over the video as Judge Vera Massey-Jones instructed Mr. Washington to do. I told him these things prove my innocence.

E) Defense counsel was required to find and interview witn-esses and get forensics on the bullets, file a motion notice of alibi, obtain the video, motion to quash insufficient evidence. Counsel's delibrate indifference and dereliction of duty caused Defendant actual harm by denying him reasonable defenses and challanges to the accusations against me. A reasonable competent counsel would have taken such actions and filed these requested motions.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

2.

*Samarr Robinn*

3.   F) Defense counsel failed to send out or request an investigator to interview the known witnesses indicated by Detroit Police reports; Tremaine Owen Maddox, Kayana Davies, Jasmine Gradford, Jessica Taylor, Charles Mitchell. I requested that counsel discover the mental records from Vista Maria on star witness Jessica Taylor to prove she is not a credible witness, the witness is suicidal, bipolar drug dealer, drug addict with delusional blackout tendensies. Counsel relied upon the Police reports and information from the Prosecutor who were under no obligation to do a thorough pretrial investigation for the defense or on behalf of the defendant. Defense Counsels failure indicates a total failure to do a reasonable investigation and subject the prosecutions case to a meaningful adverse testing.

3.   On Febuary 15, 2011, I was sentenced and counsel submitted no information known to him in regard to my claim of actual innocence. I was subsequently sentenced to 47 yr 6 mo to 120 yr and a consecutive term of 2 years for felony firearm.

Defendant Lamarr V. Robinson No. 221610, now submits this claim of ineffective assistance of counsel, where by the cumulative effect of errors violated my 4th, 5th, 6th, and 14th Amendment Constitutional Rights, which denied me due process of law and made my trail by jury Fundamentally unfair.

## FURTHER AFFAINT SAYETH NOT

DATE: 12-27-12

_Lamarr Robinson_
Lamarr V. Robinson No. 221610
Saginaw Correctional Facility
9625 Pierce Road
Freeland, Michigan 48623

Sworn and subscribed before me on this _27th_ day of _December_ 2012

_Erwin T. Bell_
Notary Public
My comission expires _Sept 30, 2013_
_Acting in Saginaw Co._

RECEIVED by MCOA 3/6/2015 3:14:11 PM

EXHIBIT B

RECEIVED by MCOA 3/6/2015 3:14:11 PM

## A F F I D A V I T

STATE OF MICHIGAN)
)ss:
COUNTY OF WAYNE  )

NOW COMES VANESSA HUDSON, and ever pursuant to MCL 600.1434, in lieu of oath as shown infra and do swear and declare that the contents in this affidavit are true and accurate to the best of my information, knowledge and belief:

1. I Vanessa Hudson am one of three defense alibi witnesses, on 5-13-10 Dez (Lamarr Robinson) and I were together from 4 to 5:30 p.m.. I got a ride to Cole's house at 14870 Tracey, where Dez (Lamarr Robinson) was fixing the power steering on my van in order to explain to Cole why Dez (Lamarr Robinson) was keeping my dance clothes as well as to go with Dez to pick up some parts to fix my van. This was around 3:30 or 4 p.m.. My phone would not hold a charge, I put my phone in my van Dez and I left to get some parts and make a few stops in the Camaro, after all the runs we headed back to Cole's house, I had to get ready for work. We got to Cole's house around 5:30 or 6p.m..

2. I came to pre-trial to be a alibi witness but was not called forward. I tried contacting the Lawyer Earl Washington but he never returned my calls. I called Mr. Washington repeatedly after the Prosecutor Jamie Powell called my phone.

3. I came to the Trial to still try to be a alibi witness. The court removed the Defense Party out of the Court.

### FURTHER AFFIANT SAYETH NOT

**Crystal Mitchell**
Notary Public - Oakland County
Serving in _Wayne_
My Commission Expires: 1-13-2016

/s/ _Vanessa Hudson_
Vanessa Hudson - Affiant
23818 Frisbee APT. 1
Detroit, Michigan 48219

Date: 1-3-2013

Subscribed and Sworn to before me
on this _3rd_ , day of _January_ 2013

_____
NOTARY PUBLIC
My Commison Expires On: 1-13-2016

RECEIVED by MCOA 3/6/2015 3:14:11 PM

EXHIBIT C

`

RECEIVED by MCOA 3/6/2015 3:14:11 PM

STATE OF MICHIGAN )
                     ) ss

COUNTY OF WAYNE )



NOW COMES, TRACEY MAYS, and aver pursuant to MCL 600.1434, in lieu of oath as shown infra and do swear and declare that the contents in this affidavit are true and accurate to the best of my information, knowledge, and belief.

(1) I Tracey Mays, on the date of 5-13-10 was crossing Wyoming by the alley located next to Kentucky Fried Chicken. I was headed to the BP gas station where I seen (Jessi) Jessica Taylor enter the gas station in a gold yellowish Landrover to pump 4. Ms. Taylor was in the front passenger seat facing Kentucky Fried Chicken, as I was crossing Wyoming to talk to Jessi. When I got to the side walk shots were fired. I seen Jessi duck face forward as I got low. As I was getting up to run back across Wyoming I didnt see Jessi. When I got back across Wyoming by the alley by Kentucky Fried Chicken I seen Jessi come up. When I seen Jessi come up I knew she was o.k., I left.

(2) I Tracey Mays came to the Pre-Trial hearing for Lamarr Robinson to be a witness for what I seen at the BP gas station located at 10001 West 7 Mile. I called the lawyer Earl Washington before and after the hearing, Mr. Washington never returned any of my calls. At the hearing I came into contact with Kayana Davies and Jasmine Miller, Ms. Davies and Ms. Miller were at trial as prosecution witnesses. The court removed me and some other people out of the court room that was there for the defendant (Dez) Lamarr Robinson.

FURTHER AFFIANT SAYETH NOT

Subscribed and sworn to before me

on this _____ day of _____. 2011.

_____
NOTARY PUBLIC

/s/ _Tracey MAYS_
                    AFFIANT

_Tracey Mays_
NOV-18-11

May 23 2015
My commission expires

RECEIVED by MCOA 3/6/2015 3:14:11 PM

EXHIBIT D

RECEIVED by MCOA 3/6/2015 3:14:11 PM

**PAUL DANIEL CURTIS**
**ATTORNEY AT LAW**
3000 East Grand Boulevard
Detroit, Michigan 48202-3134
(313) 331-5265; Fax (313) 864-9840

Response to Request for Investigation 1598/12

August 26, 2012

Mr. Robinson solicited this counsel concerning representation after he was convicted before the Honorable Vera Massey-Jones.
The issues involved in the case were made complex by the witness(s) changing of the original statements made to the Detroit Police Department concerning the shooting of a young man at the BP Gas station located at West 7 Mile and Wyoming.

The Gas station closed circuit video tape was used by the prosecution at trial. The video tape was never provided to the trial court counsel as determined by this counsel after several months of seeking the discovery from Mr. Washington of the State Defender's Office. The discovery was not made available until after the Christmas/New Years holiday. No explanation was ever given why the numerous requests for the discovery/client file took so long to provide. Several of Mr. Washington's co-Defender was asked to intercede in getting the file without success.

The trial file was imperative due to the many conversations by way of 3 way calls from Mr. Robinson concerning the appeal and more importantly the video (DVD) of the close circuit recording which would purportedly show that the person who was alleged to have shot the victim at the gas station was not the defendant.

The Detroit Police and the Assistant Wayne County Prosecutor sought to undermine the eyewitness testimony of the shooting when a witness who was called by the prosecution was presented in such a way as to infer that the young man had something to do with the shooting. This tactic undermined the truth-seeking process of the trial and denied the defendant due process of law and a fair trial.

There were other witnesses who observed the alleged shooter who was riding on a BMX type bike and road past a "potential" witness who was never called by the prosecution or the defense at trial. This person was interviewed by the police, however, never called at trial.

A list of alibi witnesses, who were never called by the defense at trial, was reviewed with at least one of the persons interviewed over the telephone. This list was provided to counsel by petitioner's girlfriend who also met with counsel and facilitated the meeting between counsel and a witness who could shed light on the change in statements by at least one of the witnesses if not the critical witness who changed her "story" after leaving the jurisdiction and causing the first trial to be set over for several months.

Through some inadvertence counsel did not receive the communication from the Court of Appeals warning that the matter would be dismissed due to lack of prosecution.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

An attempt to visit petitioner was rejected by the prison which stated to this counsel that they were restricting visits at that prison for just the visitation days which were available to the family of the prisoner. That the visitation rules had been administratively changed by the department of corrections.

Once counsel was informed of the dismissal for lack of prosecution step were taken to prepare a motion for leave to appeal, however, even at this point the Wayne County Assistant Prosecutor who tried the case refused to give a copy or provide a copy of the video to counsel. Counsel was told that a copy of the closed circuit video would be on "U-tube".

The discs provided by the trial attorney proved to be only audio recordings of jail conversations intercepted by the Wayne County Sheriff's Department and provided to the prosecution. Again the video recording(s) were absent.

Respectfully submitted,
Paul Daniel Curtis, P29737

Counsel was given permission to submit this response on August 27, 2012 after contacting the AGC office seeking more time to file this answer. Counsel spoke with Gina who answered the telephone at the AGC office.

This answer is being made without the benefit of the client file which was turned over to the "client" at the client's insistence. Mr. Robinson wanted the hospitalization records of the victim as well as the trial transcripts and witness statements. This request was from Mr. Robinson and his girlfriend.

RECEIVED by MCOA 3/6/2015 3:14:11 PM

EXHIBIT E

RECEIVED by MCOA 3/6/2015 3:14:11 PM

**metroPCS**
SMS/Text Messages

*Out, In*
*Incoming  outgoing*

| | | | Records for Target #: 3135511440 From: 5/1/2010 To 5/14/2010 |
|---|---|---|---|
| 5/13/2010 16:48:31 | **3135511440** | 3137217600 | K<br>-<Gotta get me me> |
| 5/13/2010 16:49:40 | 3134591300 | 3135511440 | U made it real clear u aint neva have no boss and u made ur point. U askd me what now u ready 4 dat anwser |
| 5/13/2010 16:51:28 | **3135511440** | 3134591300 | Nall<br>-<Gotta get me me> |
| 5/13/2010 16:53:25 | **3135511440** | 3134591300 | i thnk thats  kim khardasion<br>-<Gotta get me me> |
| 5/13/2010 16:53:57 | 3132857641 | **3135511440** | Yea. |
| 5/13/2010 16:55:19 | **3135511440** | 3132857641 | He cant have her she's all mine mine mine mine<br>-<Gotta get me me> |
| 5/13/2010 16:55:57 | 3132857641 | **3135511440** | Ha! ha! |
| 5/13/2010 17:03:42 | **3135511440** | 3134591300 | Kp tlkn<br>-<Gotta get me me> |
| 5/13/2010 17:23:03 | 3134591300 | **3135511440** | I hope that money u chasin make u happy and was worth it |
| 5/13/2010 17:27:47 | **3135511440** | 3134591300 | I aint going nowhere & u over my dead body<br>-<Gotta get me me> |
| 5/13/2010 17:31:17 | 3134591300 | **3135511440** | Well i already played da fool believing what i wantd guess its ur turn 2 believe what u want 2 believe is true |
| 5/13/2010 17:37:04 | **3135511440** | 3134988811 | News 2 4 & 7<br>-<Gotta get me me> |
| 5/13/2010 18:39:33 | 3134988811 | **3135511440** | Do it now. |
| 5/13/2010 18:58:09 | 3134591300 | **3135511440** | Real fun that if dat hoe aint mean shit y u got her pic popn up when she call and yo daughter saw it |
| 5/13/2010 19:05:07 | 3134988811 | **3135511440** | Nigga? |
| 5/13/2010 19:10:59 | 3134591300 | **3135511440** | Guess u dnt give a fuck or maybe that bitch got u tied up again. |
| 5/14/2010 12:06:43 | 3138084818 | **3135511440** | My new number dis kenny |
| 5/14/2010 12:49:39 | 3138068224 | **3135511440** | Whats up? |

RECEIVED by MCOA 3/6/2015 3:14:11 PM

*cole threatening to burn*
*Nessa dance clothes*

**metroPCS**

SMS/Text Messages

*outgoing*   *incoming*

| Records for Target #: 3135511440 From: 5/1/2010 To 5/14/2010 | | | |
|---|---|---|---|
| 5/13/2010 11:43:13 | 3135511440 | 3139783585 | I gotta go by the person house<br>-<Gotta get me me> |
| 5/13/2010 12:42:42 | 3134591300 | 3135511440 | Oh so do u b havin time 2 do u |
| 5/13/2010 12:47:14 | 3134591300 | 3135511440 | My phone wrkn 4 a min anwser da phone |
| 5/13/2010 13:27:34 | 3135511440 | 3137217600 | Bat bout 2 die what time will u b done wit van cole back<br>-<Gotta get me me> |
| 5/13/2010 13:29:23 | 3137217600 | 3135511440 | 7 |
| 5/13/2010 13:30:14 | 3135511440 | 3137217600 | K i'll call u<br>-<Gotta get me me> |
| 5/13/2010 13:30:36 | 3139109903 | 3135511440 | Leave us the fuck alone...4real |
| 5/13/2010 13:33:21 | 3135511440 | 3139109903 | Neva that she know how i get down imma always b fkn her raw i used a condom 2 day cause she not cured yet i'm headed back now<br>-<Gotta get me me> |
| 5/13/2010 13:34:42 | 3135511440 | 3139109903 | I gnt 2yrs n this u just a rebound<br>-<Gotta get me me> |
| 5/13/2010 13:35:19 | 3139109903 | 3135511440 | I already kno u didnt fuck...stop lyin...she dont want you no more |
| 5/13/2010 13:36:10 | 3139109903 | 3135511440 | I guess this rebound just took yo girl |
| 5/13/2010 13:36:52 | 3135511440 | 3139109903 | How u think she got the hicky fool & when u was knockn i was bustn<br>-<Gotta get me me> |
| 5/13/2010 13:37:34 | 3135511440 | 3139109903 | Not 4 long<br>-<Gotta get me me> |
| 5/13/2010 13:38:44 | 3135511440 | 3139109903 | Put her on the phone wit her basterd baby have her call me<br>-<Gotta get me me> |
| 5/13/2010 13:41:55 | 3135511440 | 3139109903 | The call<br>-<Gotta get me me> |
| 5/13/2010 13:42:59 | 3135511440 | 3139109903 | Betta yet send me a now pic. Lil boy<br>-<Gotta get me me> |
| 5/13/2010 13:45:58 | 3139109903 | 3135511440 | U good |
| 5/13/2010 13:48:27 | 3135511440 | 3139109903 | Ask her y the feds was watchn me the paper work & many others & it look like its more 2 cum. C yall when i c yall. Min |
| 5/13/2010 13:52:16 | 3139109903 | 3135511440 | Look lil nigga...i said she dont wanna fuck wit you...its over |
| 5/13/2010 13:54:44 | 3135511440 | 3139109903 | Y u wasnt gangsta whn we was there make her call me & tell me that the only we out. 6ft<br>-<Gotta get me me> |
| 5/13/2010 13:57:44 | 3135511440 | 3139109903 | Bet come 2 the hood<br>-<Gotta get me me> |
| 5/13/2010 14:06:39 | 3135511440 | 3139109903 | Oyeah i'm putn our sex tape n the hood & the net<br>-<Gotta get me me> |
| 5/13/2010 14:52:54 | 3135511440 | 3139109903 | Oyeah i'm putn our sex tape n the hood & the net<br>-<Gotta get me me> |
| 5/13/2010 14:56:41 | 3139109903 | 3135511440 | Do wut u gotta do to make you happy man...just do it over their |
| 5/13/2010 15:10:43 | 3134591300 | 3135511440 | When u getn van |
| 5/13/2010 15:20:25 | 3134591300 | 3135511440 | When u getn van |
| 5/13/2010 15:22:12 | 3135511440 | 3134591300 | Soon<br>-<Gotta get me me> |
| 5/13/2010 15:30:28 | 3134591300 | 3135511440 | Make sure u take ur bitch shit wit u cuz i will burn it |
| 5/13/2010 16:15:44 | 3134988811 | 3135511440 | U went on ap? |
| 5/13/2010 16:23:03 | 3134591300 | 3135511440 | Truck |
| 5/13/2010 16:23:45 | 3135511440 | 3134591300 | Yup<br>-<Gotta get me me> |
| 5/13/2010 16:28:17 | 3135511440 | 3137217600 | 911 where u<br>-<Gotta get me me> |
| 5/13/2010 16:32:11 | 3132857641 | 3135511440 | Yo dad girl on DVD. He want 2 c her xr. movie. |
| 5/13/2010 16:41:03 | 3135511440 | 3132857641 | Who is that?<br>-<Gotta get me me> |
| 5/13/2010 16:42:08 | 3132857641 | 3135511440 | His lover on dvd.ha. |
| 5/13/2010 16:44:42 | 3135511440 | 3132857641 | I dont know who that is is she on 1 of my dvd's<br>-<Gotta get me me> |
| 5/13/2010 16:45:41 | 3132857641 | 3135511440 | Yep! |
| 5/13/2010 16:48:13 | 3137217600 | 3135511440 | Here |

RECEIVED by MCOA 3/6/2015 3:14:11 PM

*EXHIBIT F*

RECEIVED by MCOA 3/6/2015 3:14:11 PM

RECEIVED by MCOA 3/23/2015 9:32:00 AM

**DETROIT DEPARTMENT POLICE**

PAGE 1 of 2

Witness contact information
- ☐ Walk-in to police facility
- ☐ Conveyed by a DPD member (Document on Witness Conveyance Form)
- ☑ In Field/At Scene

**STATEMENT FORM**
☑ WITNESS  ☐ INTERROGATION
CASE PROGRESS

FILE/CASE NO. 1005136370

DISTRICT/COMMAND 12TH PRECINCT

DATE 5/13/10  TIME STARTED 5pm  TIME ENDED 7:00pm  PLACE 10001 WYOMING

STATEMENT TAKEN BY T CASTELOW IV I99

WITNESS CHARLES B MITCHELL  RACE/SEX/AGE  D.O.B.  HGT. 6'3"  WGT. 251

SOC. SEC. NO.  RESIDENCE  PHONE BUS/RES

EMPLOYER  DEPARTMENT  BADGE NO.  SHIFT

RESIDING WITH:  CHILDREN/ SCHOOL:

RELATIVES/ FRIENDS  ADDRESS  PHONE

REVIEWING SUPERVISOR/NAME & RANK: SGT B.P. BOWSR
SIGNATURE OF SUPERVISOR:
DATE & TIME OF SUPERVISORY REVIEW: 5/13/10 27:50

---

IT WAS ABOUT 5:10 PM AND I WAS SITTING IN THE DRIVE THRU AT KENTUCKY FRIED CHICKEN. ACROSS THE STREET FROM THE THE BP GAS STATION. I WAS ON THE SOUTH SIDE OF THE BUILDING. I WAS FACING EAST, AWAY FROM THE GAS STATION, I NOTICE THIS KID ON A BIKE KEPT RIDING CLOSE TO MY CAR. I COULD TELL HE WAS UP TO SOMETHING. HE HAD A SMIRK OR DETERMINED LOOK ON HIS FACE. YOU COULD TELL HE WAS FOCUSED ON WHAT WAS HAPPENING AT THE GAS STATION. HE KEPT CIRCLING NEAR MY CAR. THEN I PULLED AROUND TO PAY FOR MY FOOD. I WAS ON THE NORTH SIDE OF THE BUILDING PAYING FOR MY FOOD WHEN I HEARD WHAT SOUNDED LIKE FIRECRACKERS. I HEARD SIX BANGS THEN I LOOKED ACROSS THE STREET AT THE GAS STATION AND SAW THIS GUY AT THE PUMP FALL AGAINST THE PUMP. HIS KNEES BUCKLED AND HE KIND OF SLUMPED TO A SITTING POSITION. I GOT OUT MY CAR AFTER I PULLED ALL THE WAY UP TO THE CURB AT KFC. I RAN ACROSS THE STREET AND "HOLLERED" WHO WAS IT. BY THEN I HAD MADE IT TO WHERE THE GUY WAS SHOT. I LOOKED AROUND AND SAW THE GUY IN THE RED HOODED SWEAT SHIRT KINDA QUICKLY WALKING AWAY. I SAW THE GUY IN THE HOODY WALK WEST ON W. 7 MILE RD THEN CROSS THE STREET AT WASH BURN. THE GUY KEPT LOOKING BACK BUT WALKING WEST ON W. 7 MILE. I RAN BACK TO MY CAR, GOT IN AND MADE THE LIGHT COMING OUT. I DROVE DOWN W. 7 MILE AND CONTINUE TO WATCH THE GUY IN THE RED HOODY. HE DISSAPPEARED IN THE LITTLE CEASARS PARKING LOT ON THE WEST SIDE OF THE BUILDING.

Charles B Mitchell

PAGE 2 of 2

**STATEMENT FORM**

☑ WITNESS   ☐ INTERROGATION

DETROIT
DEPARTMENT
POLICE

FILE/CASE NO.

CASE PROGRESS

Witness contact information
☐ Walk-in to police facility
☐ Conveyed by a DPD member (Document on Witness Conveyance Form)
☐ In Field/At Scene

DISTRICT/COMMAND

| DATE | TIME STARTED | TIME ENDED | PLACE | STATEMENT TAKEN BY |
|---|---|---|---|---|
| 5-13-10 | 6:45 PM | 7:00 PM | 10001 Wyoming | T. CASTELOW #I99 |

| WITNESS | RACE / SEX / AGE | D.O.B. | HGT. | WGT. |
|---|---|---|---|---|
| CHARLES B. MITCHELL | | | 6'3" | 251 |

| SOC. SEC. NO. | RESIDENCE | PHONE BUS. RES |
|---|---|---|

| EMPLOYER | DEPARTMENT | BUS. | BADGE NO. | SHIFT |

RESIDING WITH:        CHILDREN/ SCHOOL:

RELATIVES/ FRIENDS:        ADDRESS        PHONE

REVIEWING SUPERVISOR/NAME & RANK:    SIGNATURE OF SUPERVISOR -    DATE & TIME OF SUPERVISORY REVIEW:

---

THE GUY ON THE BIKE CAN YOU DESCRIBE HIM?

BLACK MALE ABOUT 16-17 - WITH A VERY YOUNG FACE. ABOUT 5'9" - 5'10" MED BRN COMPLX - SMOOTH FACE WEARING A NAVY BLUE HOODED SWEAT SHIRT WITH BLUE JEANS. RIDING A GREEN STUNT BIKE - WITH THE FLIPPERS ON THE FRONT AND BACK WHEELS - BMX BIKE.

THE GUY HAD HIS HAND. HIS LEFT HAND UNDER HIS HOODY AND HE WAS KIND OF NODDING HIS HEAD.

Charles B. Mitchell

RECEIVED by MCOA 3/23/2015 9:32:00 AM

**STATE OF MICHIGAN**
**COURT OF APPEALS**

# Bundle Cover Sheet

| Lower Court: | | L Ct No.: | COA No.: |
|---|---|---|---|
| WAYNE CIRCUIT COURT | | 10-006297-FC | 321841 |
| **Case Title:** | | | |
| PEOPLE OF MI V LAMARR VALDEZ ROBINSON | | | |
| **Priority:** | | | |
| NONE | | | |

| *Filer Information* | |
|---|---|
| Filer | Attorney |
| Cynthia Carter | Valerie Newman, 47291 |
| , MI | , MI |
| | vnewman@sado.org |

| *Filing Summary* | | |
|---|---|---|
| **Type** | **Description** | **Fee** |
| MOTION - REGULAR | Motion To Remand | $0.00 |
| ATTACHMENT | Brief in Support of Motion To Remand | $0.00 |
| ATTACHMENT | Affidavit in Support of Motion to Remand | $0.00 |
| | **Total:** | **$0.00** |

Alternate Payment Reason: Appointed Counsel

RECEIVED by MCOA 3/23/2015 9:25:07 AM

The document(s) listed above were electronically filed with the Michigan Court of Appeals.

321841-829972

**STATE OF MICHIGAN**
MI Court of Appeals

## Proof of Service

| Case Title: | Case Number: |
|---|---|
| PEOPLE OF MI V LAMARR VALDEZ ROBINSON | 321841 |

1. Title(s) of the document(s) served:

| Filing Type | Document Title |
|---|---|
| Motion - Regular | Motion To Remand |
| Attachment | Brief in Support of Motion To Remand |
| Attachment | Affidavit in Support of Motion to Remand |

2. On 3-23-2015, I served the document(s) described above on:

| Recipient | Address | Type |
|---|---|---|
| AO Support<br>State Appellate Defender Office | ao@sado.org | e-Service |
| County Prosecutor Wayne<br>Court Added<br>1182 | wcpaappeals@waynecounty.com | e-Service |
| Cynthia Carter<br>State Appellate Defender Office | ccarter@sado.org | e-Service |
| Daniel Hebel<br>Wayne County Prosecutor's Office<br>P73580 | dhebel@waynecounty.com | e-Service |
| Daniel E Hebel<br>Court Added<br>73580 | dhebel@waynecounty.com | e-Service |
| Joycelyn Frederick<br>Wayne County Prosecutor's Office | jsharp@waynecounty.com | e-Service |
| Julie Dundr<br>State Appellate Defender Office | jdundr@sado.org | e-Service |
| Peter Jon Vanhoek<br>Court Added<br>26615 | pvanhoek@sado.org | e-Service |
| Valerie Newman<br>State Appellate Defender Office<br>47291 | vnewman@sado.org | e-Service |
| WCPO Appeals<br>Wayne County Prosecutor's Office | WCPAAppeals@waynecounty.com | e-Service |

This proof of service was automatically created, submitted and signed on my behalf through my agreements with TrueFiling and its contents are true to the best of my information, knowledge, and belief.

3-23-2015
_____
Date

/s/ Cynthia Carter
_____
Signature

RECEIVED by MCOA 3/23/2015 9:25:15 AM

State Appellate Defender Office

RECEIVED by MCOA 3/23/2015 9:25:15 AM

**STATE OF MICHIGAN**

**IN THE COURT OF APPEALS**

**PEOPLE OF THE STATE OF MICHIGAN**

          Plaintiff-Appellee

-vs-

**LAMARR ROBINSON**

          Defendant-Appellant.

_____/

**WAYNE COUNTY PROSECUTOR**
Attorney for Plaintiff-Appellee

_____

**STATE APPELLATE DEFENDER OFFICE**
Attorney for Defendant-Appellant

_____

**Court of Appeals No.** 321841

**Lower Court No.** 10-006297-01-FC

**<u>MOTION TO REMAND</u>**

     **NOW COMES** the Defendant-Appellant, **LAMARR ROBINSON** by and through his attorneys, the **STATE APPELLATE DEFENDER OFFICE**, by **VALERIE R. NEWMAN**, and moves this Honorable Court to grant this motion and remand this case to the trial court on the issue of ineffective assistance of trial counsel and says in support thereof that:

     1.     Mr. Robinson was convicted by jury of assault with intent to murder, felon in possession of a firearm and felony firearm before the Honorable Vera Massey Jones in the Wayne County Circuit Court.

     2.     Mr. Robinson was sentenced to a two year term of imprisonment for the felony firearm conviction to be served consecutively to concurrent terms of 47.5 -120 years imprisonment for the other two convictions.

     3.     Defendant claimed an appeal as of right, MCR 7.203(A)(1) and filed a timely

RECEIVED by MCOA 3/23/2015 9:25:07 AM

Claim.

4.      Appellate Counsel has presented three issues on appeal, all of which revolve around trial counsel's deficient performance and the resulting prejudice to Mr. Robinson.

5.      The only issue in this case was and is the identity of the shooter.

6.      Mr. Robinson's estranged girlfriend was the primary witness in the case. She did not tell the initial police officers that she saw the shooter and did not identify the shooter.

7.      She did not tell Officer Good, a former neighbor of her good friend Ms. Miller, that saw the shooter, only that she believed the shooter to be her estranged boyfriend, Mr. Robinson.

8.      Ms. Taylor did not say she saw the shooter's face or identify that person as Mr. Robinson until some time had passed. She also fled the jurisdiction to evade testifying.

9. Trial Counsel stipulated to having a custodian of the records testify about cell phone records from a phone belonging to Mr. Robinson and his conclusion that whomever was using the phone on the day of the shooting was in the vicinity of the location of the shooting before and after the shooting.

10. There are challenges to cell phone tower evidence that were not advanced nor did trial counsel call an expert for the defense.

11.1There is nothing on the record to indicate why trial counsel stipulated to this evidence or failed to call an expert. While effective assistance of counsel is presumed, based on conversations with Mr. Robinson, Appellate Counsel has reason to believe that there was no strategic reason for defense counsel's actions.

12. As set forth in Issues two and three in the attached brief, Defense Counsel failed to object to hearsay testimony and prosecutor misconduct. At one point the misconduct was so egregious that the trial court stepped in sua sponte.

13.      Because these issues require an expansion of the record, Appellate Counsel files

RECEIVED by MCOA 3/23/2015 9:25:07 AM

this motion to remand, and a brief in support of the motion, as an offer of proof.


**WHEREFORE**, Mr. Robinson prays that this Honorable Court remand this case to the

trial court for a hearing on the ineffective assistance of counsel claims.


Respectfully submitted,
**STATE APPELLATE DEFENDER OFFICE**


/s/ Valerie R. Newman
BY: _____
**VALERIE R. NEWMAN (P47291)**
**Assistant Defender**
3300 Penobscot Building
645 Griswold
Detroit, Michigan  48226
(313) 256-9833

Date: March 23, 2015

RECEIVED by MCOA 3/23/2015 9:25:07 AM

| | | |
|---|---|---|
| Approved, Michigan Court of Appeals | | |
| **LOWER COURT**<br><br>**Wayne County Circuit Court** | **Electronically Filed**<br><br>**BRIEF COVER PAGE** | **CASE NO.**<br>Lower Court  **10-6297-01**<br><br>Court of Appeals  **321841** |

(Short title of case)
Case Name: **People v. Lamarr Valdez Robinson**

1. Brief Type (select one): ☒ APPELLANT(S)     ☐ APPELLEE(S)     ☐ REPLY
   ☐ CROSS-APPELLANT(S)     ☐ CROSS-APPELLEE(S)     ☐ AMICUS
   ☒ OTHER [identify]: Brief in support of motion to remand

2. This brief is filed by or on behalf of [insert party name(s)]: **Lamarr Valdez Robinson**

3. ☐   This brief is in response to a brief filed on         by         .

4. ORAL ARGUMENT:     ☐ REQUESTED     ☒ NOT REQUESTED

5. ☐   THE APPEAL INVOLVES A RULING THAT A PROVISION OF THE CONSTITUTION, A STATUTE, RULE OR REGULATION, OR OTHER STATE GOVERNMENTAL ACTION IS INVALID.
   [See MCR 7.212(C)(12) to determine if this applies.]

6. As required by MCR 7.212(C), this brief contains, in the following order: [check applicable boxes to verify]

   ☒ Table of Contents [MCR 7.212(C)(2)]
   ☒ Index of Authorities [MCR 7.212(C)(3)]
   ☒ Jurisdictional Statement [MCR 7.212(C)(4)]
   ☒ Statement of Questions [MCR 7.212(C)(5)]
   ☒ Statement of Facts (with citation to the record) [MCR 7.212(C)(6)]
   ☒ Arguments (with applicable standard of review) [MCR 7.212(C)(7)]
   ☒ Relief Requested [MCR 7.212(C)(9)]
   ☒ Signature [MCR 7.212(C)(9)]

7. This brief is signed by [type name]: **Valerie R. Newman**
   Signing Attorney's Bar No. [if any]: **(P47291)**

RECEIVED by MCOA 3/23/2015 9:25:11 AM

## TABLE OF CONTENTS

INDEX OF AUTHORITIES..........................................................................................i

STATEMENT OF JURISDICTION...........................................................................iii

STATEMENT OF QUESTIONS PRESENTED.........................................................iv

STATEMENT OF FACTS ...........................................................................................1

I.   DEFENSE COUNSEL STIPULATED TO THE ADMISSION OF CELL PHONE TOWER EVIDENCE PLACING SOMEONE USING A PHONE USED BY MR. ROBINSON IN CLOSE PROXIMITY TO THE AREA OF THE SHOOTING AT A TIME JUST BEFORE AND AFTER THE SHOOTING. DEFENSE COUNSEL SHOULD HAVE OBJECTED TO THE ADMISSION OF THIS EVIDENCE, OR REQUESTED A DAUBERT HEARING, OR AT THE VERY LEAST CALLED AN EXPERT. DEFENSE COUNSEL'S FAILURES DENIED MR. ROBINSON EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS OF LAW. US CONST. AM VI, XIV ..................................................................12

II.  DEFENSE COUNSEL STIPULATED TO THE INTRODUCTION OF TESTIMONY REGARDING IRRELEVANT SEX TAPES, DID NOT OBJECT TO LINES OF QUESTIONING REGARDING THOSE TAPES, AND DID NOT OBJECT TO THE INTRODUCTION OF TEXT MESSAGES OR TESTIMONY PORTRAYING MR. ROBINSON IN A BAD LIGHT. DEFENSE COUNSEL'S FAILURE TO OBJECT DENIED MR. ROBINSON HIS RIGHT TO EFFECTIVE COUNSEL AND DUE PROCESS OF LAW. US CONST. AM VI, XIV. ..................................................................25

III. DEFENSE COUNSEL FAILED TO OBJECT TO THE PROSECUTOR'S MISCONDUCT OF REFERENCING FACTS NOT IN EVIDENCE AND THE PROSECUTOR'S APPEAL TO  SYMPATHY IN BOTH OPENING AND CLOSING ARGUMENTS. DEFENSE COUNSEL'S FAILURE TO OBJECT DENIED MR. ROBINSON HIS RIGHT TO EFFECTIVE COUNSEL AND DUE PROCESS OF LAW. US CONST. AM VI, XIV ...... 32

SUMMARY AND RELIEF AND REQUEST FOR REMAND...................................37

**VRN*Brief in Support of Motion to Remand.docx*27619  March 23, 2015**
**Lamarr Valdez Robinson**

RECEIVED by MCOA 3/23/2015 9:25:11 AM

# INDEX OF AUTHORITIES

## CASES

*Berger v United States*, 295 US 78; 55 S Ct 629, 79 L Ed 1314 (1935) ......................................33

*Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579, 113 S Ct 2786, 125 L Ed 2d 469 (1993) .......................................................................................................14

*Donnelly v DeChristoforo*, 416 US 637, 94 S Ct 1868, 40 L Ed 2d 431 (1974) .........................34

*Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 685 NW2d 391 (2004) ..............................13, 14

*McMann v Richardson*, 379 US 759, 90 S Ct 1441, 25 L Ed 2d 763 (1970) ...............................22

*Payne & Bond v State*, 211 Md App 220, 65 A3d 154 (2013) ......................................................15

*People v Aldrich*, 246 Mich App 101, 631 NW2d 67 (2001) ..................................................32, 34

*People v Bahoda*, 448 Mich 261, 531 NW2d 659 (1995) ............................................................33

*People v Bennett*, 290 Mich App 465; 802 NW2d 627, (2010), ...................................................32

*People v Blackmon*, 280 Mich App 253, 761 NW2d 172 (2008) .................................................34

*People v Brooks*, 453 Mich 511, 557 NW2d 106 (1996) ............................................................30

*People v Burrell*, 127 Mich App 721; 339 NW2d 239, (1983) ....................................................33

*People v Carines*, 460 Mich 750, 597 NW2d 130 (1999) ......................................................25, 32

*People v Dobek,* 274 Mich App 58, 95, 732 NW2d 546 (2007) .................................................. 18

*People v Douglas*, 496 Mich 557, 852 NW2d 587 (2014) ...........................................................20

*People v Elston*, 462 Mich 751, 614 NW2d 595 (2000).............................................................24

*People v Fackelman*, 489 Mich 515, 802 NW2d 552 (2011) .......................................................15

*People v Henry*, 239 Mich App 140, 607 NW2d 767 (1999) .............................................12, 25, 32

*People v Hubbard,* 209 Mich App 234, 530 NW2d 130 (1995) .................................................. 18

*People v Leach,* 114 Mich App 732, 736, 319 NW2d 652 (1982) ................................................26

RECEIVED by MCOA 3/23/2015 9:25:11 AM

*People v Leblanc*, 465 Mich 575, 640 NW2d 246 (2002) ...................................................... passim

*People v McCain*, 84 Mich App 210, 269 NW2d 528 (1978) .......................................................33

*People v Mitchell*, 131 Mich App 69, 345 NW2d 611 (1983).......................................................33

*People v Musser*, 494 Mich 337, 835 NW2d 319 (2002) .............................................................20

*People v Pickens*, 446 Mich 298, 521 NW2d 797 (1994) ............................................................22

*People v Richardson*, 489 Mich 940; 798 NW2d 13 (2011) .......................................................33

*People v Rimson*, 63 Mich App 1, 233 NW2d 867 (1975).........................................................26

*People v Snyder,* 462 Mich 38, 609 NW2d 831 (2000)..............................................................24

*People v Stanaway*, 446 Mich 643, 521 NW2d 557 (1994) ......................................................33

*People v Unger*, 278 Mich App 210, 749 NW2d 272 (2008)................................................14, 33

*People v Williams*, 114 Mich App 186, 198l 318 NW2d 671 (1982)............................................33

State v Barriner, 34 SW3d 139, 146 .........................................................................................27

*State v Patton*, 419 SW3d 125 (Mo Ct App 2013) ...................................................................15

*Strickland v Washington*, 466 US 668, 104 S Ct 2052, 80 L Ed 2d 674 (1984)................... passim

*Tobin v Providence Hospital,* 244 Mich App 626, 650-51, 624 NW2d 548 (2001) ....................19

*United States v Olano*, 507 US 725, 113 S Ct 1770, 123 L Ed 2d 508 (1993).......................26, 33

*Wilder v State*, 191 Md App 319, 991 A2d 172 (2010).............................................................15

## CONSTITUTIONS, STATUTES, COURT RULES

Michigan Rule of Evidence 401 ............................................................................................... 30

Michigan Rule of Evidence 403 ............................................................................................... 30

MRE 404(a) .............................................................................................................................. 27

MRE 702.............................................................................................................................. 13, 14

RECEIVED by MCOA 3/23/2015 9:25:11 AM

## <u>STATEMENT OF JURISDICTION</u>

Defendant-Appellant was convicted in the Wayne County Circuit Court by jury trial and a Judgment of Sentence was entered on February 15, 2011.  A Claim of Appeal was filed on May 16, 2014 by the trial court pursuant to the indigent defendant's request for the appointment of appellate counsel dated May 9, 2014, as authorized by MCR 6.425(F)(3).  Appellate Counsel timely filed the Brief on Appeal and a Motion to Remand. This Court denied the Motion to Remand by Order dated February 17, 2015 for failure to provide an affidavit or offer of proof. Appellate Counsel now files this motion to remand with a brief and affidavit in support of the motion.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

# STATEMENT OF QUESTIONS PRESENTED

I.   DEFENSE COUNSEL STIPULATED TO THE ADMISSION OF CELL PHONE TOWER EVIDENCE PLACING SOMEONE USING A PHONE USED BY MR. ROBINSON IN CLOSE PROXIMITY TO THE AREA OF THE SHOOTING AT A TIME JUST BEFORE AND AFTER THE SHOOTING. SHOULD DEFENSE COUNSEL HAVE OBJECTED TO THE ADMISSION OF THIS EVIDENCE, OR REQUESTED A DAUBERT HEARING? OR AT THE VERY LEAST CALLED AN EXPERT? DID DEFENSE COUNSEL'S FAILURES DENY MR. ROBINSON EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS OF LAW? US CONST. AM VI, XIV.

> Trial Court made no answer
>
> Defendant-Appellant answers, "Yes".

II.  DEFENSE COUNSEL STIPULATED TO THE INTRODUCTION OF TESTIMONY REGARDING IRRELEVANT SEX TAPES, DID NOT OBJECT TO LINES OF QUESTIONING REGARDING THOSE TAPES, AND DID NOT OBJECT TO THE INTRODUCTION OF TEXT MESSAGES OR TESTIMONY PORTRAYING MR. ROBINSON IN A BAD LIGHT. DID DEFENSE COUNSEL'S FAILURE TO OBJECT DENY MR. ROBINSON HIS RIGHT TO EFFECTIVE COUNSEL AND DUE PROCESS OF LAW? US CONST. AM VI, XIV.

> Trial Court made no answer
>
> Defendant-Appellant answers, "Yes".

III. DEFENSE COUNSEL FAILED TO OBJECT TO THE PROSECUTOR'S MISCONDUCT OF REFERENCING FACTS NOT IN EVIDENCE AND THE PROSECUTOR'S APPEAL TO SYMPATHY IN BOTH OPENING AND CLOSING ARGUMENTS. DID DEFENSE COUNSEL'S FAILURE TO OBJECT DENY MR. ROBINSON HIS RIGHT TO EFFECTIVE COUNSEL AND DUE PROCESS OF LAW? US CONST. AM VI, XIV

> Trial Court made no answer
>
> Defendant-Appellant answers, "Yes".

RECEIVED by MCOA 3/23/2015 9:25:11 AM

## **STATEMENT OF FACTS**

Defendant-Appellant Lamarr Valdez Robinson was convicted as charged by jury of assault with intent to murder, *MCL 750.83*, possession of a firearm by a felon, *MCL 750.224f*, and possession of a firearm in the commission of or attempt to commit a felony, *MCL 750.227b*, in Wayne County Circuit Court, before the Honorable Vera Massey Jones. *Trial Transcript 1/31/11, (T4) 110.*[1] Judge Jones sentenced[2] Mr. Robinson as follows: two years imprisonment for possession of a firearm by a felon to be served consecutively to two concurrent terms of 47.5 to 120 years imprisonment for assault with intent to murder and felon in possession of a firearm. *Sentencing Transcript (ST) 15-16.*[3] Mr. Robinson appeals as a matter of right[4].

It was undisputed that Mr. Jamel Chubb was shot at a gas station in Detroit. *T1 256; T2 35*. Multiple witnesses were present at the gas station, and multiple others saw some part of the incident. *T1 116-17, 166, 177, 193-94; T2 8, 45; T3 107*. A video from the gas station surveillance system showed the shooting, but did not reveal the shooter's face.

The central issue was the identity of the shooter. Seventeen witnesses testified at trial but only two, Ms. Jessica Taylor and Mr. Larry Paul Smith, offered testimony that addressed the identity issue.

---

[1] Trial began 1/26/11 and lasted four court days, ending 1/31/11. The transcripts will be cited sequentially with T1 referencing trial transcript 1/26/11 and T4 referencing trial transcript 1/31/11.
[2] Mr. Robinson was sentenced as a fourth habitual offender.
[3] Mr. Robinson was convicted after a jury trial. However, the Michigan Department of Corrections database indicates that he pled guilty.
[4] This appeal was delayed due to retained appellate counsel's failures, which resulted in dismissal of the appeal, the time that passed before the appeal was reinstated and current counsel, who is substitute appellate counsel, being appointed.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

**The Trial**

**The Day Of The Incident**

By May 2010, Jessica Taylor had been dating Lamarr Robinson for about two years. *T2 22*. Ms. Taylor had two boyfriends at the time: Mr. Robinson and Mr. Chubb. *T1 268-69; T2 2, 118*.

In the weeks preceding Mr. Chubb's shooting, Mr. Robinson had purchased for Ms. Taylor a cell phone and a pair of Coach shoes. *T2 51, 78*. Mr. Robinson had also recorded himself and Ms. Taylor having sex, only telling her afterwards. *T2 74*. Ms. Taylor thought that Mr. Robinson was involved with other women. *T2 85*. The two had previously argued about the source of a sexually transmitted infection for which they had both tested positive. *T1 267; T2 86*.

On the morning of May 13, 2010, Ms. Taylor contacted Mr. Robinson and invited him to come to her mother's house in Livonia. *T2 23*. While Mr. Robinson was en route, Ms. Taylor received a call from her other boyfriend, Mr. Chubb. Mr. Chubb wanted to see her so she cancelled with Mr. Robinson to instead see Mr. Chubb. *T2 124*. Mr. Robinson arrived at Ms. Taylor's mother's house in a red truck *T2 31* and they talked for a bit. *T2 24-25*. Mr. Robinson tried/wanted to have sex with Ms. Taylor and she rebuffed him. *T2 29-30*.

Around this time, Mr. Chubb arrived and approached the side door. *T2 139*. Ms. Taylor ushered Mr. Robinson out the front door and let Mr. Chubb in through the side door. *Id* Mr. Robinson reentered through the front door, and he and Ms. Taylor had an argument. *T2 26*. Mr. Chubb left the house. *T2 141*.

Mr. Robinson left after about ten minutes, and Mr. Chubb returned about fifteen minutes after that. *T2 141*. Before leaving, Mr. Robinson told Ms. Taylor: "Don't let me catch y'all in the hood." *T2 28*. Mr. Chubb was not in the apartment at the time, and Ms. Taylor did not perceive

RECEIVED by MCOA 3/23/2015 9:25:11 AM

2

the comment as a threat. *T3 5*. Mr. Chubb returned to Ms. Taylor's mother's home and the two left in Mr. Chubb's gold colored Land Rover to go to Ms. Miller's house on Seven Mile and Ohio Street in Detroit. *T2 15, 30-31*.

At Ms. Miller's house Mr. Chubb, Ms. Taylor, Ms. Miller and Ms. Davies smoked "some blunts" — cigars split and re-rolled full of marijuana . *T2 7, 32*. Ms. Taylor said that she supplied the marijuana. *T2 104*.

After smoking a few "blunts" at Ms. Miller's house, the group left in Mr. Chubb's vehicle to pick up some food. *T2 33*. After getting the food, the four headed in the direction of Ms. Miller's house. *T2 16*. Mr. Chubb was driving with Ms. Taylor in the front passenger seat, Ms. Miller in the passenger side back seat, and Ms. Davies in the driver side back seat. *T2 33-34*.

### **The Incident**

Mr. Chubb stopped at a BP gas station on Seven Mile and Wyoming. *T2 34*. He was pumping gas and Ms. Taylor and Ms. Miller had their doors open. *Id*. Ms. Taylor and Ms. Miller closed their doors, and at roughly the same time, an individual in a blue hooded sweatshirt riding a green bmx-style bicycle, *T1 178*, pulled up behind Mr. Chubb. *T2 35; T3 28*. The assailant raised a black handgun to the base of Mr. Chubb's head and fired multiple times. *T2 35*, striking Mr. Chubb. *T1 157*. Mr. Chubb fell to the ground. *T2 14*. The shooter fled on the green bicycle. *T2 37*.

A surveillance camera at the BP gas station recorded the entire incident, albeit from an angle that did not reveal the shooter's face. Three young boys playing baseball in a nearby park, saw an individual wearing a blue hooded sweatshirt riding a green bicycle turn down Washburn then turn on Ilene. *T1 166*. Ms. Miller called an ambulance. *T2 42*.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

**Mr. Chubb's Injuries**

Mr. Chubb was shot and he was in a coma at the time of trial. *T1 157*. Witnesses at the scene described extensive bleeding. *T1 135-36, 230*.

**The Passengers**

*Ms. Jessica Taylor*

Ms. Taylor was the only witness to identify Mr. Robinson as the shooter. *T2 45*. She claimed that she saw his face immediately after the shots were fired and Mr. Chubb's body hit the ground. *Id* At the scene, Ms. Taylor did not tell police she had seen the shooter's face or that Mr. Robinson was the shooter, but did give them Mr. Robinson's name. *T2 44*. It was not until twelve days later, on May 25, that Ms. Taylor told the police she had seen Mr. Robinson's face during the shooting. *T2 44-45*. She testified at trial that she omitted this from her earlier statement because she was scared of what might happen if she revealed that she had seen Mr. Robinson's face, *T2 43*, and later felt she owed it to Mr. Chubb to tell the police that she had actually seen Mr. Robinson's face. *T2 45*. Ms. Taylor left Michigan for West Virginia, which delayed the trial from its original start date. She said she did so because she was scared. *T2 46*.

Ms. Taylor testified without objection about a sex tape Mr. Robinson had made of them, as well as about sexually explicit text messages between her and Mr. Robinson. *T2 94*.

*Ms. Jasmine Miller*

Ms. Miller had seen a white van, which she knew to be Mr. Robinson's, near her house on two to three occasions. *T1 250*. She did not see Mr. Robinson's van on the day of the shooting, *T2 8*, or identify him as the shooter, despite being in the backseat of the car during the

RECEIVED by MCOA 3/23/2015 9:25:11 AM

4

shooting, *T1 259*, the occurrence of which had prompted everyone in the car to "get down." *T1 256*.

### Ms. Kayana Davies

Immediately after hearing the gunshots, all three women in the Land Rover, including Ms. Taylor, ducked down. *T3 107, 112*. Like Ms. Miller, Ms. Davies did not see Mr. Robinson or his van on the day of the shooting, and did not identify Mr. Robinson as the shooter, despite being in the car during the shooting. *T3 107*.

### The Expert Testimony

### Mr. Larry Paul Smith

Mr. Smith explained his qualifications for reading and storing Metro PCS records, but not for analyzing how they might reflect a particular phone's general location. *T2 146-47*. Defense counsel did not object to his being presented as "an expert in the workings of Metro PCS' records," *T2 148*, and stipulated to his qualifications. Mr. Smith stated that "as a custodian of records, what we do is maintain the storage and accuracy of our phone records . . . and then from time to time we're called across the country to testify in civil and criminal trials." *T2 147*.

The prosecution presented Mr. Smith as an expert on the way in which Metro PCS phone towers register call signals and how that can reveal information about the location of the phone when the call is made. *T2 146-47*. The prosecution introduced a map compiled from the records about which Mr. Smith testified, which put someone using a phone used by Mr. Robinson in the general area of the gas station at the time of the shooting. The Metro PCS phone with a number ending in 1440, which Officer Rettig and Ms. Miller identified as Mr. Robinson's number, *T1 214, 245*, was registered to a Ms. Tamika Scott, *T2 148*, but individuals did not need to provide a real name or their actual home address when registering with Metro PCS. *T2 149*. Mr. Smith

RECEIVED by MCOA 3/23/2015 9:25:11 AM

admitted that Metro PCS towers do not have Global Positioning System capabilities, *T2 153*, but said the towers could determine which direction a signal was coming from, as well as the general area from which the call was made. *T2 152*.

According to Mr. Smith, a cell tower could have a range of as great as seven miles or more, meaning calls from that far away could register with the tower. *T2 163*. He asserted that in Detroit, because of densely populated areas and thus more towers in a given space, towers would have a range of approximately one to one and a half miles. *T2 162*. Mr. Smith admitted that due to limited capacity, calls can and often do register with towers other than those closest to where the call was placed. *T2 164*.

The prosecution had Mr. Smith read a series of text messages sent to and from the 1440 number in order to show that whoever was using the 1440 phone had texted that he was "stakn jazz house out" in the weeks prior to the shooting, *T2 188*, had received the message "45 small with hammer star 400$," *T2 190*, and had told someone "News 2 4 & 7" soon after the shooting. *T2 196*. The prosecution also had Mr. Smith read a series of text messages between Mr. Robinson's, Mr. Chubb's, and Ms. Taylor's phones. Mr. Robinson sent Mr. Chubb and Ms. Taylor various text messages in the days leading up to the shooting, as well as on the day of. *T2 194-95*.

On cross examination, Mr. Smith admitted that the distance ranges he provided about the cell towers were only approximations, *T2 199*, and that such information did not allow Metro PCS to pinpoint where in an approximate radius as big as seven miles a call was made. *T2 200*. The prosecution relied on this general area identification in both opening and closing argument, claiming that "We know where you are when you make a phone call," *T1 123*, in opening and

RECEIVED by MCOA 3/23/2015 9:25:11 AM

that the records could show that "the shooter [took] a certain path. And then [sic] the defendant [took] the same path," in closing. *T4 29*.

### Witness at the Gas Station

#### *Mr. Tremaine Maddox*

Mr. Maddox was at the BP gas station at the time of the incident, going to get something for a friend. *T1 188*. He went to the station twice, and on exiting his first time, saw an individual in a blue hooded sweatshirt on a bright green bike riding toward the gas station on Seven Mile. *T1 192*. Upon leaving the BP station after his second trip there, Mr. Maddox saw that same individual shoot Mr. Chubb. *T1 193-94*. After shooting Mr. Chubb, the assailant, who looked young and had a full beard "ear to ear," *T1 202-203*, put away a black gun that appeared to have an extended magazine and rode off down Washburn *T1 194-95*. After the shooting, police detained Mr. Maddox and brought him in to look at a lineup which included Mr. Robinson. *T1 200*. Mr. Maddox did not identify anyone in the lineup. *T1 201*.

### Boys Playing Baseball in a Nearby Park

#### *Mr. Zjzjai Smith*

Mr. Zjzjai Smith was one of a group of young boys playing baseball in a park near the BP gas station at the time of the shooting. *T1 105*. He heard gunshots and saw an individual in a blue hooded sweatshirt riding a green bike down Washburn and then Ilene. *T1 166*. While Mr. Smith was unable to identify the person on the bike he did give the police a description of the person. *T1 167*. The person he saw was 5'11" – 6', medium complexion, about 150 lbs and 17-20 years old. *T1 173*.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

### *Mr. Jamir Gray*

Mr. Gray was one of a group of young boys playing baseball in a park near the BP gas station at the time of the shooting. *T1 177*. He heard gunshots and saw an individual in a blue hooded sweatshirt riding a green bmx-style bike down Washburn and then Ilene. *T1 177-79*. Mr. Gray never got a good luck at the person's face *T1 186-187* but told the police the person was a teenager *T1 181-186*.

### *Mr. Timothy Mapson*

Mr. Mapson was one of a group of young boys playing baseball in a park near the BP gas station at the time of the shooting. *T3 116*. He heard gunshots and saw an individual on a green bmx-style bike ride down Washburn and then Ilene. *T3 116-17*. Mr. Mapson thought the individual was his young friend because he thought it was his friend's bike. *T3 117*. Mr. Mapson was unable to provide a detailed description of the individual's face, but told police the individual had no moustache. *T3 123*.

### **Sex Tape Testimony Beyond Ms. Taylor's**

### *Mrs. Sabrina Johnson*

Mrs. Johnson, Mr. Robinson's common-law stepmother, was having a text exchange with Mr. Robinson in the evening of May 13. *T3 136*. At trial she described Mr. Robinson's relationships with women aside from Ms. Taylor, after the prosecutor asked about other "lad[ies] of his." *T3 137*. The prosecution asked Ms. Johnson to confirm that she had told them Mr. Robinson was controlling with women, but she would not confirm having said this. *T3 139*. Ms. Johnson also described a text message exchange between her and Mr. Robinson regarding a sex tape made by Kim Kardashian. *T3 141-42*. The prosecution engaged Ms. Johnson in a series of questions regarding the Kardashian sex tape. *T2 141-46*.

**Police Witnesses**

*Jeff Amley*

Sergeant Amley, an expert in firemark identification, *T3 54*, provided background information on how semi-automatic handguns might be converted to fully automatic, *T3 66*, stated that all eight .45 Automatic Colt Pistol (ACP) shell casings recovered from the BP station were from the same weapon, *T3 68, 70*. He thought that the gunshots audible in the surveillance video sounded like they could have come from a fully automatic weapon. *T3 86*.

*Derek Emme*

Sergeant Emme, an expert on latent fingerprint identification, *T3 89*, was unable to recover any fingerprints from the shell casings taken from the scene of the shooting. *T3 97*.

*Khari Mason*

Officer Mason was one of the first to arrive at the scene of the shooting. He saw Mr. Chubb on the ground by the gas pump, *T1 136*, noted up to twenty bags of marijuana scattered around Mr. Chubb's body, *T1 143-144*, and narrated the events depicted on the surveillance video *T1 138-43*. He spoke with Jessica who was very upset. She said she did not know who shot her boyfriend but that he had been having trouble with her ex- boyfriend and named Mr. Robinson. *T1 137-138*. From his involvement there was nobody able to identify the shooter. *T1 145*.

*Alvin Rettig*

Officer Rettig pursued the shooter on the night of May 13, with only the name "Lamarr" to go by. *T1 208*. Officer Rettig saw Mr. Robinson's white van on Sunderland, the street on which Mr. Robinson's stepmother lives, had a marked car make a traffic stop, and arrested Mr.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

Robinson. *T1 209*. Officer Rettig confiscated two cell phones Mr. Robinson had with him at the time, but did not find a bicycle, green or otherwise. *T1 210*.

### Tonya Good

Officer Good, a former neighbor of Ms. Miller, *T3 127*, responded to the scene of the shooting and saw Mr. Chubb on the ground. *T3 127, 133*. In weeks prior to the shooting, Ms. Miller had described to Officer Good seeing a white van belonging to Mr. Robinson on her block. *T3 128*. Officer Good saw such a white van, but never identified whose van it was. *T3 128, 132*.

Officer Good spoke with Ms. Taylor who told her she thought the shooter was her ex-boyfriend but never said she saw the shooter. *T3 129*.

### Derrick Maye

Officer Maye was in charge of the investigation of Mr. Robinson's case. *T3 159*. He performed searches on four homes connected with Mr. Robinson in the days following the incident, but failed to recover either a weapon used in the shooting or a bicycle. *T3 172*.

Officer Maye became aware of sex tapes Mr. Robinson made with Ms. Taylor. *T3 169-170*. He questioned Ms. Johnson about the tapes and she told the Officer she was aware of sex tapes that Mr. Robinson had made with various weapons and were kept at her home. *T3 170*. Despite the search of four homes connected to Mr. Robinson no sex tapes were found. *T3 180*.

### Surveillance Video From the Gas Station

As described at trial, the video[5] showed Mr. Chubb by the Land Rover pumping gas. *T1 140*. About two minutes before the shooting, an individual in a blue hooded sweatshirt on a green bike rode by the station. *T1 142*. An individual in a red sweatshirt, who Mr. Maddox identified as himself, *T1 201-02, 205*, walked past the view of the camera. After Mr. Maddox had left the

---

[5] As of the date of filing the brief, appellate counsel has not been able to obtain the video.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

screen, the individual in the blue hooded sweatshirt on a green bike came back into view, pulled up behind Mr. Chubb, raised a handgun to the back of his head, and fired. *T1 141*. The video did not show the shooter's face or the reaction of the passengers inside the vehicle.

During closing arguments the prosecution speculated about the meaning of the text message sent on Mr. Robinson's phone following the shooting *T4 17-18*, spoke about the sex tapes, which the police admitted were never located *T4 18-19*, and became so emotional that the Judge stopped the argument despite counsel's failure to object *T4 76*. The prosecutor told the jury that "If you don't give justice to this family, no one ever will." *T4 77*.

Other facts will be discussed herein as relevant to the issues presented.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

**I. DEFENSE COUNSEL STIPULATED TO THE ADMISSION OF CELL PHONE TOWER EVIDENCE PLACING SOMEONE USING A PHONE USED BY MR. ROBINSON IN CLOSE PROXIMITY TO THE AREA OF THE SHOOTING AT A TIME JUST BEFORE AND AFTER THE SHOOTING. DEFENSE COUNSEL SHOULD HAVE OBJECTED TO THE ADMISSION OF THIS EVIDENCE, OR REQUESTED A DAUBERT HEARING. OR AT THE VERY LEAST CALLED AN EXPERT. DEFENSE COUNSEL'S FAILURES DENIED MR. ROBINSON EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS OF LAW. US CONST. AM VI, XIV.**

**Issue Preservation**

Because defense counsel stipulated to the admission of the cell phone tower evidence at trial, *T2 146-47*, he did not preserve the issue of its admissibility.[6] However, Mr. Robinson may raise an ineffective assistance of counsel claim for the first time on appeal because it involves a constitutional error that could have decided the outcome. *People v Henry*, 239 Mich App 140, 146, 607 NW2d 767 (1999).

**Standard of Review**

Issues of ineffective assistance of counsel are decided under a test that requires "the greatest level of factual inquiry into the actual conduct of the defense and its effect on the outcome of the trial." *People v Leblanc*, 465 Mich 575, 578, 640 NW2d 246 (2002). Whether a defendant has been denied effective assistance of counsel is "a mixed question of fact and constitutional law." *Id* at 579. Questions of constitutional law are reviewed de novo. *Id*

**Argument**

*A. Trial counsel's stipulation to the admission of expert testimony on cell phone tower tracking fell below an objective standard of reasonableness.*

---

[6] A motion to remand for an evidentiary hearing is being filed simultaneously with this appeal.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

Trial counsel's performance was deficient, and his representation of Mr. Robinson "fell below an objective standard of reasonableness." *Strickland v Washington*, 466 US 668, 686, 104 S Ct 2052, 80 L Ed 2d 674 (1984). Because of expert testimony's inherent power to sway the jury through technicality and intricacy, a prosecutor may offer, and a court may admit, such testimony only after they have ensured that it meets the standard of reliability prescribed in MRE 702.[7] *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 781, 685 NW2d 391 (2004). As the Supreme Court of Michigan explained in *Gilbert*, "This gatekeeper role applies to *all* stages of expert analysis. MRE 702 mandates a searching inquiry, not just of the data underlying expert testimony, but also of the manner in which the expert interprets and extrapolates from those data." *Id* at 782.

The prosecution offered expert testimony from Mr. Larry Paul Smith, "a custodian of records" for Metro PCS, whose job it was to "maintain the storage and accuracy of [Metro PCS'] phone records, such as subscriber information, call detail records, and text messages." *T2 146-47*. Mr. Smith had been with Metro PCS for "around three years" at the time of trial and the prosecution presented him as "an expert in the workings of Metro PCS and the records, how they are stored, recorded, and registered." *T2 147-48*. Defense counsel stipulated to Mr. Smith's qualifications as an expert. *T2 146-47*.

The prosecution put forth Mr. Smith's testimony to explain and draw conclusions from the "incoming and outgoing phone calls for [a phone number identified as Mr. Robinson's], along with the cell towers that first connected with on each of the calls, and the ending cell tower

---

[7] Michigan Rule of Evidence 702 provides: "If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is a product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." MRE 702.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

at the end of the call." *T2 150*. Mr. Smith testified that about a half hour before the incident, a call from Mr. Robinson's phone originated from a tower southeast of the tower where it ended, which was to the west of the BP station on Seven Mile. *T2 169, 174*. He testified that the phone in question registered as ending at a tower east of the BP station on Seven Mile shortly after that, *T2 170, 174*, then again at the tower to the west of the station. *T2 171*. He further claimed that a call from the phone originated at the tower west of the station after the shooting occurred. *T2 176*.

The prosecutor had Mr. Smith mark Seven Mile on a map in order to show where in relation to the gas station phone calls were being made. *T2 173*. Using the directions from which calls were made, and a ballpark estimation of each tower's range, Mr. Smith opined that the phone was in particular "sectors" at particular times. *T2 175-76*. The prosecution portrayed Mr. Smith's testimony as placing Mr. Robinson in the general vicinity of the gas station around the time of the shooting. *T4 28-29*.

Michigan appellate courts follow factors set by *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579, 596, 113 S Ct 2786, 125 L Ed 2d 469 (1993),[8] when evaluating whether proffered expert testimony meets MRE 702's reliability standards. *See e.g. Gilbert*, 470 Mich at 781; *People v Unger*, 278 Mich App 210, 218, 749 NW2d 272 (2008). To warrant a new trial, defense counsel's decision to stipulate to the admission of such evidence and not request a *Daubert/Gilbert* hearing must have been so serious as to deprive the defendant of his constitutional right to effective counsel. *Leblanc*, 465 Mich at 578 (citing *Strickland*, 466 US at 687). Here, defense counsel objected to neither Mr. Smith's qualifications as an expert nor the

---

[8] These factors include: "whether the [theory or technique] can be (and has been) tested, . . . whether the theory has been subjected to peer review and publication . . . the known or potential rate of error . . . the existence and maintenance of standards controlling the technique's operation . . . [whether the technique has gained] "general acceptance" [in the pertinent field.]" *Daubert*, 509 US at 593-94.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

scientific validity and legal reliability of Mr. Smith's testimony, and even went so far as to stipulate to Mr. Smith's qualifications as an expert. *T2 147*. Defense counsel failed to protect Mr. Robinson from the erroneous admission of Mr. Smith's testimony, and his not doing so had a very serious effect on the outcome of the trial.

> 1. *Trial counsel's stipulation to Mr. Smith's qualifications as an expert witness fell below an objective standard of reasonableness because custodians of records are not qualified to draw conclusions from complex telecommunications data.*

Mr. Smith explained his qualifications for reading and storing Metro PCS records, but not for analyzing how they might reflect a particular phone's general location. *T2 146-47*. He provided no evidence reflecting an expertise in telecommunications, engineering, physics, or any other discipline that would allow him to insightfully draw specific conclusions from raw cell data. *Id* Despite this, defense counsel failed to object to his testimony despite having stipulated to his qualifications as just "an expert in the workings of Metro PCS' records." *T2 148*.

Though a Michigan court has not ruled on the particular question, appellate courts in other jurisdictions have consistently deemed specific expertise necessary to opine about the statistics and data reflected in the records kept by cell phone providers. *See State v Patton*, 419 SW3d 125 (Mo Ct App 2013); *Wilder v State*, 191 Md App 319, 991 A2d 172 (2010); *Payne & Bond v State*, 211 Md App 220, 65 A3d 154 (2013). If not for defense counsel's stipulation to Mr. Smith's qualifications as an expert, there is a reasonable probability the trial court would not have deemed him an expert in how to extrapolate location conclusions from Metro PCS records. Custodians of records are regularly considered experts sufficient to verify that records are kept in the regular course of business, *see People v Fackelman*, 489 Mich 515, 536, 802 NW2d 552 (2011), but not to explain how those records can be used to draw conclusions about the location of a cell phone in question based on data from two or fewer towers. Thus, defense counsel's

RECEIVED by MCOA 3/23/2015 9:25:11 AM

15

stipulation to Mr. Smith's qualifications as an expert fell below an objective standard of reasonableness and denied Mr. Robinson his right to effective counsel.

> 2. *Trial counsel's stipulation to the admission of expert testimony on cell phone tower tracking fell below an objective standard of reasonableness because cell phone tower tracking is not per se scientifically valid or legally reliable and therefore should have been the subject of a Daubert/Gilbert hearing.*

Despite the fact that Mr. Smith was just Metro PCS' Custodian of Records, *T2 146*, and despite the fact that the type of data he presented has frequently been called into question on grounds of its legal reliability and scientific validity, defense counsel failed to object to Mr. Smith's credentials or the reliability of the data and methods upon which he was basing his testimony. *T2 147*. Not only did defense counsel decline to request that the court evaluate Mr. Smith's proposed testimony under the *Daubert* factors in order to determine its scientific validity and legal reliability, he stipulated to the admissibility of Mr. Smith's proposed testimony. *T2 146-47*.

Cell phone tower evidence can be unreliable junk science. Some experts in the telecommunications field argue that it has no place in the courtroom. Michael Cherry and Manfred Schenk are preeminent authorities on cell phone tower tracking, the only such experts to testify in successful challenges to cell phone tower evidence. They, along with law professor Edward J. Imwinkelried and a few defense attorneys, wrote an article in *Judicature* magazine arguing that such evidence is very unreliable and can be extremely misleading. Michael Cherry, et al., *Cell Tower Junk Science*, 95 JUDICATURE n.4, 151 (2012). They point to the fact that the Federal Communications Commission (FCC) mandates that cell phone providers use either a GPS-like technology or a comprehensive network-based approach to provide emergency 911 locations of callers in the event they need assistance. *Id* As the authors argue, "No one who

RECEIVED by MCOA 3/23/2015 9:25:11 AM

understands the relevant science would ever claim that data from a single cell phone tower is adequate [to show an individual's location]." *Id*

In this case, Mr. Smith opined as to the likely range of cell phone tower signals in a congested area like Detroit, but gave no basis for how he knew by how much the congestion reduced the range. *T2 162*. The prosecutor even went so far as to say that "We know where you are when you make a phone call." *T1 123*. The lack of information by which to make Mr. Smith's estimates more accurate is exactly why the evidence should have been challenged and a separate evidentiary hearing requested. Cherry, Schenk, Imwinkelried, and the other authors contend that without such information, even claims that the data can place a person in an area with a ten-mile radius are false. Cherry et al, at 151.

In a 2013 article in CRIMINAL LAW BULLETIN, Imwinkelreid, along with James Beck and Christopher Magana, evaluated how the use of cell phone tower evidence to place individuals in general areas fares under the *Daubert* factors. Beck et al, *Global Positioning*. There are multiple techniques one can utilize to attempt to use cell phone tower data to determine a phone's approximate location. *Id* at 1-2. In this case, Mr. Smith neither utilized GPS, *T2 153*, nor triangulation, but rather relied on directional indicators and approximate radii of towers.[9]

The particular technique Mr. Smith utilized, about which his testimony was far from specific, fails all of the *Daubert* factors. It has not been and cannot be tested, because without knowing the specific assumptions and variables Mr. Smith used to come to his conclusions, one cannot readily identify his technique. *See* Beck et al, *Global Positioning*, at 10-11. Schenk has testified that even Mr. Smith's most basic assumptions, that (1) one can identify which tower a

---

[9] For a comprehensive explanation of the underlying science of how cell phone towers work and how they can and cannot be used to determine the general location of a given phone, see Beck, et al, *The Use of Global Positioning (GPS) and Cell Tower Evidence to Establish a Person's Location – Part II*, 49 CRIMINAL LAW BULLETIN 3 (Summer 2013) *available at* https://wvn.fd.org/pdf/2014%20CJA%20Seminar/imwinklCell%20Phone%20Part%20II.pdf.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

cell phone registered with during a given call, and (2) one can know whether a particular call was routed through a particular tower, are impossible. *See People v Williams*, 2013 WL 5629647.

Similarly, the difficulty of identifying Mr. Smith's particular technique makes it impossible for his conclusions to have survived peer review. *See* Beck et al, *Global Positioning*, at 11-12. The same is true of discovering known or potential rates of error, which is further complicated by the fact that cell phone companies rarely release this type of data to the public. *Id* at 12. Because Mr. Smith's technique is not standardized or even clearly explained, there is no way there are general standards for its implementation. *Id* Lastly, this uncertainty makes it very difficult for the technique to have gained "general acceptance," specifically in the pertinent fields of telecommunications and engineering, rather than in the field of law enforcement. *Id* at 13. Mr. Smith's technique and testimony clearly fall short of all of the *Daubert* factors, and it was unreasonable for defense counsel not to recognize this and object.

In *People v Hubbard*, this Court analyzed the admissibility of junk science in the context of "drug profile evidence." *Id*, 209 Mich App 234, 530 NW2d 130 (1995). In that case, the defendant was convicted in large part due to testimony from a detective who had worked on a large number of drug cases, and claimed that he could identify common characteristics of drug dealers, many present in defendant's case. *Id* at 237-38. This Court found such drug dealer profiling unreliable, held that the trial court had erred by admitting the evidence and that such error was not harmless, and remanded the case for further proceedings. *Id* at 243.

In *People v Dobek*, this Court decided that the trial court's exclusion of evidence on psychological tests and how they related to a person's disposition to commit sexual offenses was proper because the tests and the testimony derived from them "were not sufficiently supported by the data, nor can the **science** be deemed sufficiently reliable". *Id*, 274 Mich App 58, 95, 732

RECEIVED by MCOA 3/23/2015 9:25:11 AM

NW2d 546 (2007). Finally, in *Tobin v Providence Hospital*, this Court concluded that expert testimony may be excluded when it is based upon unreliable and untrustworthy scientific data. *Id*, 244 Mich App 626, 650-51, 624 NW2d 548 (2001).

In *People v Keys*, this Court decided in an unpublished opinion that the trial court had not erred in admitting cell phone tower evidence in order to show that defendant was *not* in a particular location, as opposed to showing that he was somewhere specific. *Id*, ("There is an important distinction between concluding that an individual was not in a specific place at a specific time, as opposed to affirmatively stating that an individual was at a particular location at a particular time.") Though the authority is not binding, this Court should be cognizant of the lesson from *Keys* because it bears so directly on the evidence at issue in this case. The prosecution did not use Mr. Smith's testimony to show Mr. Robinson was not where he claimed to have been, but rather where he was at the time of the shooting. This sort of overly particularized use is exactly what the *Keys* court was counseling against.

Mr. Smith's testimony was based upon unreliable and untrustworthy scientific data and largely undisclosed methodology. Those who know the most about how cell phone towers really work, experts on that particular subject and the federal agency tasked with regulating the towers, have consistently denied the reliability and evidentiary value of cell phone tower records. Defense counsel should have objected to the admission of Mr. Smith's testimony in order to allow the judge to evaluate the testimony under the *Daubert* factors, and his failure to do so denied Mr. Robinson effective assistance of counsel and due process of law.

The prosecution buttressed Mr. Smith's testimony about cell towers by eliciting his testimony about text messages Mr. Robinson had sent, namely those that said he had staked out

RECEIVED by MCOA 3/23/2015 9:25:11 AM

Ms. Miller's house and told an individual to look at certain news channels, and a message he received, offering to sell him a .45 caliber pistol.

### C. Trial counsel's constitutionally deficient performance prejudiced Mr. Robinson and undermines confidence in the outcome of his trial. Thus, the second prong of the Strickland/Pickens test is satisfied.

The prosecution presented testimony from seventeen different witnesses, but only two were of real consequence to the outcome of the trial. The remaining witnesses testified to the occurrence of the crime, and were in large part corroborated by the surveillance tape.

In determining the prejudicial effect of erroneously admitted evidence, Michigan courts consider "the nature of the error in light of the weight and strength of the untainted evidence." *People v Douglas*, 496 Mich 557, 579, 852 NW2d 587, 599 (2014) (citing *People v Musser*, 494 Mich 337, 348, 835 NW2d 319, 327 (2002)).

The prosecution's case turned on the credibility of one witness, Ms. Jessica Taylor, in conjunction with the reliability of expert testimony from Mr. Larry Paul Smith.     The prosecution opened its case by telling the jury "some of you are just flat-out not going to like [Ms. Taylor]," *T1 120*.

Ms. Taylor was the only witness to claim she had seen Mr. Robinson's face during the shooting. She was dating both Mr. Robinson and Mr. Chubb at that time, going back and forth between the two. When she had a problem with Mr. Chubb, she would run to Mr. Robinson; when she had a problem with Mr. Robinson, she would run to Mr. Chubb. Mr. Robinson would buy her things, like a cell phone and a pair of Coach shoes. The morning of the shooting, Ms. Taylor invited Mr. Robinson over, then ditched him for Mr. Chubb, pushing Mr. Robinson out the front door while she surreptitiously let Mr. Chubb in the side door, hoping neither would bump into the other. *T2 25*. She contradicted herself frequently during direct examination, first

RECEIVED by MCOA 3/23/2015 9:25:11 AM

saying Mr. Robinson had not touched her that morning, then saying he gave her a hickey. *T2 25, 29*. She also claimed that he had not touched her violently, *T2 28*, then a few minutes later said he had pushed her down. *T2 30*.

At the scene of the shooting, Ms. Taylor told police she had not seen the shooter's face, then later changed her story and claimed to have seen Mr. Robinson shoot Mr. Chubb. *T2 44-45*. She claimed that Mr. Robinson rode up behind Mr. Chubb on a green bicycle, raised a handgun to the base of his head, and fired. *T2 35*. This was despite the fact that both Ms. Miller and Ms. Davies testified that everyone in the car had ducked immediately upon hearing the gunshots. *T1 256; T3 107*. Per Ms. Taylor's own statements, she had smoked a considerable amount of marijuana before witnessing the attack. *T2 32*.

There were numerous reasons to doubt Ms. Taylor's credibility, from her motive to get revenge on Mr. Robinson for making a sex tape without her knowledge, *T2 74*, and the fact that she blamed him for giving her a sexually transmitted infection, *T2 86,* to her impaired faculties of perception at the time of the attack. *T2 32*. All other witnesses alleged accounts consistent with the gas station surveillance video, which did not reveal the shooter's face, and none identified Mr. Robinson as the shooter, including Mr. Maddox who saw the shooter's face.

The other piece of evidence implicating Mr. Robinson came in the form of Mr. Smith's testimony. *T2 146*. Mr. Smith's claims about the ability of cell phone towers to accurately determine a particular phone's location served a vital bolstering role in lending credence to Ms. Taylor's version of the incident. He offered opinions as to the reliability of information gathered from phone tower records, and explained how that information implicated Mr. Robinson. The crucial role this evidence played made it even more unreasonable for defense counsel to not object to its admission.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

### B. Mr. Robinson was entitled to, but did not receive, effective assistance of counsel.

Mr. Robinson had a right to counsel under the United States and Michigan Constitutions. US Const, amend VI; Mich Const 1963, art 1, § 20. The United States Supreme Court "has recognized that 'the right to counsel is the right to the effective assistance of counsel.'" *Strickland v Washington*, 466 US at 686 (quoting *McMann v Richardson*, 379 US 759, 771 n14, 90 S Ct 1441, 25 L Ed 2d 763 (1970)).

The United States Supreme Court established the following two-prong test for evaluating an appellant's claim of ineffective assistance of counsel at trial: "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 US at 687. The Supreme Court of Michigan adopted the *Strickland* test for reviewing claims of ineffective assistance of counsel under the Michigan Constitution. *People v Pickens*, 446 Mich 298, 302-3, 521 NW2d 797 (1994); *LeBlanc*, 465 Mich at 578.

To satisfy the first prong of the *Strickland/Pickens* test, "the defendant must show that counsel's representation fell below an objective standard of reasonableness . . . In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 US at 688. To satisfy the second prong of the *Strickland/Pickens* test, "the defendant must show that the deficient performance prejudiced the defense." *Id* at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id* at 694. A "reasonable probability" standard is lower than a

RECEIVED by MCOA 3/23/2015 9:25:11 AM

preponderance of the evidence standard, and "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome of the case." *Id* at 693.

The prosecution offered expert testimony placing Mr. Robinson in the general area of the shooting, and Mr. Robinson's ability to dispute the scientific validity and legal reliability of this testimony was sabotaged by trial counsel's stipulation to the admission of such evidence and failure to effectively cross-examine the expert witness. Mr. Robinson was convicted because the prosecution was able to exploit defense counsel's failures. Further, defense counsel failed to call an expert.

As explained *supra*, the data and methods on which Mr. Larry Paul Smith based his testimony are unclear and likely unreliable. Disputing the admissibility of this evidence should have been a key aspect of Mr. Robinson's defense. Despite the widely supported criticism of the data and methods upon which Mr. Smith relied, *see* Michael Cherry et al, *Cell Tower Junk Science*, 95 JUDICATURE 151 (2012); James Beck et al, *The Use of Global Positioning (GPS) and Cell Tower Evidence to Establish a Person's Location – Part II*, 49 CRIMINAL LAW BULLETIN 3 (2013) (hereinafter referred to as *Global Positioning*), defense counsel did not challenge the evidence; he even stipulated to Mr. Smith's qualifications as an expert and to the admission of his testimony. *T2 146*.

Mr. Robinson can satisfy both prongs of the *Strickland/Pickens* test and show that his trial counsel was constitutionally deficient. Trial counsel's failure to demand a proper evidentiary hearing to determine the admissibility of Mr. Smith's testimony, or even object to its admission, was deficient performance that fell below an objective standard of reasonableness. Furthermore, trial counsel's failure to demand a hearing or challenge the evidence prejudiced Mr. Robinson and undermines confidence in the outcome of his trial.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

Without Mr. Smith's erroneously admitted testimony, the jury would have principally had Ms. Taylor's testimony as evidence implicating Mr. Robinson in the shooting, something the prosecutor admitted in closing argument, *T4 74*. Viewed "in light of the weight and strength of the untainted evidence," the admission of Mr. Smith's testimony, resulting from trial counsel's failure to object, undoubtably "undermined the reliability of the verdict." *People v Elston*, 462 Mich 751, 766, 614 NW2d 595, 602 (2000) (citing *People v Snyder*, 462 Mich 38, 45, 609 NW2d 831 (2000)). That undermining of the verdict entitles Mr. Robinson to a new trial, one not infected with the unfair taint of unreliable expert testimony. At the very least, Mr. Smith's testimony was influential enough that it should have been properly scrutinized, and this Court should alternatively remand this case for a hearing on the admissibility of such testimony and defense counsel's failure to call an expert if the testimony is admissible.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

II.   **DEFENSE COUNSEL STIPULATED TO THE INTRODUCTION OF TESTIMONY REGARDING IRRELEVANT SEX TAPES, DID NOT OBJECT TO LINES OF QUESTIONING REGARDING THOSE TAPES, AND DID NOT OBJECT TO THE INTRODUCTION OF TEXT MESSAGES OR TESTIMONY PORTRAYING MR. ROBINSON IN A BAD LIGHT. DEFENSE COUNSEL'S FAILURE TO OBJECT DENIED MR. ROBINSON HIS RIGHT TO EFFECTIVE COUNSEL AND DUE PROCESS OF LAW. US CONST. AM VI, XIV.**

## Issue Preservation

Because defense counsel stipulated to the admission of testimony regarding sex tapes allegedly made by the defendant and one made by celebrities, *T2 74*; *T3 141*, the issue was not preserved. However, Mr. Robinson may raise an ineffective assistance of counsel claim for the first time on appeal because it involves a constitutional error that could have decided the outcome. *People v Henry*, 239 Mich App 140, 146, 607 NW2d 767 (1999).

## Standard of Review

Issues of ineffective assistance of counsel are decided under a test that requires "the greatest level of factual inquiry into the actual conduct of the defense and its effect on the outcome of the trial." *People v Leblanc*, 465 Mich 575, 578, 640 NW2d 246 (2002). Whether a defendant has been denied effective assistance of counsel is "a mixed question of fact and constitutional law." *Id* at 579. Questions of constitutional law are reviewed de novo. *Id*

Unpreserved evidentiary issues are reviewed under a plain-error standard. *People v Carines*, 460 Mich 750, 764, 597 NW2d 130, 138 (1999). The plain error inquiry consists of a three-part test: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and

RECEIVED by MCOA 3/23/2015 9:25:11 AM

the plain error affected substantial rights." *Id* at 763 (citing *United States v Olano*, 507 US 725, 731-34, 113 S Ct 1770, 123 L Ed 2d 508 (1993)).

**Argument**

> **A. Trial counsel's failure to object to the admission of Ms. Taylor's testimony about alleged sex tapes and related text messages fell below an objective standard of reasonableness.**

Ms. Taylor claimed that Mr. Robinson made a video of them having sex, and that she only found out about it after the fact. *T2 74*. She stated that when she found out about the tape, she felt "violated." *Id* Defense counsel did not object to the introduction of this evidence, but he should have. Its introduction did nothing more than enflame the jury and portray Mr. Robinson in a bad light, and defense counsel's failure to object to its admission fell below an "objective standard of reasonableness." *Strickland*, 466 US at 688. A basic understanding of the Michigan Rules of Evidence and general prosecutorial strategy would have dictated an objection to such evidence. The prosecution showed exactly what it intended the jury to take away from the testimony in closing argument by claiming that the sex tape and related text message testimony showed that Mr. Robinson was controlling and manipulative. *T4 10-11.*

In *People v Leach*, this Court held that the trial court's admission of testimony concerning unauthorized entry into complainant's home by defendant in a homicide prosecution was error because it was irrelevant. *Id*, 114 Mich App 732, 736, 319 NW2d 652 (1982). Though the *Leach* court ultimately concluded that the error of admitting such evidence was harmless, it is important to note that this Court found error in the admission of evidence that had significantly more probative value than the sex tape testimony in this case. Similarly, this Court found in *People v Rimson*, 63 Mich App 1, 4, 233 NW2d 867 (1975), that testimony regarding previous involvement in the illegal drug trade did not bear on whether defendant had sold heroin to a

RECEIVED by MCOA 3/23/2015 9:25:11 AM

police informer. The defendant's knowledge of the drug trade, while seemingly relevant in the abstract, bore little enough relevance to the issue in the case for its admission to be deemed error. That evidence was certainly more relevant than was testimony about Mr. Robinson allegedly making sex tapes.

In *State v Barriner*, the Supreme Court of Missouri, en banc, reversed defendant's conviction of capital murder in part because of the erroneous admission of evidence of defendant's consensual sexual conduct with a former girlfriend. *Id*, 34 SW3d 139, 146. The court deemed the risk of unfair prejudice of the evidence, which included a duffel bag containing dildos, far greater than any possible probative value it may have had. *Id* at 147. Though the authority is not controlling, the striking similarities between the improper admission in *Barriner* and Mr. Robinson's trial give the analysis significant persuasive force.

Whether Mr. Robinson made a sex tape of Ms. Taylor without her knowledge — and whether he did this with other women — had nothing to do with whether he was the shooter, aside from possibly showing that he was a generally bad person, and therefore more likely to have committed the crime in question, a use of evidence proscribed by MRE 404(a). MRE 404(a). But still, the prosecution played upon the testimony alleging his sexual history in order to convince the jury of exactly what is proscribed by the rules of evidence: that Mr. Robinson was an all-around bad actor. The prosecutor wove Mr. Robinson's alleged making of sex tapes in and out of opening, closing, and rebuttal statements, *T1 123; T4 29, 76*, infecting the entire proceeding with unfair prejudice and information irrelevant to the central issue.

Because the testimony's probative value was so obviously low, and its potential to create unfair prejudice so obviously high, defense counsel provided ineffective assistance by not objecting to its admission.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

The prosecution compounded the unfair prejudice by introducing text messages between Ms. Taylor and Mr. Robinson regarding their sex life, a sexually transmitted infection, and Mr. Robinson's urging Ms. Taylor to tell Mr. Chubb she was pregnant when in fact she was not. *T2 58; 73-75; 81-85*. Ms. Taylor went through a series of text messages regarding her knowledge of the sex tape, which were sent before she received a copy of the tape, despite the fact that she had claimed ignorance of its production earlier. *T2 73-75*.

The prosecution also had Mr. Larry Paul Smith read through a series of text messages sent between the phone Ms. Taylor identified as Mr. Robinson's and Mr. Chubb's phone, in which there were a number of demeaning comments and a threat to "Make sure you take ur bitch shit wit u cuz i will burn it." *T2 194-95*. Mr. Smith also read a series of text messages sent to Mr. Robinson's phone, ostensibly from other women. *T2 182-83*. Almost none of this testimony addressed the issue central to the case.

Like the sex tape testimony, the vast majority of the text messages had no probative value, and a great risk of unfairly prejudicing the jury against Mr. Robinson based on matters unrelated to the case. Defense counsel's failure to object to their admission denied Mr. Robinson his rights to effective counsel and due process of law.

> **B.  Trial counsel's failure to object to the admission of Mrs. Sabrina Johnson's testimony about alleged sex tapes and related text messages fell below an objective standard of reasonableness.**

Mrs. Johnson revealed her knowledge of Mr. Robinson's alleged practice of making sex tapes when she was asked. Like Ms. Taylor's sex tape testimony and that about the text messages, this evidence served no purpose other than to enflame the jury and create a negative feeling toward Mr. Robinson. The probative value of such evidence was extremely low, and its potential for prejudice extremely high. This is especially true of Mrs. Johnson's testimony

RECEIVED by MCOA 3/23/2015 9:25:11 AM

regarding a tape Mr. Robinson had not himself made, featuring celebrities Ray J and Kim Kardashian. *T3 138*. The introduction of evidence regarding celebrities and their sexual proclivities presented a substantial risk of distracting and confusing the jury, and had no probative value.

### C. Trial counsel's failure to object to the testimony of Ms. Miller about Mr. Robinson's actions toward Ms. Taylor fell below an objective standard of reasonableness.

Ms. Miller knew Ms. Taylor, Mr. Chubb and Mr. Robinson. *T1 236-237*. She testified that she told Mr. Robinson not to hit Jessica or degrade her. Defense Counsel did not object to this testimony or other hearsay testimony until after the prosecutor had elicited a significant amount of prejudicial, inadmissible hearsay. *T1 241*. The Judge responded by stating that there was lots of hearsay being elicited and defense counsel was "just sitting there". *T1 241-242*.

Ms. Miller's testimony about the actions between Mr. Robinson and Ms. Taylor was irrelevant, prejudicial and elicited only to add to the narrative that Mr. Robinson was a controlling abusive person who could have committed the crime.

### D. Mr. Robinson was entitled to, but did not receive, effective assistance of counsel.

As addressed *supra*, Mr. Robinson had a right to effective assistance of counsel under the United States and Michigan Constitutions. Trial counsel failed to provide effective assistance by not challenging the admission of irrelevant, unfairly prejudicial evidence against Mr. Robinson.

Considering the circumstances, defense counsel's failure to object to clearly unfairly prejudicial evidence fell below an "objective standard of reasonableness." *Strickland*, 466 US at 688. There is no legitimate strategic reason to fail to object, and the evidence was unfairly prejudicial. So, Mr. Robinson satisfies the first prong of the *Strickland/Pickens* test. Mr. Robinson can also "show that there is a reasonable probability that, but for counsel's

RECEIVED by MCOA 3/23/2015 9:25:11 AM

unprofessional errors, the result of the proceeding would have been different," *id* at 694, and thus satisfies the second prong of the *Strickland/Pickens* test.

The standard of relevance under Michigan Rule of Evidence 401 is very permissive. *See People v Brooks*, 453 Mich 511, 517, 557 NW2d 106 (1996); MRE 401. Michigan Rule of Evidence 403 tempers this predisposition toward admission by allowing the court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or other considerations. MRE 403. In this case, testimony about Mr. Robinson's alleged sexual history, as well as testimony regarding text conversations he had with Ms. Taylor, Mr. Chubb, and other women, bore no relevance to the central issue of the case, despite the prosecutor arguing that they somehow demonstrated an aspect of his relationship with Ms. Taylor, *T4 76*, thus shedding light on whether he had the motive to commit the crime in question. Such testimony did, on the other hand, bring with it a very serious risk of unfairly prejudicing the jury against Mr. Robinson, and confusing the jury as to what the material issue in the case actually was.

### D. Trial counsel's constitutionally deficient performance prejudiced Mr. Robinson and undermines confidence in the outcome of his trial. Thus, the second prong of the **Strickland/Pickens** test is satisfied.

The sex tape testimony, as well as the testimony about the text messages referencing the sex tape, the sexually transmitted infection, and the pregnancy lie, should have been objected to and excluded because their probative value was substantially outweighed by their potential to cause unfair prejudice, confusion of the jury, and unreasonable delay. Admitting the testimony prejudiced the jury against Mr. Robinson because, while contributing nothing to the issue central to the case, it portrayed Mr. Robinson in a generally bad light. In essence, the evidence served only to make the jury dislike Mr. Robinson as a person. Given that the prosecution's case rested

RECEIVED by MCOA 3/23/2015 9:25:11 AM

30

very heavily on the credibility of Ms. Taylor, painting Mr. Robinson as a bad person served to sway the jury towards believing otherwise incredible testimony. It seems likely that the jury might well have been more likely to convict because they believed Mr. Robinson deserved some form of punishment for his behavior, regardless of the fact that it had no bearing on the case at bar.

      Mr. Robinson's right to a fair trial was eroded by the prosecution's questions eliciting and introduction of testimony regarding his alleged making of sex tapes with Ms. Taylor and other women. The only issue in the case was one of identification. At no time did the defense dispute that the shooting had in fact occurred, and that it had in fact been perpetrated by an individual wearing a blue hooded sweatshirt and riding a green bicycle, as multiple witnesses asserted and the gas station surveillance tape demonstrated. What mattered was whether the prosecution could prove beyond a reasonable doubt that Mr. Robinson was the individual in the blue hooded sweatshirt. Testimony from Ms. Taylor and Mrs. Johnson regarding Mr. Robinson's alleged practice of making sex tapes had absolutely no probative value in regard to identifying Mr. Robinson as the shooter, and carried with it a large risk of unfair prejudice and confusion. The absence of probative value, in combination with the high risk of unfair prejudice, rebuts any presumption that not objecting to such evidence might have been sound trial strategy.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

### III. DEFENSE COUNSEL FAILED TO OBJECT TO THE PROSECUTOR'S MISCONDUCT OF REFERENCING FACTS NOT IN EVIDENCE AND THE PROSECUTOR'S APPEAL TO SYMPATHY IN BOTH OPENING AND CLOSING ARGUMENTS. DEFENSE COUNSEL'S FAILURE TO OBJECT DENIED MR. ROBINSON HIS RIGHT TO EFFECTIVE COUNSEL AND DUE PROCESS OF LAW. US CONST. AM VI, XIV.

**Issue Preservation**

A defendant must contemporaneously object and request a curative instruction to preserve an issue of prosecutorial misconduct. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627, 634-35 (2010), *app den* 489 Mich 897 (2011) and *app den* 489 Mich 898 (2011). In this case, trial counsel neither objected to the prosecutor's improper conduct nor requested a curative instruction. *T1 123; T4 29, 76*. However, Mr. Robinson may raise an ineffective assistance of counsel claim for the first time on appeal because it involves a constitutional error that could have decided the outcome. *People v Henry*, 239 Mich App 140, 146, 607 NW2d 767 (1999).

**Standard of Review**

Issues of ineffective assistance of counsel are decided under a test that requires "the greatest level of factual inquiry into the actual conduct of the defense and its effect on the outcome of the trial." *People v Leblanc*, 465 Mich 575, 578, 640 NW2d 246 (2002). Whether a defendant has been denied effective assistance of counsel is "a mixed question of fact and constitutional law." *Id* at 579. Questions of constitutional law are reviewed de novo. *Id*

Unpreserved issues of prosecutorial misconduct are reviewed under a plain-error standard. *People v Aldrich*, 246 Mich App 101, 110, 631 NW2d 67 (2001) (citing *Carines*, 460 Mich at 764). The plain error inquiry consists of a three-part test: "1) error must have occurred,

RECEIVED by MCOA 3/23/2015 9:25:11 AM

2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id* at 763 (citing *Olano*, 507 US at 731-34).

Though "appellate review of improper prosecutorial remarks is generally precluded absent objection by counsel . . . An exception exists if a curative instruction could not have eliminated the prejudicial effect or where failure to consider the issue would result in a miscarriage of justice." *People v Stanaway*, 446 Mich 643, 687, 521 NW2d 557 (1994).

## Argument

A prosecutor must seek to convict defendants, but only when doing so is consistent with due process and the principles of justice. As a servant of the law and representative of the sovereign, *Berger v United States*, 295 US 78, 88; 55 S Ct 629, 633; 79 L Ed 1314 (1935), a prosecutor must ensure that a defendant has a fair trial. *People v Burrell*, 127 Mich App 721, 726; 339 NW2d 239, 241 (1983) (citing *People v Williams*, 114 Mich App 186, 198l 318 NW2d 671 (1982)). Performing this duty, a prosecutor must "exhibit a high ethical standard when presenting a case to the jury," *People v Richardson,* 489 Mich 940; 798 NW2d 13 (2011), and refrain from using improper methods to obtain a conviction. *Berger*, 295 US at 88. This standard of conduct prohibits a prosecutor from injecting prejudicial innuendo into the proceedings. *People v Mitchell*, 131 Mich App 69, 73, 345 NW2d 611 (1983).

While it is true that the adversarial system affords prosecutors "great latitude regarding their arguments and conduct" at trial, *People v Bahoda*, 448 Mich 261, 282, 531 NW2d 659 (1995); *Unger*, 278 Mich App at 236, they "may not argue the effect of testimony that was not entered into evidence at trial," *Stanaway*, 446 Mich at 686 (citing *People v McCain*, 84 Mich App 210, 269 NW2d 528 (1978)), and may not infect the proceedings by injecting unfair prejudice. *Mitchell*, 131 Mich App at 73.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

**A.  The prosecutor deliberately referenced facts not in evidence to portray Mr. Robinson  in a bad light, infecting the proceedings with prejudicial innuendo and denying him a fair trial.**

The prosecutor referenced facts not in evidence during opening, closing, and rebuttal arguments in order to paint Mr. Robinson as a controlling, manipulative boyfriend. *T1 123; T4 10-11, 29, 76*. Michigan appellate courts follow guidelines set by *Donnelly v DeChristoforo*, 416 US 637, 643, 94 S Ct 1868, 40 L Ed 2d 431 (1974), when evaluating claims of prosecutorial misconduct. *See e.g. People v Blackmon*, 280 Mich App 253, 269-70, 761 NW2d 172 (2008). To warrant a new trial, the misconduct must have so infected the trial with unfairness as to make the conviction a deprivation of liberty without due process of law. *Id* The prosecutor's conduct should be evaluated in context of the case as a whole, including the strength of the prosecutor's case. *Aldrich,* 246 Mich App at 110. Here, the prosecutor went to such lengths to cast aspersions upon Mr. Robinson's general character that the judge chose to interrupt to ask the prosecutor to rephrase her rebuttal statement. *T4 76*. The prosecutor referred to other women in Mr. Robinson's life, naming at least two, "Lilah" and "Terri," *T4 10*, about which no evidence had been presented. The result was that Mr. Robinson's trial was so infected with unfairness that his conviction was a deprivation of liberty without due process of law.

**B.  The prosecutor's misconduct was so obvious that defense counsel's failure to object to it amounted to ineffective assistance of counsel.**

In closing arguments, the prosecutor consistently painted Mr. Robinson in a poorer light than the evidence showed. *T4 76.* She created an unsupported narrative in which Mr. Robinson was depicted as a covetous lover, seeking to keep a prized girlfriend for himself. *Id* Despite the prosecutor's assertions to the contrary, there were no facts in evidence to support this characterization, except for a text message in which Mr. Robinson said Kim Kardashian, a celebrity with whom he would never have a relationship, was "mine mine mine." *T3 138*. The

RECEIVED by MCOA 3/23/2015 9:25:11 AM

prosecutor described relationships with "Nicole" and the "C.R.E.A.M. number" of which there had been no testimony or other evidence presented. *T4 10-11*. The prosecutor alleged Mr. Robinson had left a hickey on Ms. Taylor's neck, *T4 15*, despite testimony from Ms. Taylor's friends to the contrary. The prosecutor went on to misstate Mr. Maddox's testimony, claiming he said the shooter had "facial hair right around his chin," *T4 24*, when in fact Mr. Maddox testified that the shooter had a full beard "ear to ear." *T1 202*. Ms. Powell further stated that Ms. Taylor was "able to see" the shooter's face, *T4 26*, despite both Ms. Miller and Ms. Davies saying everyone ducked as soon as the shooting started. The prosecutor also mischaracterized the specificity of Mr. Larry Paul Smith's testimony, claiming it showed that Mr. Robinson took "the same path" as the shooter. *T4 29*.

The prosecution committed a serious error by supporting its depiction of Mr. Robinson with facts not in evidence, and defense counsel fell below an objective standard of reasonableness by not recognizing this and objecting. The prosecutor's assertions during closing argument were not offhand comments. She strengthened her case by improperly informing the jury that Mr. Robinson had committed acts reflecting a possessive and manipulative character. The prosecutor's deliberate and improper assertions that Mr. Robinson had a displayed a disposition not proven in evidence were an attempt to make the jury believe Mr. Robinson was a bad man deserving of punishment, regardless of whether or not he committed the crime in question. Furthermore, the prosecutor made a good deal of the improper assertions during rebuttal argument, giving defense counsel no chance to answer them. Believing this, the jury was left with no choice but to improperly find Mr. Robinson guilty of all the counts against him. The prosecutor's misconduct, and defense counsel's conspicuous failure to object to it, resulted in a

RECEIVED by MCOA 3/23/2015 9:25:11 AM

trial so infected with unfair prejudice that the resulting conviction was a denial of due process of law.

RECEIVED by MCOA 3/23/2015 9:25:11 AM

## SUMMARY AND RELIEF AND REQUEST FOR REMAND

**WHEREFORE**, for the foregoing reasons, Defendant-Appellant asks that this

Honorable Court remand this case to the trial court for an evidentiary hearing on the denial of Mr.

Robinson's 6th amendment right to the effective assistance of counsel.

Respectfully submitted,

**STATE APPELLATE DEFENDER OFFICE**


/s/ Valerie R. Newman

BY:_____
**VALERIE R. NEWMAN (P47291)**
Assistant Defender
**Eli Cohen, Student Research Attorney**
3300 Penobscot Building
645 Griswold
Detroit, Michigan  48226
(313) 256-9833


Dated:  March 23, 2015

RECEIVED by MCOA 3/23/2015 9:25:11 AM

# STATE OF MICHIGAN
# IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

               Plaintiff-Appellee,

-vs-

**LAMARR VALDEZ ROBINSON**,

               Defendant.

_____/

**Court of Appeals No.** 321841

**Lower Court No.** 10-6297-01

## <u>AFFIDAVIT</u>

    Attorney **Valerie R. Newman**, states:

1.    I am an assistant defender for the State Appellate Defender Office, which was appointed to represent Mr. Robinson on appeal.

2.    I have reached out to trial counsel via regular mail, email and phone and have never received a response.

3.    I have requested discovery from trial counsel and his office that has not been produced.

4.    As to each of the claims in this motion I have attempted communication with trial counsel to try and determine if there was a reasonable strategic reason for counsel's actions.

5.    Based upon communication with Mr. Robinson, appellate counsel believes that there was no reasonable strategic purpose for failing to challenge the keeper of the records as he testified as an expert in cell phone technology.

6.    Based upon communication with Mr. Robinson, appellate counsel believes that there was no reasonable strategic purpose for failing to object to hearsay testimony regarding sex tapes.

7.    Based upon communication with Mr. Robinson, appellate counsel believes that there was no reasonable strategic purpose for failing to object to the prosecutorial misconduct that was so egregious that the judge stepped in because defense counsel was not objecting.

_____

**VALERIE R. NEWMAN (P 47291)**
Assistant Defender
State Appellate Defender Office
3300 Penobscot Building
645 Griswold
Detroit, MI  48226

Dated:  March 23, 2015

RECEIVED by MCOA 3/23/2015 9:25:13 AM

**STATE OF MICHIGAN**
**COURT OF APPEALS**

# Bundle Cover Sheet

| Lower Court: | | L Ct No.: | COA No.: |
|---|---|---|---|
| WAYNE CIRCUIT COURT | | 10-006297-FC | 321841 |
| **Case Title:** | | | |
| PEOPLE OF MI V LAMARR VALDEZ ROBINSON | | | |
| **Priority:** | | | |
| NONE | | | |

| *Filer Information* | |
|---|---|
| Filer | Attorney |
| Joycelyn Frederick | Daniel Hebel, P73580 |
| , MI | , MI |
| | dhebel@waynecounty.com |

| *Filing Summary* | | |
|---|---|---|
| **Type** | **Description** | **Fee** |
| ANSWER | Plaintiff's Answer to MtRemand | $0.00 |
| | **Total:** | **$0.00** |

Alternate Payment Reason: None

RECEIVED by MCOA 4/10/2015 11:38:35 AM

The document(s) listed above were electronically filed with the Michigan Court of Appeals.

321841-863840

**STATE OF MICHIGAN**
MI Court of Appeals

## Proof of Service

| Case Title: | Case Number: |
|---|---|
| PEOPLE OF MI V LAMARR VALDEZ ROBINSON | 321841 |

1. Title(s) of the document(s) served:

| Filing Type | Document Title |
|---|---|
| Answer | Plaintiff's Answer to MtRemand |

2. On 4-10-2015, I served the document(s) described above on:

| Recipient | Address | Type |
|---|---|---|
| AO Support<br>State Appellate Defender Office | ao@sado.org | e-Service |
| Cynthia Carter<br>State Appellate Defender Office | ccarter@sado.org | e-Service |
| Daniel Hebel<br>Wayne County Prosecutor's Office<br>P73580 | dhebel@waynecounty.com | e-Service |
| Joycelyn Frederick<br>Wayne County Prosecutor's Office | jsharp@waynecounty.com | e-Service |
| Valerie Newman<br>State Appellate Defender Office<br>47291 | vnewman@sado.org | e-Service |

This proof of service was automatically created, submitted and signed on my behalf through my agreements with TrueFiling and its contents are true to the best of my information, knowledge, and belief.

4-10-2015
Date

/s/ Joycelyn Frederick
Signature

Wayne County Prosecutor's Office

RECEIVED by MCOA 4/10/2015 11:38:38 AM

# STATE OF MICHIGAN
## IN THE COURT OF APPEALS

_____

**PEOPLE OF THE STATE OF MICHIGAN,**
      **Plaintiff-Appellee,**

**vs**
                                          **Court of Appeals No.  321841**

**LAMARR VALDEZ ROBINSON,**
         **Defendant-Appellant.**
_____
**Circuit Court No.  10-006297**
_____

## PLAINTIFF-APPELLEE'S RESPONSE TO
## DEFENDANT'S SECOND MOTION FOR REMAND

KYM WORTHY
Prosecuting Attorney
County of Wayne

TIMOTHY A. BAUGHMAN
Chief of Research, Training,
and Appeals

**DANIEL E. HEBEL (P73580)**
Assistant Prosecuting Attorney
1441 St. Antoine, 11th Floor
Detroit, Michigan 48226
(313) 444-0529

RECEIVED by MCOA 4/10/2015 11:38:35 AM

## COUNTERSTATEMENT OF QUESTIONS PRESENTED

### I

**A motion to remand must be filed within the time provided for the filing of the appellant's brief. Here, defendant filed a duplicate motion to remand months after the time provided for filing a brief had expired. Is defendant entitled to remand based on a motion that is both untimely and was previously denied by this Court?**

The People answer, "No."

Defendant would answer, "Yes."

RECEIVED by MCOA 4/10/2015 11:38:35 AM

## COUNTERSTATEMENT OF FACTS

On January 31, 2011, defendant was convicted by jury of assault with intent to commit murder,[1] felon in possession of a firearm,[2] and felony-firearm.[3] Defendant was sentenced on February 15, 2011. The final transcript in this case was filed on September 29, 2014. Accordingly, the time for defendant to file his brief on appeal[4] and any motion to remand[5] was by November 24, 2014. Defendant twice extended the time for filing his brief by motion, resulting in his brief being due on January 12, 2015. Defendant submitted a brief and a motion to remand on January 12, 2015. Defendant's motion to remand was denied by this Court in an order dated February 17, 2015.

Defendant now resubmits the same motion with a new date, March 23, 2015, along with a new brief regarding the motion, and an affidavit from appellate counsel.

RECEIVED by MCOA 4/10/2015 11:38:35 AM

---

[1] MCL 750.83.
[2] MCL 750.224f.
[3] MCL 750.227b.
[4] MCR 7.212(A)(1)(a)(iii).
[5] MCR 7.211(C).

**ARGUMENT**

**I.**

**A motion to remand must be filed within the time provided for the filing of the appellant's brief. Here, defendant filed a duplicate motion to remand months after the time provided for filing a brief had expired. Defendant is not entitled to remand based on a motion that is both untimely and was previously denied by this Court.**

**Discussion**

Defendant has refiled the same motion that was previously denied by this Court. This time, the motion is accompanied by an affidavit from appellate counsel who essentially states that she believes her defendant's assertion regarding trial counsel's subjective intentions. The motion is also far outside of the permissible deadline for this Court to accept motions for remand. It is also outside the time period for a motion for reconsideration.[6]

Motions for remand to the trial court are allowed by specific provision of the court rules.[7] They are only allowed during the time provided by the rules for the filing of the appellant's brief. There is no provision for the extension of this deadline by either stipulation or motion. Regardless, even the motion extensions to defendant's time for filing his brief on appeal ended on January 12, 2015. Accordingly, there is no provision for the Court to hear this motion – as though it were a new issue – nearly two and a half months after the expiration of defendant's time to file his brief. Accordingly, this motion has no provision for acceptance under the law.

Further, defendant has not remedied the fatal flaw which resulted in the denial of the original motion. No offers of proof or affidavits from potential witnesses were provided to lay a factual basis for his claims. Rather, only appellate counsel's own affidavit was provided. This

---

[6] MCR 7.215(I). Regardless, defendant did not submit his motion as a motion for reconsideration.
[7] MCR 7.211(C).

RECEIVED by MCOA 4/10/2015 11:38:35 AM

affidavit attests to no actual knowledge whatsoever regarding the substance of any claims, but merely indicates a "belief" that counsel was ineffective.  But appellate counsel's beliefs are immaterial to the question of remand.  Affidavits and offers of proof are only sufficient if they disclose the "the facts to be established at a hearing."[8]  The requirements of affidavits and offers of proof exist to filter out claims of remand that are based on speculation, rather than evidence. Defendant's counsel's affidavit provides no more evidence than the same beliefs encased in the written motion itself.   An affidavit of "belief" could be signed by anyone, at any time, and have equal weight; "belief" is not a quantum of "proof".  Without an "offer" that gives "proof" of the evidence that would be "established at a hearing," defendant is not entitled to remand.

### Conclusion

Defendant is not entitled to remand.  Defendant's motion may not be granted under the court rules because it was made far outside the time limit for motions to remand.  Defendant's new motion is merely a copy of the same motion this Court already denied.   Rather than show offers of proof that contain evidence, defendant supplied an affidavit from his appellate attorney who merely claims she believes defendant.  Thus, defendant has still failed to remedy the issue that caused this Court to deny his initial motion.

---

[8] MCR 7.211(C).

RECEIVED by MCOA 4/10/2015 11:38:35 AM

## RELIEF

THEREFORE, the People request that this Honorable Court deny defendant's motion for remand.

Respectfully submitted,

KYM WORTHY
Prosecuting Attorney
County of Wayne

TIMOTHY A. BAUGHMAN
Chief of Research, Training,
and Appeals

/s/ *Daniel E. Hebel*

**DANIEL E. HEBEL (P73580)**
Assistant Prosecuting Attorney
1441 St. Antoine, 11th Floor
Detroit, Michigan 48226
(313) 444-0529

Dated: April 10, 2015

RECEIVED by MCOA 4/10/2015 11:38:35 AM

# Court of Appeals, State of Michigan

## ORDER

People of MI v Lamarr Valdez Robinson

Docket No.    321841

LC No.        10-006297-01-FC

Karen M. Fort Hood
Presiding Judge

Michael J. Talbot

Cynthia Diane Stephens
Judges

---

The Court orders that the motion to remand pursuant to MCR 7.211(C)(1) is DENIED. Defendant-appellant has not properly demonstrated that further factual development of the record or an initial ruling by the trial court is necessary at this time in order for this Court to address the issues on appeal.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

APR 2 9 2015
_____
Date

_____
Chief Clerk

**STATE OF MICHIGAN**
**COURT OF APPEALS**

# Bundle Cover Sheet

| Lower Court: | | L Ct No.: | COA No.: |
|---|---|---|---|
| WAYNE CIRCUIT COURT | | 10-006297-FC | 321841 |

| Case Title: |
|---|
| PEOPLE OF MI V LAMARR VALDEZ ROBINSON |

| Priority: |
|---|
| CALL |

| *Filer Information* |
|---|

| Filer | Attorney |
|---|---|
| Monica  Smith | Daniel  Hebel, P73580 |
| , MI | , MI |
| | dhebel@waynecounty.com |

| *Filing Summary* |
|---|

| Type | Description | Fee |
|---|---|---|
| BRIEF | Brief on Appeal | $0.00 |
| ATTACHMENT | Attachment | $0.00 |
| | **Total:** | **$0.00** |

Alternate Payment Reason: None

The document(s) listed above were electronically filed with the Michigan Court of Appeals.

321841-1227821

RECEIVED by MCOA 10/2/2015 3:32:04 PM

**STATE OF MICHIGAN**
MI Court of Appeals

## Proof of Service

| Case Title: | Case Number: |
|---|---|
| PEOPLE OF MI V LAMARR VALDEZ ROBINSON | 321841 |

1. Title(s) of the document(s) served:

| Filing Type | Document Title |
|---|---|
| Brief | Brief on Appeal |
| Attachment | Attachment |

2. On 10-2-2015, I served the document(s) described above on:

| Recipient | Address | Type |
|---|---|---|
| AO Support<br>State Appellate Defender Office | ao@sado.org | e-Service |
| Daniel Hebel<br>Wayne County Prosecutor's Office<br>P73580 | dhebel@waynecounty.com | e-Service |
| Monica Smith<br>Wayne County Prosecutor's Office | msmith@waynecounty.com | e-Service |
| Valerie Newman<br>State Appellate Defender Office<br>47291 | vnewman@sado.org | e-Service |

This proof of service was automatically created, submitted and signed on my behalf through my agreements with TrueFiling and its contents are true to the best of my information, knowledge, and belief.

10-2-2015
Date

/s/ Monica Smith
Signature

Wayne County Prosecutor's Office

## STATE OF MICHIGAN
## IN THE COURT OF APPEALS

_____

**PEOPLE OF THE STATE OF MICHIGAN,**
 **Plaintiff-Appellee,**

**vs**                                                             Court of Appeals No.  321841

**LAMARR ROBINSON,**
 **Defendant-Appellant.**
_____

**Circuit Court No.  10-006297**
_____


## PLAINTIFF-APPELLEE'S BRIEF ON APPEAL
## ORAL ARGUMENT NOT REQUESTED


KYM WORTHY
Prosecuting Attorney
County of Wayne

JASON W. WILLIAMS
Chief of Research, Training,
and Appeals


**DANIEL E. HEBEL (P73580)**
Assistant Prosecuting Attorney
1441 St. Antoine, 11th Floor
Detroit, Michigan 48226
(313) 444-0529

RECEIVED by MCOA 10/2/2015 3:32:04 PM

# TABLE OF CONTENTS

Table of Contents..................................................................................................... i

Index of Authorities ............................................................................................... iii

Index of Attachments ............................................................................................. iv

Counterstatement of Jurisdiction ........................................................................... v

Counterstatement of Questions Presented ............................................................ vi

Counterstatement of Facts...................................................................................... 1

Argument ................................................................................................................ 9

      I.     A witness is qualified as an expert by knowledge, skill, experience, training, or education and the record may not be expanded on appeal.  Defendant now complains that the People's witness was not a scientist and presents not-of-record evidence to rebut the evidence on the record.  Defendant is not entitled to relief based on his argument that the People's expert was not a scientist or his extra-record evidence.................................9

            Standard of Review................................................................ 9

            Discussion ............................................................................ 10

      II.    Evidence is only excluded under MRE 404(b) if it is presented solely for the impermissible purpose of bad character.  Here, the People presented evidence that defendant used a sex tape that he created with the victim's girlfriend as one of several threats he made to the victim, before shooting the victim.  Discussion of the sex-tape threat was permissible...........................................14

            Standard of Review.............................................................. 14

            Discussion ............................................................................ 14

      III.   A prosecutor may use hard language to describe her theory of the case.  Here, the prosecutor argued her theory, rather than the defense theory, argued that defendant's actions and texts showed he was aggressively possessive of Taylor, and mentioned names that were already part of the record.  The prosecutor's comments did not constitute plain error.....................................17

            Standard of Review.............................................................. 17

            Discussion ............................................................................ 17

RECEIVED by MCOA 10/2/2015 3:32:04 PM

IV. On review for sufficiency of the evidence, all inferences and credibility choices must be drawn in favor of the jury verdict. Here, an eyewitness at the scene of the crime identified defendant as the shooter and explained that she did not come forward immediately because she was scared. In a light most favorable to the verdict, the facts were sufficient to support the jury's conclusion that defendant was the perpetrator. ....................................23

    Standard of Review ................................................................ 23

    Discussion ............................................................................... 23

V. A defendant may not expand the record on appeal. Here, defendant's motion for remand was denied and now defendant asks this Court to consult affidavits that were not even presented to this Court in the motion for remand due to their lack of credibility. Defendant is not entitled to expand the record on appeal to use incredible affidavits. ..................................25

    Standard of Review ................................................................ 25

    Discussion ............................................................................... 26

VI. A claim of knowing use of perjured testimony requires that the testimony be false, the testimony is material and the prosecutor knows it is false. Here, the People presented an eyewitness's testimony that merely conflicted with defendant's self-serving inferences. The testimony was permissible. ..................................28

    Standard of Review ................................................................ 28

    Discussion ............................................................................... 29

Relief ................................................................................................. 30

RECEIVED by MCOA 10/2/2015 3:32:04 PM

## INDEX OF AUTHORITIES

**Case**                                                                    **Page**

### STATE COURT CASES

*Strickland v Washington,*
466 US 668 (1984) ................................................................. 9, 14, 17, 25

*US v Bagley,*
473 US 667 (1985) ................................................................. 28

*US v Lochmondy,*
890 F2d 817 (CA6 1989) ......................................................... 28

### STATE COURT CASES

*People v Avant,*
235 Mich App 499 (1999) ....................................................... 9, 25

*People v Carines,*
460 Mich 750 (1999) .............................................................. 14, 17, 28

*People v Coyle,*
104 Mich App 636 (1982) ....................................................... 9, 25

*People v Eccles,*
260 Mich App 379 (2004) ....................................................... 10

*People v Ginther,*
390 Mich 436 (1973) .............................................................. 9, 25

*People v Hoag,*
460 Mich 1 (1999) ................................................................. 9, 12, 25, 26

*People v Jackson,*
498 Mich 246 (2015) .............................................................. 16

*People v Jordan,*
275 Mich App 659 (2007) ....................................................... 10

*People v Leonard,*
224 Mich App 569 (1997) ....................................................... 9, 11, 16, 25

*People v Mardlin,*
487 Mich 609 (2010) .............................................................. 15

RECEIVED by MCOA 10/2/2015 3:32:04 PM

*People v Matuszak,*
   263 Mich App 42 (2004) ................................................................. 20

*People v Nowack,*
   462 Mich 392 (2000) ...................................................................... 23

*People v Pawelczak,*
   125 Mich App 231 (1983) ......................................................... 10, 25

*People v Petrella,*
   424 Mich 221 (1985) ...................................................................... 23

*People v Pickens,*
   446 Mich 298 (1994) ........................................................................ 9

*People v Van Tubbergen,*
   249 Mich App 354 (2002) .............................................................. 20

## STATUTORY AUTHORITIES

MCL 750.83. ........................................................................................ 1

MCL 750.224f. .................................................................................... 1

MCL 750.227b. .................................................................................... 1

## STATE RULES AND REGULATIONS

MCR 7.210(A)(1) ............................................................................... 10

MRE 404(b) ........................................................................... 14, 15, 16

MRE 702 ............................................................................................ 11

## INDEX OF ATTACHMENTS

Appendix 1 ........................................................................*People v Keys*

RECEIVED by MCOA 10/2/2015 3:32:04 PM

## COUNTERSTATEMENT OF JURISDICTION

The People concur with defendant's statement of appellate jurisdiction as stated in his brief on appeal.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

## COUNTERSTATEMENT OF QUESTIONS PRESENTED

### I

**A witness is qualified as an expert by knowledge, skill, experience, training, or education and the record may not be expanded on appeal.   Defendant now complains that the People's witness was not a scientist and presents not-of-record evidence to rebut the evidence on the record.   Is defendant entitled to relief based on his argument that the People's expert was not a scientist or his extra-record evidence?**

The trial court did not answer this question.

The People answer, "No."

Defendant would answer, "Yes."

### II

**Evidence is only excluded under MRE 404(b) if it is presented solely for the impermissible purpose of bad character.   Here, the People presented evidence that defendant used a sex tape that he created with the victim's girlfriend as one of several threats he made to the victim, before shooting the victim.   Was discussion of the sex-tape threat permissible?**

The trial court did not answer this question.

The People answer, "Yes."

Defendant would answer, "No."

RECEIVED by MCOA 10/2/2015 3:32:04 PM

## III

A prosecutor may use hard language to describe her theory of the case.  Here, the prosecutor argued her theory, rather than the defense theory, argued that defendant's actions and texts showed he was aggressively possessive of Taylor, and mentioned names that were already part of the record.  Did the prosecutor's comments constitute plain error?

The trial court did not answer this question.

The People answer, "No."

Defendant would answer, "Yes."

## IV
### (Defendant's Standard 4 – I.)

On review for sufficiency of the evidence, all inferences and credibility choices must be drawn in favor of the jury verdict. Here, an eyewitness at the scene of the crime identified defendant as the shooter and explained that she did not come forward immediately because she was scared.  In a light most favorable to the verdict, were the facts sufficient to support the jury's conclusion that defendant was the perpetrator?

The trial court did not answer this question.

The People answer, "Yes."

Defendant would answer, "No."

RECEIVED by MCOA 10/2/2015 3:32:04 PM

## V
### (Defendant's Standard 4 – II.)

**A defendant may not expand the record on appeal.  Here, defendant's motion for remand was denied and now defendant asks this Court to consult affidavits that were not even presented to this Court in the motion for remand due to their lack of credibility.  Is defendant entitled to expand the record on appeal to use incredible affidavits?**

The trial court did not answer this question.

The People answer, "No."

Defendant would answer, "Yes."

## VI
### (Defendant's Standard 4 – III.)

**A claim of knowing use of perjured testimony requires that the testimony be false, the testimony is material and the prosecutor knows it is false.  Here, the People presented an eyewitness's testimony that merely conflicted with defendant's self-serving inferences.  Was the testimony permissible?**

The trial court did not answer this question.

The People answer, "Yes."

Defendant would answer, "No."

RECEIVED by MCOA 10/2/2015 3:32:04 PM

RECEIVED by MCOA 10/2/2015 3:32:04 PM

## COUNTERSTATEMENT OF FACTS

On January 31, 2011, defendant was convicted of assault with intent to commit murder,[1] felon in possession of a firearm,[2] and felony-firearm.[3]  The convictions arose from defendant's act of shooting the victim, Jamel Chubb, multiple times from behind.  The victim was still in a coma as of the date of trial, with a prognosis that he will never recover.[4]

In May of 2010, Jessica Taylor had two boyfriends, defendant and the victim.  Taylor was 19 years old and had been with defendant since she was 17.[5]  Defendant was in his late 30s. Taylor also started dating the victim, who was 20 years old.[6]  Taylor had dated him for a few months.[7]  Defendant and the victim knew about each other from at least the beginning of May.[8]

Defendant was clearly upset that Taylor was dating the victim.  Defendant instructed Taylor to tell the victim that she was pregnant.[9]  When that did not scare the victim off, defendant began to follow Taylor, going so far as to stake out the house of Jasmine Miller, the location where Taylor was staying.[10]  Defendant's surveillance disturbed Miller enough that she asked her neighbor, a police officer, to keep an eye out for defendant because he was not supposed to be following them.[11]  Just a week before the shooting, defendant texted the victim to let him know that he was watching them.  Defendant told the victim that he watched him drop off Taylor in his gold Land Rover.  "I jus caught up wit her slut ass getn out a gold land rover

---

[1] MCL 750.83.
[2] MCL 750.224f.
[3] MCL 750.227b.
[4] T. 1/26, 157-58.
[5] T. 1/27, 21.
[6] T. 1/26, 152.
[7] T. 1/26, 157-58.
[8] T. 1/27, 188.
[9] T. 1/27, 82.
[10] T. 1/27, 5, 98-100, 188.
[11] T. 1/26, 250-52.

over jazz [Miller's home] & she just moved n wit me.[sic]"[12]  Then defendant sent the victim another text demanding that the victim disclose Taylor's sexual activities.  "Did u fuck her 2nite?"[13]

The next day after following the victim and Taylor, defendant received a text message regarding the sale of a .45 caliber pistol.  "45 small with hammer, star 400 $."[14]  Defendant replied to that text asking, "Where yall [the people selling the .45 caliber pistol]?"[15]  Defendant had previously told Taylor that he knew how to change semi-automatic hand guns into fully automatic weapons.[16]

On May 13, 2010, the date of the shooting, Taylor was at her mother's home.[17]  Originally, she made plans to hang out with defendant.[18]  But after the victim called, Taylor canceled the plans with defendant.[19]  Instead, she made plans with the victim.[20]  Defendant texted Taylor and said, "What the hell u have me get ready 4?"[21]  Disregarding her change of mind, defendant went over to where Taylor was staying.[22]  When he got there, he claimed that he only needed to go into the house to use the restroom.[23]  But when he got into the house, he tried to have sex with Taylor, who was not interested.[24]  He even went so far as to push her into her

---

[12] T. 1/27, 188-89.
[13] T. 1/27, 188-89.
[14] T. 1/27, 190.
[15] T. 1/27, 190.
[16] T. 1/27, 101-02.
[17] T. 1/27, 23.
[18] T. 1/27, 23-24.
[19] T. 1/27, 23-24.
[20] T. 1/27, 23-24.
[21] T. 1/27, 95.
[22] T. 1/27, 24.
[23] T. 1/27, 24.
[24] T. 1/27, 24-25, 29-30.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

room, push her down and put a "hickey," a passion mark, on her neck.[25]  The victim arrived and

came up to the side door, so Taylor sent the defendant out of the front door of the house.[26]  But

after Taylor let the victim in, defendant decided to return and let himself in through the front

door.[27]  Defendant argued with Taylor and told the victim that Taylor was a slut and a bitch.[28]

The victim left the house during the argument.  After he had left, defendant asked Taylor if she

loved the victim.[29]  Taylor said "Yes."  Defendant responded by threatening her, saying, "Well,

don't let me catch you out in the hood."[30]

     After defendant left, Taylor called the victim and he returned, picked her up in the gold

Land Rover, and they went to Miller's home in Detroit.  Less than two hours before the shooting,

defendant began to send a series of threatening texts to the victim's phone.  Taylor used the

victim's phone to send a text to defendant, "Leave us the fuck alone... for real."[31]  Defendant

texted back, "Never that.  She know how I get down. Imma always be fuckin' her raw. I used a

condom today 'cause she not cured yet.  I'm headed back now."[32]

| | |
|---|---|
| Defendant texted: | I got two years in this. You just a rebound. |
| The victim texted: | I already know you didn't fuck. Stop lying. She don't want you no more. |
| The victim texted: | I guess this rebound just took your girl. |
| Defendant texted: | How you think she got the hicky, fool? And when you was knocking, I was busting. |
| Defendant texted: | Put her on the phone with her bastard baby. Have her call me. |
| Defendant texted: | The call. |
| Defendant texted: | Better yet, send me a now pic, lil boy. |

---

[25] T. 1/27, 29-30.
[26] T. 1/27, 25.
[27] T. 1/27, 25-26.
[28] T. 1/27, 26-28.
[29] T. 1/27, 28.
[30] T. 1/27, 97.
[31] T. 1/27, 97, 194.
[32] T. 1/31, 15.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

| | |
|---|---|
| The victim texted: | You're good. |
| Defendant texted: | Ask her why the feds was watching me, the paperwork, and many others, and it look like its more to come. See y'all when I see y'all. Min. |
| The victim texted: | Look, lil nigga, I said she don't want to fuck with you. It's over. |
| Defendant texted: | You wasn't gangster when we was there. Make her call me and tell me that the only we out six feet." |
| Defendant texted: | Better come to the hood.[33] |

When defendant did not receive an answer, he threatened to humiliate Taylor by publicizing a tape he secretly made of the two of them having sex.

| | |
|---|---|
| Defendant texted: | Oh, yeah, I'm putting our sex tape in the hood and the net. |
| The victim texted: | Do what you gotta do to make you happy, man. Just do it over there. [34] |

While at Miller's house, Taylor, Miller, the victim, and Kayana Davies smoked some marijuana that Taylor brought.[35]  Then the four went to pick up Chinese takeout in the victim's Land Rover.[36]  The victim was driving, with Taylor in the passenger's seat.[37]  Davies was in the back seat behind him and Miller was seated behind Taylor.[38]  After picking up the food, they stopped at the BP gas station at Seven Mile and Wyoming in Detroit.[39]  Miller bought a beverage and then returned to the car.[40]  The victim paid for the fuel before filling up the tank.[41]  Miller and Taylor had their doors slightly opened, but then closed them as the victim finished filling up with gas.[42]

---

[33] T. 1/31, 15-16.
[34] T. 1/31, 16-17.
[35] T. 1/27, 32.
[36] T. 1/27, 33.
[37] T. 1/27, 33-34.
[38] T. 1/27, 34.
[39] T. 1/27, 34.
[40] T. 1/27, 34
[41] T. 1/27, 34.
[42] T. 1/27, 34.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

As the victim finished pumping the fuel, defendant came up behind him, placed a gun directly behind his head, and fired several times in rapid succession.[43]  The victim immediately fell to the ground with multiple gunshot wounds.[44]  Taylor saw defendant's face and saw him holding a gun.[45]  None of the other witnesses could identify defendant because he was wearing a blue hoodie with the hood up.[46]  Davies testified that everyone ducked when the shooting started.[47]  Defendant fled on a bicycle.[48]

Initially, Taylor indicated that she believed it was defendant, but refrained from letting the police know she witnessed him holding the gun.[49]  Taylor was afraid of what defendant would do if she admitted that she witnessed him commit the murder.[50]  On May 25, 2010, Taylor came forward to tell the police that she saw defendant at the scene of the crime.[51]  Later, she testified in a preliminary examination.[52]  But after Taylor felt threatened, she fled to West Virginia.[53]  The authorities found her, brought her back to Michigan, and she was detained until trial.[54]

At trial, Zjzjai Smith, Jamir Gray, and Timothy Mapson testified that on the day of the shooting, they were playing at a nearby park on Seven Mile Road.[55]  The three young men heard

---

[43] T. 1/27, 34-35.
[44] T. 1/27, 37.
[45] T. 1/27, 37, 44.
[46] T. 1/27, 35, 46-47; T. 1/28, 31-32.
[47] T. 1/27, 112.
[48] T. 1/27, 37.
[49] T. 1/27, 42-45.
[50] T. 1/27, 42-43.
[51] T. 1/27, 44-45.
[52] T. 1/27, 45.
[53] T. 1/27, 45-46.
[54] T. 1/27, 46.
[55] T. 1/26, 165, 176-77; T. 1/28, 115-16.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

a series of loud bangs that sounded like fireworks.[56]  They observed someone wearing a blue hoodie riding a green bicycle who was leaving the area of the gas station quickly.[57]  None of the three got a good look at the man's face.  Mapson initially thought the rider might be a friend, but it was not Mapson's friend.[58]  The three went up to the gas station and found the victim had been shot.[59]

Larry Smith, a records custodian with Metro PCS, also testified.  Although his full credentials did not make it into the record due to a stipulation, Smith did explain qualifications that included:  (1) he maintained the accuracy of Metro PCS phone records, (2) was trained with how cell-phone towers work, (3) was trained with how handsets register with the towers, (4) and had the responsibility to train others with how the cell-phone towers work.[60]

After qualification as an expert, Smith discussed how someone could obtain a number with Metro PCS.[61]  Next, Smith described how individual Metro PCS cell towers could tell the basic area of a connected cell phone.[62]  After reviewing the records of defendant's calls, Smith testified that every call listed both the starting cell tower and the ending cell tower that was connected to the cell phone.[63]  The general area where the cell phone was activated would fall into a "sector" of the cell tower with which the phone was connected.[64]  Based on this information, call records from defendant's cell phone could chart a very general course through the city if his phone moved between cell-tower sectors.

---

[56] T. 1/26, 166, 177; T. 1/28, 116.
[57] T. 1/26, 166, 178; T. 1/28, 116.
[58] T. 1/28, 119.
[59] T. 1/26, 171-72.
[60] T. 1/27, 146-48.
[61] T. 1/27, 148-50.
[62] T. 1/27, 151-54.
[63] T. 1/27, 154-78.
[64] T. 1/27, 152, 157-59.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

Smith did not testify as to the exact location of defendant's cell phone at any point. Rather, Smith testified that defendant's cell phone passed through sectors from several cell phone towers on the date of the crime.[65]  Smith used his knowledge of the Metro PCS cell towers to make a map showing the coverage of each of the cell-tower sectors that defendant passed through leading up to the time of the shooting.[66]  The People's theory of defendant's movement on the day of the crime – including his presence at the scene of the shooting – was in range of the cell-tower sectors his phone triggered.[67]

Smith also related several of defendant's text messages that were sent to and from his Metro PCS cell phone from the days leading up to, and including, the day of the shooting.[68]

At 6:37 p.m. on the day of the crime, defendant texted his step-mother "News 2  4  & 7."[69]  The shooting was featured on the evening news.[70]

The jury saw a surveillance video where defendant – whose facial features were obscured by the hood – shot the victim.[71]  Eight spent .45 caliber cartridges were found at the scene of the crime and ballistics determined that they were all fired from the same weapon.[72]  Based on the sound of the surveillance video, the People's firearms expert, Sgt. Jeff Amley, testified that the gun that did the shooting sounded like a fully automatic weapon.[73]

---

[65] T. 1/27, 160-78.
[66] T. 1/27, 160-78.
[67] T. 1/27, 160-78.
[68] T. 1/27, 178-96.
[69] T. 1/27, 196.
[70] T. 1/28, 159-60.
[71] T. 1/27, 35.
[72] T. 1/28, 57, 69-70.
[73] T. 1/28, 86.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

The jury was also given a copy of the victim's medical records at the defendant's request.[74] The victim was shot multiple times, causing severe injuries to his neck, his head, and his back.[75] At the time of trial, the victim was in a coma.[76] The bullet that hit his neck paralyzed him, rendered him blind, and permanently unable to communicate.[77] During closing argument, the prosecutor read defendant's threatening text messages into the record.[78]

Defendant was convicted of all charges.

---

[74] T. 1/31, 5.
[75] T. 1/26, 135-36; 156-57.
[76] T. 1/26, 156-57.
[77] T. 1/26, 156-57.
[78] T. 1/31, 15-17.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

**ARGUMENT**

**I.**

**A witness is qualified as an expert by knowledge, skill, experience, training, or education and the record may not be expanded on appeal. Defendant now complains that the People's witness was not a scientist and presents not-of-record evidence to rebut the evidence on the record. Defendant is not entitled to relief based on his argument that the People's expert was not a scientist or his extra-record evidence.**

**Standard of Review**

To establish ineffective assistance of counsel, a defendant must show that counsel's performance was objectively unreasonable and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different.[79]  There is a strong presumption, however, that counsel provided effective representation.[80]  The defendant bears the burden of proof and must exclude those reasonable hypotheses consistent with the view that trial counsel provided effective representation.[81]  Counsel's overall performance is that which is reviewed and the standard is an objective one.[82]  To show ineffective assistance, a defendant must establish the factual predicate of his claim.[83]

Mere speculation that certain questions, evidence, or witnesses would have been favorable is insufficient to warrant relief.[84]  Defendant attempts to add to the record through his own sources, seeking to provide new evidence to counter the People's proofs at trial.  But this

---

[79] *People v Leonard*, 224 Mich App 569, 592 (1997); *Strickland v Washington*, 466 US 668 (1984).
[80] *Id.*
[81] *People v Ginther*, 390 Mich 436 (1973).
[82] *Strickland,* 466 US at 688*; People v Coyle*, 104 Mich App 636 (1982).
[83] *People v Hoag*, 460 Mich 1, 6 (1999).
[84] See *People v Avant*, 235 Mich App 499, 508 (1999); *People v Pickens*, 446 Mich 298, 327 (1994).

- 9 -

RECEIVED by MCOA 10/2/2015 3:32:04 PM

Court does not allow such materials to expand the record on appeal.[85]  Defendant's reliance on those proofs is misplaced.

**Discussion**

Defendant is not entitled to relief on his claims regarding the prosecution's use of cell phone tower location information and testimony.  Defendant claims his counsel was ineffective for failing to object to (1) the People's expert witness, Larry Smith, who is a record custodian responsible for maintaining cell-phone-tower records, explaining the meaning of those records in court, and training others with the function of cell phone towers and (2) the People's cell phone tower evidence as potentially unreliable.  Neither of defendant's claims have merit.

> *An expert whose work experience involves cell tower record maintenance, explaining those records, explaining the function of cell towers, and training others with the workings of cell phone towers is qualified to opine on the function and records of those cell towers.*

Defendant guesses that if counsel had objected to the testimony of the People's expert Larry Smith, the trial court might have disallowed the testimony and decided that Smith was not allowed to discuss the function of the cell towers and records, because he had no expertise in telecommunications, engineering, or physics.  Defendant is incorrect.

There is absolutely no indication on the record that the People failed to comply with the court rules and standard practice of providing the defense with all materials regarding Smith's experience and expertise in the field of cell-phone towers.  Accordingly, counsel's stipulation was simply a matter of trial strategy.  Describing all the other court cases wherein Smith had opined about the range of cell towers, the training Smith had received on the review and meaning

---

[85] *People v Jordan*, 275 Mich App 659, 667 (2007); *People v Eccles*, 260 Mich App 379, 384 n.4 (2004); *People v Pawelczak*, 125 Mich App 231, 241 (1983); MCR 7.210(A)(1).

RECEIVED by MCOA 10/2/2015 3:32:04 PM

of the records he maintained and explained, and the trainings that Smith conducted for others regarding the function of the cell-phone towers, would simply have bolstered his credibility in front of the jury.  Contrary to defendant's suggestion, expertise does not demand a degree in physics or engineering.  "[A] witness qualified as an expert by knowledge, skill, experience, training, or education."[86]  Smith clearly exhibited a thorough knowledge of the function of the Metro PCS cell towers and their records.[87]  Smith is also one of the people with the job of explaining the meaning of Metro PCS records in court as they relate to the location of handsets and cell towers.[88]  Smith even trains others to understand the function of the cell towers.[89]  Thus, even though counsel stipulated before the prosecutor could go in depth with Smith's curriculum vitae, Smith's credentials were well established.   It is a perfectly legitimate strategy to stipulate to a witness's expertise, rather than let that expertise be established – and consequently, the related testimony to be bolstered – in front of the jury.

Further, defendant provides absolutely no of-record evidence that Smith would not have been qualified upon an objection.  Ineffective assistance of counsel cannot be granted on a claim that trial counsel did not indulge in a fishing expedition with only a speculative benefit.  Rather, a defendant must show a probability that the objection would directly lead to an acquittal.[90]  But defendant cannot and does not impeach Smith's actual credentials to establish a probability that he could not have testified.  Instead, defendant relies on a *possibility* of prejudice rather than a

---

[86] MRE 702.
[87] T. 1/27, 154-96.
[88] T. 1/27, 146-48.
[89] T. 1/27, 146-48.
[90] *Leonard*, 224 Mich App at 592.

- 11 -

RECEIVED by MCOA 10/2/2015 3:32:04 PM

*probability* of outcome-determinative prejudice. Accordingly, defendant has failed to make out the factual predicate of his claim.[91]

> ### *A defendant cannot rely on evidence not in the record to impeach evidence presented at trial.*

Defendant is not entitled to relief on his claim that counsel was ineffective for not objecting because the People may have used junk science and that some other sources not in the record may have been able to impeach the cell-tower location testimony. This claim relies exclusively on evidence not of-record in the attempt to claim that the People's evidence was either inadmissible or impeachable by another expert. But defendant is not allowed to expand the record on appeal.[92] Thus, this claim is precluded.

Further, defendant's cited materials have nothing to do with this case. Defendant claims that a single cell tower cannot be used to reliably show a specific location for a handset. But the People did not use the cell-tower information to show a specific location. Instead, the evidence was used to show a general area defendant's phone would have had to be within, in order to use the cell towers with which he was connected.[93] The People's theory of defendant's movement simply fit within those general areas.[94] None of defendant's extra-record information rebuts the People's evidence because none of the information asserts that a cell phone can connect to a cell tower from outside of that tower's range.

---

[91] *Hoag*, 460 Mich at 6.
[92] *Jordan*, 275 Mich App at 667; *Eccles*, 260 Mich App at 384 n.4; *Pawelczak*, 125 Mich App at 241.
[93] T. 1/27, 160-78.
[94] T. 1/27, 160-78.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

Defendant's cited cases are completely irrelevant to this case. Rather, this case is a direct mirror to this Court's unpublished case of *People v Keys*.[95] In *Keys,* the defendant made very similar arguments that were taken from outside the record and were irrelevant to the question of general locations of cell-tower range.[96] Just like the defendant in *Keys*, defendant is not entitled to relief.

### *Conclusion*

Defendant is not entitled to relief based on his claims of ineffective assistance arising from the People's presentation of testimony regarding the phone towers that connected to defendant's phone. First, the People's expert, Smith, was trained to understand how the Metro PCS phone towers worked and actually trained others with the function of the towers and the records they generate. He was qualified to testify about the range and distance where those towers could register defendant's phone. Defendant has provided no of-record evidence to show that Smith would not have been qualified if counsel had raised an objection.

Second, defendant is not entitled to expand the record on appeal. Defendant's sources, which he uses in an attempt to attack the reliability of the People's cell-tower evidence, are not part of the record. Accordingly, this Court will not consider that evidence on appeal. Further, those sources merely warn about the attempt to triangulate an exact position of a cell phone from a single tower, which is something the People did not do. Rather, the People simply showed how their theory of the perpetrator's movement corresponded to the general location trajectory of defendant's phone.

---

[95] *People v Keys*, unpublished opinion per curiam of the Court of Appeals, issued January 16, 2014, 2014 WL 198812, at *3 (Docket No. 312801).
[96] *Id*.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

## II.

**Evidence is only excluded under MRE 404(b) if it is presented solely for the impermissible purpose of bad character. Here, the People presented evidence that defendant used a sex tape that he created with the victim's girlfriend as one of several threats he made to the victim, before shooting the victim. Discussion of the sex-tape threat was permissible.**

**Standard of Review**

Whether by way of an ineffective-assistance-of-counsel theory or issue forfeiture, the standard of review is for plain error. That is, when of-record matters are at issue, the standards are the same. They both require a showing by the defendant that: (a) error occurred, (b) the error was so obvious that the attorneys were derelict in failing to notice it, and (c) the error affected the outcome of trial.[97] Of-record claims such as those presented here should then be reviewed exclusively under the plain-error standard, which incorporates and subsumes the ineffective-assistance-of-counsel inquiry.

**Discussion**

Defendant is not entitled to relief based on the claim that the People presented other acts evidence about a sex tape. Defendant's threats to the victim – that culminated in his act of shooting the victim repeatedly – explicitly referenced the sex tape, making it an unavoidable topic.

The defendant objects to the introduction of testimony that mentioned that he secretly filmed himself and Jessica Taylor engaging in sex acts. The People did not present the sex tape itself, only its existence was referenced. Regardless, evidence of the existence of the sex tape

---

[97] Compare *People v Carines*, 460 Mich 750, 764 (1999) and *Strickland*, 466 US 668.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

was substantively admissible under MRE 404(b).[98]  "MRE 404(b) does not prohibit all other-acts evidence 'that may ... give rise to an inference about the defendant's character,' but only that which is 'relevant solely to the defendant's character or criminal propensity.'"[99]   Here, the sex tape references were admissible for the permissible reasons of showing defendant's intent and motive.  Thus, the threatening texts – including defendant's references to the sex tape and discussion of its existence – were admissible to show his prior relationship with Taylor was his motive to attack the victim.[100]  Additionally, the references to the sex tape were admissible to show defendant's intent.  Defendant intended to keep a relationship with Taylor, no matter what he had to do, regardless of the wishes of Taylor or the victim.  That intent to keep Taylor was clearly displayed by defendant's act of recording a sex act without Taylor's knowledge and then threatening to spread the tape if she did not return.  Accordingly, testimony about the sex tape was admissible under MRE 404(b).

Further, in the recent case of *People v Jackson,* the Michigan Supreme Court held that other acts that were necessary to explain the circumstances surrounding the charged offense met

---

[98] MRE 404(b)(1) says:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

[99] *People v Jackson*, 498 Mich 246, slip op at *13 (2015) quoting *People v Mardlin*, 487 Mich 609, 615-16 (2010).

[100] T. 1/31, 16-17.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

the standards of MRE 404(b).[101]  The Court noted that "explaining the timing and circumstances" leading up to a crime is a "proper, nonpropensity purpose."[102]

Although formal notice was not given, defendant cannot show the lack of formal notice would have created a reasonable probability of outcome-determinative prejudice.[103]  Without such a showing, failure to provide notice is properly considered harmless.[104]  Defendant knew the content of his threatening text messages, which he never denied sending.  Since threats made to a victim leading up to a crime are admissible to show intent to commit the crime, defendant was on actual notice that the People would be discussing his threats, including his threat to post the sex tape.  Additionally, defendant fails to show how early notice would have made any difference.  He did not claim that he was not responsible for sending the text messages, nor did he contradict his threat to post the sex tape.  Thus, nothing about the actual trial would have changed.  Defendant has failed to meet his burden to establish ineffective assistance of counsel.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

---

[101] *People v Jackson*, 498 Mich 246 (2015).
[102] *Id.*
[103] *Leonard*, 224 Mich App at 592.
[104] *Jackson*, 498 Mich 246, slip op at *14.

## III.

**A prosecutor may use hard language to describe her theory of the case. Here, the prosecutor argued her theory, rather than the defense theory, argued that defendant's actions and texts showed he was aggressively possessive of Taylor, and mentioned names that were already part of the record. The prosecutor's comments did not constitute plain error.**

**Standard of Review**

Whether by way of an ineffective-assistance-of-counsel theory or issue forfeiture, the standard of review is for plain error. That is, when of-record matters are at issue, the standards are the same. They both require a showing by the defendant that: (a) error occurred, (b) the error was so obvious that the attorneys were derelict in failing to notice it, and (c) the error affected the outcome of trial.[105] Of-record claims such as those presented here should then be reviewed exclusively under the plain-error standard, which incorporates and subsumes the ineffective-assistance-of-counsel inquiry.

**Discussion**

Defendant is not entitled to relief on his claim that his "possessive and manipulative" disposition was not proven at trial and that his counsel was ineffective for failing to object to the prosecutor's argument. Defendant's actions and admissions that were presented at trial clearly supported the People's theory.

Defendant complains that the prosecutor argued that he was possessive and controlling of Jessica Taylor and that his counsel should have objected. At trial, defendant's actions and admissions showed that he was extremely possessive of Jessica Taylor, his ex-girlfriend. It was

---

[105] Compare *Carines*, 460 Mich at 764 and *Strickland*, 466 US 668.

- 17 -

RECEIVED by MCOA 10/2/2015 3:32:04 PM

the People's theory that defendant shot the victim because he came between defendant and Taylor to such a point where defendant lost control of Taylor.

The evidence indicated that defendant tried to control Taylor by:

1. Switching Taylor's signature on her new phone to "Loyalty 1st,"[106]

2. Instructing Taylor to lie to the victim and claim she was pregnant,[107]

3. Using harsh, belittling, and controlling language to insult Taylor in front of the victim,[108]

4. Threatening that he better not catch her "in the hood,"[109]

5. Going to her house, even after she asked him not to come over,[110]

6. Pushing her into her room and putting a passion mark on her neck, despite her insistence that she did not want to have sex with him,[111]

7. Following her to a friend's house and then staking the house out, to watch her,[112]

8. Threatening to post a sex tape between the two of them if she did not leave the victim and come back to him,[113]

9. Repeatedly threatening the victim to try to get him to leave Taylor.[114]

The prosecutor's argument that defendant was possessive and controlling regarding Taylor was well justified by the record.

---

[106] T. 1/27, 52-53.
[107] T. 1/27, 82-83
[108] T. 1/27, 26.
[109] T. 1/27, 28.
[110] T. 1/27, 28.
[111] T. 1/27, 29-30.
[112] T. 1/27, 5, 98-100, 188.
[113] T. 1/31, 16-17.
[114] T. 1/31, 15-17.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

Defendant also attempts to paint the prosecutor's comments on closing in a different light than they were made, claiming that the prosecutor was adding to the record. When observed in context, there was nothing impermissible with the prosecutor's comments. Rather, it appears that defendant was irritated that the prosecutor was arguing her own theory from the evidence rather than endorsing the defense theory.

First, defendant claims that there was no evidence about any "Lilah" or "Terri" presented at trial.[115] This assertion is false. According to the record, both "Lilah" and "Terri" were in text correspondence with defendant in the month leading up to the shooting. The texts to and from Lilah that were read into the record indicate that she knew and was involved in ongoing conversations with defendant, because the text conversations clearly referenced ongoing communications.

> Defendant to Lilah:   Like, what i need somethn i can hit.
> Whats pink
> & wyoming
> Lilah to Defendant:   Too late tomorrow.[116]

Similarly, the texts to and from Terri indicate that defendant was conversing with Terri and met with her at certain points.

> Defendant to Terri:   Here
> Terri to Defendant:   R u ready?
> ***
> I'm leaving out GREG is here 525-7021.
> ***
> Hey greg wants to know r u r still goin by there [sic][117]

---

[115] Defendant's Brief on Appeal, 34.
[116] T. 1/27, 181-82.
[117] T. 1/27, 181-82.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

Thus, the prosecutor's assertion that defendant interacted with these women was accurate.  The prosecutor did not describe any relationship that defendant may or may not have had with them, because that information was not on the record.  Rather, the prosecutor merely described the content of the text messages he sent to them, which were admitted into the record, and discussed the controlling relationship that defendant had with Taylor, which was discussed extensively on the record.

Second, defendant argues that the prosecutor misrepresented the testimony of Tremaine Maddox by saying "the defendant has that facial hair right around his chin like Tremaine said," rather than describing it as a "full beard."[118]  Of course, Maddox himself did not describe the facial hair as a "full beard."  "Full beard" is defendant's self-serving interpretation.  Rather Maddox said the facial hair went "ear to ear," but to describe the facial hair, he used his finger to trace a line on the sides of his chin.[119]  Thus, the prosecutor's description also incorporated Maddox's clarifying gesture, which defendant omits.

Third, defendant argues that the prosecutor should not have been allowed to argue the testimony that was presented – that Taylor saw defendant holding the gun.[120]  Defendant has presented absolutely no legal argument that would prevent the People from arguing testimony that was directly stated, merely because defendant can create a self-serving adverse inference from the testimony of other witnesses.  This claim is abandoned.[121]

Fourth, defendant claims that the prosecutor misrepresented the cell tower evidence by saying "So we have the shooter taking a certain path. And then we have the defendant taking the

---

[118] Defendant's Brief on Appeal, 35.
[119] T. 1/26, 202-03.
[120] T. 1/27, 37, 44.
[121] *People v Matuszak*, 263 Mich App 42, 59 (2004); *People v Van Tubbergen*, 249 Mich App 354, 364-65 (2002).

- 20 -

RECEIVED by MCOA 10/2/2015 3:32:04 PM

same path." But the jury knew exactly what the prosecutor was referring to, because when viewed in context, the prosecutor correctly and accurately summarized the evidence that was presented regarding the movement of defendant's cell phone. In context, the prosecutor said:

> 5:07 is the next phone call that is made from the defendant's phone. We know that at 5:07 the defendant is registering now at this tower. It's on the opposite side of the gas station.
>
> So, before the shooting we had the defendant registering on the side of the tower where Jasmine lives. After the shooting, we had the defendant registering on this tower. Not only is he registering on that tower, but we know that he's registering in -- here's the gas station again. Here's the tower the defendant is hitting at 5:07. It's all this area.
>
> Guess what? This encompasses the area of the park. Now, we know that all the kids in this case, they cannot identify anyone. They see a man on a bike. They took notice because they heard a shooting. They hear the noises. They see somebody on a bike. They see the green bike. They see the hoodie. They see the man with hand down his waistband as if carrying a gun. But all of them tell you, look, we just did not get that good of a look at his face.
>
> But they are important because guess what? We know from the kids the shooter is traveling in a southwest direction after the shooting. Defendant is also traveling in a southwest direction after the shooting.
>
> So we have the shooter taking a certain path. And then we have the defendant taking the same path.[122]

When reviewing the prosecutor's comments, it is clear that the prosecutor was arguing her theory from the evidence. Defendant cannot make that impermissible by merely redacting the evidence that she used to create that argument.

### Conclusion

Defendant claims the prosecutor should not have been allowed to argue her case. Defendant takes issue with the prosecutor's argument that defendant's loss of control of Taylor drove him to attack the victim. But the evidence clearly supported the inference that defendant

---

[122] T. 1/31, 28-29.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

was extremely possessive and controlling of Taylor.[123]   Further, defendant argues that the People presented testimony that was not drawn from the record.   But this claim is inaccurate as a full review of the record shows the prosecutor's arguments were permissible inferences drawn from the record.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

---

[123] Staking-out where an ex-girlfriend is residing is not stable or normal behavior.  Even if that was the only factor involved, it supported an inference that defendant was unreasonably controlling and possessive of Taylor.

**IV.**
**(Defendant's Standard 4 – I.)**

**On review for sufficiency of the evidence, all inferences and credibility choices must be drawn in favor of the jury verdict. Here, an eyewitness at the scene of the crime identified defendant as the shooter and explained that she did not come forward immediately because she was scared. In a light most favorable to the verdict, the facts were sufficient to support the jury's conclusion that defendant was the perpetrator.**

**Standard of Review**

In reviewing a claim that there was insufficient evidence to support a conviction, the reviewing court must consider the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.[124]  The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the verdict.[125]  The scope of review is the same whether the evidence is direct or circumstantial.[126]

**Discussion**

Defendant claims that there was insufficient evidence to prove his identity as the person who shot the victim.  Defendant makes no argument that the evidence was insufficient, outside of claiming that the jury's decision to believe the testimony of Jessica Taylor was wrong.

But defendant is not entitled to force his own opinions on the jury.   Rather, all reasonable inferences are drawn in favor of the jury verdict.  The People's proofs were overwhelming.  Taylor knew defendant and saw him holding the gun right after he shot the

---

[124] *People v Nowack*, 462 Mich 392, 399 (2000); *People v Petrella*, 424 Mich 221 (1985).
[125] *Nowack*, 462 Mich at 400.
[126] *Id* at 399.

- 23 -

RECEIVED by MCOA 10/2/2015 3:32:04 PM

victim.[127]  Defendant sent numerous threatening text messages to the victim leading up to the crime.[128]  Defendant's cell phone was in the vicinity of the scene of the crime and the progression of the tower-sector locations covered the same path that witnesses indicated was taken by the probable shooter.[129]  Just before the crime, defendant used text messages to arrange the purchase of the same type of firearm that was used to shoot the victim.[130]

In a light most favorable to the People, there was sufficient evidence for the jury to find defendant guilty beyond a reasonable doubt.

---

[127] T. 1/27, 37, 44.
[128] T. 1/31, 15-17.
[129] T. 1/27, 160-78.
[130] T. 1/27, 190.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

**V.**
**(Defendant's Standard 4 – II.)**

> **A defendant may not expand the record on appeal. Here, defendant's motion for remand was denied and now defendant asks this Court to consult affidavits that were not even presented to this Court in the motion for remand due to their lack of credibility. Defendant is not entitled to expand the record on appeal to use incredible affidavits.**

**Standard of Review**

To establish ineffective assistance of counsel, a defendant must show that counsel's performance was objectively unreasonable and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different.[131] There is a strong presumption, however, that counsel provided effective representation.[132] The defendant bears the burden of proof and must exclude those reasonable hypotheses consistent with the view that trial counsel provided effective representation.[133] Counsel's overall performance is that which is reviewed and the standard is an objective one.[134] To show ineffective assistance, a defendant must establish the factual predicate of his claim.[135]

Mere speculation that certain questions, evidence, or witnesses would have been favorable is insufficient to warrant relief.[136] Defendant attempts to add to the record through his own sources, seeking to provide new evidence to counter the People's proofs at trial. But this Court does not allow such materials to expand the record on appeal.[137] Defendant's reliance on those proofs is misplaced.

---

[131] *Leonard*, 224 Mich App at 592; *Strickland*, 466 US 668.
[132] *Id.*
[133] *Ginther*, 390 Mich 436.
[134] *Strickland,* 466 US at 688*; Coyle*, 104 Mich App 636.
[135] *Hoag*, 460 Mich at 6.
[136] See *Avant*, 235 Mich App at 508; *Pickens*, 446 Mich at 327.
[137] *Pawelczak*, 125 Mich App at 241.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

**Discussion**

Defendant is not entitled to expand the record on appeal and this claim fails, accordingly. Defendant filed a motion for remand based on counsel's failure to object to the People's argument, witness testimony, and the People's expert witness.[138] This Court denied the motion. After the denial, defendant asked for reconsideration based on several new factors including two affidavits from himself, an affidavit from Tracey Mays, and an affidavit from Vanessa Hudson.[139]

Defendant's own affidavits are not a substitute for his trial testimony. Defendant exercised his right to remain silent at trial and does not claim that his silence was coerced. Accordingly, his counsel could not have been ineffective for failing to call him, because defendant did not want to testify. Defendant failed to establish any error to satisfy the factual predicate of ineffective assistance of counsel.[140]

Tracey Mays's affidavit provided no new information, but merely agreed with the other witnesses that the car occupants ducked when the shooting began. Another witness who would agree with the People's witnesses about what transpired would not have aided the defense. Again, defendant failed to establish any error or prejudice to satisfy the factual predicate of ineffective assistance of counsel.

Vanessa Hudson's affidavit read more like an alibi. But defendant also attached the reason why appellate counsel declined to include the Hudson affidavit. Counsel spoke to

---

[138] Defendant's Motion to Remand.
[139] Defendant's Pro Per Motion for Reconsideration.
[140] *Hoag*, 460 Mich at 6.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

Hudson and Hudson's memory was different than what was stated in the affidavit.[141]  Defendant failed to establish any error to satisfy the factual predicate of ineffective assistance of counsel.

Defendant is not entitled to expand the record.  Defendant is not entitled to relief.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

---

[141] Exhibit E, Attached to Defendant's Pro Per Motion for Reconsideration.

**VI.**
**(Defendant's Standard 4 – III.)**

> **A claim of knowing use of perjured testimony requires that the testimony be false, the testimony is material and the prosecutor knows it is false.  Here, the People presented an eyewitness's testimony that merely conflicted with defendant's self-serving inferences.  The testimony was permissible.**

**Standard of Review**

Defendant's claim that the prosecution used perjured testimony was not preserved in the lower court.  An unpreserved, due process allegation of prosecutorial error is reviewed under the plain-error standard.[142]  An unpreserved claim is forfeited unless the defendant satisfies the burden of persuasion on all three requirements: (1)  An "error must have occurred," (2) "the error was plain, i.e., clear or obvious," (3) "and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings."[143]  Further, once the defendant has satisfied all the above requirements, reversal is only warranted when one of two policy concerns is present: (1) The "forfeited error resulted in the conviction of an actually innocent defendant" or (2) the "error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence."[144]

In order to prevail on a *preserved* due process claim stemming from alleged false testimony, the defendant must prove: "(1) the statement was actually false; (2) the statement was material; … (3) the prosecution knew it was false" and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."[145]  Notably, the United States

---

[142]  *Carines*, 460 Mich at 763-65.
[143]  *Id.*
[144]  *Id.*
[145]  *US v Lochmondy*, 890 F2d 817, 822 (CA6 1989); *US v Bagley*, 473 US 667, 678-679 (1985).

RECEIVED by MCOA 10/2/2015 3:32:04 PM

Supreme Court stated that the "reasonable likelihood" test applies the same standard as does harmless-error review.[146]

**Discussion**

Defendant is not entitled to relief on his claim that the People should not have been allowed to use or argue Jessica Taylor's testimony that she saw defendant.  Defendant bases this claim on his own assertion that Taylor's testimony constituted perjury because other witnesses said that everyone ducked when defendant started shooting.  But that claim is inaccurate.  Perjured testimony is not merely testimony that runs contrary to defendant's theory.  Perjured testimony must be actually false.  Defendant cannot and does not attempt to show that Taylor's testimony was false.  Considering that Taylor could have easily ducked and still have seen defendant holding the gun, the other witnesses do not impeach her testimony at all.  Regardless, defendant has not shown any evidence: (1) that Taylor's statement was actually false or (2) that the prosecution knew it was false.  Accordingly, defendant has failed to make out a claim for relief.

---

[146] *Bagley*, 473 US at 679.

RECEIVED by MCOA 10/2/2015 3:32:04 PM

## RELIEF

THEREFORE, the People request that this Honorable Court affirm defendant's convictions.

Respectfully submitted,

KYM WORTHY
Prosecuting Attorney
County of Wayne

JASON W. WILLIAMS
Chief of Research, Training,
and Appeals

/s/ *Daniel E. Hebel*

**DANIEL E. HEBEL (P73580)**
Assistant Prosecuting Attorney
1441 St. Antoine, 11th Floor
Detroit, Michigan 48226
(313) 444-0529

Dated: October 2, 2015

RECEIVED by MCOA 10/2/2015 3:32:04 PM

**STATE OF MICHIGAN**
**IN THE COURT OF APPEALS**

_____

**PEOPLE OF THE STATE OF MICHIGAN,**
                 **Plaintiff-Appellee,**

**vs**                                                    Court of Appeals No.  321841

**LAMARR ROBINSON,**
                   **Defendant-Appellant.**
_____
**Circuit Court No.  10-006297**
_____

**APPENDIX 1**
*People v Keys*

KYM WORTHY
Prosecuting Attorney
County of Wayne

JASON W. WILLIAMS
Chief of Research, Training,
and Appeals

**DANIEL E. HEBEL (P73580)**
Assistant Prosecuting Attorney
1441 St. Antoine, 11th Floor
Detroit, Michigan 48226
(313) 444-0529

RECEIVED by MCOA 10/2/2015 3:32:06 PM

2014 WL 198812
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

UNPUBLISHED
Court of Appeals of Michigan.

PEOPLE of the State of
Michigan, Plaintiff–Appellee,
v.
Leonard Leeyoung KEYS, Defendant–Appellant.

Docket No. 312801. | Jan. 16, 2014.

Oakland Circuit Court; LC No.2012–241280–FC.

Before: STEPHENS P.J., and M.J. KELLY and RIORDAN, JJ.

**Opinion**

PER CURIAM.

**\*1** Defendant appeals as of right his jury trial convictions of assault with intent to murder, MCL 750.83, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to 15 to 50 years' imprisonment for the assault with intent to murder conviction and two years for the felony-firearm conviction, to be served consecutively. We affirm.

First, defendant argues that the trial court erred in denying his motion for a directed verdict. We disagree.

This Court reviews a trial court's decision on a motion for a directed verdict de novo. *People v. Martin,* 271 Mich.App 280, 319; 721 NW2d 815 (2006).“In reviewing the denial of a motion for a directed verdict of acquittal, this Court reviews the evidence in a light most favorable to the prosecution in order to 'determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt.' " *People v. Hartuniewicz,* 294 Mich.App 237, 242; 816 NW2d 442 (2011), quoting *People v. Gillis,* 474 Mich. 105, 113; 712 NW2d 419 (2005).

To sustain a conviction of assault with intent to murder, the prosecution must provide "proof of an assault, committed with an actual intent to kill, which, if successful, would make

the killing murder." *People v. Brown,* 267 Mich.App 141, 155; 703 NW2d 230 (2005). An assault is "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v. Starks,* 473 Mich. 227, 234; 701 NW2d 136 (2005). Assault with intent to commit murder is a specific intent crime. *Brown,* 267 Mich.App at 147. In addition, "identity is an element of every offense." *People v. Yost,* 278 Mich.App 341, 356; 749 NW2d 753 (2008).

A rational trier of fact could conclude beyond a reasonable doubt that defendant was the individual who fired shots at Scott Kneeshaw. Devin Body testified that defendant was the shooter. On the contrary, defendant introduced the testimony of several witnesses who said that he was at Gallery Tattoo for the entire evening on March 3, 2011. In deciding a motion for a directed verdict, the trial court views the evidence, including issues of credibility, in the light most favorable to the prosecution. *Hartuniewicz,* 294 Mich.App at 242; *People v. Kanaan,* 278 Mich.App 594, 619; 751 NW2d 57 (2008). Thus, the conflicting testimony regarding defendant's whereabouts on the night of March 3, 2011, must be decided in favor of the prosecution and Body's version of events. See *id.*In addition, issues of witness credibility are the purview of the jury. *People v. McGhee,* 268 Mich.App 600, 624; 709 NW2d 595 (2005).“This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Kanaan,* 278 Mich.App at 619.

It was not error for a rational fact finder to conclude beyond a reasonable doubt that defendant had a specific intent to commit murder. "Circumstantial evidence and reasonable inferences that arise from [the] evidence can constitute satisfactory proof of the elements of the crime." *Kanaan,* 278 Mich.App at 619. Scott Kraemer testified that there were nine bullet casings from a .9 millimeter firearm found at the scene. Kneeshaw testified that the shooter was 10 to 15 feet away when he was pointing a gun at him, and that at least one of the bullets hit his passenger door. If the bullet had not hit the crash bar on the door, it would have entered the passenger compartment and likely hit Kneeshaw. Body testified that defendant asked him to block the victim's car and then shot at the car several times, in rapid succession.

**\*2** Next, defendant asserts that the jury's verdict was against the great weight of the evidence. We disagree.

Defendant did not preserve this issue by moving for a new trial in the trial court. See *People v. Cameron,* 291 Mich.App

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

RECEIVED by MCOA 10/2/2015 3:32:06 PM

599, 617; 806 NW2d 371 (2011). Therefore, this issue is reviewed for plain error affecting substantial rights. *Cameron,* 291 Mich.App at 618. The defendant must "show that (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error prejudiced substantial rights, i.e., the error affected the outcome of the lower court proceedings."*Id.*

A verdict is against the great weight of the evidence when "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand."*People v. Lacalamita,* 286 Mich.App 467, 469; 780 NW2d 311 (2009). However, questions of credibility are "within the exclusive province of the jury."*Id.* at 470." 'Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial.' " *Id.* at 469–470, quoting *People v. Lemmon,* 456 Mich. 625, 647; 576 NW2d 129 (1998). Conflicting testimony does not warrant a reversal unless the testimony contradicted undisputed physical facts or the witness was so far impeached that the testimony lost all probative value. *People v. Roper,* 286 Mich.App 77, 89; 777 NW2d 483 (2009).

As discussed above, the evidence supported defendant's conviction of assault with intent to murder. Body identified defendant as the shooter. This testimony conflicted with the testimony of Dennis Reed, Keith Floyd, King Twitty, and Virgil Smith, who all testified that defendant was at Gallery Tattoo when the shooting occurred. However, conflicting testimony does not warrant a reversal or indicate that a verdict was against the great weight of the evidence.*Lacalamita,* 286 Mich.App at 470. In addition, as discussed above, the circumstantial evidence supported a finding that the shooter had the specific intent to kill Kneeshaw. The shooter fired nine shots, in rapid succession, at Kneeshaw as he sat in the driver's seat of his car. For these same reasons, defendant's conviction of felony-firearm was not against the great weight of the evidence.

Defendant also contends that his trial counsel was ineffective. We disagree.

To preserve a claim of ineffective assistance of counsel, defendant must make a motion for a new trial or a *Ginther* hearing with the trial court. See *People v. Ginther,* 390 Mich. 436; 212 NW2d 922 (1973); *People v. Rodriguez,* 251 Mich.App 10, 38; 650 NW2d 96 (2002). Defendant did not move for a new trial or a *Ginther* hearing. Therefore, our review is limited to mistakes apparent on the record. *People v. Jordan,* 275 Mich.App 659, 667; 739 NW2d 706 (2007);

*Rodriguez,* 251 Mich.App at 38. The circuit court's factual findings are reviewed under a clearly erroneous standard. MCR 2.613(C). Questions of constitutional law are reviewed de novo. *People v. LeBlanc,* 465 Mich. 575, 579; 640 NW2d 246 (2002).

**\*3** Both the United States Constitution and the Michigan Constitution guarantee criminal defendants the right to effective assistance of counsel.US Const, AM VI; Const 1963, art 1, § 20. In order to establish ineffective assistance of counsel, a defendant must show that " 'counsel's representation fell below an objective standard of reasonableness,' " and, "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Smith v. Spisak,* 558 U.S. 139, 149; 130 S Ct 676; 175 L.Ed.2d 595 (2010), quoting *Strickland v. Wash,* 466 U.S. 668, 688, 694; 104 S Ct 2052; 80 L.Ed.2d 674 (1984). Generally, a defense lawyer has discretion over his method of trial strategy, and this Court will not substitute its own judgment or evaluate counsel's performance with the benefit of hindsight. *People v. Payne,* 285 Mich.App 181, 190; 774 NW2d 714 (2009). Counsel's failure to introduce certain evidence constitutes ineffective assistance of counsel only when the defendant is deprived of a substantial defense. *Id.*

First, defendant argues that his trial counsel was ineffective for stipulating to the admission of cell phone numbers, cell phone records, and a PowerPoint presentation prepared by Detective Gerald Wakefield. However, defendant has offered no legal grounds on which his trial attorney could have objected to this evidence. "Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position."*People v. Petri,* 279 Mich.App 407, 413; 760 NW2d 882 (2008) (quotation omitted). Rather, defendant argues that the cell tower evidence was damaging to his case. Although this may be true, it is not a legal ground for objecting to the evidence. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority."*Payne,* 285 Mich.App at 195 (quotation omitted).

Defendant also bases his ineffective claim on his trial counsel's failure to cross-examine Detective Wakefield. Again, defendant does not support this claim with questions his attorney should have asked to impeach Detective Wakefield. Generally, "[t]he questioning of witnesses is presumed to be a matter of trial strategy."*Petri,* 279 Mich.App

RECEIVED by MCOA 10/2/2015 3:32:06 PM

at 413. Defendant argues that cell phone tower evidence is "junk science." None of the quoted documents are part of the lower court record, and therefore cannot be considered by this Court. See MCR 7.210(A)(1); *People v. Eccles,* 260 Mich.App 379 n 4; 677 NW2d 76 (2004). Second, it appears that the information is inapplicable to the matter at issue. In this case, Detective Wakefield used cell phone records to determine, within a general area, where defendant was located when he made or received specific calls. This evidence was then used to determine that defendant was *not* in a specific location—Gallery Tattoo. The information provided in defendant's brief relates to placing an individual at a specific location—for purposes of a 911 call or to determine if that individual was at or near the crime scene. There is an important distinction between concluding that an individual was not in a specific place at a specific time, as opposed to affirmatively stating that an individual was at a particular location at a particular time.

**\*4** Finally, defendant argues that his trial counsel was ineffective for failing to admit a receipt into evidence which Reed referenced during his testimony. Defendant claims that the receipt would have confirmed that Reed was at Gallery Tattoo on March 3, 2011, and saw defendant there. However, defendant has not produced this receipt on appeal. This Court's review of an ineffective assistance of counsel claim is limited to mistakes apparent on the record.*Jordan,* 275 Mich.App at 667. We cannot speculate that such a receipt existed and that it was dated March 3, 2011.

Defendant next argues that he was denied a fair trial by the trial judge's misconduct and bias. We disagree.

Because defendant did not raise this issue in the trial court, it is unpreserved. See *Cameron,* 291 Mich.App at 617. This Court reviews unpreserved issues for plain error. *People v. Conley,* 270 Mich.App 301, 305; 715 NW2d 377 (2006), citing *People v. Carines,* 460 Mich. 750, 764; 597 NW2d 130 (1999).

Both the United States and Michigan Constitutions give a defendant the right to a fair and impartial trial. US Const, Am VI; Const 1963, art 1, § 20; *Conley,* 270 Mich.App at 307. Thus, although a trial judge "has wide discretion and power in matters of trial conduct," this power is limited by the requirement of judicial impartiality. *Conley,* 270 Mich.App at 307–308, citing *People v. Collier,* 168 Mich.App 687, 698; 425 NW2d 118 (1988).

> If the trial court's conduct pierces the veil of judicial impartiality, a defendant's conviction must be reversed. The appropriate test to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial. [*Conley,* 270 Mich.App at 308 (internal citations and quotation marks omitted).]

There is a heavy presumption that a judge is impartial. *People v. Wells,* 238 Mich.App 383, 391; 605 NW2d 374 (1999)."Comments critical of or hostile to counsel or the parties are ordinarily not supportive of finding bias or partiality."*Id.,* citing *People v. Cain,* 451 Mich. 470, 497 n 30; 548 NW2d 210 (1996).

It is important to note that the trial judge gave the jury a thorough instruction regarding rulings, questions, and statements made during the trial:

> My comments, rulings, questions and instructions are also not evidence. It is my duty to see that the trial is conducted according to the law and to tell you the law that applies to this case. However, when I make a comment or give an instruction, I am not trying to influence your vote or express a personal opinion about the case. If you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion. You are the only judges of the facts and you should decide this case from the evidence.

**\*5** "Generally, [j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors."*People v. Snyder,* 301 Mich.App 99, 112; 835 NW2d 608 (2013), quoting *People v. Abraham,* 256 Mich.App 265, 279; 662 NW2d 836 (2003) (internal quotation marks omitted).

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

RECEIVED by MCOA 10/2/2015 3:32:06 PM

Second, defendant has not demonstrated that the trial judge was biased or partial. Defendant argues that the trial judge demonstrated partiality by allowing the prosecutor to engage in certain conduct that the judge precluded defense counsel from doing. The record does not support this assertion. Defendant also claims that the trial judge was biased for repeatedly criticizing defense counsel for asking compound questions. We have found no evidence of judicial partiality in the judge's evidentiary admonitions. Furthermore, it is a trial judge's duty to maintain order in her courtroom and rule on evidentiary objections. See *Conley,* 270 Mich.App at 307–308.

Finally, defendant argues that the trial judge's questioning of defense witnesses called into question their credibility. A trial court's discretion and power in matters of trial conduct includes the authority to interrogate witnesses. MRE 614(b); *People v. Davis,* 216 Mich.App 47, 49–52; 549 NW2d 1 (1996)."[T]he fact that testimony elicited by a court's questions damaged a defendant's case [does] not demonstrate that the court had improperly assumed the role of surrogate prosecutor."*Davis,* 216 Mich.App at 51. The record does not demonstrate an abuse of discretion in judicial questioning.

Defendant also claims that he was denied a fair trial by the prosecutor's misconduct. We disagree.

" 'Review of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice.' " *People v. Unger,* 278 Mich.App 210, 234–235; 749 NW2d 272 (2008), quoting *People v. Callon,* 256 Mich.App 312, 329; 662 NW2d 501 (2003). Defendant did not object to any of the instances of alleged misconduct. Therefore, his claim is reviewed for plain error. See *Unger,* 278 Mich.App at 235.

When reviewing a claim of prosecutorial misconduct, the prosecutor's statements are reviewed as a whole and in context with the evidence presented and the defendant's arguments. *People v. Brown,* 279 Mich.App 116, 135; 755 NW2d 664 (2008). Prosecutors are generally "accorded great latitude regarding their arguments and conduct."*People v. Bahoda,* 448 Mich. 261, 282; 531 NW2d 659 (1995)."A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence ."*Unger,* 278 Mich.App at 241. Under a plain error analysis, reversal for prosecutorial misconduct is not

required "where a curative instruction could have alleviated any prejudicial effect."*Id.* at 235.Proper jury instructions cure most errors because jurors are presumed to follow the trial judge's instructions.*People v. Mesik (On Reconsideration),* 285 Mich.App 535, 542; 775 NW2d 857 (2009).

**\*6** The prosecutor did not commit misconduct with respect to his argument about the cell phone tower evidence. The prosecutor was discussing the credibility of defendant's alibi witnesses, as opposed to the cell phone tower data. The prosecutor argued that people can be mistaken, but scientific evidence, like cell phone records, cannot be changed or mistaken. The prosecutor's argument was reasonable and based on the evidence. Detective Wakefield testified that based on his evaluations of the cell tower records, defendant was not at Gallery Tattoo on the night of March 3, 2011. Detective Wakefield was qualified as a witness in interpreting cell phone tower records. Furthermore, the jurors were instructed that they can believe or disbelieve an expert's opinion, and it is their job to determine how important the opinion is. In addition, the court instructed the jury that the attorneys' arguments were not evidence.

The prosecutor also did not mischaracterize the intent requirement for assault with intent to murder. Rather, the prosecutor told the jurors to use common sense when determining if the shooter had the intent to kill. He explained that intent can be inferred from the circumstances of the crime, like the fact that the shooter in this case did not shoot at the tires or front of Kneeshaw's car. Rather, four shots were fired into the side of the car, directly at Kneeshaw's body. None of these statements are inaccurate.

Finally, the prosecutor did not use the video recording of Smith's police interview as evidence that defendant was not at Gallery Tattoo when the incident occurred. Rather, the prosecutor specifically told the jurors that the only reason they could consider the recording was for determining Smith's credibility. The prosecutor then gave examples of Smith's trial testimony and the statements he made to Detective Andrew Snarey, arguing that Smith was inconsistent, and therefore, incredible. The prosecutor did not argue that the interview was substantive evidence that defendant was not at the tattoo shop when the shooting occurred.

Defendant argues that the cumulative effect of his trial counsel's ineffective assistance, the prosecutor's misconduct, and the trial judge's partiality denied him a fair trial. We disagree.

**WestlawNext** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

RECEIVED by MCOA 10/2/2015 3:32:06 PM

"We review this issue to determine if the combination of alleged errors denied defendant a fair trial." *People v. Dobek,* 274 Mich.App 58, 106; 732 NW2d 546 (2007). "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Dobek,* 274 Mich.App at 106. If the defendant has not established any errors, then reversal is not warranted. *Id.*

For the reasons discussed above, defendant has not shown that his trial counsel was ineffective, the trial judge was partial, or the prosecutor engaged in misconduct. Because defendant has not established any errors, reversal is not warranted. See *Dobek,* 274 Mich.App at 106.

**\*7** Defendant also argues that the trial court erred in allowing the prosecution to play a video recording of Smith's interview with Detective Snarey for the jury. We agree that the video should not have been played, but conclude that reversal is not required because the error did not affect the outcome of the trial.

We review the trial court's decision on a preserved evidentiary issue for an abuse of discretion. *People v. Mahone,* 294 Mich.App 208, 212; 816 NW2d 436 (2011). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id.* This Court reviews an unpreserved claim of evidentiary error for plain error affecting substantial rights. *People v. Benton,* 294 Mich.App 191, 202; 817 NW2d 599 (2011).

A party may impeach a witness with extrinsic evidence of a prior inconsistent statement on a noncollateral matter. MRE 613(b); *LeBlanc,* 465 Mich. at 590. MRE 613(b) provides:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

When a trial court has abused its discretion on an evidentiary issue, reversal is not required "unless after an examination of the entire cause, it appears more probable than not that the error affected the outcome of the trial in light of the weight and strength of the properly admitted evidence." *Benton,* 294 Mich.App at 199 citing MCL 769.26.

In arguing for the recording's admission, the prosecution argued that Smith denied making certain statements to Detective Snarey, and the recording would show that Smith did, in fact, make these statements. However, Smith's denials were accurate. He did not make the statements that the prosecutor claimed he did. For example, Smith testified during cross-examination that he never told Detective Snarey that the only person he took home on March 3, 2011, was Jerome. In his interview with Detective Snarey, Smith said:

> *Q.* Okay. What time did you drop Leonard off last night?
>
> *A.* Let me see, I dropped Rome off, I don't know what time it was, but it was earlier part of the day. But I don't know if I'm allowed to ask questions.

The subject then changed and Smith never actually answered what time it was when he took defendant home. Smith never told Detective Snarey that the only person he took home was Jerome.

During cross-examination, Smith also denied telling Detective Snarey that defendant called him after 10:00 p.m. and said he was in trouble for something serious. During his interview with Detective Snarey, Smith said:

> *Q.* Okay. And they [defendant and Jerome] said they got in a little bit of trouble? What'd they say?
>
> *A.* Actually, Rome called me, he got into a little trouble. (Inaudible—he didn't get into any serious details but he did say that—that it's something serious, you know?)

**\*8** Again, Smith's testimony did not conflict with the statements he made during his police interview. Smith never told Detective Snarey that defendant called him and said he was in trouble. Rather, Smith specified that Jerome called him.

Even though the video recording was improperly shown to the jury, reversal is not required. It does not appear "more probable than not that the error affected the outcome of the trial in light of the weight and strength of the properly admitted evidence." See MCL 769.26; *Benton,* 294 Mich.App at 199. With respect to Smith's credibility, no harm was done. Because Smith's statements during the interview were consistent with his testimony, the video recording actually

RECEIVED by MCOA 10/2/2015 3:32:06 PM

bolstered his trial testimony and made him more credible. Even if Smith's credibility was affected, defendant had three less interested witnesses testify that he was at Gallery Tattoo on the night of March 3, 2011. Therefore, the error did not affect the outcome of the trial.

Defendant also argues that the video recording was substantially more prejudicial than probative, and thus inadmissible under MRE 403. He did not raise this argument below so it is reviewed for plain error. See *Cameron,* 291 Mich.App at 618.

MRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Defendant contends that the recording was unfairly prejudicial because "[t]he jury saw Mr. Smith being treated as [a] criminal and heard numerous statements made by the police that cast Mr. Keys in a bad light."However, as discussed above, the recording actually bolstered Smith's credibility because his statements during the interview were consistent with his trial testimony. In addition, the court instructed the jury before the recording was shown:

> I need to indicate to you that during this exchange that one of the police officers indicates that the defendant, Mr. Keys, had confessed. There has never been a confession in this case. That is merely a police tactic that is used in order to obtain information.

> Secondly, the purpose of showing you this tape is that you can—it's for impeachment purposes with respect to the testimony of Mr. Smith and Mr. Smith only. You are not to consider this or use it against the defendant, Mr. Keys.

The court instructed the jury again, in a similar fashion, during its final instructions. "[J]urors are presumed to follow their instructions, and instructions are presumed to cure most errors."*Snyder,* 301 Mich.App at 112. Thus, defendant has not demonstrated that showing the recording was plain error affecting his substantial rights.

Finally, defendant contends that the trial court erred in the scoring of several offense variables (OVs), specifically, OV–4, OV–6, OV–10, and OV–19. We disagree.

**\*9** To preserve an issue challenging the scoring of the sentencing guidelines or the accuracy of the information used in sentencing, a defendant must raise the issue "at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals."MCL 769.34(10); see also *People v. Jackson,* 487 Mich. 783, 795; 790 NW2d 340 (2010). At sentencing, defendant objected to the scoring of OV–6 and OV–10. Therefore, defendant's arguments related to these variables are preserved. Defendant's arguments related to the scoring of OV–4 or OV–9 are not preserved because he did not object to their scoring at sentencing.

Generally, this Court reviews the trial court's factual determinations under the sentencing guidelines for clear error. *People v. Hardy,* 494 Mich. 430, 438; 835 NW2d 340 (2013)."Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo."*Id.* When the defendant has failed to preserve the scoring error by raising it at sentencing, in a motion for resentencing, or a motion to remand, he is still entitled to resentencing when the error resulted in the use of a different sentencing guidelines range.*Jackson,* 487 Mich. at 793–794; 790.

The trial court's findings of fact on the sentencing factors must be supported by a preponderance of the evidence. *Hardy,* 494 Mich. at 438. In scoring the sentencing factors, the trial court may rely on the contents of the presentence investigation report (PSIR).*People v. Nix,* 301 Mich.App 195, 205 n 3; 836 NW2d 224 (2013). The information in the PSIR may be considered even if it contained hearsay because the rules of evidence do not apply in sentencing proceedings. MRE 1101(b)(3); *Nix,* 301 Mich.App at 205 n 3.

First, the evidence supported scoring OV–4 at 10 points. OV–4 provides that 10 points should be scored if "[s]erious psychological injury requiring professional treatment occurred to the victim."MCL 777.34(1)(a)."[T]he fact that treatment has not been sought is not conclusive."MCL 777.34(2). In *People v. Apgar,* 264 Mich.App 321, 329; 690 NW2d 312 (2004), this Court concluded that 10 points was properly scored for OV–4 because the victim "testified that she was fearful during the encounter with defendant."According to the victim impact statement of the

RECEIVED by MCOA 10/2/2015 3:32:06 PM

PSIR, Kneeshaw said that the shooting had affected him greatly. "He has missed work and is very nervous when he leaves work."This evidence supports scoring OV–4 at 10 points.

Second, OV–6 was properly scored at 50 points. OV–6 provides that 50 points should be scored if the offender had a premeditated intent to kill. MCL 777.36(1)(a). The evidence showed that defendant's actions were premeditated; he had a plan in place for the night of March 3, 2011. At some point earlier in the day, the Jaguar was stolen and brought to Gallery Tattoo; Body testified that the Jaguar was there when he and defendant left at about 9:00 p.m. After defendant and Body left the tattoo shop, they stopped and stole a license plate from another vehicle. They then switched the stolen plate with the plate on the Jaguar. Body testified that once they reached Northland Mall, they sat in the parking lot and waited for Kneeshaw to exit. Once Kneeshaw exited the mall, they waited for him to part from the individuals he was talking to and enter his car alone. Finally, defendant instructed Body to position the Jaguar behind Kneeshaw's car in order to block him in. All of these actions indicate that defendant planned and prepared for the shooting. In addition, as discussed above, there was evidence that defendant had the intent to kill Kneeshaw. He fired nine shots in rapid succession at Kneeshaw's car, while standing somewhere between 3 and 15 feet away.

 *10  Third, defendant claims that the trial court erred in scoring OV–10 at 15 points. This argument lacks merit. OV–10 provides that 15 points should be scored if "predatory conduct was involved." MCL 777.40(1)(a). "Predatory conduct" is defined as "preoffense conduct directed at a victim for the primary purpose of victimization."MCL 777.40(3)(a). Under MCL 777.40, predatory conduct is "behavior that is predatory in nature, precedes the offense, and is directed at a person for the primary purpose of causing

that person to suffer from an injurious action."*People v.. Kosik,* — Mich.App ——; — NW2d — (November 12, 2013, Docket No. 312518) (slip op at 7). A victim's vulnerability need not be inherent; it can arise from external circumstances. *Id.,* citing *People v. Huston,* 489 Mich. 451, 466; 802 NW2d 261 (2011). In this case, defendant and Body waited for Kneeshaw to leave the individuals he was speaking with in the parking lot and get into his car alone. "The timing of an offense and waiting until a victim is alone can denote predatory conduct."*Id.;People v. Witherspoon,* 257 Mich.App 329, 336; 670 NW2d 434 (2003).

Finally, the evidence supported the trial court's decision to score OV–19 at 10 points. OV–19 provides that 10 points should be scored when the offender "interfered with or attempted to interfere with the administration of justice."MCL 777.49(c). Fleeing from police can constitute interference with the administration of justice. *People v. Cook,* 254 Mich.App 635, 638–640; 658 NW2d 184 (2003), overruled on other grounds*People v. McGraw,* 484 Mich. 120, 133; 771 NW2d 655 (2009). The evidence showed that Body and defendant fled the police in the Jaguar. They were followed by Officer Thomas Literacki in a police car, along with Northland Mall security officer Brian Rothell and a police helicopter. Nonetheless, they did not stop. According to Rothell's statement, the Jaguar "made many evasive maneuvers and disregarded traffic control signs and devices."Eventually, defendant and Body exited the Jaguar and fled on foot. Thus, the evidence supported scoring OV–19 at 10 points.

Affirmed.

**All Citations**

Not Reported in N.W.2d, 2014 WL 198812

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

RECEIVED by MCOA 10/2/2015 3:32:06 PM

STATE OF MICHIGAN

IN THE COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v.

LAMARR VALDEZ ROBINSON, #221610,

    Defendant-Appellant In Pro Per.

COA No. 321841

LC No. 10-6297-01-FC

Wayne County Prosecutor
Attorney for Plaintiff-Appellee

DEFENDANT-APPELLANT'S STANDARD FOUR

SUPPLEMENTAL BRIEF - [AMENDED]

BY:  Lamarr V. Robinson #221610
    Defendant-Appellant In Pro Per
    Saginaw Correctional Facility
    9625 Pierce Road
    Freeland, MI  48623

RECEIVED by MCOA 10/1/2015 12:32:13 PM

## TABLE OF CONTENT

INDEX OF AUTHORITIES _____ ii

STATEMENT OF JURISDICTION _____ iii

QUESTIONS PRESENTED _____ iv

STATEMENT OF FACTS _____ 1

ISSUE I _____ 2

ISSUE II _____ 5

ISSUE III _____ 15

ISSUE IV _____ 24

ISSUE V _____ 32

RELIEF REQUESTED _____ 34

EXHIBITS A THRU F

RECEIVED by MCOA 10/1/2015 12:32:13 PM

## ISSUE IV

DEFENDANT IS ENTITLED TO RESENTENCING ALLEYNE V. UNITED STATES, 133 SCT 2151 (2013), WHERE OV 4, OV 5 AND OV 7 WERE NOT FOUND BY A JURY. DUE PROCESS REQUIRES THAT DEFENDANT BE SENTENCED ON ACCURATE INFORMATION. US CONST AMS VI, XIV.

**STANDARD OF REVIEW:** Where the issues in a case concern the proper interpretation and application of the legislative sentencing guidelines, MCL 777.11 et seq., they are legal questions that appellate court reviews de novo. **People v. Perkins,** 468 Mich 448, 4562 (2003). Constitutional issues like questions of statutory construction are subject to review de novo. **County of Wayne v. Hathcock,** 471 Mich 455 (2004). A trial court's scoring of guidelines is reviewed to determine whether the court properly exercised its discretion and whether the evidence supports the scoring. **People v. Houston,** 261 Mich App 463, 471 (2004).

**PRESERVATION:** This challenge to scoring of sentence guideline was preserved in part at sentencing. **People v. Kimble,** 470 Mich 305 (2004). The scoring of OVs 4 and 5 may be reviewed for plain error.

### DISCUSSION

MCL 777.22(1) guides the sentencing court when scoring crimes against a person, to score offense variables 1, 2, 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, 19, and 20. Score offense variables 5 and 6 for...., or assault with intent to commit murder. Defendant is this case was found guilty of Assault with Intent to Murder, MCL 750.83. See Amended Judgment of Sentence.

RECEIVED by MCOA 10/1/2015 12:32:13 PM

On February 15, 2011, Defendant was sentenced to 47.5 years to 120 years for the AWIM. Defendant contends he is entitled to have his guidelines corrected where the trial court's scoring determination was not found by the jury. Defendant does concede that he is a 4th Habitual by the sentencing record. MCL 769.12; MCL 777.21(3)(c).

Defendant does not agree that OV 4 should be scored for psychological injury to the victim at 10 points, OV 5 should not be scored at 15 points for psychological injury to member of victim's family or that OV 7 should be scored at 50 points for excessive brutality. (ST, 5-7). Counsel did object to the scoring of OV 7. (ST at 7).

The record at trial depicts that the victims was shot, but was not shot multiple times. Nor does the record show that suspect continued firing bullets into Mr. Chubbs body. (ST at 6).

Matter of fact, the opinion of the sentencing judge is not supported by the jury's findings and violates the Sixth Amendment.

In Michigan, the construction of the offense description is not actual defined by law, MCL 777.6, states:

"The offense description in part 2 of this chapter are for assistance [only] and the statutes listed govern applications of the sentencing guidelines."

Constitutional finding by the Court for sentencing must be "beyond a reasonable doubt' to reduce findings of fact in a criminal trial to a preponderance of the evidence violates the Sixth Amendment.

25.

RECEIVED by MCOA 10/1/2015 12:32:13 PM

## ARGUMENT

Defendant contends that resentencing or correction of his sentencing guidelines is appropriate because there is no trial record that supports these scorings.   Defendant must be sentenced on the basis of accurate information. **Townsend v. Burke,** 334 US 736 (1948); **People v. Malkowski,** 385 Mich 244 (1971).

OV 4

Defendant contends that the trial court erred where it improperly assumed without evidence that Mr. Chubbs would necessarily have suffered psychological injury to support the scoring of OV 4.

In this case, the victim is in a coma, in a vegetative state. He cannot complain of psychological injury.  This Court is direct to as similar case in **People v. Beeler,** ___ Mich App ___ (COA #250927, 1/11/05).

In **Beeler,** the scoring of OV 4 was supported in an Assault with Intent to Do Great Bodily Harm where the victim suffered internal and external injuries resulting in a coma and was currently in a severely impaired condition, the scoring of OV 4 was supported by evidence that the victim was being treated by a social worker for his psychological injury.

No such evidence was presented to the trial court in this case.

RECEIVED by MCOA 10/1/2015 12:32:13 PM

In another unpublished case, People v. Tyrpin, ___ Mich App ____ (COA #243603, 1/15/03), where the trial court correctly refused to assess points for serious psychological injury to a  victim pursuent to OV 4, where the defense presented evidence that the complainant had not been psychologically harmed and the prosecution in response failed to provide evidence of the complainant's psychological history when requested by the court.  Here the prosecutor presented no evidence of psychological injury or the history of the victim even those it was known that Mr. Chubbs was in a come after the shooting.   10 points should not be scored as it is not supported by the record.

OV 5

  Defendant contends that he should not have been scored 15 points for OV 5, since the record is void of psychological injury to the victim's family.

  The Presentence Investigation Report in the "VICTIM'S IMPACT STATEMENT " indicates:

    On 02/09/11, writer made contact with the victim's mother. Ms. Chubbs verified that the victim, Jamel Vincent Chubb, age 20, suffered from multiple gun shot wounds and is still in a coma.  She states that the victim was placed in a nursing home and is currently paralyzed.  The victim's mother states that she is glad that justice was served, but there will never be enough justice for her son's suffering.  She did not respond to any request for restitution for the within offense."

RECEIVED by MCOA 10/1/2015 12:32:13 PM

In **People v. Swaizer**, ___ Mich App ___ (COA #253443, 6/16/05), the Court of Appeals concluded that the trial court erred by scoring 15 points for OV 5 in a case of second-degree murder where the record is devoid of evidence to support such scoring, although relatives spoke at the sentencing but did not demonstrate serious psychological injury. Here, the PSIR indicates no psychological injury to Ms. Chubbs but the court improperly assumed the psychological injury was present. See (ST at 5). It was improper for the court to attest for Ms. Chubbs absent a finding on the record. The proper determination was to determine what Ms. Chubbs said or proved in the sentencing record. This record is silent with regards to serious psychological injury. The Court in **People v. Drohan**, 475 Mich 140 (2006), held that, as long as a defendant has received a sentence within the statutory maximum, "a trial court may utilize judicially ascertained facts to fashion a sentence within the range authorized by the jury's verdict." Id. at 164.

Thus, Due Process forbids a sentencing judge from relying on materially false or unreliable information. See **United States v. Tucker**, 404 US 443, 447-449 (1972).

Although, the sentencing guidelines would not change, these corrections can be made without resentencing but as a correction to the record.

RECEIVED by MCOA 10/1/2015 12:32:13 PM

**OV 7 Aggravated Physical Abuse**

Defendant was scored 50 points for excessive brutality for the shooting that occurred to the victim. The trial record indicate that Mr. Chubbs was shot once in the base of his skull. The follows discourse occurred at sentencing:

MR. WASHINGTON:   Number seven, it says victim was treated with sadism, torture, or excessive brutality. I know we're going to differ on that one, but

THE COURT:   No, I don't think you and I are. The prosecutor may have something to say. But that one, he shot him any number of times, and then walked - - well, went right back over and just executed the man, except the man is still alive. How do you say that's sadism?

MS. POWELL:   Your Honor, its excessive brutality. It was an automatic weapon placed at the base of the victim's skull. Eight rounds were fired. If you remember, as the victim fell after being shot in the head, he continued firing bullets into Mr. Chubb's body.

MR. WASHINGTON:   You know, during the testimony where the firearm expert testified at the nature of an automatic or semi-automatic weapon, that it discharged quickly. And I think that the tape showed that the shots were fired in excess of a rapid, rapid number of times.

THE COURT:   The big problem was the one at the base of the head. That's the big problem. That's the one that shows the intent to kill. and with the number of shots, I guess I have to agree with the prosecutor. I agree with the prosecutor.

RECEIVED by MCOA 10/1/2015 12:32:13 PM

MR. WASHINGTON:  All right. Well, I placed an objection.

THE COURT: So the fifty points will stay.  Anything else?
ST at 6-7.

Defendant contends that the articulation by the court was double count an already scored OV (OV6 - Intent to kill or injure), Defendant was scored 50 points. (ST at 6).

Defense counsel properly raised that the weapon used was an automatic or semi-automatic weapon, the charge was AWIM.  The simple fact that the victim is alive, after an attempt to be murdered by a single gun shot does not fix the definition of excessive brutality or sadism. "Sadism" by law 'must be based on conduct beyond that necessary to commit the offense itself' and here there is no evidence that defendant engaged in any conduct beyond that inherent to the commission of assault with an intent to murder.

In People v. Elanini. 485 Mich 876 (2009), the Court ruled that the trial court erred in scoring 50 point for OV7 because the victim was not subject to extreme or prolonged pain or humiliation.  Additionally, the plain language of MCL 777.37 indicates that it should be reserved for "depraved criminal behavior that seeks gratification from unnecessarily torturing, brutalizing, or terrorizing a victim. See People v. Martin, unpublished opinion (COA #265385, 4/10/07).

30.

RECEIVED by MCOA 10/1/2015 12:32:13 PM

Defendant further contends that the video evidence does not support that the shooter stood over the victim and shot him again in the body after the shot to the head.

It is no outside the norm or excessive for a firearm to harm another whether with or without to intent to injure or kill.  Therefore, a weapons efficiency has also been calculated in OVs 1, 2, 3.  OV7 should be scored  at 0 points.

Remand is appropriate where counsel did not object to these scorings or failed to make an offer of proof that the sentencing court and prosecutor employed the incorrect facts to the scorings, and such scoring were errors of law and fact.

A sentence is appealable if there was a scoring error or inaccurate information was relied upon in determining the sentence and the issue was raised at sentencing in a motion for resentencing, or in a motion to remand. **People v. Kimble**, 470 Mich et 310-311.  The Court may further review this claim under ineffective assistance of trial counsel at sentencing. **People v. Pickens**, 446 Mich 298 (1994).

31.

RECEIVED by MCOA 10/1/2015 12:32:13 PM

## ISSUE V

DEFENDANT-APPELLANT WAS DENIED A FAIR AND IMPARTIAL TRIAL BY AGGRESSIVELY QUESTIONING KAYANA DAVIES, AND USING TONES TO INTIMIDATE A WITNESS; TRIAL JUDGE WAS APPARENTLY BIAS DURING SENTENCING BY SUPPORTING THE PEOPLE'S POSITION ON SENTENCING. US CONST AMS VI, XIV.

STANDARD OF REVIEW:   A criminal defendant has a constitutional right to a fair trial. US. Const Ams VI, XIV; MI Const 1963, art 1, §§ 17, 20. Constitutional questions are reviewed de novo. People v. Swint, 225 Mich App 353 (1997).

## DISCUSSION

Whether a defendant had a fair and impartial trial is always reviewable because it questions the sound maintenance of a judicial process. See People v. Pickett, 339 Mich 294 (1954).   A trial judge can pierce the veil of judicial impartiality by aggressively questioning a witness or undermining the adversarial testing of the Confrontation Clause. US Const Am VI. A judge must be cautious about interjecting themselves into a criminal trial.  This is especially true when the trial judge uses harsh tone to a witness or demean them which may prevent answering questions and the truth-seeking process.

Here, Defendant questions the way the Court treated Kayana Davies.  Ms. Davies had experience a treumatic event by seeing Jamel Chubbs, after he had been shot after pumping gas at a BP gas station.  The only fault Ms. Davies had was crying while recalling the shooting. (T3, 102-103).   The Court admonished and demeaned Davies by threatening her to be afraid of the judge. (103)

RECEIVED by MCOA 10/1/2015 12:32:13 PM

The Court further threatened to jail Davies who had not refused to answer any questions. These threats and comments were inappropriate since the admonishment was not supported by the record. Davies had cooperated fully with counsels during their questioning.

Davies admitted she had been warned about testifying, although it was not established that defendant had anything to do with the warning. (108-109).

Defendant makes a record that he had not received fair treatment contrary to the Fourteenth Amendment, since Jamel Chubbs was the son of a Detroit Police Department employee. This was reflected in unfair line-ups procedures by the DPD, where a witness had been brought to the police station, asked to identify the suspect, and known police officers participated in the live line-up.

The biasness of the court was actuated by her statements at sentencing which favored the People and assumed facts not in evidence.

## ARGUMENT

In **Tumey v. State of Ohio**, 273 US 510 (1927), the Court noted that deprival of an impartial judge was a structural error and reviewable for harmless error.

Defendant contends he should have a new trial by a different judge because of the appearance of impartiality. See **People v. Stevens**, ___ Mich ___ (Docket No. 149380, 7/23/15). A cumulative error review is required to determine whether the trial court pierce the veil of impartiality.

RECEIVED by MCOA 10/1/2015 12:32:13 PM

Defendant contends that Davies was held by Sheriffs under the order of the court. Questioned by the prosecutor who inferred that defendant had intimidated Davies. Yet no one took into account that Davies was in a stressful situation by recounting this tragic event in her life.

## SENTENCING

Due process requires that a judge possess neither actual or apparent bias. **Sheppard v. Maxwell**, 384 US 333, 361 (1966).

The veil of impartiality was pierced where the trial court at sentencing testified for the victim's mother Ms. Chubbs. (ST 5-7). The trial court's reasoning at sentencing amounted to double scoring of offense variables scored. (See Issue IV).

A new trial or resentencing is required by this denial of a fair trial and sentencing under due process.

## RELIEF REQUESTED

WHEREFORE, by the foregoing reasons, Defendant-Appellant asks that this Honorable Court reverse his conviction, make the necessary corrections to his sentence or remand this case to the trial court for an evidentiary hearing.

Respectfully submitted,

September 22, 2015

/s/ _Lamarr V. Robinson_

Lamarr V. Robinson #221610
Defendant-Appellant In Pro Per
Saginaw Correctional Facility
9625 Pierce Road
Freeland, MI 48623

34

RECEIVED by MCOA 10/1/2015 12:32:13 PM