**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LAMARR VALDEZ ROBINSON,

     Petitioner,          Civil No. 2:16-CV-12721
                            HONORABLE DENISE PAGE HOOD
v.                      CHIEF UNITED STATES DISTRICT JUDGE

CONNIE HORTON,[1]

     Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS*

Lamarr Valdez Robinson, ("Petitioner"), confined at the Chippewa

Correctional Facility in Kincheloe, Michigan, filed a *pro se* petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction

for assault with intent to commit murder, M.C.L.A. § 750.83, felon in

possession of a firearm, M.C.L.A. § 750.224f, and possession of a firearm

during the commission of a felony (felony-firearm), M.C.L.A. § 750.227b.

The trial court sentenced petitioner as a fourth habitual offender, M.C.L.A.

§ 769.12, to concurrent terms of 47–1/2 to 120 years' imprisonment for the

_____

[1] The Court amends the caption to reflect the current warden of
petitioner's incarceration.

1

assault and felon-in-possession convictions, to be served consecutive to two years' imprisonment for the felony-firearm conviction. For the reasons that follow, the petition for a writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> A jury convicted the 39–year–old defendant of shooting 20–year–old Jamel Chubb at a Detroit gas station on May 13, 2010. The prosecution presented evidence that defendant and Chubb were both dating 19–year–old Jessica Taylor, whom defendant had been dating for a couple of years. Defendant learned about the relationship between Taylor and Chubb, and thereafter followed them on multiple occasions and sent several text messages to both Taylor and Chubb. On the day of the shooting, the men had a brief encounter at Taylor's mother's Livonia residence. Upon leaving, defendant told Taylor, "Don't let me catch y'all in the hood." Later that day, Chubb, Taylor, Jasmine Miller, and Kayana Davies were all at Miller's Detroit residence, and ultimately went to a local gas station. The gas station surveillance video captured an individual wearing a hoodie and riding a bike approach Chubb and shoot him as he was pumping gas. Taylor, who was in the front passenger seat of the vehicle, identified defendant as the shooter. Cellular phone tracking evidence also placed defendant in the area of the gas station at the time of the shooting. The defense theory at trial was misidentification, and the defense argued, inter alia, that Taylor's

identification was not credible and the cell phone tracking evidence was not reliable.

*People v. Robinson*, No. 321841, 2015 WL 6438239, at *1 (Mich. Ct. App.

Oct. 22, 2015).

Petitioner's conviction was affirmed. *Id., lv. den.* 499 Mich. 916; 877

N.W.2d 729 (2016).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.     Defense counsel stipulated to the admission of cell phone tower evidence placing someone using a phone used by the petitioner in the general area.

II.     Defense counsel stipulated to the introduction of testimony of irrelevant sex tapes, did not object to lines of questioning regarding those tapes and did not object to the introduction of text messages or testimony portraying petitioner in a bad light.

III.     Defense counsel failed to object to the prosecutor's misconduct of referencing facts not in evidence and the prosecutor's appeal to sympathy in both opening and closing arguments. Defense counsel's failure to object denied petitioner of his right to effective counsel and due process of law.

IV.     The prosecution failed to produce sufficient evidence to identify petitioner as a perpetrator of the offenses beyond a reasonable doubt.

V.     Petitioner was denied the effective assistance of counsel contrary to the Sixth Amendment where counsel failed to call material and alibi witness; for an expert witness; the cumulative effect of error deprived

petitioner of a fair trial and due process.

VI.  Petitioner was denied due process of law and a fair trial by the presentation of false evidence known to be such by the prosecutor.

VII.  Petitioner is entitled to resentencing under *Alleyne v. United States*, 133 SCT 2151 (2013). Where OV4, OV5, and OV7 were not found by a jury due process requires that petitioner be sentenced on accurate information.

VIII.  Petitioner was denied a fair trial and impartial trial by aggressively questioning Kayana Davies and using tones to intimidate a witness; trial judge was apparently bias during sentencing by supporting the people's position on sentencing.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification

that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.  A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III.  Discussion

### A.  Claims ## 1, 2, 3, and 5.  Ineffective assistance of counsel.

Petitioner alleges that he was denied due process and the effective assistance of counsel when trial counsel stipulated to testimony given by an expert for the prosecution, when trial counsel stipulated and failed to object to irrelevant testimony, when trial counsel failed to object to prosecutorial misconduct, and when trial counsel failed to call various witnesses.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth

Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court

believes the state court's determination' under the *Strickland* standard

'was incorrect but whether that determination was unreasonable-a

substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123

(2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The

pivotal question is whether the state court's application of the *Strickland*

standard was unreasonable.  This is different from asking whether defense

counsel's performance fell below *Strickland's* standard." *Harrington v.*

*Richter*, 562 U.S. at 101.  Indeed, "because the *Strickland* standard is a

general standard, a state court has even more latitude to reasonably

determine that a defendant has not satisfied that standard." *Knowles,* 556

U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to

the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to

a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on

habeas review of a state court conviction, "[A] state court must be granted

a deference and latitude that are not in operation when the case involves

review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101.

"Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105

(quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).  Finally, a

reviewing court must not merely give defense counsel the benefit of the

doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 563 U.S. 170, 196 (2011).

Petitioner first alleges that trial counsel was ineffective by stipulating to testimony given by the prosecution's expert witness.

The trial court judge qualified Larry Smith as an expert in "the workings of Metro PSC" and how it stored, recorded and registered data, finding that "[S]mith's testimony, which was based on the cell phone records as well as Smith's specialized knowledge regarding Metro PCS cell phone towers, helped the jury understand information at issue in the case that an average juror would not have previously known." *People v. Robinson*, 2015 WL 6438239, at *2. The Michigan Court of Appeals also found that "[a]ny objection by defense counsel to Smith testifying in that capacity [] would have been futile." *Id.*

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan Court of Appeals determined that this evidence was admissible under Michigan

law, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 F. App'x 431, 437-38 (6th Cir. 2008). The failure to object to relevant and admissible evidence is not ineffective assistance of counsel. *See Alder v. Burt,* 240 F. Supp. 2d 651, 673 (E.D. Mich. 2003).

Petitioner has failed to show a reasonable probability that Larry Smith's expert testimony would have been excluded had an objection been made by trial counsel. Therefore, petitioner is not entitled to habeas relief based on trial counsel's failure to object to the admission of this evidence. *See Pillette v. Berghuis*, 630 F. Supp. 2d 791, 802 (E.D. Mich. 2009); *aff'd in part and rev'd in part on other grds,* 408 F. App'x 873 (6th Cir. 2010); *cert. den.* 132 S. Ct. 125 (2011). Petitioner is not entitled to relief on his first claim.

Petitioner alleges that he was denied the effective assistance of trial counsel when counsel stipulated to the introduction of testimony regarding irrelevant sex tapes and text messages.

Petitioner claims that trial counsel was ineffective by failing to object to this evidence because it was not admissible under M.R.E. 404(b) and it was too prejudicial.

When defense counsel focuses on some issues to the exclusion of others, there is a strong presumption that he or she did so for tactical reasons, rather than through sheer neglect, and this presumption has particular force where an ineffective assistance of counsel claim is asserted by a federal habeas petitioner based solely on the trial record, where a reviewing court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *See Yarborough v. Gentry,* 540 U.S. 1, 5-6 (2003)(quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)).  In the present case, counsel may very well have made a strategic decision not to object to this testimony, so as to avoid bringing undue attention to the evidence. *See Cobb v. Perini,* 832 F.2d 342, 347-48 (6th Cir. 1987).  "[N]ot drawing attention to [a] statement may be perfectly sound from a tactical standpoint[,]."*United States v. Caver*, 470 F.3d 220, 244 (6th Cir. 2006). Stated differently, petitioner is unable to show that counsel's failure to object to this evidence—thus drawing attention to it—was deficient, so as to support an ineffective assistance of counsel claim. *See Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010).

Furthermore, the Michigan Court of Appeals found that "[t]he

challenged evidence was relevant to factual issues in this case." *People v. Robinson*, 2015 WL 6438239, at *3. The Michigan Court of Appeals also found that the evidence was not unduly prejudicial, and that "defendant has not shown that defense counsel's failure to object to the evidence was objectively unreasonable." *Id.* at *4. Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claim pertaining to the admission of testimony regarding the sex tapes or text messages, because the evidence was admissible and was found to be not unduly prejudicial. Petitioner is not entitled to relief on his second claim.

Petitioner alleges that counsel was ineffective for failing to object to various forms of prosecutorial misconduct. Petitioner first claims that the prosecutor improperly referenced facts not in evidence in both opening and closing argument. Petitioner further claims that the prosecutor attempted to invoke the jury's sympathy during opening and closing argument.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that

the proceeding would have been different. *See Hinkle v. Randle,* 271 F.3d

239, 245 (6th Cir. 2001).

Petitioner claims that the prosecutor improperly argued that

petitioner was a controlling, possessive, and manipulative boyfriend.  The

Michigan Court of Appeals rejected petitioner's claim, finding:

> Substantial evidence was submitted on the record which could lead to a reasonable inference that defendant was jealous of Taylor's relationship with Chubbs, which the prosecutor argued was his motive for the crime.
>
> Defendant raises several specific instances of prosecutor misconduct. During closing argument, the prosecutor stated that defendant took the same path as the shooter, which defendant asserts was unsupported by the record. However, contrary to defendant's assertion, the prosecutor's remarks regarding defendant's location were supported by Smith's testimony and the cell phone records, and reasonable inferences arising from the evidence. The prosecutor's argument that Taylor was "able to see" the shooter's face was based on Taylor's testimony that she saw defendant's face. The prosecutor's argument that defendant had "facial hair right around his chin like [witness Tremaine Maddox] said" the shooter had was a reasonable inference from the evidence that defendant had facial hair on the date of the shooting and Maddox's description of the shooter as having a full facial beard. Defendant contends that there was no evidence from which the prosecutor could infer that defendant had left a hickey on Taylor's neck on the day of the shooting, but Taylor testified that defendant put a hickey on her neck on May 13, 2010, and Miller testified that Taylor had a "big purple mark on her neck" that day. Also, in a text message to Chubb, defendant himself wrote, "How u think she got the hicky fool & when u was knockin I was bustn." The prosecutor's references to other women, relationships, or phone numbers, e.g., "Terri" and

"Nicole," were direct references from testimony and text messages that were admitted into evidence. Taylor testified that she knew Nicole Waller was the mother of defendant's children and had spoken to her on the phone before. Accordingly, we conclude that the prosecutor's remarks were not clearly improper.

*People v. Robinson*, 2015 WL 6438239, at *5.

The Michigan Court of Appeals found that the remarks made by the prosecutor during opening and closing arguments were supported by the record.  The Michigan Court of Appeals also found that "to the extent that the prosecutor's remarks could be considered impermissible references, defendant cannot demonstrate that there is a reasonable probability that, but for counsel's failure to object, the results of the proceeding would have been different." *Id.*  Petitioner's claim is meritless.

Petitioner alleges that trial counsel was ineffective by failing to object to the prosecutor's comments that improperly appealed to the jury's sympathy.

The Michigan Court of Appeals rejected petitioner's argument finding that "the trial court intervened and directed the prosecutor to rephrase her argument."  The Michigan Court of Appeals further found that "the trial court's instructions that the lawyers' statements and arguments are not evidence, and that the case should be decided on the basis of evidence

14

were sufficient to dispel any possible prejudice." *Id.* at \*6.

Petitioner has failed to show that counsel was ineffective for failing to object to the prosecutor's closing argument, in light of the fact that the Michigan Court of Appeals found on direct appeal that the remarks were not improper. *See Finks v. Timberman-Cooper,* 159 F. App'x 604, 611 (6th Cir. 2005)*; Campbell v. United States,* 266 F. Supp. 2d 587, 589-90 (E.D. Mich. 2003). Petitioner cannot likewise show that trial counsel was ineffective by failing to object to the prosecutor's argument to ask the jury to sympathize with the victim. The trial court intervened and then properly instructed the jury that arguments given by the attorneys are not evidence. Because the prosecutor's conduct was either not improper or harmless error, counsel's failure to object to the prosecutor's comments and questions was not ineffective assistance of counsel. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 866 (E.D. Mich. 2003). Petitioner is not entitled to relief on his third claim.

In his fifth claim, petitioner alleges that trial counsel was ineffective for failing to investigate and call various witnesses.

Petitioner claims that trial counsel was ineffective for failing to call Vanessa Hudson and Nicole Haller as alibi witnesses. Petitioner also

15

claims that trial counsel was ineffective for failing to call Tracey May,
Jasmine Bradford, and Charles Mitchell as res geste witnesses. Petitioner
further claims that trial counsel was ineffective for failing to call petitioner
to testify. Lastly, petitioner claims that trial counsel was ineffective for
failing to call an expert witness.

As an initial matter, the Michigan Court of Appeals rejected
petitioner's claim in part because he failed to submit affidavits from Haller,
Bradford, or Mitchell. *People v. Robinson*, 2015 WL 6438239, at *8.
Petitioner has also not provided this Court with any affidavits from these
witnesses concerning their proposed testimony and willingness to testify
on petitioner's behalf. Conclusory allegations of ineffective assistance of
counsel, without any evidentiary support, do not provide a basis for
habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).
Petitioner has failed to attach any offer of proof or any affidavits sworn by
the proposed witnesses. Petitioner has offered, neither to the Michigan
courts nor to this Court, any evidence beyond his own assertions as to
whether the witnesses would have been able to testify and what the
content of these witnesses' testimony would have been. In the absence of
such proof, petitioner is unable to establish that he was prejudiced by

counsel's failure to call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d 551*,* 557 (6th Cir. 2007).

The Michigan Court of Appeals rejected petitioner's claim that trial counsel was ineffective for failing to call Ms. Hudson as an alibi witness, because trial counsel could have reasonably concluded that her credibility could have been called into question:

> Hudson avers that she went to Waller's house "around 3:30 or 4 p.m ." to explain to Waller why defendant had her dance clothes and her van, and that she thereafter left with defendant to pick up parts for defendant to fix her van. Hudson further avers that she was with defendant "from 4 to 5:30 p.m." Defendant avers that he texted Hudson, "911 where are u," because Waller was threatening to burn Hudson's dance clothes. The cell phone records show that defendant sent this "911" text at 5:28 p.m., contrary to Hudson's declaration that she and defendant were already together. It would have been reasonable for counsel to anticipate that the prosecutor would question the credibility of Hudson, and counsel reasonably may have determined that the credibility issues would have seriously undermined any progress defense counsel had made in presenting the misidentification defense and discrediting the prosecution's witnesses.

*People v. Robinson*, 2015 WL 6438239, at *8.

Under *Strickland*, a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy. *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir.2002).

17

Defense counsel's failure to call alibi witnesses to testify at petitioner's trial was a matter of reasonable trial strategy, and did not constitute ineffective assistance of counsel, where counsel instead chose to rely on discrediting the prosecution's witness by challenging the strength of her identification of petitioner as the shooter. *See Hale v. Davis*, 512 F. App'x 516, 521-22 (6th Cir. 2013).  Indeed, "[t]o support a defense argument that the prosecution has not proved its case it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates.  All that happened here is that counsel pursued a course that conformed to the first option ... In light of the record here there was no basis to rule that the state court's determination was unreasonable." *Id.* (quoting *Richter*, 131 S. Ct. at 790)).

Defense counsel was not ineffective in failing to call Ms. Hudson as an alibi witness in light of the fact that her proposed testimony about the time that she was with petitioner from 4:00 to 5:30 p.m. could have been impeached by evidence that petitioner sent Ms. Hudson a text message at 5:28 p.m. asking where she was.  Because Ms. Hudson's proposed alibi was inconsistent with petitioner's text message and could have been subjected to impeachment on this basis, counsel was not ineffective for

failing to present an alibi defense. *See e.g. Thurmond v. Carlton,* 489 F.

App'x 834, 841 (6th Cir. 2012)(trial counsel's decision not to call an alibi

witness did not amount to ineffective assistance where the statements of

the petitioner and his alibi witness were inconsistent with each other and

internally).

Petitioner further claims that trial counsel was ineffective for failing to

call Tracey Mayes as a res gestae witness. The Michigan Court of

Appeals rejected this claim as follows:

> With regard to the proposed res geste witnesses, May averred in
> an affidavit that he observed Taylor "duck face forward" after
> shots were fired, which defendant sought as support for a
> conclusion that Taylor could not have seen the shooter. May's
> testimony, even if assumed true, would have been cumulative to
> the testimony of Davies that Taylor ducked down. Other than
> providing information that was adequately covered through
> another witness, defendant does not state what new helpful
> information May could have offered that would have affected the
> outcome of the trial.

*People v. Robinson*, 2015 WL 6438239, at *8.

Petitioner was not prejudiced by counsel's failure to call Mr. May

because his proposed testimony was cumulative of other testimony

presented at trial in support of petitioner's claim that Ms. Taylor had

ducked down at the time of the shooting. *Wong,* 558 U.S. at 22-23.

Petitioner further claims that trial counsel was ineffective for failing to

call him to testify.  The Michigan Court of Appeals rejected this claim:

> There is no basis to conclude that counsel's performance
> deprived defendant of his constitutional right to testify. The record
> shows that, after the prosecution rested, defense counsel stated
> on the record that he and defendant had discussed whether
> defendant was going to testify and that defendant had elected not
> to testify. Defendant acknowledged to the court that he did not
> want to testify. Defendant never expressed disagreement with
> counsel's statement that he did not wish to testify, did not claim
> that he was ignorant of his right to testify, or that defense counsel
> had coerced him into not testifying. The decision whether to call
> defendant as a witness was a matter of trial strategy and
> defendant has not identified or offered any evidence to overcome
> the strong presumption of sound strategy.

*People v. Robinson*, 2015 WL 6438239, at *9 (internal citation omitted).

When a tactical decision is made by an attorney that a defendant

should not testify, the defendant's assent is presumed. *Gonzales v. Elo*,

233 F.3d 348, 357 (6th Cir. 2000).  A federal court sitting in habeas review

of a state court conviction should have "a strong presumption that trial

counsel adhered to the requirements of professional conduct and left the

final decision about whether to testify with the client." *Hodge v. Haeberlin*,

579 F.3d 627, 639 (6th Cir. 2009)(internal citation omitted).  To overcome

this presumption, a habeas petitioner must present record evidence that

he somehow alerted the trial court to his desire to testify. *Id.*  Because the

record is void of any indication by petitioner that he disagreed with

counsel's advice that he should not testify, petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that his counsel rendered ineffective assistance of counsel. *Gonzales,* 233 F.3d at 357.

Moreover, petitioner failed to show that he was prejudiced by counsel's advice concerning whether he should testify or not. Petitioner merely stated that he would have testified that he had nothing to do with the crime, without providing any details of his proposed testimony, which is insufficient to establish prejudice based upon counsel's allegedly deficient advice concerning whether he should testify or not. *Hodge,* 579 F.3d at 641 (defendant did not demonstrate prejudice required to establish claim of ineffective assistance of counsel based upon defense counsel's alleged impairment of his right to testify at capital murder trial where defendant did not provide details about substance of his testimony and merely speculated that his testimony would have had impact on jury's view of certain witnesses' credibility and of his involvement in murders).

Petitioner finally claims that trial counsel was ineffective for failing to call an expert to challenge the prosecution expert's testimony on cell phones. A habeas petitioner's claim that trial counsel was ineffective for

failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F.3d 662, 672 (6th Cir. 2006). Petitioner has offered no evidence to this Court that he had an expert on cell phones who would have impeached the prosecution expert's testimony concerning the cell phone evidence in this case. Petitioner is not entitled to relief on his fifth claim.

**B. Claim # 4. The sufficiency of the evidence claim.**

Petitioner alleges that there was insufficient evidence to identify him as the perpetrator of the offenses beyond a reasonable doubt.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing

the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Petitioner claims that the prosecutor offered no evidence to prove, beyond a reasonable doubt, that petitioner was the perpetrator of the offenses. Under Michigan law, "[t]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003)(citing *People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970)).

In the present case, the Michigan Court of Appeals found that Taylor positively identified petitioner as the shooter, finding sufficient evidence to sustain his conviction as follows:

> Taylor unequivocally identified defendant as the shooter at trial. Taylor was sitting in the front seat of Chubb's car, while Chubb was standing on the side of the vehicle, pumping gas. Defendant approached on a bike and, as Chubb's body fell, Taylor saw defendant's face. Taylor testified that she had no trouble perceiving what occurred. Taylor had been in an intimate relationship with defendant for two years. From this evidence, a jury could reasonably infer that Taylor was familiar with defendant and could identify him under the circumstances. Although defendant emphasizes that Taylor did not initially identify him as the shooter, Taylor explained that she did not initially identify defendant because she feared retribution. After deciding to come forward, Taylor consistently identified defendant as the shooter to the police, at the preliminary examination, and at trial. The jury was free to believe or disbelieve Taylor's testimony, including her explanation for her belated identification of defendant as the shooter. The credibility of identification testimony is a question of fact for the jury, and

24

Taylor's testimony, if believed, was sufficient to establish defendant's identity as the shooter. Further, apart from Taylor's positive and unequivocal identification of defendant, the prosecution presented evidence that a cell phone linked to defendant was in the area at the time of the shooting and that defendant had communicated via text about obtaining a .45–caliber gun—the same caliber that was used to shoot Chubb. Accordingly, when viewed in a light most favorable to the prosecution, there was sufficient evidence for the jury to identify defendant as the perpetrator beyond a reasonable doubt.

*People v. Robinson*, 2015 WL 6438239, at *7.

The Court notes that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis,* 752 F.2d 1142, 1144 (6th Cir. 1985)(internal citations omitted). Taylor unequivocally identified petitioner at trial as the shooter based of her personal observations. This evidence was sufficient to support petitioner's convictions. *See Thomas v. Perry,* 553 F. App'x 485, 487–88 (6th Cir. 2014).

Petitioner's cell phone activity near the crime scene at the time of the crime was also circumstantial evidence that was sufficient to establish petitioner's identity. *See United States v. Starnes*, 552 F. App'x 520, 525 (6th Cir. 2014).

Because there were multiple pieces of evidence to establish petitioner's identity as the perpetrator of the shooting, the Michigan Court

of Appeals did not unreasonably apply *Jackson v. Virginia* in rejecting petitioner's sufficiency of evidence claim. *See Moreland v. Bradshaw*, 699 F.3d 908, 919-21 (6th Cir. 2012). Petitioner is not entitled to relief on his fourth claim.

### C. Claim # 3. The perjury claim.

Petitioner alleges that the prosecutor knowingly presented perjured testimony by allowing Taylor to testify that petitioner was the shooter when her initial police statement did not identify him as the shooter. Petitioner further claims that perjured testimony was presented when Taylor testified that she could see the shooter, when other eyewitnesses testified that they all ducked down, in the car, at the time of the shooting.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were

actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F.3d at 343. Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury either. *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003)(citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Id.*

At trial, Taylor testified:

Well, I was turned around in the seat. And then when Jamel just fell, I had seen him just pointing the gun, and then he just rode off.

(T. 1/27/2011, p. 37)

When asked why she did not identify petitioner in the earlier police report as the shooter, Taylor testified:

I was scared that something would happen to me for telling. And, I don't know, I was just scared.

(*Id.*, p. 43).

Petitioner failed to show that Ms. Taylor testified falsely when she identified him as the shooter at trial. Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir.1971). Petitioner presented no evidence that Ms. Taylor's trial testimony was false. Taylor did not testify falsely and indicated that the inconsistency in her earlier statement to the police was because she was afraid. Petitioner is not entitled to relief on his third claim.

### D. Claim # 7. The sentencing guidelines claim.

Petitioner claims his sentencing guidelines were incorrectly scored.

Respondent submits that petitioner's seventh claim is unexhausted.

As a general rule, a state prisoner who seeks federal habeas relief must first exhaust his available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c). *See Picard v. Connor*, 404 U. S. 270, 275-78 (1971). Although exhaustion is not a jurisdictional issue, "it

is a threshold question that must be resolved" before a federal court can reach the merits of any claim contained in a habeas petition. *See Wagner v. Smith,* 581 F.3d 410, 415 (6th Cir. 2009).

A habeas petitioner's failure to exhaust his state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). An unexhausted claim may be adjudicated if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Prather v. Rees,* 822 F.2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2).

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003); *Whitfield v. Martin,* 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001). Petitioner had " no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). Petitioner "had no federal

constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score would not merit habeas relief. *Id.* Petitioner's claim that the state trial court improperly departed above the correct sentencing guidelines range would not entitle him to habeas relief, because such a departure does not violate any of petitioner's federal due process rights. *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000).

Petitioner further alleges that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors that had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by petitioner when scoring these guidelines variables under the Michigan Sentencing Guidelines.[2]

On June 17, 2013, the United States Supreme Court ruled that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt. *See Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013).

---

[2] Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255, n. 7, 666 N.W.2d 231 (2003)(citing M.C.L.A. § 769.34(2)). The maximum sentence is not determined by the trial judge but is set by law. *See People v. Claypool,* 470 Mich. 715, 730, n. 14, 684 N.W.2d 278 (2004)(citing M.C.L.A. § § 769.8).

*Alleyne* is an extension of the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), in which the U.S. Supreme Court held that any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. In reaching this conclusion, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), in which the Supreme Court had held that only factors that increase the maximum, as opposed to the minimum, sentence must be proven beyond a reasonable doubt to a fact finder. *Alleyne,* 133 S. Ct. at 2157-58. The Supreme Court, however, indicated that its decision did not mean that every fact influencing judicial discretion in sentencing must be proven to a jury beyond a reasonable doubt. *Id.* at 2163.

*Alleyne* is inapplicable to petitioner's case, because the Supreme Court's holding in "*Alleyne* dealt with judge-found facts that raised the mandatory minimum sentence under a statute, not judge-found facts that trigger an increased guidelines range," which is what happened to petitioner in this case. *See United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014); *see also United States v. James*, 575 F. App'x 588, 595

(6th Cir. 2014)(collecting cases and noting that at least four post-*Alleyne* unanimous panels of the Sixth Circuit have "taken for granted that the rule of *Alleyne* applies only to mandatory minimum sentences."); *Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014)("But *Alleyne* held only that 'facts that increase a mandatory statutory minimum [are] part of the substantive offense.'...It said nothing about guidelines sentencing factors...."). The Sixth Circuit, in fact, has ruled that *Alleyne* did not decide the question whether judicial fact finding under Michigan's indeterminate sentencing scheme violates the Sixth Amendment. *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013).

The Court is aware that the Michigan Supreme Court recently relied on the *Alleyne* decision in holding that Michigan's Sentencing Guidelines scheme violates the Sixth Amendment right to a jury trial. *See People v. Lockridge*, 498 Mich. 358; 870 N.W.2d 502 (Mich. 2015). However, petitioner cannot rely on *Lockridge* to obtain relief with this Court. The AEDPA standard of review found in 28 U.S.C. § 2254 (d)(1) prohibits the use of lower court decisions in determining whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law. *See Miller v. Straub,* 299 F.3d 570, 578-579 (6th

Cir. 2002). "The Michigan Supreme Court's decision in *Lockridge* does not render the result 'clearly established' for purposes of habeas review." *Haller v. Campbell*, No. 1:16-CV-206, 2016 WL 1068744, at *5 (W.D. Mich. Mar. 18, 2016). In light of the fact that the Sixth Circuit has ruled that *Alleyne* does not apply to sentencing guidelines factors, reasonable jurists at a minimum could disagree about whether *Alleyne* applies to the calculation of Michigan's minimum sentencing guidelines. *Id.* at *6. "*Alleyne* therefore did not clearly establish the unconstitutionality of the Michigan sentencing scheme and cannot form the basis for habeas corpus relief." *Id.; see also Perez v. Rivard,* No. 2:14-CV-12326, 2015 WL 3620426, at *12 (E.D. Mich. June 9, 2015)(petitioner not entitled to habeas relief on claim that his sentencing guidelines were scored in violation of *Alleyne*)*.* Petitioner is not entitled to relief on his seventh claim.

### E.  Claim # 8.  The judicial misconduct claim.

Petitioner claims that he was denied a fair trial because of judicial misconduct. Respondent contends that petitioner's eighth claim is procedurally defaulted.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can

demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claim presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

Respondent contends that petitioner's eighth claim is procedurally defaulted because petitioner failed to object to the alleged misconduct at the trial level.

Petitioner claims that the trial court judge's statements to Davies denied him of a fair trial. At trial, Davies was asked by the prosecutor whether she saw petitioner in the courtroom and to point to where he was seated and indicate what he was wearing. Davies did not verbally answer the prosecutor's questions, but instead began crying. The trial court judge excused the jury for lunch and thereafter addressed Davies:

> Young lady, let me tell you something. I don't know why you're crying or what you're afraid of, but you'd better get afraid of me because I'm not going to spend a lot of time begging you to answer questions, because I can send you to jail, and I will do so.

(T. 1/28/2011, p. 103)

In rejecting his claim, the Michigan Court of Appeals indicated that because petitioner did not object to the challenged remarks during his trial, appellate relief was precluded absent a showing of plain error which affected petitioner's substantial rights. *People v. Robinson*, 2015 WL 6438239, at *13. In this case, the Michigan Court of Appeals clearly indicated that by failing to object at trial, petitioner had not preserved his claim pertaining to the comments made by the trial court judge to Davies. The fact that the Michigan Court of Appeals engaged in plain error review of petitioner's claim does not constitute a waiver of the state procedural

default. *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000).  Instead, this court should view the Michigan Court of Appeals' review of petitioner's claim for plain error as enforcement of the procedural default. *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001).  Petitioner's eighth claim is therefore procedurally defaulted.

In the present case, petitioner has not offered any reasons to excuse the procedural default.  Because petitioner has not alleged or demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his defaulted claim. *Smith*, 477 U.S. at 533; *see also Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).  Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider petitioner's eighth claim as a ground for a writ of habeas corpus in spite of the procedural default.  Petitioner's sufficiency of evidence claim is insufficient to invoke the actual innocence doctrine to the procedural default rule. *Malcum,* 276 F. Supp. 2d at 677.  Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declines to review petitioner's procedurally defaulted claim on the merits. *Id.*

## IV.  Conclusion

The Court denies the petition for a writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability

("COA") in order to appeal the denial of a habeas petition for relief from

either a state or federal conviction.[3]  28 U.S.C. §§ 2253(c)(1)(A), (B).  A

court may issue a COA "only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the

substantial showing threshold is met if the petitioner demonstrates that

reasonable jurists would find the district court's assessment of the

constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S.

473, 484-85 (2000).

This Court denies a certificate of appealability because reasonable

jurists would not find this Court's assessment of the claims to be debatable

or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.

Although this Court will deny a certificate of appealability to

petitioner, the standard for granting an application for leave to proceed *in*

---

[3] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

*forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Id,* at 765. Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V. ORDER

**IT IS ORDERED** that:

(1) the Petition for a Writ of Habeas Corpus is **DENIED.**

(2) a Certificate of Appealability is **DENIED.**

(3) Petitioner will be **GRANTED** leave to appeal *in forma pauperis.*

**S/Denise Page Hood**
**Denise Page Hood**
**Chief Judge, United States District Court**

**Dated:  July 27, 2018**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on July 27, 2018, by electronic and/or ordinary mail.**

**S/LaShawn R. Saulsberry**
**Case Manager**